**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| In re: | Chapter 15 |
| Ambipar Emergency Response, *et al.*,[1] | Case No. 26-90709 |
| Debtors in a Foreign Proceeding | (Joint Administration Requested) |

**DECLARATION OF GUSTAVO SALGUEIRO
PURSUANT TO 28 U.S.C. § 1746 IN SUPPORT OF THE
MOTION FOR (I) RECOGNITION OF FOREIGN MAIN PROCEEDING, (II)
RECOGNITION OF FOREIGN REPRESENTATIVE, AND (III) RELATED RELIEF
UNDER CHAPTER 15 OF THE BANKRUPTCY CODE
AND ADDITIONAL FIRST DAY FILINGS**

I, Gustavo Salgueiro, a partner at Galdino, Takemi, Ayoub, Salgueiro, Rezende de Almeida, Costa, Faria Advogados ("Galdino Advogados"), a law firm located in Rio de Janeiro, Brazil, and a lawyer admitted to the practice of law in Brazil (OAB/RJ No. 135.064), pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States that the following is true and correct:

1.      Galdino Advogados represents Ambipar Emergency Response ("Ambipar Response"), Ambipar Lux S.à.r.l. ("Luxco"), and certain of their affiliated debtors (collectively, the "RJ Debtors" or the "Company") in the jointly-administered and substantively consolidated judicial reorganization (*recuperação judicial*) proceeding (the "Brazilian RJ Proceeding") under Brazilian Federal Law No. 11.101 of February 9, 2005 (as modified, the "Brazilian Bankruptcy

---

[1]      The debtors in these chapter 15 cases (the "Chapter 15 Cases" and, collectively, the "Debtors"), along with the last four digits of each Debtor's tax identification or corporate registry number, are: Ambipar Emergency Response (0263), Ambipar Lux S.à.r.l. (9448), Ambipar Participações e Empreendimentos S.A. (01-24), Environmental ESG Participações S.A. (01-23), and Emergência Participações S.A. (01-49). The location of the Debtors' corporate headquarters is Avenida Pacaembu, 1088, São Paulo, São Paulo, Brazil, 01234-0000.

1

4935-0129-3239

Law"), pending before the 3rd Business Court of the Judicial District of the Capital of the State of Rio de Janeiro (the "Brazilian Bankruptcy Court") under case No. 3014764-58.2025.8.19.0001. Capitalized terms used but not otherwise defined in this Declaration shall have the meanings given to such terms in the Recognition Motion.

2.      I submit this declaration (this "Declaration") in support of the Foreign Representative's *Motion for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "Recognition Motion"), which seeks entry of an order (i) recognizing the Brazilian RJ Proceeding as a "foreign main proceeding" pursuant to section 1517 of the Bankruptcy Code or, in the alternative, as a "foreign nonmain proceeding" for each Debtor, (ii) finding that Mr. Thiago da Costa Silva (the "Foreign Representative") is the duly appointed foreign representative within the meaning of section 101(24) of the Bankruptcy Code, and (iii) granting such other relief as the Court deems just and proper.

I.      **Background and Qualifications**

3.      I am a lawyer admitted to practice law in Brazil and have approximately twenty (20) years of experience in corporate restructuring, insolvency, judicial reorganization (*recuperação judicial*), bankruptcy, and complex commercial litigation.  I hold a Bachelor of Laws degree from the Rio de Janeiro State University (Universidade do Estado do Rio de Janeiro – UERJ) (2005) and a Master of Laws degree in Procedural Law from UERJ (2009).  I have substantial experience advising debtors, creditors, and other stakeholders in complex restructuring and insolvency proceedings in Brazil.  I am fully familiar with Brazilian insolvency and restructuring law, including Brazilian Federal Law No. 11.101/2005, as amended, and with the Brazilian RJ Proceeding.

4935-0129-3239

4.      I and my firm have been advising the Company on the Brazilian law aspects of its restructuring. To assist the Court's consideration of the Recognition Motion, I submit this Declaration describing the relevant features of the Brazilian RJ Proceeding under the Brazilian Bankruptcy Law and other applicable laws, as well as the relevant background circumstances and certain actions taken to date in connection therewith. Where the matters stated in this Declaration are statements of legal opinion, such statements reflect Brazilian law based on my education and years of experience practicing Brazilian law in Brazil.  Where the matters stated in this Declaration are statements of fact, they are based on my personal knowledge and are known to me to be true and accurate to the best of my knowledge, information, and belief.

## II.      **Overview of Brazilian Reorganization Proceedings**

5.      Insolvency proceedings involving corporate entities in distress in Brazil are governed by the Brazilian Bankruptcy Law.  The Brazilian Bankruptcy Law focuses on facilitating faster and more efficient restructuring processes and encourages a company's successful reorganization, rather than its liquidation, in furtherance of the preservation of the business, its productive function, the maintenance of employment, and the interests of creditors (Article 47 of the Brazilian Bankruptcy Law).

6.      The Brazilian Bankruptcy Law provides for two (2) forms of reorganization proceedings that are analogous to chapter 11 proceedings in the United States and serve as a collective mechanism to adjust debts under the control and supervision of a competent Brazilian court specialized in bankruptcy matters (a "Bankruptcy Court"): (1) a court-supervised reorganization proceeding known as *recuperação judicial* (a "Judicial Reorganization" or an "RJ"); and (2) an out-of-court reorganization proceeding known as *recuperação extrajudicial* (an

4935-0129-3239

"EJ"). It also allows a company to initiate a mediation administered by a specialized mediation chamber prior to an RJ or EJ.[2]

7.      As the proceeding commenced by the RJ Debtors in Brazil is a *recuperação judicial* proceeding, this Declaration focuses on the procedural and legal aspects of RJ proceedings.

### III.      Background Information Regarding the Brazilian RJ Proceeding

8.      On September 24, 2025, certain members of the Company filed a petition for antecedent injunctive (*cautelar*) relief before the Brazilian Bankruptcy Court, pursuant to Articles 6, §12, and 189 of the Brazilian Bankruptcy Law and Articles 300 et seq. of the Brazilian Code of Civil Procedure, in order to protect the Company's cash and assets and to preserve the effectiveness of a subsequent judicial reorganization.  On September 25, 2025, the Brazilian Bankruptcy Court granted the requested relief, staying the enforceability of claims, the running of limitations periods, and collection and enforcement actions, and suspending the effects of acceleration, accelerated-amortization, and guarantee-enforcement clauses with respect to claims whose triggering events occurred on or prior to that date.

9.      On October 20, 2025, the RJ Debtors amended their initial petition to file the petition for the Brazilian RJ Proceeding (the "RJ Petition"), requesting, among other relief, the commencement of the Judicial Reorganization, the ratification of the antecedent relief, authorization to proceed under substantive consolidation, and the appointment of the Foreign Representative.

10.      On October 30, 2025, the Brazilian Bankruptcy Court entered an order commencing the Brazilian RJ Proceeding (the "Processing Order"). In the Processing Order, the Brazilian Bankruptcy Court, among other things, (i) confirmed its jurisdiction over the RJ Debtors, including

---

[2]      The Brazilian Bankruptcy Law also provides for a liquidation proceeding known as *falência*, and, since 2020, a transnational insolvency framework for the recognition of foreign insolvencies, following Brazil's adoption of the UNCITRAL Model Law on Cross-Border Insolvency.

4935-0129-3239

Luxco and Ambipar Response, on the basis that the principal place of business (*principal estabelecimento*) and nerve center of the Company is located in the City of Rio de Janeiro; (ii) authorized the processing of the Judicial Reorganization under substantive consolidation pursuant to Article 69-J of the Brazilian Bankruptcy Law; (iii) ratified the antecedent injunctive relief and declared the stay period; and (iv) appointed a Judicial Administrator. The Brazilian Bankruptcy Court fixed September 24, 2025—the date of the antecedent petition—as the relevant date for determining which claims are subject to the Brazilian RJ Proceeding.

11.     The Brazilian RJ Proceeding affects all claims existing against the RJ Debtors as of the relevant date (absent certain exceptions explained below), as required by the Brazilian Bankruptcy Law, and it is jointly administered in substantive consolidation.

**IV.     Eligibility Requirements for Debtors Under the Brazilian Bankruptcy Law**

12.     The Brazilian Bankruptcy Law provides for certain requirements for companies to be eligible to be debtors in a Judicial Reorganization.

13.     As an initial matter, only the debtor itself may commence a Judicial Reorganization. Creditors are not permitted to do so. The debtor must be engaged in a business, and at the time the application is made, is required to have been doing business regularly for over two (2) years, and must meet certain subjective and objective requirements, as described below.

14.     Brazilian case law has evolved to allow foreign companies to file a Judicial Reorganization, and these filings have been accepted on a variety of different independent bases. These include cases where the foreign debtor (a) is a subsidiary of a Brazilian holding company that does not develop independent business activities and is jointly filing the petition with such Brazilian holding company; (b) is merely a financial vehicle of the Brazilian holding debtor, or was constituted for finance or corporate-organizational purposes; (c) is part of a corporate conglomerate under financial crisis, the facts of which have occurred primarily in Brazil; or (d) has

operations and activities in Brazil, among others. Consistent with this case law, and as confirmed in the Processing Order, the Brazilian Bankruptcy Court found that the center of main interests (COMI) of the foreign RJ Debtors—Luxco and Ambipar Response—is located in Brazil, where the Company's strategic decisions are made and its financial indebtedness is administered.

15.     The petition for a Judicial Reorganization must be filed in the appropriate state civil court specializing in bankruptcy matters in the jurisdiction where the debtor's (or debtors' group's) principal place of business (*principal estabelecimento*) is located. That court has exclusive jurisdiction in Brazil over matters relating to the claims being restructured.

16.     In order to commence a Judicial Reorganization in Brazil, the debtor may not (a) already be subject to a bankruptcy liquidation proceeding (and, if it has been in the past, the resulting liabilities shall have been discharged by a final court order); (b) have any pending judicial reorganization case, nor have been granted a judicial reorganization within the last five (5) years; or (c) have been convicted, or have a senior manager who has been convicted, of any bankruptcy crime.

## V.     The Brazilian RJ Proceeding

17.     As mentioned above, the Brazilian Bankruptcy Law provides for a court-supervised proceeding known as *recuperação judicial* or an RJ. As noted above, the RJ is Brazil's equivalent of a chapter 11 reorganization. This section describes the principal procedural and legal features of the RJ in greater detail.

18.     An entity commences an RJ by filing an RJ petition with the appropriate Bankruptcy Court in the jurisdiction in which it maintains its principal place of business (*principal estabelecimento*). The concept of principal place of business, provided under Article 3 of the

4935-0129-3239

Brazilian Bankruptcy Law, is separate from the concept of COMI, which is provided in Article 167-B, II, of the Brazilian Bankruptcy Law.[3]

19.     When filing the RJ petition, a debtor must include, among other things: (i) a description of the causes of its financial distress; (ii) its financial statements; (iii) a list of its creditors and claims; (iv) a list of all legal actions to which it is a party (with an estimate of the respective amounts claimed); (v) a list of its employees, including their respective positions and salaries; (vi) a certificate of regular standing of the debtor before the Board of Trade; (vii) a certificate of civil-law notaries in the judicial district of the debtor's domicile identifying any recorded default of debt obligations; (viii) statements of the debtor's bank accounts and its financial investments; (ix) a detailed report of tax liabilities and claims and collateral not subject to the RJ; and (x) other relevant information.

20.     The filing date triggers the key legal effects of the RJ. For example, after the filing, a debtor is barred from paying claims subject to the restructuring proceeding and can no longer dispose of or encumber its fixed assets without prior authorization of the Bankruptcy Court or as determined in the plan of reorganization approved by creditors and the Bankruptcy Court. Further, the filing date determines whether a claim against the debtor will be subject to the RJ, as only claims that originated prepetition are affected.

21.     Once the RJ petition has been filed, the court will review the petition and determine whether it is appropriate to admit the debtor into the RJ scheme. If a debtor satisfies all the requirements mentioned above and certain other additional eligibility requirements, the Bankruptcy Court will issue a decision commencing an RJ and appointing a judicial administrator

---

[3]     The concept of COMI was introduced in the Brazilian Bankruptcy Law after Brazil's adoption of the UNCITRAL Model Law on Cross-Border Insolvency and is used in the context of recognition in Brazil of foreign proceedings.

4935-0129-3239

(the "Judicial Administrator"). The Judicial Administrator monitors the RJ, provides reports on the debtor's activities, promptly provides all information requested by interested creditors, assists in the verification of claims, and complies with other mandates. Creditors receive notice of the processing order and the debtor's list of creditors through a publication in the official gazette of the State in which the Bankruptcy Court is located (the "Official Gazette").

22.     Upon entry of the processing order, all collection actions or enforcement proceedings against the debtor, commenced before or after the RJ filing, with respect to liquidated claims subject to the RJ proceeding, are stayed for the duration of the stay period provided under Article 6, §4, of the Brazilian Bankruptcy Law (the "RJ Stay"). The RJ Stay applies for a period of 180 days, extendable for an additional 180 days provided that the debtor has not caused the failure to approve a plan of reorganization within the initial period.[4] Accordingly, upon entry of the processing order, creditors become barred from seeking payment of their prepetition claims. Any payment to the detriment of other creditors on account of prepetition claims that are subject to the RJ proceeding is deemed a criminal offense, and the Bankruptcy Court has authority to claw back any such payments.

A.     **Claims Subject to Judicial Reorganization**

23.     The debtor is required to file a list of creditors together with its RJ petition, classifying them according to the classes provided under the Brazilian Bankruptcy Law, and creditors have fifteen (15) days from the publication of the processing order to file oppositions or requests for alterations with the Judicial Administrator. The Judicial Administrator is then responsible for analyzing such requests and submitting a revised list of creditors and the respective

---

[4]     Collection actions or enforcement proceedings against the debtor with respect to contingent claims may continue until such claims are liquidated. Where, prior to the commencement of the RJ, the debtor sought and obtained a stay in support of antecedent injunctive relief, the stay period that occurred prior to the commencement of the RJ proceeding is subtracted from the initial 180 days.

4935-0129-3239

class allocations of their claims. Creditors receive notice of the revised list through a publication in the Official Gazette, and then have another ten (10) days to file a petition directly with the Bankruptcy Court in case of any objections to the list of creditors.

24.     While, as a general rule, claims existing at the date of the RJ petition (*i.e.*, prepetition claims) are subject to the RJ, there are certain exceptions under the Brazilian Bankruptcy Law. In addition to postpetition claims, there are claims (collectively, the "RJ Exempt Claims") that are not subject to the RJ, for example: (i) taxes; (ii) claims secured by the respective debtor's assets in the form of "fiduciary liens" (*i.e.*, a fiduciary assignment of contract rights (*cessão fiduciária*) or fiduciary sale of assets (*alienação fiduciária*)); (iii) claims deriving from leasing transactions (*arrendamento mercantil*); (iv) claims held by an owner or committed seller of real estate; and (v) claims deriving from specific advances in export or currency-exchange agreements. In addition, pursuant to Article 193-A of the Brazilian Bankruptcy Law, the filing of an RJ petition does not affect or suspend the exercise of acceleration and set-off rights in the context of derivative and repo transactions, provided such rights are included in the subject contract; any remaining balance against the debtor is, as a rule, treated as a claim subject to the RJ.

25.     RJ Exempt Claims are not subject to a plan of reorganization. Further, absent a special order of the Bankruptcy Court, creditors holding RJ Exempt Claims technically may enforce their claims against the debtor in parallel with the RJ notwithstanding the RJ Stay. For the duration of the RJ Stay, however, creditors holding RJ Exempt Claims (except for holders of tax claims) may not seize or dispose of any of the debtor's assets that are essential to its business operations, regardless of whether such RJ Exempt Claims are secured by liens over any of those assets. Accordingly, the Bankruptcy Court has exclusive jurisdiction to determine which assets that might be considered essential may be attached and seized by creditors to satisfy RJ Exempt Claims while the RJ Stay is effective.

4935-0129-3239

**B.      A Debtor's Operations Throughout the Brazilian RJ Proceeding**

26.      As a rule, once an RJ is commenced, the debtor remains in possession of its assets and continues to run its business during the course of the proceeding. Nonetheless, the assets of the debtor are also subject to the control and supervision of the Bankruptcy Court. Once the processing order is entered, the debtor is subject to oversight by the Judicial Administrator and is prevented from disposing of hard assets without prior authority by either the Bankruptcy Court or under the terms of a confirmed plan of reorganization. The officers and directors of a debtor remain duly authorized to act on the debtor's behalf in the RJ. Furthermore, a debtor (or its agent) is authorized under the Brazilian Bankruptcy Law and other applicable laws to act as a foreign representative in a foreign proceeding in support of an RJ proceeding, irrespective of whether a court order appointing such foreign representative has been obtained.[5]

27.      The Brazilian Bankruptcy Law also allows creditors to form a committee composed of up to one (1) representative from each determined class of creditors. The creditors' committee serves as an overseeing body that ensures the interests of the creditors are represented throughout the proceeding. In my experience, it is not common for creditors to seek the formation of a creditors' committee.

**C.      Confirmation of the Plan in a Brazilian RJ**

**i.      Requirements to Confirm the Plan**

28.      After filing the RJ petition and following entry of a processing order, the debtor must submit a plan of reorganization within sixty (60) days of the publication of the processing order in the Official Gazette. This 60-day period, as a general rule, is not extendable. If a debtor

---

[5]      See Article 167-E of the Brazilian Bankruptcy Law (authorizing the debtor, in a judicial and extrajudicial reorganization proceeding, to act in other countries as a representative of the Brazilian proceeding, regardless of a court order, so long as such act is permitted under the law of the country in which the foreign proceeding is pending).

10

does not comply with this obligation, the RJ may be converted into a liquidation (*falência*) unless creditors vote to allow the submission of an alternative plan, as explained below.

29.     Upon filing of a plan of reorganization by the debtor, the Brazilian Bankruptcy Law requires that notice be given to all impaired creditors and parties in interest, through a publication in the Official Gazette. Thereafter, creditors have thirty (30) days to object to such plan before the Bankruptcy Court. Should any creditor object, the Bankruptcy Court is required to call a general meeting of creditors (the "General Creditors' Meeting" or "GCM") to vote on the plan of reorganization. Creditors receive notice of the GCM through a publication in the Official Gazette, which shall occur at least fifteen (15) days in advance of such meeting.

30.     The Bankruptcy Court, however, may analyze and approve a proposed plan of reorganization without requiring the GCM if certain conditions are present. Specifically, the GCM shall not be required if the debtor is able to obtain sufficient creditor support via adhesion terms (each, an "Adhesion Term")[6] to meet the plan-approval thresholds under the Brazilian Bankruptcy Law, up to five (5) days before the scheduled date of the GCM.   An Adhesion Term is not a vote cast at the GCM, but rather a written instrument by which an individual creditor expresses its support for the plan outside of, and in lieu of, the GCM. Where the debtor obtains Adhesion Terms reflecting creditor support that meets the same per-class approval thresholds that would otherwise be required at the GCM, the Bankruptcy Court may approve the plan without convening the meeting. Creditors may challenge the Adhesion Terms within ten (10) days on the grounds of (i) insufficient support to meet the legal thresholds; (ii) nonfulfillment of procedural requirements;

---

[6]     In practice, the debtor collects signed Adhesion Terms from creditors and files them with the Bankruptcy Court. The approval thresholds are the same as those that apply to a vote at the GCM (described below): in Classes I and IV, support by more than fifty percent (50%) of the creditors by headcount; and in Classes II and III, support by both more than fifty percent (50%) of the creditors by headcount and creditors holding more than fifty percent (50%) in principal amount of the allowed claims in each such class. The Adhesion Terms thus operate as a substitute for, rather than a supplement to, the GCM.

(iii) that the Adhesion Terms violate the law; or (iv) that the terms and conditions of the plan are illegal.

31.     If (i) no objections to the plan are raised by any creditor or (ii) the plan is approved by the requisite majority of creditors (a) at the GCM or (b) through Adhesion Terms, the Bankruptcy Court may confirm the plan of reorganization and grant the RJ of the debtor.

32.     Alternatively, at a GCM, the debtor and creditors representing more than a simple majority of creditors present and voting at such meeting may agree to adjourn the meeting to allow negotiations to continue toward a consensual plan, which is customary in many complex RJ cases. In such an instance, the debtor may adapt or modify a plan to meet the creditors' expectations, and creditors will vote on the amended plan at a later scheduled GCM.

33.     Provided certain requirements are met, creditors may also agree to propose an alternative plan (an "Alternative Plan"), including where a debtor (i) fails to submit a plan within the statutory period or any extensions thereof or (ii) presents a plan that is rejected by the majority of creditors in each class present and voting at a GCM. If creditors decide not to allow an Alternative Plan, or if such Alternative Plan fails to obtain sufficient support, the court may convert the RJ into a liquidation proceeding.[7]

34.     A plan of reorganization must contain: (i) a thorough description of the measures to be taken to reorganize the debtor's business; (ii) a demonstration of the economic feasibility of the plan; (iii) a financial expert's valuation of the debtor's assets; and (iv) a proposed treatment of claims subject to the RJ. In general, claims of the same class must be treated equally absent an economic justification for treating a subgroup of claims differently.

---

[7]     Once an RJ is converted into liquidation, the officers and directors of the debtor are no longer allowed to manage its affairs, and the assets of the debtor are collected and sold by the Judicial Administrator.

4935-0129-3239

35.     For purposes of voting on a plan of reorganization, claims are divided into the following four classes: (i) labor-related claims (Class I); (ii) secured claims (Class II); (iii) unsecured claims, claims entitled to general and special privilege, and subordinated claims (Class III); and (iv) claims held by "small business companies" (Class IV). Pursuant to Article 43 of the Brazilian Bankruptcy Law, shareholders, subsidiaries, affiliates, and certain other parties related to the debtor may attend the GCM but are not allowed to vote on RJ plans with respect to any claims against the debtor. Furthermore, RJ Exempt Claims are not affected by the plan and do not entitle their holders to vote, and holders of unimpaired claims are likewise not entitled to vote on the plan.

36.     Approval of a plan of reorganization may be obtained in one of two ways: (i) through a "regular creditor majorities" procedure; or (ii) through a "cramdown" procedure. Approval through the regular procedure at the GCM or through Adhesion Terms requires the plan to be approved by each class of claims. In Classes I and IV, approval requires a simple majority— more than fifty percent (50%) of the number of creditors present and voting, regardless of the amount of the claims held. In Classes II and III, the plan must be approved by both (i) more than fifty percent (50%) of the number of creditors present and voting in each class and (ii) creditors holding more than fifty percent (50%) in principal amount of the allowed claims in each such class present and voting at the GCM.

37.     If the required majorities are not met in a class of claims, the plan may still be approved via cramdown (cross-class cramdown). Approval through cramdown requires the court to approve the plan if all of the following criteria are met: (a) holders of a simple majority (more than 50%) of the total allowed claims present at the GCM vote to approve the plan; (b) the required majorities are met in three of the four voting classes (if there are four voting classes), or in two of

4935-0129-3239

the three voting classes (if there are three), or in one voting class (if there are only two); (c) for the class voting to reject the plan, more than one-third (1/3) of creditors present and voting in such class vote to approve the plan; and (d) the plan does not discriminate against creditors of the class that rejected it.

38.     If a plan of reorganization has been approved by the requisite majority of creditors, the Bankruptcy Court must confirm the plan, unless the approved plan (in whole or in part) violates Brazilian law, in which case the Bankruptcy Court is afforded discretion to deem such illegal provisions void or order a revised version thereof to be submitted. The Brazilian Bankruptcy Law provides that a judicially confirmed plan of reorganization binds the debtor as well as all the impaired creditors.

39.     Brazilian law provides for a robust appeal process after a plan of reorganization is confirmed. Upon entry of the plan confirmation order, any dissenting creditor (including creditors that have not submitted an Adhesion Term) as well as the office of the public prosecutor (the "Public Prosecutor") may (i) file a motion for clarification with the Bankruptcy Court within five (5) days of publication of the confirmation order and/or (ii) file an interlocutory appeal with the Brazilian State Court of Appeals (the "Court of Appeals") within fifteen (15) days of publication. After the Court of Appeals renders its decision, the parties may appeal within fifteen (15) days to the Brazilian Superior Court of Justice (the "Superior Court of Justice"), the highest court with jurisdiction over matters related to the Brazilian Bankruptcy Law, if the challenged issue is not a matter of fact.

40.     Throughout the entire process, creditors and other parties in interest are given proper notice through electronic publication in the Official Gazette of every order and notice entered by the Bankruptcy Court, the Court of Appeals, and the Superior Court of Justice.

4935-0129-3239

Accordingly, the deadline to file appeals against any court order only begins after the parties have received proper notice of such order, including through the Bankruptcy Court's official website, which is available for public consultation.

### ii.    Supervision Period After Plan Confirmation

41.    Under the Brazilian Bankruptcy Law, once a Bankruptcy Court confirms a plan of reorganization, the debtor may remain in RJ until such time as the debtor performs plan obligations that are due up to two (2) years from the entry of the plan confirmation order, which period may be decreased or extended at the discretion of the Bankruptcy Court and/or pursuant to the restructuring plan (the "Supervision Period"). During that time, the Bankruptcy Court and the Judicial Administrator continue to monitor and supervise the debtor's performance and compliance with all obligations under the plan as they become due.

42.    If, at the end of the Supervision Period, the debtor has complied with all obligations under the plan that became due until that point, the Bankruptcy Court may issue an order formally closing the debtor's RJ. By contrast, if the debtor fails to comply with any of its obligations under the plan during the Supervision Period, the Bankruptcy Court must either (i) convert the RJ proceeding into a liquidation, or (ii) at its discretion and absent an order closing the proceeding, grant the debtor the opportunity to propose amendments or revisions to the plan.

43.    During the Supervision Period, the restrictions imposed on the debtor due to the commencement of the RJ proceeding persist, such as the prohibition on the disposal of assets without prior approval from the Bankruptcy Court (except if already provided in the confirmed plan), as well as the obligation to present monthly reports on the debtor's activities and financial results. Similarly, the Judicial Administrator continues to supervise the operations and financial and legal affairs of the debtor for the duration of the Supervision Period. In addition, the

4935-0129-3239

Bankruptcy Court retains its jurisdiction over assets of the debtor until the RJ proceeding is formally closed.

44.     As outlined above, the procedural safeguards for creditors of a debtor under the Brazilian Bankruptcy Law are robust, providing a comprehensive procedure for the orderly resolution of claims and the equitable distribution of assets among the estate's creditors in a single proceeding before a single court. The regular creditor majorities procedure requires significant consensus among the creditors of each class. A majority in both number and amount of the claims voting for each applicable class must vote to approve the plan; in the event there is up to one (1) dissenting class, the plan may be crammed down on such class only so long as the other classes accept the plan, at least one-third (1/3) of the members of the dissenting class accept the plan, and the plan does not treat members within the dissenting class differently.

45.     The Brazilian Bankruptcy Law provides additional protection to creditors in a Judicial Reorganization through the appointment of the Judicial Administrator and through the potential appointment of a committee of creditors, each of which carries out an oversight role that ensures a fair and orderly resolution of the claims against the debtor's estate. In addition, creditors have the right to object to a proposed plan within thirty (30) days from its submission.

46.     Under the Brazilian Bankruptcy Law, creditors are given adequate notice of timing and procedures for filing claims, and such procedures do not impose any additional burdens on foreign creditors. Upon accepting the debtor into RJ, the Bankruptcy Court orders the publication of notice of the processing order and the list of creditors presented by the debtor. Creditors then have the opportunity to file proofs of claim with the Judicial Administrator to include or correct their claims affected by the proceeding.

4935-0129-3239

47.     Foreign creditors have the same status as local creditors in the RJ proceeding, which means that a foreign creditor is subject to the proceeding on the same terms described herein and will have the same rights and protections under the Brazilian Bankruptcy Law as a creditor in Brazil. All foreign creditors are entitled to be on the list of creditors. In addition, except for voting-threshold calculation purposes, the plan of reorganization may not convert claims in a foreign currency into Brazilian *reais* without the specific consent of each affected creditor. As such, no significant burdens are placed upon U.S. creditors that are inconsistent with those placed upon domestic creditors.

48.     Although the Brazilian Bankruptcy Law does not govern avoidance actions in RJ proceedings, creditors are generally permitted to bring actions to avoid transfers made by the debtor under the Brazilian Civil Code, which provides that the following be considered fraud against creditors: (i) a gratuitous transfer of assets that leads to or occurs during the debtor's insolvency; or (ii) any onerous transactions entered into by an insolvent debtor and a third party for fraudulent purposes, if causing damage to the creditors. In each case, the damaged creditors are entitled to file a lawsuit in a civil court to have the transaction declared void within four (4) years of the transaction.

49.     If a liquidation proceeding has been commenced, any creditor, the Public Prosecutor, or the Judicial Administrator may bring actions to avoid transfers made to third parties with the intent to harm creditors or damage the debtor's estate. In this case, the court may also declare such transfers void *sua sponte* unless intent to defraud is a disputed question of fact, in which case an action must be commenced by one of the parties above.

50.     Moreover, some transfers are subject to avoidance within a bankruptcy liquidation proceeding as a matter of law if they were made during the "legal term," a period set by the judge

4935-0129-3239

and beginning not more than ninety (90) days before the liquidation petition or the date of the first protest by a creditor, and ending on the petition date. Such transfers include payments of debts not yet due, payments of debts that were due but enforceable in a manner not provided for in the underlying agreement, and the creation of liens or any other *in rem* property interest in connection with a previously incurred debt.

51.     In substance, the distribution scheme prescribed in a liquidation proceeding under the Brazilian Bankruptcy Law is substantially similar to the one prescribed in the United States Bankruptcy Code, as priority is granted to certain administrative claims and, importantly, secured claims rank senior to unsecured claims.

52.     First, under the Brazilian Bankruptcy Law, administrative claims are given superpriority over the claims of the other creditors. Those administrative claims include, among others: expenses essential to the management of the estate; certain labor-related claims of a strict salary nature arising during the three (3) months prior to the liquidation date, up to an amount equal to five (5) months of the Brazilian monthly minimum wage per relevant employee; post-petition labor-related claims or claims related to occupational accidents; any financing of the debtor provided during a judicial reorganization proceeding; specific claims requiring restitution; the fees of the Judicial Administrator; sums provided to the estate by creditors during the liquidation; expenses related to the disbursement of proceeds and costs of the bankruptcy proceeding; court costs for actions brought against the estate in which the estate was defeated; and taxes incurred after the liquidation was initiated.

53.     Following payment of the administrative superpriority claims, the various classes of claims are paid, within a bankruptcy liquidation proceeding, in the following order: ***first***, labor-related claims up to an amount equivalent to 150 times the Brazilian monthly minimum wage per

18

4935-0129-3239

labor-related creditor and all occupational claims; *second*, secured claims up to the value of the assets encumbered in connection with such claims; *third*, tax claims (exclusive of tax fines and post-liquidation taxes); *fourth*, unsecured claims (including labor-related claims exceeding the cap referred to above); *fifth*, penalties and fines in connection with criminal or administrative breaches, including tax fines; *sixth*, claims subordinated by law or contract, intercompany claims, and claims held by directors and shareholders; and *seventh*, interest accrued after commencement of the liquidation proceeding, paid pursuant to the same priority waterfall for the respective principal debt amount.

54.     In an RJ, the claims of affected creditors are paid according to the plan of reorganization. The plan, however, (i) may not provide a period longer than one (1) year (extendable in certain specific scenarios) for the payment of labor-related claims (with strictly salary-nature labor claims, up to five (5) monthly minimum wages per worker, to be paid within thirty (30) days); and (ii) may not provide for the suppression or replacement of any security interest, when the asset covered by such security interest is disposed of, without the express approval of the relevant secured creditor. As noted, the law provides for four (4) classes in a Judicial Reorganization: (i) labor creditors; (ii) secured creditors; (iii) unsecured creditors; and (iv) small and micro-enterprises.

\* \* \* \*

4935-0129-3239

I certify under penalty of perjury pursuant to 28 U.S.C. § 1746 under the laws of the United States that the foregoing is true and correct.

Executed on July 07, 2026 in Rio de Janeiro, State of Rio de Janeiro, Brazil.

Respectfully submitted,

**Gustavo Salgueiro**
OAB/RJ No. 135.064

20