**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 15 |
| Ambipar Emergency Response, *et al.*[1] | Case No. 26-90709 |
| Debtors in a Foreign Proceeding | (Joint Administration Requested) |

**DECLARATION OF THIAGO DA COSTA SILVA IN**
**SUPPORT OF THE MOTION FOR (I) RECOGNITION OF**
**FOREIGN MAIN PROCEEDING, (II) RECOGNITION OF FOREIGN**
**REPRESENTATIVE, AND (III) RELATED RELIEF UNDER CHAPTER 15**
**OF THE BANKRUPTCY CODE AND ADDITIONAL FIRST DAY FILINGS**

I, Thiago da Costa Silva (the "Foreign Representative"), pursuant to 28 U.S.C. § 1746, and under penalty of perjury declare the following to the best of my knowledge, information, and belief:[2]

1. I am over the age of eighteen and, if called upon, could testify to all matters set forth in this statement, except for those portions specified as being otherwise.

2. I am making this Declaration in accordance with section 1515 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

3. I am the Director of Integration and Finance of Debtor Ambipar Participações e Empreendimentos S.A. ("Ambipar Topco," and, together with its subsidiaries and affiliates, the

---

[1] The debtors in these chapter 15 cases (the "Chapter 15 Cases"), along with the last four digits of each Debtor's tax identification or corporate registry number, are: Ambipar Emergency Response (0263), Ambipar Lux S.à.r.l. (9448), Ambipar Participações e Empreendimentos S.A. (01-24), Environmental ESG Participações S.A. (01-23), and Emergência Participações S.A. (01-49). The location of the Debtors' corporate headquarters is Avenida Pacaembu, 1088, São Paulo, São Paulo, Brazil, 01234-0000.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Recognition Motion (as defined below) filed contemporaneously herewith.

"Ambipar Group") and a director of Ambipar Emergency Response ("Ambipar Response"). I served as the chief financial officer and chief investor relations officer of Ambipar Topco from 2020 to 2024, when I was appointed to my current position.  I have been a director of Ambipar Response since 2022.  Prior to joining the Ambipar Group in 2014, I served as controllership consultant at Camargo Corrêa Group from 2007 to 2012, and as an accounting analyst at Dispan Indústria e Comércio Ltda. from 2003 to 2007.  I hold a bachelor's degree in accounting from Centro Universitário Salesiano de São Paulo – UNISAL and a graduate degree in strategic accounting management and international accounting from Pontifícia Universidade Católica de Campinas – PUC/Campinas.  I am a citizen of, and work and reside primarily in, Brazil.

4.      As set forth below, the Debtors appointed me as the authorized foreign representative of the jointly-administered judicial reorganization (*recuperação judicial*) proceedings (the "RJ Proceeding") pursuant to Brazilian Federal Law No. 11.101 of February 9, 2005 (as amended, the "Brazilian Bankruptcy Law"), filed before the Third Business Court of Rio de Janeiro (the "Brazilian Court").  The Debtors, along with the other related entities comprising the Ambipar Group, are a leading environmental, emergency response, and field service provider in Brazil and in more than 14 countries around the world.

5.      I submit this declaration (the "Declaration") in support of the following documents (the "First Day Filings"), which have been filed contemporaneously herewith and are incorporated herein by reference:

> a.  the *Official Form 401 Petitions* with all the documents and information required by section 1515(b) and (c) of the Bankruptcy Code (collectively, the "Petitions")[3];

---

[3]   The Petitions are filed as ECF No. 1 at Case Nos. 26-90709, 26-90710, 26-90711, 26-90712, and 26-90713.

4912-0301-1255

b.   the *Motion for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "Recognition Motion");

c.   the *Declaration of Gustavo Salgueiro pursuant to 28 U.S.C. § 1746 in Support of the Motion for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code and Additional First Day Filings* (the "Foreign Law Declaration");

d.   the *Emergency Motion Pursuant to Fed. R. Bankr. P. 2002 and 9007 Requesting Entry of Order Scheduling Recognition Hearing and Specifying Form and Manner of Service of Notice* (the "Scheduling Motion");

e.   the *Motion for an Order Directing the Joint Administration of the Chapter 15 Cases of Ambipar Emergency Response and its Debtor Affiliates Pursuant to 11 U.S.C. § 105(a) and Bankruptcy Rule 1015(b)* (the "Joint Administration Motion"); and

f.   the *Notice of Designation as Complex Case* (the "Complex Case Designation").

6.   I make this Declaration on the basis of documentation I have reviewed, and facts known to me through my work as the Director of Integration and Finance of Ambipar Topco, and in my capacity as foreign representative of the Debtors.  Where relevant information has been provided to me by others, the information is true to the best of my knowledge and belief.  If I were called upon to testify, I could and would testify competently to the facts set forth herein.

## BACKGROUND

**A.    General Background and History**

### *1.    Overview*

7.   Founded in 1995, the Debtors, along with their affiliates, are a Brazilian corporate group that is a leader in recycling, waste management, and emergency response businesses in Brazil and around the world.  From its beginning as a waste management company, the Ambipar Group expanded into logistics and transportation for companies throughout Brazil.  In 2005, the Ambipar Group began operating waste management centers in Brazil.  Shortly thereafter, in 2008, the Ambipar Group launched its emergency response business.

4912-0301-1255

8.      Debtor Ambipar Participações e Empreendimentos S.A. ("Ambipar Topco") was formed in 2010 as a holding company for the Ambipar Group's numerous operating subsidiaries. The Ambipar Group continued its expansion by making strategic acquisitions and, in 2019, undertook a comprehensive corporate restructuring and rebranding project pursuant to which the Ambipar Group divided its operating subsidiaries into two primary business segments: (a) "Environment," which handles, recycles, transports and processes residues and recyclable materials throughout Latin America, and (b) "Response," which, among other things, operates emergency response command centers to respond to disasters such as wildfires and oil spills.

9.      In 2020, Ambipar Topco's capital stock was listed on the B3 stock exchange in São Paulo, Brazil under the ticker symbol "AMBP3."  In 2023, Debtor Ambipar Response was listed and began trading on the NYSE American under the ticker "AMBI."

10.     Today, the Ambipar Group operates through a network of more than 600 locations in 41 countries across the globe and employs more than 16,000 people.

11.     The Environment segment specializes in providing environmental solutions and operates through its four main business segments: (a) circular economy; (b) decarbonization; (c) logistics; and (d) compliance, software, and consulting.

12.     Response specializes in emergency response services and operates in four main business units:  (i) emergency response services; (ii) industrial field services; (iii) consulting services focused on accident prevention and environmental licensing; and (iv) training services. Through its operating subsidiaries, Ambipar Response operates in over forty countries across six continents, providing standardized services across all regions.  Ambipar Response's U.S. headquarters is in Houston, Texas where, through its operating subsidiaries, it employs more than 230 people.

4912-0301-1255

13. As further detailed below, the Ambipar Group is governed by the board of directors of Ambipar Topco (the "Topco Board"), comprising six members, including the Ambipar Group's founder and principal shareholder and one independent director. The Topco Board is primarily responsible for the Ambipar Group's strategic decisions. The Topco Board's meetings take place in Brazil, and each Topco Board member is a citizen or resident of Brazil. Through the Topco Board, Ambipar Topco manages the operations of the Ambipar Group from its headquarters in São Paulo, Brazil.

14. Ambipar Response is governed by a separate board (the "Response Board"), comprising eight members, including the Ambipar Group's founder and principal shareholder, myself, and three independent directors. On October 29, 2025, the Response Board (a) appointed David Mack as an independent director, (b) formed a special committee (the "Response Special Committee") with a broad delegation of authority regarding matters in which a conflict of interest exists or is reasonably likely to exist between Ambipar Response and Ambipar Topco or its related parties ("Conflict Matters"), and (c) appointed Mr. Mack to the Response Special Committee.[4] As of the Petition Date, the Response Special Committee remains in place with Mr. Mack as its sole member.

### 2. The Ambipar Group's Corporate Structure and Offices

15. The chart below shows, in relevant part, a summary of the Ambipar Group's corporate structure as it pertains to the Debtors and certain of their related affiliates:

---

[4] On October 30, 2025, Ambipar Response filed the *Notice of Appointment of Independent Director to the Board of Directors of the Debtor* [Dkt. No. 32] in the Chapter 11 Case (as defined below).

5



16.    As shown above, the Debtors and their key related affiliates are:

(a) **Ambipar Topco** – Ambipar Topco is a Brazilian-domiciled public company. It serves as the Ambipar Group's holding company, and the Topco Board makes strategic decisions for the Ambipar Group. *Id.* ¶ 16. Ambipar Topco has no employees or independent operations. Ambipar Topco is a guarantor of the Green Notes. *Id.*

(b) **Ambipar Response** – Ambipar Response is an exempted company incorporated with limited liability under the laws of the Cayman Islands and is the parent holding company for the Response business. *Id.* Its direct parent is Ambipar Topco. *Id.* Ambipar Response and its subsidiaries operate in more than forty countries. *Id.* Ambipar Response's registered office is located in the Cayman Islands and its headquarters is located in São Paulo, Brazil. *Id.* The Response Board is responsible for day-to-day governance of Ambipar Response and the Response Special Committee has a broad delegation of authority regarding Conflict Matters. *Id.* Ambipar Response is a limited guarantor of the Green Notes.[5] *Id.*

(c) **Emergência** – Debtor Emergência Participações S.A. ("Emergência," and, together with Ambipar Response, the "Response Debtors") is a corporation (*sociedade anônima*) incorporated under the laws of Brazil and a wholly-owned operating subsidiary of Ambipar Response. *Id.* Emergência's registered offices

---

[5]    Ambipar Response is a limited guarantor of up to $200 million of the 2031 Green Notes (as defined below) and up to $128.2 million of the 2033 Green Notes (as defined below).

are in São Paulo, Brazil. *Id.* Emergência is a guarantor of the Itaú Loan (as defined below). *Id.*

(d) **Ambipar Environment** – Debtor Environmental ESG Participações S.A. ("Ambipar Environment," and, together with Ambipar Topco and Emergência, the "Brazilian Debtors") is a corporation (*sociedade anônima)* incorporated under the laws of Brazil and is the parent holding company for the Environment business. *Id.* Its direct parent is Ambipar Topco. *Id.* Ambipar Environment's registered offices are in São Paulo, Brazil. *Id.* Ambipar Environment is a guarantor of the Green Notes. *Id.*

(e) **Luxco** – Debtor Ambipar Lux S.à.r.l. ("Luxco") is a special purpose finance company and is the issuer of the Green Notes. *Id.* Luxco is incorporated in Luxembourg and has its registered office in Luxembourg. *Id.* Luxco is a wholly-owned subsidiary of Ambipar Topco, and Ambipar Topco directs all of its business from Brazil. *Id.* Luxco's board of directors comprises two directors in Brazil and, to comply with local law, two directors in Luxembourg. *Id.* Ultimate decision-making power, however, rests with the Board of Ambipar Topco in Brazil. *Id.* Luxco has no employees or operations and is wholly dependent on the financial performance of the other members of the Ambipar Group to repay its debts.

17. As shown above, the Ambipar Group, which includes all of the Debtors, has its operational activities concentrated in Brazil and is subject to Brazilian laws and regulations. Indeed, the Ambipar Group's primary operational activities are in Brazil, including its central operational management center, located in São Paulo, Brazil (the "São Paulo Office"). The São Paulo Office maintains staff in charge of operational matters, including senior management, as well as the Ambipar Group's business strategy. The Ambipar Group's main legal and human resources teams, as well as its information technology department, are primarily stationed at the São Paulo Office. The Ambipar Group's business and finance teams are also concentrated in the São Paulo Office. Although Ambipar Response and Luxco maintain registered offices outside of Brazil, neither Debtor has activities, assets, operations, or employees in the location of its registered office.

18. The books and records of each of the Debtors are located at the São Paulo Office. Luxco maintains a set of books and records in Luxembourg with a local corporate service provider

7

to comply with applicable local regulatory requirements. The Brazilian Debtors' books and records are maintained in *reais*.

**B.      The Debtors' Assets and Capital Structure**

*1.      The Debtors' Assets and Operations*

19.     The Debtors' operations span approximately fourteen countries on six continents. Environment's operations are concentrated in Brazil and Chile, though its client base includes numerous companies throughout Latin America. Response maintains a global presence, operating more than 400 operational bases worldwide with high concentrations in North America and Brazil. The Ambipar Group's principal economic activity has been and continues to be in Brazil, with Brazilian operations accounting for over 65% of the Ambipar Group's global revenue.

20.     The Debtors and their affiliates hold significant, varied assets used to support their broad range of functions and services. The Debtors' tangible assets primarily comprise property, plant, and equipment and include waste management facilities and vehicles, aircraft used in aerial emergency response to wildfires, vessels used in maritime oil spill response operations, and other related vehicles and equipment. The Debtors also hold significant intangible assets, including numerous patents developed through Environment's research and development operations. The Debtors also have significant goodwill accumulated as a result of extensive past and ongoing acquisition activity.

(a)      Response

21.     The Response segment operates as a comprehensive, fully integrated platform for standardized emergency and industrial field services rendered at scale, organized within four business units:  (i) emergency response services; (ii) industrial field services; (iii) consulting services focused on accident prevention and environmental licensing; and (iv) training services. The industrial field services unit encompasses tank cleaning, silo cleaning, asbestos removal,

8

4912-0301-1255

vessel and container cleaning, waste transportation and disposal, soil remediation, turnaround, and decommissioning.  The emergency response unit addresses accidents involving hazardous and non-hazardous chemical and non-chemical products and waste, as well as natural disasters including fires, floods, and hurricanes, and provides biological emergency management and response services, including services related to epidemics and pandemics.  Emergency services are contracted either by subscription—under which customers pay a monthly fee for stand-by emergency assistance on a 24-hour basis—or on a spot basis at variable fees.  The consulting services unit operates via a "Global Environmental Solutions" platform, providing accident prevention and environmental impact studies, environmental licensing assistance, construction management, health, safety and environment studies, and management of contaminated areas. The training services unit offers professional training programs through proprietary training centers, supporting personnel from government agencies, firefighters, armies, and navies from countries including the United Kingdom, Portugal, Brazil, Chile, and Argentina.

22.     The Response segment maintains operations in more than forty countries across six continents, with approximately 450 service centers distributed across South America, North America, Europe, Africa, and Antarctica.  These service centers are supported by four regional, fully automated centralized operations centers located in Brazil (serving nationwide and Antarctica), Chile (serving Latin America other than Brazil), the United Kingdom (serving Europe and Africa), and the United States (serving North America), each operating an outreach hotline and managing real-time asset tracking and deployment.  In 2022, Response acquired Witt O'Brien's LLC—a global leader in crisis and emergency management for corporate clients— adding consulting capabilities in the development of emergency and resilience programs for the U.S. government sector and a crisis management and command center in the United States.  In

9

2025, the Response segment accounted for approximately 43% of the Ambipar Group's global revenue.  As of the Petition Date, the Response segment employed approximately 7,000 personnel.

(b)     Environment

23.     The Environment segment provides solutions integrating technology and sustainability, with a focus on achieving "zero landfill" by transforming residue and recyclable materials and reincorporating them into production processes.  Environment's portfolio of services includes management and valorization of residue materials, co-processing, reusing, recycling, composting, decarbonization, and logistics solutions to more than 5,000 clients in over 170 on-site bases located throughout Latin America.  Ambipar Environment is the holding company for the Environment segment and maintains a prominent presence in Brazil, Chile, and other Latin American countries.  As of the Petition Date, Environment operated in four countries.

24.     The Environment segment is organized into four business units:  (a) circular economy; (b) decarbonization; (c) logistics; and (d) compliance, software, and consulting. The circular economy unit encompasses activities such as residue handling, residue movement, composting, effluent treatment, energy recovery, post-industrial recycling, and post-consumption recycling, utilizing embedded proprietary residue recovery technology and patents. The decarbonization unit provides services through mitigation and the origination and commercialization of carbon credits within the voluntary market, including solutions for managing, reducing, and offsetting greenhouse gas emissions.  The logistics unit specializes in the transporting, storing, handling, and disposing of materials across Brazil and Latin America.  The compliance, software & consulting unit provides environmental, quality, health, and safety consulting and auditing services with the development of management software.

4912-0301-1255

25. In 2025, the Environment segment accounted for approximately 57% of the Ambipar Group's global revenue. As of the Petition Date, the Environment segment employed approximately 9,000 personnel.

### 2. The Debtors' Capital Structure

26. Luxco is the issuer, and Ambipar Topco, Ambipar Response, and Ambipar Environment (collectively, the "Green Notes Guarantors") are guarantors, of two series of sustainability-linked bonds (the "Green Notes"):

(a) approximately $553 million in aggregate principal amount of 9.875% Green Notes due February 6, 2031 (the "2031 Green Notes") pursuant to the terms and conditions of a New York-law governed Indenture dated as of February 6, 2024 (as amended, supplemented, or otherwise modified, the "2031 Green Notes Indenture") among Luxco, the Green Notes Guarantors, and The Bank of New York Mellon, as indenture trustee, plus all accrued and unpaid interest and fees thereon; and

(b) approximately $493 million in aggregate principal amount of 10.875% Green Notes due February 5, 2033 (the "2033 Green Notes") pursuant to the terms and conditions of a New York-law governed Indenture dated as of February 5, 2025 (as amended, supplemented, or otherwise modified, the "2033 Green Notes Indenture," and, together with the 2031 Green Notes Indenture, the "Green Notes Indentures") among Luxco, the Green Notes Guarantors, and The Bank of New York Mellon, as indenture trustee, plus all accrued and unpaid interest and fees thereon.

27. Certain Debtors have also issued series of corporate debentures:

(a) Ambipar Topco is the issuer of approximately R$1.3 billion in aggregate principal amount of two series of debentures maturing in April 2029 (the "Topco Debentures"). The Topco Debentures bear interest at the CDI rate (Certificado de Depósito Interbancário) ("CDI") plus margins of 275 and 245 basis points, respectively;

(b) Ambipar Environment is the issuer of one series of debentures maturing in September 2029 in an aggregate principal amount of approximately R$250 million (the "Environment Debentures"). The Environment Debentures bear interest at CDI plus a margin of 275 basis points; and

(c) Emergência is the issuer of approximately R$450 million of two series of debentures maturing in September 2028 and September 2029, respectively (the "Emergência Debentures," and, together with the Topco Debentures and the

4912-0301-1255

Environment Debentures, the "Debentures").  The Emergência Debentures bear interest at CDI plus margins of 265 basis points and 275 basis points, respectively.

28.     Emergência is a guarantor of an approximately $90 million term loan facility (the "Itaú Loan") pursuant to that certain Loan Agreement, dated as of August 26, 2022 (as amended, restated, amended and restated, or otherwise modified from time to time, the "Itaú Credit Agreement"), by and among Ambipar Holding USA, Inc. (a non-debtor affiliate of the Debtors), as borrower, Emergência, as guarantor, and Itaú BBA International PLC, as lender.  Interest on the Itaú Loan accrues at an annual rate of 6.36%.  As of the Petition Date, the aggregate principal outstanding was approximately $90 million.  The Itaú Credit Agreement is governed by New York law.

29.     Certain of the Debtors guarantee the Currency Swaps (as defined below) and are party to other ordinary course working capital facilities and financing and equipment leasing arrangements.  Certain of the Debtors also have significant intercompany obligations outstanding among themselves.

**C.     Events Leading to the Chapter 15 Filing**

30.     In the third quarter of 2025, certain of the Debtors' affiliates began facing increasing financial distress.  Following the abrupt resignation of the Ambipar Group's chief financial officer, Deutsche Bank S.A. - Banco Alemão ("Deutsche Bank"), the counterparty to certain of the Ambipar Group's currency swap contracts (the "Currency Swaps") and an affiliate of the lender on approximately $35 million of loans to the Ambipar Group, demanded that the Ambipar Group post additional collateral under the Currency Swaps.

4912-0301-1255

31.     Ambipar disputed and continues to dispute Deutsche Bank's calculation of the collateral requirements under the Currency Swaps.[6]  Nonetheless, the Ambipar Group provided approximately R$170 million ($31.4 million) in additional collateral contributions to Deutsche Bank.  However, Deutsche Bank subsequently demanded that the Ambipar Group make an additional collateral contribution of R$60 million by September 25, 2025.  Moreover, certain other financial institutions, including Banco Santander, notified Ambipar of alleged defaults under their respective financing agreements.

32.     In light of these asserted defaults (and the cross-defaults that would ultimately result on the remainder of the Ambipar Group's funded debt), on September 24, 2025, the RJ Parties (as defined below) filed a petition with the Brazilian Court for a "preliminary injunction prior to the main action" (a *Tutela Cautelar Em Caráter Antecedente*) (the "Preliminary Injunction") that enjoined certain creditor actions (*e.g.*, assertion of defaults, enforcement of debt, and the exercise of remedies) for thirty days to permit restructuring negotiations.  On September 25, 2025, the Brazilian Court granted the Preliminary Injunction; however, it became clear that negotiations would require longer than the thirty days contemplated by the Preliminary Injunction.

33.     Following the entry of the Preliminary Injunction, certain groups of the Debtors' stakeholders began organizing:

> (a) Certain holders of the Green Notes formed an ad hoc group (the "Ad Hoc Group") and retained Davis Polk & Wardwell LLP, as legal counsel, and Houlihan Lokey, as financial advisor.  The Debtors understand that the Ad Hoc Group holds a majority of the outstanding principal amount of the Green Notes; and

> (b) Ambipar Response's main minority shareholders, Opportunity Agro Fundo de Investimento em Participações Multiestratégia Investimento no Exterior ("Opportunity") and HPX Capital Partners LLC, also organized.  On October

---

[6]     There are other disputes between the Ambipar Group and Deutsche Bank relating to the Currency Swaps, and the Ambipar Group reserves all rights against Deutsche Bank with respect to the Currency Swaps.

4912-0301-1255

10, 2025, they sent a joint letter to the Board of Ambipar Topco alleging that Ambipar Topco "has exerted undue influence over the [Ambipar Response] for its own benefit and flouted corporate governance protocols."

**D.     The RJ Proceeding and the Chapter 11 Case**

*1.     The RJ Proceeding*

34.     To allow additional time for the Ambipar Group to negotiate a comprehensive restructuring transaction with its stakeholders, on the RJ Petition Date, Ambipar Topco and certain of its subsidiaries (the "RJ Parties")[7] commenced the RJ Proceeding by filing a petition (the "RJ Petition") with the Brazilian Court.  On October 30, 2025, the Brazilian Court entered an order (the "Processing Order"):  (a) granting the processing of the RJ Proceeding; (b) staying actions by creditors to collect obligations from the Ambipar Group and ordering publication of a public notice informing creditors of the RJ Proceeding; and (c) granting substantive consolidation (*consolidação substancial*) of certain entities within the Ambipar Group under Brazilian law for purposes of the RJ Proceeding.  A copy of the Processing Order and a certified English translation thereof are attached hereto as **Exhibit A**.

35.     On the RJ Petition Date, the Debtors issued a press release to alert creditors of the filing of the RJ Proceeding (the "RJ Press Release"), and,  on October 21, 2025, Ambipar Response filed a Form 6-K (the "Response 6-K," together with the RJ Press Release, the "RJ Publications") with the Securities and Exchange Commission (the "SEC") providing similar notice in the United States.

---

[7]     The full list of RJ Parties and copies of each of the filings in the RJ Proceeding are available free of charge from the Debtors' website:  https://ri.ambipar.com/en/judicial-reorganization-documents/. This website only contains information pertaining to the RJ Proceeding. For information and filings in the Chapter 15 Case, the Debtors will maintain a separate website can be accessed free of charge at: www.veritaglobal.net/AmbiparChapter15. Information and filings in the Chapter 11 Case are located separately, free of charge, at: www.veritaglobal.net/Ambipar.

4912-0301-1255

36.     On December 19, 2025, in accordance with a mandatory deadline under Brazilian law, the Ambipar Group filed an initial plan of reorganization in the RJ Proceeding.  This initial plan is materially different than the RJ Plan (as defined below) contemplated by the RSA (as defined below), and the RJ Parties expect to file an amended plan of reorganization in the RJ Proceeding consistent with the RSA within the next several weeks. The RJ Proceeding is supervised by two court-appointed judicial administrators, who, among other duties, verifies creditor claims and publishes the official list of creditors entitled to vote on the plan of reorganization.

37.     The RSA includes a steps plan (the "Steps Plan") providing certain milestones (the "Milestones") for the RJ Proceeding.  Pursuant to the Steps Plan:  (a) within 30 days of the RSA Effective Date (as defined below), the Ambipar Group will finalize an agreed form of an amended plan of reorganization (the "RJ Plan"); (b) the RJ Plan will be filed in the RJ Proceeding 7 days prior to submission to be voted on by its creditors at a general creditors' meeting (the "GCM"); (c) within 50 days of the RSA Effective Date, the Judicial Administrator and the Brazilian Court will submit the RJ Plan for a vote at the GCM; (d) on the later of 90 days after the RSA Effective Date or 20 business days of the approval of the RJ Plan at the GCM, the Brazilian Court will enter an order confirming the approval of the RJ Plan (the "RJ Confirmation Order"); and (e) within 90 days of the entry of the RJ Confirmation Order, the Debtors and their affiliates will consummate the transactions contemplated under the RJ Plan.

### 2.     *The Chapter 11 Case*

38.     Concurrently with the RJ Proceeding, on October 20, 2025, Ambipar Response filed a voluntary petition commencing the Chapter 11 Case before the Court.  The facts and circumstances giving rise to the Chapter 11 Case are described in detail in the Chapter 11 First Day Declaration.  Moreover, all pleadings and other documents filed in the Chapter 11 Case are

4912-0301-1255

available on the docket of the case and through the claims and noticing agent's website—https://www.veritaglobal.net/Ambipar.

39.     On November 17, 2025, Ambipar Response filed the *Debtor's Motion for Entry of an Order Authorizing the Debtor to (I) Enter Into the Funding Agreement, (II) Open Bank Accounts, and (III) Granting Related Relief* [Dkt. No. 42] (the "Funding Agreement Motion"), seeking authorization to enter into that certain funding agreement (as amended, modified, or supplemented from time to time, the "Funding Agreement") with Ambipar Topco, pursuant to which Ambipar Topco would provide Ambipar Response with up to $3,000,000 to fund the Chapter 11 Case.  On December 19, 2025, the Court entered an order granting the Funding Agreement Motion [Dkt. No. 113] over an objection by Opportunity.  On May 12, 2026, Ambipar Response and Ambipar Topco amended the Funding Agreement to increase the available funding amount to $5,500,000 [Dkt. No. 187].

40.     On February 12, 2026, Ambipar Response filed the *Debtor's Motion for Entry of an Order Extending Exclusivity Period Pursuant to Section 1121(d) of the Bankruptcy Code* [Dkt. No. 141] seeking to extend the periods for Ambipar Response to file and solicit a chapter 11 plan (the "Exclusivity Periods").  The Ad Hoc Group and Opportunity filed objections to the requested relief [Dkt. Nos. 153, 155].  On May 8, 2026, following negotiations and agreement with the Ad Hoc Group, Ambipar Response filed the *Plan Scheduling Stipulation* [Dkt. No. 175] (the "Plan Stipulation") which, among other things, resolved the Ad Hoc Group's objection to the motion and set forth an agreed schedule for Ambipar Response to file and solicit a proposed chapter 11 plan.  On May 18, 2026, following a contested hearing, the  Court authorized Ambipar Response's entry into the Plan Stipulation and granted an extension of the Exclusivity Periods [Dkt. No. 201] over the objection of Opportunity.

4912-0301-1255

41.     Following approval of the Plan Stipulation, the Ambipar Group continued negotiations with the Ad Hoc Group on a comprehensive restructuring, culminating in entry into that certain Restructuring Support Agreement, dated as of July 9, 2026 (as may be amended, modified, or supplemented, and together with any exhibits thereto, the "RSA"). As of July 9, 2026 (the "RSA Effective Date"), holders of approximately 53.8% of the Green Notes (as defined below) (the "Consenting Holders") executed the RSA. In the coming weeks, the Debtors anticipate obtaining additional support for the RSA from other members of the Ad Hoc Group and holders of Green Notes outside the Ad Hoc Group. The RSA contemplates, among other things, pursuit of an amended restructuring plan in the RJ Proceeding on the terms outlined in the RSA. The Ambipar Group believes that, with the support of the Consenting Holders and certain other creditors, it has obtained the requisite support to confirm a restructuring plan in the RJ Proceeding on terms consistent with the RSA (the "RJ Plan"). The RSA provides the framework for the terms and timeline of the RJ Plan, the RJ Proceeding, the Chapter 11 Case, and these Chapter 15 Cases. Because the Debtors and the Ad Hoc Group have agreed on a case resolution path pursuant to the RJ Plan pursuant to which Ambipar Response, as chapter 11 debtor, has filed in the Chapter 11 Case a motion to suspend the Chapter 11 Case (the "Motion to Suspend") pursuant to section 605 of the Bankruptcy Code, contemporaneously with the commencement of these Chapter 15 Cases, and requests that the Motion to Suspend be heard at the same hearing as the Motion.

42.     On June 16, 2026, Luxco's governing body appointed Mr. Thiago da Costa Silva as the Foreign Representative in connection with the RJ Proceeding and authorized him to commence these Chapter 15 Cases pursuant to duly executed resolutions (the "Luxco Authorizing Resolution"). *Id.* ¶ 42. On June 23, 2026, Ambipar Topco, Ambipar Response, Ambipar Environment and Emergência's governing bodies executed resolutions authorizing the same

17

4912-0301-1255

(together with the Luxco Authorizing Resolution, the "Authorizing Resolutions") *Id.* The Authorizing Resolutions are attached to the Foreign Representative Declaration as **Exhibit B**. The Foreign Representative expects to also commence an ancillary proceeding for Ambipar Response in the Cayman Islands, where Ambipar Response is domiciled.

E.    **Property in the United States**

43.    The Debtors have property in the United States, including in this jurisdiction. Among other things, the Debtors have property in the United States including (a) a bank account held by Ambipar Response at East West Bank in Pasadena, California, and (b) retainers held by local counsel in bank accounts on behalf of Ambipar TopCo and Ambipar Response in Texas. Additionally, the Green Notes Indentures, under which each of the Debtors (other than Emergência) is an obligor, and the Itaú Credit Agreement, under which Emergência is a guarantor, are each governed by New York law and contain provisions submitting the parties to the jurisdiction of New York state and federal courts. Moreover, certain holders of the Green Notes have headquarters or significant operations in the borough of Manhattan.

**REQUESTS FOR RECOGNITION AND RELATED RELIEF**

44.    In connection with the filing of the Chapter 15 Cases, by and through my counsel, I have submitted the First Day Filings. In addition to the facts set forth above, the factual bases for relief under these motions are set forth below. I believe, after consultation with counsel, that the recognition of the RJ Proceeding and relief requested by each of the First Day Filings are necessary to maximize value for all of the Debtors' creditors through the RJ Proceeding and to properly administer the Chapter 15 Cases.

A.    **The Scheduling Motion**

45.    Concurrently herewith, by and through my counsel, I have filed the Scheduling Motion seeking the entry of an order approving, among other things, (a) the form and manner of

4912-0301-1255

service of notice (the "Recognition Hearing Notice"), of (i) the filing of the Debtors' Petitions and certain related pleadings, including the Recognition Motion, (ii) the deadline to object to the Court's entry of a final order (the "Proposed Order") granting the final relief sought in the Recognition Motion (the "Recognition Objection Deadline"), and (iii) the hearing for the Court to consider the Petitions and the relief requested in the Recognition Motion (the "Recognition Hearing"), (b) the form and manner of service on the master service list of any pleadings or papers that I file through my counsel in the Chapter 15 Cases, and (c) granting certain related relief.

46.     I believe that the Recognition Hearing Notice provides multiple efficient ways for any party receiving such notice to obtain copies of pleadings filed in the Chapter 15 Cases, as it provides website addresses that can be used to obtain critical documents including the Recognition Motion and the Proposed Order.  Because the Green Notes are held by a diverse group of holders through broker dealers, it is necessary to provide wide notice of the Recognition Motion and Proposed Order.  It is my intention to serve, through Kurtzman Carson Consultants, LLC (d/b/a Verita Global, LLC), who is serving as the information agent with respect to these Chapter 15 Cases (the "Information Agent") such notices on the Depositary Trust Corporation ("DTC") for further distribution to the Green Noteholders through their banks and brokers.  Additionally, I believe that service by the Debtors of all pleadings that they file in the Chapter 15 Cases by electronic mail to the extent email addresses are available, and otherwise by overnight mail or United States mail, first-class postage prepaid on the Notice Parties (as defined in the Scheduling Motion) is an efficient and effective way to provide notice to such key parties in the Chapter 15 Cases. At the same time, I believe that such proposed procedures will not overburden the Debtors with the significant costs associated with copying and mailing all the various documents filed in the Chapter 15 Cases to the entire matrix of creditors and other parties.

4912-0301-1255

47.     Therefore, I believe that the relief requested in the Scheduling Motion is necessary and appropriate and is in the best interests of the Court, the Debtors, their creditors, and other parties-in-interest.

**B.     The Recognition Motion**

48.     Concurrently herewith, by and through my counsel, I have filed the Recognition Motion seeking entry of an order that, among other things:

(a) granting recognition of the RJ Proceeding pursuant to section 1517 of the Bankruptcy Code as a "foreign main proceeding" (as defined in section 1502(4) of the Bankruptcy Code) of the Debtors, and all relief included therewith as provided in section 1520 of the Bankruptcy Code, or in the alternative, as a "foreign nonmain proceeding" (as defined in section 1502(5) of the Bankruptcy Code) and granting appropriate relief;

(b) recognizing me as the "foreign representative" (as defined in section 101(24) of the Bankruptcy Code) of the RJ Proceeding for the Debtors for purposes of the Chapter 15 Cases;

(c) entrusting me, in my capacity as the Foreign Representative, with the power to administer, realize, and distribute all assets of the Debtors within the territorial jurisdiction of the United States;

(d) enjoining all parties from commencing, continuing, or taking any action in the United States to obtain possession of, exercise control over, or assert claims against the Debtors or their property, including, without limitation, to obtain possession of, exercise control over, or assert claims against the Debtors or their property; and

(e) granting such other relief as the Court deems just and proper.

49.     As detailed more fully in the Recognition Motion, I believe that there are persuasive reasons for recognition of the RJ Proceeding as a foreign main proceeding (or in the alternative, as a "foreign nonmain proceeding"), including that, pragmatically, Brazil is the sole jurisdiction in which the Debtors' businesses can be comprehensively and efficiently restructured given that, as described above, the Debtors are part of a Brazilian enterprise with deep current and historical connections and interests to and in Brazil.

20

4912-0301-1255

50.     I believe that the Debtors may suffer irreparable harm if recognition of the RJ Proceeding is not granted by the Court.  Preventing the commencement or continuation of any other enforcement action that could disrupt the RJ Proceeding or threaten the Debtors' foreign estates is necessary to ensure the success of the RJ Proceeding, which the Debtors anticipate will support efforts towards a successful reorganization of their funded debt obligations, pursuant to orders of the Brazilian Court.

51.     I also believe that the Debtors' creditors and other stakeholders will suffer little, if any, harm as a result of the requested relief as it will merely preserve the *status quo*.  To the extent that any creditor wishes to voice objections to the RJ Proceeding, such objections may be brought before the Brazilian Court, and therefore, the Debtors' creditors will not be adversely affected by a stay in the United States.

52.     Therefore, I have directed our United States counsel, Simpson Thacher & Bartlett LLP, to (a) commence the Chapter 15 Cases and (b) seek recognition of the RJ Proceeding as a "foreign main proceeding" or in the alternative, as a "foreign nonmain proceeding."

## CONCLUSION

53.     Based on the foregoing, I believe that the relief being requested at the outset of the Chapter 15 Cases is well-justified, necessary under the circumstances, in the best interests of the Debtors and their creditors, and should be granted.

*[Remainder of page intentionally left blank]*

4912-0301-1255

I declare under penalty of perjury under the laws of the United States of America that the foregoing is, to the best of my knowledge, information and belief, complete, true and correct.

*/s/ Thiago da Costa Silva*
Thiago da Costa Silva

4912-0301-1255

**Exhibit A-1**

**Processing Order**

**Poder Judiciário do Estado do Rio de Janeiro**
Comarca da Capital
3ª Vara Empresarial da Comarca da Capital

AV. ERASMO BRAGA, 115, LAMINA I, SALA 713 - Bairro: Centro - CEP: 20020903 - Fone: 21 31332724 - Email: cap03vemp@tjrj.jus.br

**TUTELA CAUTELAR ANTECEDENTE Nº 3014764-58.2025.8.19.0001/RJ**

REQUERENTE: AMBIPAR RESPONSE ENVIRONMENTAL CONSULTING OFFSHORE S.A
REQUERIDO: DEUTSCHE BANK SA BANCO ALEMAO

## DESPACHO/DECISÃO

Foram remetidos autos de pedido de recuperação judicial formulado pelo GRUPO AMBIPAR, formado pelas sociedades empresárias: (1) AMBIPAR RESPONSE ENVIRONMENTAL CONSULTING OFFSHORE S.A., sociedade inscrita no CNPJ sob o nº 12.285.662/0001-34, com sede no Estado do Rio de Janeiro, na Cidade do Rio de Janeiro, na Rua Lauro Muller, nº 116, Bairro Botafogo, CEP 22.290-160; (2) AMBIPAR CBL INDÚSTRIA E COMÉRCIO DE MANUFATURADOS S.A., sociedade anônima inscrita no CNPJ sob o nº 08.607.957/0001-02, com sede no Estado do Paraná, na Cidade de São José dos Pinhais, na Rua Wenceslau Marek, nº 63, Bairro Águas Belas, CEP 83.010-520; (3) AMBIPAR CERTIFICATION LTDA., sociedade limitada inscrita no CNPJ sob o nº 39.658.648/0001-95, com sede no Estado de São Paulo, na Cidade de São Paulo, na Avenida Angélica, nº 2.346, Bairro Consolação, CEP 01.228-200; (4) AMBIPAR COMPLIANCE SOLUTIONS S.A., sociedade anônima inscrita no CNPJ sob o nº 86.450.624/0001-26, com sede no Estado de Minas Gerais, na Cidade de Belo Horizonte, na Avenida do Contorno, nº 6.594, Bairro Savassi, CEP 30.110-044; (5) AMBIPAR C-SAFETY COMÉRCIO, INDÚSTRIA E SERVIÇOS LTDA., sociedade limitada inscrita no CNPJ sob o nº 22.036.291/0001-00, com sede no Estado do Rio de Janeiro, na Cidade de Niterói, na Rua Manoel Pacheco de Carvalho, nº 102, Bairro Centro, CEP 24.030-290; (6) AMBIPAR ECO PRODUCTS S.A., sociedade anônima inscrita no CNPJ sob o nº 02.941.454/0001-92, com sede no Estado de São Paulo, na Cidade de Nova Odessa, na Rodovia Anhanguera, S/N, Bairro Zona de Produção Industrial Um (ZPI-01), CEP 13.388-220; (7) AMBIPAR ENVIRONMENT CIRCULAR ECONOMY FPI PARANÁ LTDA., sociedade limitada inscrita no CNPJ sob o nº 26.611.091/0001-95, com sede no Estado do Paraná, na Cidade de Rolândia, na Rua Hungria, nº 1.909, Bairro Manoel Muller, CEP 86.601-770; (8) AMBIPAR ENVIRONMENT CIRCULAR ECONOMY FPI S.A., sociedade anônima inscrita no CNPJ sob o nº 07.714.426/0001-56, com sede no Estado do Paraná, na Cidade de São José dos Pinhais, na Rua Wenceslau Marek, nº 63, Bairro Aeroporto, CEP 83.010-520; (9) AMBIPAR ENVIRONMENT CIRCULAR ECONOMY NE LTDA., sociedade limitada inscrita no CNPJ sob o nº 16.625.236/0001-53, com sede no Estado do Ceará, na Cidade de Juazeiro do Norte, na Rua Manoel Cassimiro, nº 57, Bairro Prefeito Carlos Alberto da Cruz, CEP 63.041-018; (10) AMBIPAR ENVIRONMENT CIRCULAR ECONOMY RM S.A., sociedade anônima inscrita no CNPJ sob o nº 05.034.679/0001 53, com sede no Estado de São Paulo, na Cidade de São José dos Campos, na Avenida Doutor Sebastião Henrique da Cunha Pontes, nº 8.000, Bairro Chácaras Reunidas, CEP 12.238-365; (11) AMBIPAR ENVIRONMENT ECONOMIA CIRCULAR NORDESTE S.A., sociedade anônima inscrita no CNPJ sob o nº 08.143.344/0001-61, com sede no Estado do Ceará, na Cidade de Juazeiro do Norte, na Avenida do Agricultor, nº 567, Bairro Três Marias, CEP 63.015-130; (12) AMBIPAR ENVIRONMENT MANAUS LTDA., sociedade limitada inscrita no CNPJ sob o nº 12.163.869/0001-36, com sede no Estado do Amazonas, na Cidade de Manaus, na Avenida Abiurana, nº 666, Bairro Distrito Industrial I, CEP 69.075-010; (13) AMBIPAR ENVIRONMENT RESIDENTIAL COLLECTION S.A., sociedade anônima inscrita no CNPJ sob o nº 10.652.751/0001 46, com sede no Estado de São Paulo, na Cidade de São Paulo, na Rua João Antônio de Oliveira, nº 453, Bairro Mooca, CEP 03.111-010; (14) AMBIPAR ENVIRONMENT REVERSE MANUFACTURING S.A., sociedade inscrita no CNPJ sob o nº 10.711.268/0001-95, com sede no Estado de São Paulo, na Cidade de Nova Odessa, na Rod. Anhanguera, S/N, Bairro Zona de Produção Industrial Um (ZPI-01), CEP 13.388 220; (15) AMBIPAR ENVIRONMENT WASTE MANAGEMENT AL S.A., sociedade anônima inscrita no CNPJ sob o nº 02.234.179/0001-77, com sede no Estado de Alagoas, na Cidade de Marechal Deodoro, na Rua Em Projeto Sítio Volta D'água, S/N, Bairro Santa Rita, CEP 57.160-000; (16) AMBIPAR ENVIRONMENT WASTE MANAGEMENT SUL LTDA., sociedade limitada inscrita no CNPJ sob o nº 13.244.668/0001-26, com sede no Estado do Paraná, na Cidade de São José dos Pinhais, na Rodovia BR-376, nº 17.433, Bairro Barro Preto, CEP 83.015-820; (17) AMBIPAR ENVIRONMENTAL CENTROESTE S.A., sociedade anônima inscrita no CNPJ sob o nº 09.255.903/0001-98, com sede no Estado do Mato Grosso, na Cidade de Rondonópolis, na Rua Mario Rossignolo, nº 406, Bairro Distrito Industrial, CEP 78.745-790; (18) AMBIPAR ENVIRONMENTAL GLASS CULLET RECYCLING SP LTDA., sociedade inscrita no CNPJ sob o nº 04.875.792/0001-07, com sede no Estado de São Paulo, na Cidade de Guarulhos, na Avenida Jaraguá, nº 246, Bairro Cidade Industrial Satélite de São Paulo, CEP 07.221-050; (19) AMBIPAR ENVIRONMENTAL GREEN TIRE AMBIENTAL LTDA., sociedade inscrita no CNPJ sob o nº 42.317.705/0001-87, com sede no Estado de Pernambuco, na Cidade de Jaboatão dos Guararapes, na Rodovia Empresário João Santos Filho, nº 2.619, Bairro Muribeca, CEP 54.350-100; (20) AMBIPAR ENVIRONMENTAL MACHINES S.A., sociedade inscrita no CNPJ sob o nº 21.000.046/0001-80, com sede no Estado de São Paulo, na Cidade de São Paulo, na Avenida Angélica, nº 2.346, Bairro Consolação, CEP 01.228-200; (21) AMBIPAR ENVIRONMENTAL MINING LTDA., sociedade inscrita no CNPJ sob o nº 61.059.978/0001-13, com sede no Estado de São Paulo, na Cidade de São Paulo, na Avenida Leôncio de Magalhães, nº 722, Bairro Jardim São Paulo (Zona Norte), CEP 02.042-000; (22) AMBIPAR ENVIRONMENTAL NORDESTE LTDA., sociedade inscrita no CNPJ sob o nº 24.312.884/0001-88, com sede no Estado de Pernambuco, na Cidade de Jaboatão dos Guararapes, na Rodovia Empresário João Santos Filho, nº 2.619, Bairro Muribeca, CEP 54.350-100; (23) AMBIPAR ENVIRONMENTAL NORDESTE S.A., sociedade inscrita no CNPJ sob o nº 35.960.890/0001-68, com sede no Estado de Pernambuco, na Cidade de Recife, na Rua

Professor Aloísio Pessoa de Araújo, nº 75, Bairro Boa Viagem, CEP 51.021-470; (24) AMBIPAR ENVIRONMENTAL SOLUTIONS - SOLUÇÕES AMBIENTAIS LTDA., sociedade inscrita no CNPJ sob o nº 00.679.427/0001-68, com sede no Estado de São Paulo, na Cidade de São Paulo, na Av. Pacaembu, nº 1.088, Bairro Pacaembu, CEP 01.234-000; (25) AMBIPAR ENVIRONMENTAL SUPREMA INDUSTRIAL SOLUTIONS S.A., sociedade inscrita no CNPJ sob o nº 00.512.573/0001-02, com sede no Estado de Minas Gerais, na Cidade de Pedro Leopoldo, na Rod. Dr. Otávio Costa, nº 1.800, Bairro Doutor Lund, CEP 33.250-461; (26) AMBIPAR ENVIRONMENTAL VIRASER S.A., sociedade inscrita no CNPJ sob o nº 17.346.336/0001-03, com sede no Estado de São Paulo, na Cidade de Nova Odessa, na Rod. Anhanguera, nº S/N, Bairro Zona de Produção Industrial Um (ZPI-01), CEP 13.388-220; (27) AMBIPAR ESG BRASIL S.A., sociedade inscrita no CNPJ sob o nº 41.000.384/0001-20, com sede no Estado de São Paulo, na Cidade de Nova Odessa, na Rod. Anhanguera, S/N, Bairro Distrito Industrial I, CEP 13.388-220; (28) AMBIPAR ESG RISK MANAGEMENT LTDA., sociedade inscrita no CNPJ sob o nº 11.078.062/0001-32, com sede no Estado de São Paulo, na Cidade de São Paulo, na Av. Angélica, nº 2.346, Bairro Consolação, CEP 01.228-200; (29) AMBIPAR FLYONE SERVIÇO AÉREO ESPECIALIZADO, COMÉRCIO E SERVIÇOS S.A., sociedade inscrita no CNPJ sob o nº 03.945.337/0001-60, com sede no Estado do Rio de Janeiro, na Cidade de Rio de Janeiro, na Av. Ayrton Senna, nº 2.541, Bairro Barra da Tijuca, CEP 22.775-002; (30) AMBIPAR GREEN TECH LTDA., sociedade inscrita no CNPJ sob o nº 03.175.428/0001-63, com sede no Estado de Minas Gerais, na Cidade de Belo Horizonte, na Av. do Contorno, nº 6.594, Bairro Savassi, CEP 30.110-044; (31) AMBIPAR HEALTH WASTE SERVICES S.A., sociedade inscrita no CNPJ sob o nº 26.893.667/0001-54, com sede no Estado de Pernambuco, na Cidade de Recife, na R. Pereira Barreto, nº 200, Bairro Passarinho, CEP 52.165-050; (32) AMBIPAR INCORPORATION INVESTMENTS LTDA., sociedade inscrita no CNPJ sob o nº 12.696.314/0001-50, com sede no Estado de São Paulo, na Cidade de São Paulo, na Av. Pacaembu, nº 1088, Bairro Pacaembu, CEP 01.234-000; (33) AMBIPAR METAL RECYCLING LTDA., sociedade inscrita no CNPJ sob o nº 44.745.286/0001-00, com sede no Estado de Minas Gerais, na Cidade de Andradas, na Rod. MG 455 Andradas/Pinhal, S/N, Bairro Lagoa Dourada, CEP 37.795-000; (34) AMBIPAR PARTICIPAÇÕES E EMPREENDIMENTOS S.A., sociedade inscrita no CNPJ sob o nº 12.648.266/0001-24, com sede no Estado de São Paulo, na Cidade de São Paulo, na Av. Pacaembu, nº 1.088, Bairro Pacaembu, CEP 01.234-000; (35) AMBIPAR RESPONSE ANALYTICAL S.A., sociedade inscrita no CNPJ sob o nº 10.335.931/0001-02, com sede no Estado do Espírito Santo, na Cidade de ARACRUZ, na Rua Perobas, nº 190, Bairro Coqueiral, CEP 29.199-117; (36) AMBIPAR RESPONSE DRACARES APOIO MARÍTIMO E PORTUÁRIO S.A., sociedade inscrita no CNPJ sob o nº 07.049.258/0001-21, com sede no Estado de Santa Catarina, na Cidade de São Francisco do Sul, na Rua Fernandes Dias, nº 456, Bairro Centro, CEP 89.330-166; (37) AMBIPAR RESPONSE EMERCENCY MEDICAL SERVICES H S.A., sociedade inscrita no CNPJ sob o nº 05.959.078/0001-51, com sede no Estado do Paraná, na Cidade de Pinhais, na R. Vinte e Quatro de Maio, nº 299, Bairro Estância Pinhais, CEP 83.323 060; (38) AMBIPAR RESPONSE EMERGENCY MEDICAL SERVICES R S.A., sociedade inscrita no CNPJ sob o nº 02.464.053/0001-99, com sede no Estado do Paraná, na Cidade de Pinhais, na Rua Vinte e Quatro de Maio, nº 299, Bairro Estância Pinhais, CEP 83.323-060; (39) AMBIPAR RESPONSE EMERGENCY MEDICAL SERVICES S S.A., sociedade inscrita no CNPJ sob o nº 07.759.154/0001-00, com sede no Estado do Paraná, na Cidade de Pinhais, na Rua Vinte e Quatro de Maio, nº 299, Bairro Estância Pinhais, CEP 83.323-060; (40) AMBIPAR RESPONSE ENVIRONMENTAL REMEDIATION LTDA., sociedade inscrita no CNPJ sob o nº 14.233.110/0001-08, com sede no Estado de São Paulo, na Cidade de Indaiatuba, na Rua Augusto Poltronieri, nº 243, Bairro Park Comercial de Indaiatuba, CEP 13.347-443; (41) AMBIPAR RESPONSE ENVIRONMENTAL SERVICES LTDA., sociedade inscrita no CNPJ sob o nº 10.550.896/0001-36, com sede no Estado do Espírito Santo, na Cidade Vitória, na Rua Manoel Feu Subtil, nº 60, Bairro Enseada do Sua, CEP 29.050-917; (42) AMBIPAR RESPONSE ESPÍRITO SANTO S.A., sociedade inscrita no CNPJ sob o nº 27.853.153/0001-38, com sede no Estado do Espírito Santo, na Cidade de Vitória, na R Manoel Feu Subtil, nº 60, Bairro Enseada de Sua, CEP 29.050-917; (43) AMBIPAR RESPONSE FAUNA E FLORA LTDA., sociedade inscrita no CNPJ sob o nº 39.793.153/0001-79, com sede no Estado do Espírito Santo, na Cidade de Vitória, na Rua Manoel Feu Subtil, nº 60, Bairro Enseada do Sua, CEP 29.050-917; (44) AMBIPAR RESPONSE GEOCIÊNCIAS LTDA., sociedade inscrita no CNPJ sob o nº 17.732.383/0001-95, com sede no Estado do Espírito Santo, na Cidade de Vitória, na Rua Manoel Feu Subtil, nº 60, Bairro Enseada do Sua, CEP 29.050-917; (45) AMBIPAR RESPONSE INDUSTRIAL ROBOT S.A., sociedade inscrita no CNPJ sob o nº 33.294.016/0001-03, com sede no Estado de São Paulo, na Cidade de Jacareí, na Rua Harold Barnsley Holland, nº 1.151, Bairro Rio Abaixo, CEP 12.334-403; (46) AMBIPAR RESPONSE INDUSTRIAL SERVICES S.A., sociedade inscrita no CNPJ sob o nº 39.233.457/0001-81, com sede no Estado do Rio de Janeiro, na Cidade de Rio das Ostras, na Av. Dos Bandeirantes, nº 690, Bairro Enseada das Gaivotas, CEP 28.897-188; (47) AMBIPAR RESPONSE MARINE S.A., sociedade inscrita no CNPJ sob o nº 06.086.769/0001-50, com sede no Estado do Rio de Janeiro, na Cidade de Niterói, na Rua Engenheiro Fábio Goulart, nº 163, Bairro Ilha da Conceição, CEP 24.050-090; (48) AMBIPAR RESPONSE MARITIME SERVICES PDA S.A., sociedade inscrita no CNPJ sob o nº 04.978.039/0001-39, com sede no Estado do Espírito Santo, na Cidade de Vitória, na Rua das Palmeiras, nº 795, Bairro Santa Lucia, CEP 29.056-210; (49) AMBIPAR RESPONSE S.A., sociedade inscrita no CNPJ sob o nº 11.414.555/0001-04, com sede no Estado de São Paulo, na Cidade de São Paulo, na Av. Pacaembu, nº 1.088, Bairro Pacaembu, CEP 01.234-000; (50) AMBIPAR RESPONSE TANK CLEANING S.A., sociedade inscrita no CNPJ sob o nº 18.591.097/0001-10, com sede no Estado do Rio de Janeiro, na Cidade de Niterói, na Pça. Marechal Stenio Caio de Albuquerque Lima, nº 102, Bairro Centro, CEP 24.030-290; (51) AMBIPAR WASTE TO ENERGY S.A., sociedade inscrita no CNPJ sob o nº 05.458.585/0001-01, com sede no Estado de Pernambuco, na Cidade de Jaboatão dos Guararapes, na Rod. Empresário João Santos Filho, nº 2.619, Bairro Muribeca, CEP 54.350-100; (52) AMBIPAR WORKFORCE SOLUTION - MÃO DE OBRA TEMPORÁRIA LTDA., sociedade inscrita no CNPJ sob o nº 19.825.185/0001-00, com sede no Estado de São Paulo, na Cidade de Nova Odessa, na Rod. Anhanguera, S/N, Bairro Distrito Industrial I (ZPI-01), CEP 13.388-220; (53) BOOMERA AMBIPAR GESTÃO AMBIENTAL S.A., sociedade inscrita no CNPJ sob o nº 14.512.293/0001-09, com sede no Estado de São Paulo, na Cidade de São Paulo, na Av. Angélica, nº 2.346, Bairro Consolação, CEP 01.228-200; (54) DRYPOL AMBIPAR ENVIRONMENTAL PET SOLUTIONS S.A., sociedade inscrita no CNPJ sob o nº 04.942.888/0001-32, com sede no Estado de São Paulo, na Cidade de Diadema, na Rua

Romeu Cicarelli, nº 67, Bairro Vila Odete, CEP 09.942-010; (55) EMERGÊNCIA PARTICIPAÇÕES S.A., sociedade inscrita no CNPJ sob o nº 10.645.019/0001-49, com sede no Estado de São Paulo, na Cidade de São Paulo, na Av. Angélica, nº 2.346, Bairro Consolação, CEP 01.228-200; (56) ENVIRONMENTAL ESG PARTICIPAÇÕES S.A., sociedade inscrita no CNPJ sob o nº 09.527.023/0001-23, com sede no Estado de São Paulo, na Cidade de Nova Odessa, na Rod. Anhanguera, S/N, Bairro Distrito Industrial, CEP 13.388-220; (57) JM SERVIÇOS INTEGRADOS S.A., sociedade inscrita no CNPJ sob o nº 05.120.343/0001-03, com sede no Estado do Paraná, na Cidade de Morretes, na Rua Dionísio Gonçalves do Nascimento, nº 102, Bairro Raia Velha, CEP 83.350-000; (58) RG RESPONSE S A, sociedade inscrita no CNPJ sob o nº 14.113.259/0001-53, com sede no Estado do Mato Grosso, na Cidade de Cuiabá, na Av. Professora Edna Maria de Albuquerque Affi (Jd. Imperial 2ª E, LT 27, Bairro Jardim Imperial, CEP 78.076-001; (59) RMC2 SOLUÇÕES AMBIENTAIS LTDA., sociedade inscrita no CNPJ sob o nº 28.077.248/0001-70, com sede no Estado de São Paulo, na Cidade de Indaiatuba, na Al. Jupiter, nº 1.123, Bairro Distrito Industrial Nova Era, CEP 13.347-397; (60) TERRA DRONE BRASIL SERVIÇOS DE ENGENHARIA S.A., sociedade inscrita no CNPJ sob o nº 29.301.466/0001-09, com sede no Estado do Rio de Janeiro, na Cidade de Rio de Janeiro, na Av. Olegário Maciel, nº 531, Bairro Barra da Tijuca, CEP 22.621-200; (61) AMBIPAR ENVIRONMENT CULLET RECICLYNG BRASIL S.A., sociedade anônima inscrita no CNPJ sob o nº 54.229.824/0001-67, com sede no Estado de São Paulo, na Cidade de São Paulo, na Avenida Angélica, nº 2.346, Bairro Consolação, CEP 01.228-200; (62) AMBIPAR ENVIRONMENT POS CONSUMO LTDA., sociedade limitada inscrita no CNPJ sob o nº 55.940.475/0001-50, com sede no Estado de São Paulo, na Cidade de São Paulo, na Avenida Angélica, nº 2.346, Bairro Consolação, CEP 01.228-200; (63) AMBIPAR ENVIRONMENTAL ECOPARQUE S.A., sociedade anônima inscrita no CNPJ sob o nº 53.172.475/0001-21, com sede no Estado de Pernambuco, na Cidade de Igarassu, na Rodovia BR 101 Norte, S/N, Bairro Área Rural de Igarassu, CEP 53.659 899; (64) AMBIPAR ENVIRONMENT INDUSTRIAL WATER SOLUTIONS LTDA., sociedade inscrita no CNPJ sob o nº 10.808.894/0001-02, com sede no Estado de São Paulo, na Cidade de Piracicaba, na Rua Frei Vital de Primeiro, nº 247, bairro Vila Pacaembu, CEP 13.424-580; (65) AMBIPAR RESPONSE PARTICIPAÇÕES BRASIL S.A., sociedade inscrita no CNPJ sob o nº 58.238.535/0001-85, com sede no Estado de São Paulo, na Cidade de São Paulo, na Av. Angélica, nº 2.346, Bairro Consolação, CEP 01.228-200; (66) AMAZONIA INCORPORAÇÃO E PARTICIPAÇÃO S.A., sociedade inscrita no CNPJ sob o nº 13.113.933/0001-37, com sede no Estado de São Paulo, na Cidade de São Paulo, na Av. Pacaembu, nº 1.088, Bairro Pacaembu, CEP 01.234-000; (67) NUTRIGÁS S.A., sociedade inscrita no CNPJ sob o nº 39.793.260/0011-79, com filial no Estado de São Paulo, na Cidade de São Paulo, na Av. Pacaembu, nº 1088, Bairro Pacaembu, CEP 01.234-000; (68) NUTRIPETRO S.A., sociedade inscrita no CNPJ sob o nº 10.608.868/0001-22, com sede no Estado do Espírito Santo, na Cidade de Aracruz, na Av. Professor Aparício Alvarenga, S/N, Bairro Barra do Riacho, CEP 29.197-556; (69) CRICARE PRAIA HOTEL LTDA., sociedade inscrita no CNPJ sob o nº 17.855.660/0001-57, com sede no Estado do Espírito Santo, na Cidade de Conceição da Barra, na Rua Capitão Antero Faria, S/N, Bairro Centro, CEP 29.960-970; (70) EVEREST PARTICIPAÇÕES E EMPREENDIMENTOS S.A., sociedade inscrita no CNPJ sob o nº 13.051.485/0001-94, com sede no Estado de São Paulo, na Cidade de São Paulo, na Av. Pacaembu, nº 1.088, Bairro Pacaembu, CEP 01.234-000; (71) AMBIPAR LUX S.À.R.L., sociedade inscrita no Registro de Comércio e Sociedades de Luxemburgo ("RCSL") sob o nº B279448, com sede em Luxemburgo, e AMBIPAR EMERGENCY RESPONSE, sociedade inscrita no CNPJ sob o nº 49.261.471/0001-42 CO-390269, com sede nas Ilhas Cayman, com base nos artigos 47 e seguintes da Lei nº 11.101/2005 ("LRF").

Na linha do tempo processual, importa notar que, em 24/9/2025 (evento 1), os requerentes formularam pedido de tutela cautelar de urgência em caráter antecedente, com fundamento nos artigos 6º, § 12, e 189 da Lei nº 11.101/05- LRJ, e nos artigos 300 e seguintes do CPC. Como premissa, descrevem adequada saúde financeira e de caixa, com manutenção em dia da folha salarial, das obrigações com fornecedores, instituições financeiras e tributos, estes somando, anualmente, cerca de R$ 500 milhões, além da geração de aproximadamente 23 mil empregos diretos (sem contar os indiretos).

No eixo financeiro-contratual, registram que, em 18/9/2025, a AMBIPAR LUX S.À.R.L. celebrou com o Deutsche Bank AG empréstimo de USD 35.000.000,00, além de três contratos de derivativos (swap), com aditamento para inclusão de dação em pagamento de títulos emitidos no exterior (green bonds). Em razão da vinculação aos contratos de empréstimo, o valor-base para cálculo da dívida em USD, conforme os contratos de swap, totalizaria USD 550.000.000,00.

Em sequência lógica, apontam que o Deutsche Bank passou a calcular e exigir garantias adicionais com base não apenas na diferença negativa das taxas dos swaps, como também na desvalorização dos PIK Bonds no mercado externo, títulos que somente seriam entregues no futuro, no vencimento dos swaps. Daí, com a incorporação de risco de crédito futuro relativo aos PIK Bonds, o banco teria exigido da AMBIPAR PARTICIPAÇÕES aportes muito superiores ao que seria exigível, gerando dispêndio de caixa superior a R$ 200 milhões nos últimos dias.

Paralelamente, sublinham que praticamente todos os contratos financeiros do grupo contêm cláusulas de vencimento cruzado (cross-default), o que acarreta gravíssimo risco de insolvência imediata. A amplitude desse cross-default implicaria rombo financeiro de mais de R$ 10 bilhões, consideradas todas as operações com instituições financeiras, credoras do grupo em eventual pedido de recuperação judicial.

Somado a isso, argumentam que o cenário se agravou pela possibilidade de apropriação de valores bilionários em contas correntes e investimentos das requerentes por certas instituições financeiras sem necessidade de medida judicial, o que inviabilizaria o exercício da atividade empresarial. O risco, segundo narram, é iminente e concreto, uma vez que algumas instituições já teriam notificado as requerentes para declarar vencimento antecipado e adotar remédios cabíveis, judiciais e extrajudiciais.

Diante desse quadro, a Decisão (evento 9) reconheceu a competência deste Juízo Recuperacional e deferiu a tutela cautelar antecedente pelo prazo de 30 dias, prorrogável pelo mesmo período, com termo inicial na data e hora do protocolo da petição inicial da ação cautelar. Com a decisão, ficaram suspensos: (i) a exigibilidade e o curso da prescrição dos créditos e obrigações (inclusive as de fazer, de não fazer e de dar) das requerentes e partes relacionadas com fatos geradores coincidentes ou anteriores; (ii) as execuções e demais medidas de cobrança contra as requerentes e partes relacionadas relativas a tais créditos/obrigações; e, ainda, (iii) proibidas quaisquer formas de retenção, arresto, penhora, sequestro, busca e apreensão e constrição judicial ou extrajudicial sobre bens das requerentes e suas partes relacionadas, quando oriundas de demandas cujos créditos/obrigações tenham fatos geradores coincidentes ou anteriores.

Na mesma linha, determinou-se a suspensão dos efeitos das cláusulas de vencimento antecipado ou de amortização acelerada e da excussão de eventuais garantias nos contratos celebrados com as requerentes e partes relacionadas (incluídos contratos principais e coligados), inclusive na hipótese de ajuizamento de pedido de recuperação judicial ou de cautelar antecedente pelas requerentes; igualmente, restaram proibidas declarações novas de vencimento antecipado (ou suspensos os efeitos das já realizadas), a amortização acelerada e/ou a excussão de garantias atreladas aos contratos relativos a créditos e obrigações (inclusive de fazer, de não fazer e de dar) com fatos geradores coincidentes ou anteriores.

Quanto à nomeação de Administrador Judicial (AJ), instaurou-se processo competitivo entre: (1) VPJ ADMINISTRAÇÃO JUDICIAL, CNPJ 55.870.751/0001-50, na pessoa de seu sócio, Dr. Victor Saraiva Torres; (2) NEVES, FIGUEIREDO, CERQUEIRA E SOUZA, na pessoa de seu sócio, Dr. Athos de Andrade Figueira Neves, OAB/RJ 211747/RJ, e-mail [athosneves@nfcsadvogados.com.br](mailto:athosneves@nfcsadvogados.com.br); (3) Augusto Alves Moreira Neto, do escritório Gomes de Mattos Advogados Associados, e-mail [augusto.neto@gomesdemattos.com.br](mailto:augusto.neto@gomesdemattos.com.br); (4) CARAPETCOV ADMINISTRAÇÃO JUDICIAL, na pessoa de seu sócio, Dr. Thiago Carapetcov, OAB/RJ 151772/RJ, e-mail [thiago@carapetcovaj.com.br](mailto:thiago@carapetcovaj.com.br).

Na sequência, sobrevieram impugnações. Após a decisão, o Ministério Público opôs embargos de declaração e diversos credores, sobretudo instituições financeiras, trouxeram, em síntese: (1) incompetência deste Juízo; (2) inobservância do art. 49, § 3º, da Lei 11.101/2005; (3) inobservância do art. 193-A, da mesma lei; e (4) falta de demonstração das condições para o ajuizamento do pedido de recuperação judicial.

Em resposta, a Decisão (evento 65) acolheu em parte os embargos do Ministério Público, tão somente para determinar que a representação de todas as autoras estivesse regularizada até o ajuizamento do pedido principal, em 30 dias. Quanto às demais questões levantadas pelos credores, inclusive o julgamento dos embargos de declaração dos eventos 48 e 57 e o juízo de retratação em razão do AI nº 3001203-67.2025.8.19.0000, converteu em diligência a apreciação, estabelecendo que (a) a parte autora indicará, objetivamente, as sedes e sucursais do Grupo nesta Comarca que considera seu(s) estabelecimento(s) principal(is), comprovação documental inclusive acerca do volume de negócios de Rio de Janeiro, São Paulo e Nova Odessa, em 5 dias; (b) no mesmo prazo, credores poderão instruir o feito com novos documentos a indicar o principal estabelecimento na Comarca de São Paulo ou Nova Odessa; (c) entre o 6º e o 10º dia da intimação, manifestações sobre a documentação apresentada; (d) no mesmo interregno, e em extremo respeito ao princípio da não surpresa, a parte autora se manifestará sobre as demais questões do despacho; (e) autora e credores se manifestarão sobre o interesse na mediação, indicando profissional em substituição ao CEJUSC e, até lá, suspenso o encaminhamento do caso ao Centro, determinado na decisão liminar.

Ainda nessa decisão, no tocante ao pedido do evento 53 acerca de eventual descumprimento da tutela por parte de ADDIANTE S.A., ORIZON MEIO AMBIENTE S.A., LM TRANSPORTES INTERESTADUAIS SERVIÇOS E COMERCIO S.A. e outros, determinou-se a intimação das autoras para que, em 15 dias, apresentassem as cláusulas contratuais cuja resolução pretendem evitar.

Em continuidade, as autoras (eventos 89/91) emendaram a petição inicial para formular o pedido de recuperação judicial do GRUPO AMBIPAR. Como contexto histórico, consignam: fundação em 1995, inicialmente com foco no gerenciamento de resíduos industriais; em maio de 1996, expansão na área de logística com a GETEL LOGÍSTICA, passando a atuar também em transporte para grandes empresas e indústrias em todo o Brasil. Seguiram-se décadas de crescimento, descrito como exponencial, impulsionado por pioneirismo e excelência nos serviços, aliado a compromisso inegociável com a preservação ambiental, geração de emprego, renda e desenvolvimento local.

Em 2005, registram a fundação da BRASIL AMBIENTAL CENTRAL DE TRATAMENTO DE RESÍDUOS (CTR). Em 2008, a constituição da PLANETA AMBIENTAL – CENTRAL DE SERVIÇOS COMPARTILHADOS, com objeto voltado ao atendimento a emergências. Afirmam investimentos contínuos em tecnologia, capacitação técnica e governança corporativa, com padrões de compliance e transparência que elevaram a reputação do grupo no setor. Nessa cadência, mais do que um conglomerado de prestação de serviços, se apresenta como agente de transformação ambiental, promovendo economia circular, valorização de resíduos e descarbonização em larga escala.

Informam que setembro de 2010, foi fundada a AMBIPAR PARTICIPAÇÕES E EMPREENDIMENTOS S.A. ("AMBIPAR PARTICIPAÇÕES"), com a finalidade de consolidar o controle das diversas empresas do grupo. Em maio de 2011, a holding se tornou controladora do grupo e, no mesmo mês, adquiriu 51% da DESCARTE CERTO (divisão de manufatura reversa, responsável pela cadeia de produtos pós-

consumo). Em 2019, houve rebranding, com reestruturação societária que dividiu o grupo em duas verticais: AMBIPAR RESPONSE e AMBIPAR ENVIRONMENTAL (soluções ambientais consolidadas na Vertical Environmental; atendimento a emergências, na Vertical Response).

No mercado de capitais, em julho de 2020, ocorreu a abertura de capital na B3, permitindo ao grupo levantar aproximadamente R$ 1,08 bilhão por meio da emissão de ações da AMBIPAR PARTICIPAÇÕES. No ano seguinte, a AMBIPAR EMERGENCY RESPONSE abriu capital na NYSE, marco de governança e relevância estratégica. Os recursos, segundo narram, foram destinados à expansão orgânica e a aquisições no Brasil e no exterior, consolidando liderança em gestão ambiental.

A partir de 2020, mencionam aquisições como REVALORE, SUPPLY, VERDE GHAIA e ÂMBITO e, ao longo de 2021, AFC, METAL AR, CENTROESTE, BOOMERA, ECOLÓGICA NORDESTE (por meio da AFC), BIOFÍLICA, DRYPOL, TRICICLO, SUPREMA, SIR, BRASIL COLETA, MCZ, ECOLÓGICA RESÍDUOS, WATU e ECOTEC, todas estratégicas para o gerenciamento de resíduos. Por fim, informam rede de 600 bases operacionais em mais de 41 países, estrategicamente posicionadas próximas a polos industriais, portos, rodovias e ferrovias.

No tema competência, apontam como principal sede do grupo a unidade da Rua Lauro Muller nº 116, Botafogo, 27º andar, Rio de Janeiro, pertencente à autora AMBIPAR RESPONSE ENVIRONMENTAL CONSULTING OFFSHORE S/A. Alegam que a cidade concentra o maior volume de negócios (aprox. 18,4% do lucro líquido), contra 12,3% de São Paulo e -8,4% de Nova Odessa; além disso, seria no Rio de Janeiro o maior faturamento (R$ 303,2 milhões, contra R$ 69,4 milhões em São Paulo e R$ 1,6 milhão em Nova Odessa). Entre São Paulo e Rio de Janeiro, assinalam que São Paulo é onde o grupo menos gera e contrata, não configurando "maior volume de negócios".

No que tange ao litisconsórcio ativo, indicam respaldo no art. 69-G da LRF, por estarem as empresas sob o controle societário da mesma holding (AMBIPAR PARTICIPAÇÕES E EMPREENDIMENTOS S.A.), conforme organograma do doc. 7 do Evento 89. A título de art. 69-J da LRF, destacam o atendimento das hipóteses dos incisos, ante centenas de garantias cruzadas firmadas pelas sociedades do grupo, um dos motores da crise, o que justifica a legitimidade das requerentes, pois o vencimento cruzado afetou todo o grupo em cadeia, sendo a holding garantidora de inúmeros contratos. Como exemplo, citam o instrumento da dívida da AMBIPAR FLYONE com o Banco ABC S.A. (doc. 09 do Evento 89), no qual constam como garantidoras a holding e a EMERGÊNCIA PARTICIPAÇÕES S.A. Ao mesmo tempo, explicitam que a relação de controle e a identidade do quadro societário se encontram no organograma referido e apontam que a estrutura administrativa, jurídica, financeira e de governança é interligada, de modo que a segregação de ativos e passivos exigiria dispêndio excessivo de tempo e recursos. Em razão disso requerem autorização para o processamento da recuperação judicial em consolidação processual e substancial, com prerrogativa de consolidar os ativos e passivos em um único plano ou segregá-los em mais de um, conforme as circunstâncias negociais futuras com milhares de credores e demais stakeholders.

No diagnóstico da crise, registram que, em fevereiro de 2024, a AMBIPAR LUX S.À R.L., subsidiária da AMBIPAR PARTICIPAÇÕES, realizou a primeira emissão de Green Bonds no montante de USD 750.000.000,00, com vencimento em 2031 ("Green Bonds 2031"). Essa operação ficou vinculada a um Contrato de Derivativo (swap) inicialmente firmado junto ao Bank of America, com a finalidade de hedge cambial. Como é usual quando a emissora é não operacional e os recursos captados no exterior são investidos na operação no Brasil, a dívida é paga em reais, razão pela qual se mitiga o risco da variação cambial por meio de swap. Conforme narram, o swap opera como troca de riscos (dólar x reais), com ajustes periódicos de "margem de garantia" e compensação final na liquidação — caracterização de proteção, e não de especulação.

Adiante, em fevereiro de 2025, a AMBIPAR LUX realizou a segunda emissão de Green Bonds (montante de USD 493 milhões, vencimento em 2033 — "Green Bonds 2033"). Parte dessa captação (USD 200 milhões) foi utilizada para pré-pagar a primeira emissão, e também aqui se vinculou a operação a swap cambial, agora junto ao Deutsche Bank. Segundo relatam, o primeiro swap (com o Bank of America) foi transferido ao Deutsche Bank em contexto no qual o então diretor do Bank of America, Sr. João Arruda, passou a atuar como CFO da Ambipar; pouco depois, por negociação capitaneada por ele, o swap dos Green Bonds 2031 foi transferido ao Deutsche Bank e, na sequência, o segundo swap (dos Green Bonds 2033) foi firmado diretamente com o Deutsche Bank. Tudo isso, sustentam, sem aprovação do Conselho de Administração e sem observância dos trâmites internos nos bancos estrangeiros, matéria em apuração criminal por Inquérito contra o Sr. João Arruda e outros.

No desdobramento, a autora declara ter firmado novo contrato global de derivativos com o Deutsche Bank (doc. 10 do Evento 89) e três contratos de swaps referentes aos Green Bonds 2031, somados ao swap referente aos Green Bonds 2033. Já em 18/08/2025, com os swaps migrados ao Deutsche, a AMBIPAR LUX celebrou com o banco o Loan and Guarantee Agreement ("LOAN DT - 18S"), instrumentalizando empréstimo de USD 35.000.000,00, com desembolso na mesma data.

Ainda em agosto de 2025, os derivativos foram aditados para incluir, em sua Cláusula 5, hipótese de dação em pagamento dos Green Bonds emitidos no exterior (PIK — Payment in Kind). Nessa mecânica, caso ao final o banco fosse o devedor, poderia pagar a diferença entregando os títulos a valor de face, e não à cotação de mercado, vantagem esta que aumenta quanto mais o bond cai. Registra-se que, na data dos aditivos (18/08/2025), houve volatilidade anômala dos bonds; a partir de 19/08/2025, descrevem "ataque claramente orquestrado" com queda dos valores até então estáveis.

Sintetizando, dizem que até 18/08/2025 os swaps tinham caráter não especulativo e se limitavam ao hedge cambial, justificável por dívidas em dólar e receitas majoritariamente em reais. Após o ingresso do Sr. João Arruda como CFO, os swaps originais foram transferidos ao Deutsche Bank e aditados com regra que introduziu elemento especulativo, a variação do preço dos Green Bonds de emissão da Ambipar Lux, ativo de país emergente sujeito a short sellers, dinâmica que, no caso concreto, teria se verificado.

No dia 19/09/2025, o Sr. João Arruda apresentou renúncia ao cargo de CFO da Ambipar Participações, por e-mail ao Conselho às 22h30. Como se recusou a fazer transição até a nomeação de novo CFO, houve cancelamento da videoconferência com bondholders convocada de véspera por ele, espaço no qual se explicaria a deterioração dos títulos e o aditivo com o Deutsche Bank, o que teria contribuído, segundo as requerentes, para disseminar pânico no mercado.

Na sequência, o Deutsche Bank passou a exigir garantias adicionais da AMBIPAR PARTICIPAÇÕES em valores muito superiores aos originalmente definidos nos swaps. Até poucos dias antes da tutela ser deferida, as margens de garantia já representavam quase R$ 200 milhões (ajuste que refletiria, em tese, o Valor de Liquidação no encerramento imediato). As chamadas, todavia, teriam se baseado em interpretação indevida do aditivo e em cálculos unilaterais do banco, com sobrecustos embutidos e curvas de precificação dissociadas da realidade, incluindo não só câmbio e juros, como também a queda dos PIK Bonds, títulos que poderiam ou não ser entregues no futuro, a valor de face, apenas no vencimento. Depois de exigir R$ 200 milhões, sobreveio novo aporte de R$ 60 milhões, sob pena de vencimento automático e antecipado dos swaps e do empréstimo de USD 35 milhões.

Ato contínuo, o Banco Santander enviou notificação ao GRUPO AMBIPAR, antes mesmo do ajuizamento da cautelar antecedente, declarando vencimento antecipado de dívidas referentes a Cédula de Crédito Bancário sem relação com derivativos, com exigência de pagamento de cerca de USD 120 milhões em 24 horas. O movimento do Deutsche Bank teria deflagrado reação em cadeia por outros bancos, receosos de inadimplemento sistêmico que, segundo a narrativa, essa reação em cadeia conduziria o grupo à ruína, o que foi impedido pela cautelar e, agora, pelo pedido principal de recuperação.

Nessa toada, destacam que a principal dívida, bonds que somam mais de USD 1 bilhão, também estaria sujeita a vencimento antecipado, conforme Indenture (Section 6.01 – Events of Default, item "v"). Em outras palavras: o vencimento das dívidas dos swaps e do Loan Agreement com o Deutsche Bank, somado ao vencimento antecipado de mais de USD 120 milhões declarado pelo Santander, e eventualmente por outras instituições, funcionaria como gatilho para vencimentos em cascata em todo o grupo.

Nesse novo cenário, por haver risco concreto de vencimento antecipado de mais de R$ 10 bilhões, o grupo não vislumbrou alternativa senão o ajuizamento deste pedido de recuperação judicial, a fim de retomar o perfil de sua dívida e reestruturar o passivo sem afetar o fluxo de caixa e inviabilizar as operações.

No tocante aos contratos garantidos por cessão fiduciária de recebíveis, salientam que eventual extraconcursalidade deverá ser analisada quando da verificação de créditos, encargo inicial do Administrador Judicial, sujeito à revisão do Juízo. Sobre o art. 193-A da LRF, registram que, havendo cláusula de vencimento antecipado em razão de pedido de recuperação judicial no contrato de swap, a instituição financeira pode declarar o vencimento para apurar a ponta credora e a ponta devedora, promovendo a posterior compensação; eventual saldo credor, se existente em favor da instituição, deverá ser incluído no processo concursal.

Ao final, requerem:

(i) a ratificação da tutela cautelar de urgência concedida, sobretudo quanto à suspensão da eficácia das cláusulas de vencimento antecipado de dívidas, ressalvados apenas os contratos de swap, na forma do art. 193-A da LRF, sem permitir a excussão ou apropriação de eventual saldo credor; e

(ii) a suspensão das execuções e demais medidas de cobrança contra o Grupo Ambipar, além da proibição de qualquer forma de retenção, arresto, penhora, sequestro, busca e apreensão e constrição judicial ou extrajudicial sobre bens das devedoras, na forma do art. 6º da LRF, em linha com a cautelar a ser ratificada;

(iii) a concessão da tutela cautelar requerida na manifestação do evento 53, determinando que: (iii.a) fornecedores de serviços essenciais se abstenham de interromper o fornecimento de bens e serviços ao Grupo Ambipar e de criar embaraços de qualquer natureza ao regular cumprimento contratual, com fundamento em suposto inadimplemento de créditos sujeitos a esta recuperação; (iii.b) suspenda-se a eficácia de cláusulas resolutivas expressas que autorizem a rescisão de contratos essenciais em razão do simples ajuizamento do pedido de tutela preparatória ou deste pedido de recuperação; (iii.c) instituições financeiras e demais credores se abstenham de declarar vencimento antecipado de dívidas relativas a créditos não sujeitos, bem como de promover apreensão, retirada, bloqueio ou qualquer restrição ao uso de bens atrelados a tais instrumentos, enquanto as requerentes estiverem adimplentes com suas obrigações pecuniárias; e (iii.d) empresas locadoras/arrendatárias de equipamentos se abstenham de bloquear, paralisar ou obstar o uso dos equipamentos objeto dos contratos de locação anexados, sob pena de multa de R$ 100 mil por descumprimento;

(iv) a nomeação do Administrador Judicial, nos termos do art. 52, I, da LRF;

(v) nos termos e para os fins do inciso IV do caput do art. 167-B da LRF, a nomeação do Sr. Ricardo Rosanova Garcia, brasileiro, solteiro, administrador, RG nº 21.152.028-7 SSP/SP, CPF nº 259.792.868-37, como representante estrangeiro (foreign representative) de qualquer Requerente, a fim de que, caso necessário, possa se apresentar perante qualquer autoridade estrangeira e atuar em qualquer processo estrangeiro de reestruturação de

dívidas, independentemente da jurisdição, incluindo (sem se limitar) recuperação judicial ou procedimento concursal similar, sejam processos principais, não principais ou acessórios, na forma permitida pela legislação aplicável;

(vi) diante do atendimento de todos os requisitos do art. 69-J da LRF, a autorização para o processamento da recuperação judicial em consolidação processual e substancial, para permitir que o Grupo consolide ativos e passivos em um único plano ou os segregue em mais de um, conforme exijam as circunstâncias negociais futuras com seus milhares de credores e demais stakeholders;

(vii) a dispensa da apresentação de certidões negativas para que as Requerentes possam exercer suas atividades e participar de licitações perante quaisquer órgãos públicos e privados;

(viii) a intimação do Ministério Público e das Fazendas Públicas federal e de todos os Estados, Distrito Federal e Municípios em que houver filiais, na forma do art. 52, V, da LRF; e

(ix) a publicação do Edital previsto no art. 52, § 1º, da LRF.

Na sequência, a Decisão (evento 96), considerando a necessidade de esclarecimentos fáticos para definir a competência do Juízo, postergou a decisão sobre o processamento da recuperação judicial. A título precário: (a) deferiu a consolidação processual e substancial; (b) ratificou, até decisão ulterior e na medida em que pendentes diligências sobre a competência, a tutela cautelar do Evento 9, a qual suspendeu exigibilidade, prescrição, execuções e cobranças relativas a créditos/obrigações com fatos geradores coincidentes ou anteriores, incluindo cláusulas de vencimento antecipado ou amortização acelerada, delimitando que: (b.1) ficam excluídos da ordem de suspensão os créditos com garantia fiduciária, limitado ao valor do bem dado em garantia, os quais, contudo, não poderão ser vendidos ou retirados dos estabelecimentos dos requerentes enquanto no stay period, cujo termo inicial foi antecipado; (b.2) não se sujeitam à ordem de suspensão as cessões fiduciárias de direitos creditórios (recebíveis); (b.3) ficam excluídas da suspensão as cláusulas de vencimento antecipado e de compensação no âmbito de operações compromissadas e de derivativos, conforme artigo 193-A da LRF, bem como as cláusulas de vencimento antecipado de créditos não sujeitos, por não caber a este Juízo a análise de sua legalidade; (c) indeferiu o pedido de tutela do Evento 53, pelo qual as requerentes pretendiam impor unilateralmente a continuidade de relação contratual a fornecedores; (d) deferiu, a título de tutela, a dispensa de apresentação de certidão negativa de recuperação judicial para exercício das atividades e participação em licitações, sem prejuízo da demonstração de viabilidade econômica por outros meios; (e) concedeu mais 5 dias para que a parte autora complementasse informações necessárias à definição da competência, esclarecendo incongruência destacada na decisão e apresentando novo quadro com o volume de negócios separados por locais dos estabelecimentos da sede/filial contratada, em relação a São Paulo, Nova Odessa, Rio de Janeiro e, agora, também, São Francisco do Sul (sede da empresa DRACARES); (f) acolheu em parte os embargos dos Eventos 48, 52, 57 e 93, reconhecendo obscuridade da decisão do Evento 9, para declará-la nos termos desta; (g) exerceu em parte o juízo de retratação em razão dos agravos interpostos (3001203-67.2025.8.19.0000; 3001277-24.2025.8.19.0000 e 3001284-16.2025.8.19.0000), nos exatos termos desta decisão; (h) autorizou que os documentos referidos no item 233 da petição do Evento 89 fossem protocolados sob sigilo, em 5 dias e, havendo dificuldades com o sistema eProc, admitiu-se a formação de feito secundário sigiloso (acautelamento em cartório tido como inconveniente); (i) determinou que, a partir do 6º dia da publicação, os credores teriam mais 5 dias para se manifestar sobre os documentos do item "e", em contraditório; (j) determinou a intimação dos Administradores Judiciais (AJs) para apresentarem suas propostas, conforme o procedimento então fixado e, pelo princípio da cooperação, visando melhores parâmetros para a homologação dos honorários, que esclarecessem o valor global das remunerações dos CFO's do grupo.

Logo depois, as autoras (evento 113) informaram decisão de segunda instância após interposição de agravo de instrumento contra a decisão supracitada, no que concerne à competência e ao deferimento de tutelas de urgência. Informam, em síntese, que o Desembargador Relator, por decisão monocrática, afastou inconsistências documentais, reconheceu após o exame dos documentos apresentados, a competência deste Juízo da 3ª Vara Empresarial da Comarca da Capital para processar, com a urgência que a natureza do rito requer, o pedido de recuperação, e deferiu integralmente as tutelas de urgência, nos termos transcritos:

**"Por todo exposto, DEFIRO a antecipação da tutela recursal, para reconhecer a competência do Juízo da 3ª Vara Empresarial da Comarca da Capital, para processamento, com a urgência que a natureza do rito requer, do pedido de recuperação judicial das agravantes, bem como conceder as tutelas de urgência requeridas no pedido de processamento da recuperação judicial, determinando:** I) aos fornecedores de serviços essenciais que se abstenham de interromper o fornecimento de bens e serviços ao Grupo Ambipar e de criar embaraços de qualquer natureza ao regular cumprimento das disposições contratuais, com fundamento em inadimplemento de créditos sujeitos a recuperação judicial; II) aos respectivos credores, que se abstenham de excutir garantias fiduciárias, inclusive, a cessão fiduciária de direitos creditórios sobre quaisquer contas e aplicações financeiras, e de se apropriar de quaisquer valores e aplicações financeiras dos Grupo Ambipar; III) a suspensão da eficácia de toda e qualquer cláusula resolutiva expressa que autorize a rescisão de contratos essenciais à manutenção das operações das agravantes; IV) aos credores que se abstenham de declarar o vencimento antecipado das dívidas relativas a créditos não sujeitos aos efeitos da recuperação judicial, se abstendo de promover a apreensão, retirada, bloqueio ou qualquer outra forma de restrição ao uso de quaisquer dos bens atrelados aos respectivos instrumentos contratuais; V) que as empresas locadoras ou arrendatárias de equipamentos se abstenham de bloquear, paralisar ou de qualquer forma obstar o uso de equipamentos objeto dos contratos de locação indicados pelas agravantes. O descumprimento das obrigações aqui estabelecidas implicará em imposição de multa de R$ 100.000,00 por cada ato de descumprimento, ou 5% (cinco por cento), do valor do contrato, o que for maior."(grifado)

A vista desse reconhecimento de competência "para processamento, com a urgência que a natureza do rito requer" e do deferimento das tutelas, requereram exame urgente do pedido de recuperação judicial apresentado na manifestação do evento 89.

A Serventia (evento 114) certificou o recebimento de comunicação de decisão de lavra do Exmo. Des. Mauro Pereira Martins, que, em síntese, reconheceu "a competência do Juízo da 3ª Vara Empresarial da Comarca da Capital, para processamento...", com a determinação à 1ª instância para analisar, com a devida urgência, o pedido de recuperação judicial formulado. Em consequência, promoveu-se a conclusão dos autos.

Na mesma ocasião, sobreveio Petição (evento 116) apresentada por FLÁVIA YAMADA DOS SANTOS RAMOS e MAIKE YAMADA DOS SANTOS, alegando serem acionistas detentores, em conjunto, de 45% do capital social da DRYPOL AMBIPAR ENVIRONMENTAL PET SOLUTIONS S.A., uma das companhias inseridas no polo ativo desta recuperação. Informam que, em 30/07/2021, alienaram 55% do capital da DRYPOL à ENVIRONMENTAL ESG PARTICIPAÇÕES S/A, veículo do Grupo AMBIPAR. Ressaltam que a DRYPOL possui histórico robusto e autônomo, de empresa familiar com dedicação ao negócio e credibilidade e, segundo sustentam, permaneceu independente e íntegra mesmo após a entrada do Grupo AMBIPAR no capital social. Com isso, defendem ser absurda e excepcional a situação da DRYPOL, pois nunca houve autorização para que a companhia ajuizasse o pedido cautelar protocolado em seu nome em 24/09/2025 e, agora, em 20/10/2025, impetrasse recuperação judicial.

Acrescentam que a ausência de autorização seria notória, pois, a despeito de procuradorias em nome de várias requerentes, os ilustres advogados que subscrevem as peças não detêm procuração outorgada pela DRYPOL. Além disso, sustentam que a DRYPOL é autônoma, com atividades próprias e independentes, e que existem outros acionistas com participação relevante (45%), os quais detêm direito expresso de permanecer como membros da Diretoria (doc. 3, cláusula 6.3.1), além de poderes de veto em diversas matérias de competência da AGE, inclusive a impetração da recuperação judicial. Enfatizam que não se trata de mais uma SPE do grupo, nem de sociedade cuja recuperação precise ser processada em conjunto (muito menos em consolidação substancial). Ao final, requerem a rejeição do processamento da recuperação judicial da DRYPOL e, eventualmente, o indeferimento do processamento em consolidação substancial com as demais requerentes, determinando que, ao menos em relação à DRYPOL, o processo siga em consolidação processual.

Por fim, consta Petição (evento 118), protocolizada pelo BANCO ABC BRASIL S.A., que noticia inexistir aprovação de acionistas minoritários em relação a algumas sociedades do Grupo.

É o relatório do andamento processual até a presente data, em termos suficientes para orientar a prolação de decisão.

### 1.Preliminar: DA COMPETÊNCIA

Preliminarmente, cumpre registrar o que consta dos autos: o MM. Juiz Leonardo de Castro Gomes, em um primeiro momento, firmou a competência deste Juízo para o processamento do feito, mas, na sequência, diante da controvérsia ventilada acerca do estabelecimento principal e visando à transparência e ao contraditório, determinou a complementação documental pelas partes para elucidação dos pontos controvertidos.

A partir dessa instrução, sobreveio decisão monocrática do Excelentíssimo Desembargador Relator Mauro Pereira Martins, no Agravo de Instrumento nº 3001406-29.2025.8.19.0000/RJ, que dirimiu a controvérsia e fixou este Juízo como competente para o processamento da recuperação judicial, nos seguintes termos:

"Os elementos de prova documental produzidos até o presente momento processual dão conta de que o Grupo Ambipar, em que pese possua atuação em diversos países, com grande volume de atividades no Estado de São Paulo, concentra gestão e concretização de maior volume de negócios na Capital Fluminense, fator determinante da competência para o juízo da recuperação judicial, consoante se extrai da seguinte tabela com dados relacionados aos negócios relacionados a suas atividades. O maior volume de negócios impacta diretamente no faturamento, na receita operacional e na margem de lucro, que, de igual turno, se mostram substancialmente mais elevados em relação ao desempenho verificado no Estado de São Paulo, conforme se depreende dos seguintes dados informados pelas devedoras: '- Cidade SP: Apresenta uma Receita Operacional Líquida (ROL) de 40.634 e um Lucro Líquido (LL) de 4.984, equivalente a 12,3% de margem. Conta com 75 funcionários, resultando em um LL por funcionário de 66,5. - Cidade RJ: Destaca-se como a principal operação do grupo, com ROL de 210.986 e LL de 38.898 (18,4% de margem), envolvendo 246 funcionários. O LL por funcionário é de 158,1, indicando alta produtividade e concentração significativa das operações econômicas do grupo nesta cidade. - Nova Odessa SP: Apresenta um desempenho negativo, com ROL de 131.228 e LL de -11.020 (-8,4% de margem), contando com 243 funcionários. O LL por funcionário é negativo (-45,3), indicando que a unidade não gera lucro relevante e apresenta baixa eficiência operacional.' O conteúdo das informações constantes dos documentos juntados ao processo, frise-se, não foi ilidido por qualquer outro elemento de prova produzido pelos credores interessados. Nessa perspectiva, compete ao foro do Rio de Janeiro processar e julgar conjuntamente o pedido de recuperação judicial relativo às empresas integrantes do mesmo grupo econômico, eis que aqui se concentra, conforme documentos juntados aos autos, o maior volume de negócios, mormente diante da ausência de elementos de prova concretos em sentido contrário."

No mesmo sentido, consta dos autos o parecer do professor e doutrinador Daniel Carnio Costa que corrobora a fixação da competência neste foro, destacando, entre outros pontos:

(...)30. Conforme o entendimento do STJ, **o principal estabelecimento do devedor, especialmente em se tratando de recuperação judicial de grandes grupos econômicos, deve ser o local onde se concentra o maior volume de negócios, pois esse critério assegura, em regra, maior efetividade e coerência ao processo de recuperação judicial, cujo objetivo é o soerguimento da empresa em crise.** 31. No caso concreto, verifica-se que o Grupo Ambipar é um dos maiores conglomerados do setor ambiental, atuando em 41 países com mais de 600 bases operacionais. O grupo atua na gestão de resíduos, recuperação de materiais e resposta a emergências ambientais, gerando mais de 23 mil empregos diretos e recolhendo cerca de R$ 500 milhões em tributos anuais, além de atender mais de 12 mil acionistas dentro e fora do país. **32. De acordo com as informações apresentadas pelo Grupo, a cidade do Rio de Janeiro, dentre todas as outras do país e do mundo, concentra a maior parte das operações do grupo, gerando o maior faturamento, receita operacional e maior margem de lucro. <u>Tal fator evidencia que a capacidade de pagamento das dívidas, elemento central para o processo recuperacional, encontra-se nesta Comarca.</u>** O RJ também abriga infraestrutura operacional significativa para o grupo, incluindo bases em Duque de Caxias, no Porto do Açu e no aeroporto da Barra da Tijuca (onde se situa toda a frota de helicópteros), concentrando as atividades estratégicas nos setores de óleo e gás, portuário e de apoio marítimo. **Ademais, a sede do Rio de Janeiro, localizada na Rua Lauro Muller, nº 116, 27º Andar, Botafogo, é a responsável pela gestão do maior volume de negócios críticos do grupo, pois é nela que se concentram as decisões estratégicas e administrativas relativas às operações econômicas mais relevantes**. (...) 47. À vista das informações apresentadas, conclui-se que a competência para processar a recuperação judicial do Grupo AMBIPAR é do Juízo da Recuperação Judicial da Comarca do Rio de Janeiro (...)" (grifei).

Em cotejo, verifica-se que as providências determinadas pelo Exmo. Juiz Leonardo Gomes, voltadas ao reforço probatório em contraditório, contribuíram para a adequada instrução da matéria, posteriormente valorada na decisão monocrática em 2ª instância, de lavra do Des. Mauro Martins, que reputou suficientes os elementos probatórios trazidos pelas Requerentes, após determinação do Juízo de 1º grau, para a fixação da competência nesta Comarca.

Assim, à luz da instrução probatória determinada pelo Juízo de 1º grau e, por conseguinte, do quanto decidido no Agravo de Instrumento nº 3001406-29.2025.8.19.0000/RJ, além dos fundamentos técnicos acima transcritos, firma-se, nos termos dos artigos 3º e 69-G, § 2º, da Lei 11.101/05, a competência deste Juízo Empresarial para o processamento do pedido de recuperação judicial do Grupo Ambipar.

### 2.Dos questionamentos trazidos pelos sócios da DRYPOL e do Banco ABC

Em relação aos questionamentos apresentados pelos sócios MAIKE YAMADA DOS SANTOS e FLÁVIA YAMADA DOS SANTOS RAMOS, da sociedade empresária DRYPOL, dirigidos à ENVIRONMENTAL ESG PARTICIPAÇÕES S/A (evento 116), bem como à manifestação do BANCO ABC BRASIL S.A. (evento 118), reconheço os fundamentos expendidos.

Não se pode olvidar, contudo, que o legislador, nos artigos 116, parágrafo único, e 122, parágrafo único, ambos da Lei nº 6.404/1976 (Lei das S.A.), previu expressamente hipóteses em que o acionista controlador pode adotar medidas drásticas em benefício da companhia em crise.

Estabelecido, pois, o binômio normativo, qual seja, o dever do controlador de orientar a companhia ao cumprimento de sua função social (art. 116, parágrafo único) e legitimação dos administradores, com sua anuência, para requerer a recuperação (art. 122, parágrafo único), passo ao exame do requisito habilitante da providência, qual seja, a urgência.

A urgência que legitima a medida mostra-se configurada (i) pela tutela cautelar deferida (evento 9) e (ii) pela decisão monocrática do Desembargador Relator MAURO PEREIRA MARTINS no Agravo de Instrumento nº 3001406-29.2025.8.19.0000/RJ, a qual sublinhou a necessidade de pronta definição do processamento, sob pena de "provocar incertezas no mercado, com graves repercussões econômicas e especulações acerca das reais condições das devedoras agravantes, comprometendo ainda mais a crise do grupo empresarial".

Diante desse arcabouço, e com fundamento nos artigos 116, parágrafo único, e 122, parágrafo único, da Lei das S.A., conclui-se configurada a urgência apta a autorizar o requerimento de recuperação judicial, sem prejuízo de que as Requerentes, em prazo razoável a ser fixado por este Juízo, promovam a convocação de assembleia geral para deliberar especificamente sobre a ratificação da medida e as providências correlatas.

### 3.Da consolidação processual e substancial

No que concerne ao pedido de consolidação substancial, ressalta-se o caráter excepcional da medida, nos termos do art. 69-J, caput e incisos, da LRF, sendo certo que sua autorização judicial prescinde de deliberação pela assembleia geral de credores.

Sob o ponto de vista normativo, a autorização exige: (i) comprovação de interconexão e confusão entre ativos ou passivos dos devedores, de modo a inviabilizar a identificação das titularidades sem excessivo dispêndio de tempo ou recursos; cumulada com (ii) demonstração de, ao menos, duas hipóteses previstas nos incisos do art. 69-J da LRF, quais sejam: a) existência de garantias cruzadas; b) relação de controle ou dependência; c) identidade total ou parcial do quadro societário; d) atuação conjunta no mercado entre os postulantes.

No caso concreto, a análise do caderno processual e das razões deduzidas pelas requerentes evidencia o atendimento desses pressupostos. De um lado, foram demonstradas a interconexão e a confusão entre ativos e passivos, com destaque para as garantias cruzadas. Essa circunstância emerge da própria causa de pedir, uma vez que o vencimento cruzado das dívidas repercute em cadeia sobre todo o grupo, de sorte que o pedido de recuperação formulado por uma sociedade deflagra o acionamento de garantias e o vencimento antecipado das obrigações de outras, como fundamentado pelas requerentes e comprovado no anexo 9 ("DOC 8") do evento 89.

Além disso, sob a ótica da relação de controle e dependência, o organograma constante do anexo 8 ("DOC 6") do evento 89 demonstra, de forma clara e objetiva, o controle exercido pela holding sobre diversas sociedades do grupo, bem como a integração de sua governança. Nesse cenário, a segregação de ativos e passivos demandaria dispêndio excessivo de tempo e de recursos, conforme já assinalado por este Juízo na decisão do evento 96.

Diante desse quadro, a negativa de processamento em consolidação substancial acarretaria insegurança jurídica relevante, pois o soerguimento isolado de uma sociedade, em contexto de garantias cruzadas e vencimentos encadeados, tende a precipitar a insolvência das demais.

Por conseguinte, consideradas as provas produzidas e verificados os requisitos do art. 69-J, caput e incisos I e II, da LRF, impõe-se o deferimento da consolidação substancial.

**4.Dos requisitos para o deferimento do processamento da RJ**

Reconhecida a possibilidade de consolidação substancial, nos termos do art. 69-J da Lei 11.101/05, passo ao exame do atendimento dos requisitos legais para o processamento desta recuperação judicial.

A instrução constante dos autos evidencia, com precisão, as causas da crise econômico-financeira, pois, após o ingresso do Sr. João Arruda como CFO da AMBIPAR PARTICIPAÇÕES, evidenciou-se que os contratos de swap originariamente firmados com o Bank of America foram transferidos ao Deutsche Bank e, na sequência, aditados para contemplar hipótese de dação em pagamento dos Green Bonds emitidos pela AMBIPAR LUX no exterior. Com tal aditamento, introduziu-se elemento de natureza especulativa, ao passo que os ajustes precedentes apresentavam caráter não especulativo e se limitavam ao hedge cambial, conforme articulado na petição inicial.

A coerência do quadro probatório se evidencia nos gráficos do item 113 do evento 89, cotejados com a documentação que os acompanha, os quais revelam volatilidade anômala dos Green Bonds e, em juízo de cognição sumária, apontam para possível ataque orquestrado, à vista da queda acentuada representada no material.

A partir dessa inflexão, o Deutsche Bank passou a exigir da AMBIPAR PARTICIPAÇÕES garantias adicionais em patamares superiores aos originalmente estipulados nos swaps, chegando, por derradeiro, à requisição de aporte de R$ 60 milhões, sob pena de vencimento automático e antecipado dos contratos de derivativos e do consequente empréstimo de USD 35 milhões firmado com a própria instituição.

Essa aceleração, por sua vez, desencadeou reação em cadeia por parte de outras instituições financeiras, movidas pelo receio de inadimplemento sistêmico no âmbito do Grupo Ambipar, dinâmica explicável pela disseminação, nos contratos financeiros do Grupo, de cláusulas de vencimento antecipado cruzado, pelas quais a aceleração de uma obrigação irradia efeitos sobre as demais.

Nesse quadro, a tutela cautelar deferida (evento 9) mostrou-se, e permanece, imprescindível à preservação da atividade empresarial: a ausência da blindagem conferida pela Lei 11.101/05 revelaria elevada probabilidade de ruptura imediata de um conglomerado de inegável relevância econômica.

Deve-se notar, ademais, que as requerentes demonstraram, de forma clara e objetiva, que o gatilho da crise decorreu de má-gestão específica, supostamente atribuída ao Sr. João Arruda, na condição de CFO da AMBIPAR PARTICIPAÇÕES. Não obstante, foi simultaneamente evidenciada a viabilidade de superação do quadro, uma vez que à vista da adequada saúde financeira e de caixa, mantinham-se adimplidas a extensa folha salarial, as obrigações perante fornecedores e instituições financeiras e o recolhimento de tributos na ordem anual aproximada de R$ 500.000.000,00.

A esse componente econômico soma-se o vetor institucional: o soerguimento projeta-se na possibilidade de renegociação dos passivos com credores, viabilizando a continuidade da função produtiva e do emprego. Como ressaltado na inicial, o Grupo Ambipar ostenta atuação destacada em gestão ambiental, com promoção do desenvolvimento sustentável e preservação de 2,5 milhões de hectares na Floresta Amazônica.

Sob o ângulo principiológico, o deferimento do processamento harmoniza-se com o art. 47 da LRF (preservação da empresa) e, em complemento, atende à tutela do interesse dos investidores e à estabilidade do mercado de capitais: sendo as recuperandas emissoras com ações disponibilizadas no mercado de valores, a indefinição judicial acerca do processamento, enquanto perdurar, projeta instabilidade que repercute na formação de preços e nas decisões de alocação, com potenciais efeitos deletérios sobre a liquidez e o valor dos papéis. A pronta definição jurisdicional, portanto, não apenas preserva a empresa e a atividade econômica, como também mitiga assimetrias informacionais e protege a confiança dos investidores.

Nessas condições, encontram-se presentes os elementos caracterizadores do processamento da recuperação judicial, na forma do art. 51, I, da Lei 11.101/05.

No tocante à documentação exigida pelos arts. 48 e 51 da LRF, as requerentes indicaram, nos itens 140/141, os "docs" correspondentes aos respectivos incisos, embora com numeração que não guarda exata correlação.

Superado o erro material, os documentos foram localizados, cronologicamente, no evento 90, "outros", itens 17, 18, 19, 20 e 21; a relação de credores consta do evento 89, "outros", item 12.

As certidões dos cartórios de protesto situados nos locais das sedes e filiais das requerentes foram identificadas no evento 90, "outro", item 35; e a relação de todas as ações judiciais e procedimentos arbitrais (inclusive de natureza trabalhista), bem como os demais documentos pertinentes, constam do evento 90, "outros", itens 39, 40, 41 e 42.

Quanto aos incisos IV, VI e VII do art. 51 da LRF e ao relatório gerencial de fluxo de caixa, este Juízo, na decisão do evento 97, item 7, autorizou o protocolo sob sigilo, ressaltando a inconveniência do acautelamento em cartório, decisão que ora se mantém, na íntegra.

Cumpre assentar que as requerentes comprovaram o exercício regular de atividades há mais de 2 (dois) anos, satisfazendo o art. 48 da Lei 11.101/05, bem como os requisitos cumulativos de seus incisos I, II, III e IV; do mesmo modo, estão preenchidos os requisitos do art. 69-J, caput e incisos, da Lei 11.101/05.

Por fim, consideradas a necessária preservação da empresa como fonte produtora de bens e serviços, sua relevância na geração de tributos e postos de trabalho, bem como o conjunto probatório constante dos autos, **DEFIRO O PROCESSAMENTO DA RECUPERAÇÃO JUDICIAL do GRUPO AMBIPAR, EM CONSOLIDAÇÃO SUBSTANCIAL, nos termos do art. 69-J da LRF**. formado pelas sociedades empresárias: (1) **AMBIPAR RESPONSE ENVIRONMENTAL CONSULTING OFFSHORE S.A.**, sociedade inscrita no CNPJ sob o nº 12.285.662/0001-34, com sede no Estado do Rio de Janeiro, na Cidade do Rio de Janeiro, na Rua Lauro Muller, nº 116, Bairro Botafogo, CEP 22.290-160; **(2) AMBIPAR CBL INDÚSTRIA E COMÉRCIO DE MANUFATURADOS S.A.**, sociedade anônima inscrita no CNPJ sob o nº 08.607.957/0001-02, com sede no Estado do Paraná, na Cidade de São José dos Pinhais, na Rua Wenceslau Marek, nº 63, Bairro Águas Belas, CEP 83.010-520; **(3) AMBIPAR CERTIFICATION LTDA.**, sociedade limitada inscrita no CNPJ sob o nº 39.658.648/0001-95, com sede no Estado de São Paulo, na Cidade de São Paulo, na Avenida Angélica, nº 2.346, Bairro Consolação, CEP 01.228-200; **(4) AMBIPAR COMPLIANCE SOLUTIONS S.A.**, sociedade anônima inscrita no CNPJ sob o nº 86.450.624/0001-26, com sede no Estado de Minas Gerais, na Cidade de Belo Horizonte, na Avenida do Contorno, nº 6.594, Bairro Savassi, CEP 30.110-044; **(5) AMBIPAR C-SAFETY COMÉRCIO, INDÚSTRIA E SERVIÇOS LTDA.**, sociedade limitada inscrita no CNPJ sob o nº 22.036.291/0001-00, com sede no Estado do Rio de Janeiro, na Cidade de Niterói, na Rua Manoel Pacheco de Carvalho, nº 102, Bairro Centro, CEP 24.030-290; **(6) AMBIPAR ECO PRODUCTS S.A.**, sociedade anônima inscrita no CNPJ sob o nº 02.941.454/0001-92, com sede no Estado de São Paulo, na Cidade de Nova Odessa, na Rodovia Anhanguera, S/N, Bairro Zona de Produção Industrial Um (ZPI-01), CEP 13.388-220; **(7) AMBIPAR ENVIRONMENT CIRCULAR ECONOMY FPI PARANÁ LTDA.**, sociedade limitada inscrita no CNPJ sob o nº 26.611.091/0001-95, com sede no Estado do Paraná, na Cidade de Rolândia, na Rua Hungria, nº 1.909, Bairro Manoel Muller, CEP 86.601-770; **(8) AMBIPAR ENVIRONMENT CIRCULAR ECONOMY FPI S.A.**, sociedade anônima inscrita no CNPJ sob o nº 07.714.426/0001-56, com sede no Estado do Paraná, na Cidade de São José dos Pinhais, na Rua Wenceslau Marek, nº 63, Bairro Aeroporto, CEP 83.010-520; **(9) AMBIPAR ENVIRONMENT CIRCULAR ECONOMY NE LTDA.**, sociedade limitada inscrita no CNPJ sob o nº 16.625.236/0001-53, com sede no Estado do Ceará, na Cidade de Juazeiro do Norte, na Rua Manoel Cassimiro, nº 57, Bairro Prefeito Carlos Alberto da Cruz, CEP 63.041-018; **(10) AMBIPAR ENVIRONMENT CIRCULAR ECONOMY RM S.A.**, sociedade anônima inscrita no CNPJ sob o nº 05.034.679/0001 53, com sede no Estado de São Paulo, na Cidade de São José dos Campos, na Avenida Doutor Sebastião Henrique da Cunha Pontes, nº 8.000, Bairro Chácaras Reunidas, CEP 12.238-365; **(11) AMBIPAR ENVIRONMENT ECONOMIA CIRCULAR NORDESTE S.A.**, sociedade anônima inscrita no CNPJ sob o nº 08.143.344/0001-61, com sede no Estado do Ceará, na Cidade de Juazeiro do Norte, na Avenida do Agricultor, nº 567, Bairro Três Marias, CEP 63.015-130; **(12) AMBIPAR ENVIRONMENT MANAUS LTDA.**, sociedade limitada inscrita no CNPJ sob o nº 12.163.869/0001-36, com sede no Estado do Amazonas, na Cidade de Manaus, na Avenida Abiurana, nº 666, Bairro Distrito Industrial I, CEP 69.075-010; **(13) AMBIPAR ENVIRONMENT RESIDENTIAL COLLECTION S.A.**, sociedade anônima inscrita no CNPJ sob o nº 10.652.751/0001 46, com sede no Estado de São Paulo, na Cidade de São Paulo, na Rua João Antônio de Oliveira, nº 453, Bairro Mooca, CEP 03.111-010; **(14) AMBIPAR ENVIRONMENT REVERSE MANUFACTURING S.A.**, sociedade inscrita no CNPJ sob o nº 10.711.268/0001-95, com sede no Estado de São Paulo, na Cidade de Nova Odessa, na Rod. Anhanguera, S/N, Bairro Zona de Produção Industrial Um (ZPI-01), CEP 13.388 220; **(15) AMBIPAR ENVIRONMENT WASTE MANAGEMENT AL S.A.**, sociedade anônima inscrita no CNPJ sob o nº 02.234.179/0001-77, com sede no Estado de Alagoas, na Cidade de Marechal Deodoro, na Rua Em Projeto Sítio Volta D'água, S/N, Bairro Santa Rita, CEP 57.160-000; **(16) AMBIPAR ENVIRONMENT WASTE MANAGEMENT SUL LTDA.**, sociedade limitada inscrita no CNPJ sob o nº 13.244.668/0001-26, com sede no Estado do Paraná, na Cidade de São José dos Pinhais, na Rodovia BR-376, nº 17.433, Bairro Barro Preto, CEP 83.015-820; **(17) AMBIPAR ENVIRONMENTAL CENTROESTE S.A.**, sociedade anônima inscrita no CNPJ sob o nº 09.255.903/0001-98, com sede no Estado do Mato Grosso, na Cidade de Rondonópolis, na Rua Mario Rossignolo, nº 406, Bairro Distrito Industrial, CEP 78.745-790; **(18) AMBIPAR ENVIRONMENTAL GLASS CULLET RECYCLING SP LTDA.**, sociedade inscrita no CNPJ sob o nº 04.875.792/0001-07, com sede no Estado de São Paulo, na Cidade de Guarulhos, na Avenida Jaraguá, nº 246, Bairro Cidade Industrial Satélite de São Paulo, CEP 07.221-050; **(19) AMBIPAR ENVIRONMENTAL GREEN TIRE AMBIENTAL LTDA.**, sociedade inscrita no CNPJ sob o nº 42.317.705/0001-87, com sede no Estado de Pernambuco, na Cidade de Jaboatão dos Guararapes, na Rodovia Empresário João Santos Filho, nº 2.619, Bairro Muribeca, CEP 54.350-100; **(20) AMBIPAR ENVIRONMENTAL MACHINES S.A.**, sociedade inscrita no

CNPJ sob o nº 21.000.046/0001-80, com sede no Estado de São Paulo, na Cidade de São Paulo, na Avenida Angélica, nº 2.346, Bairro Consolação, CEP 01.228-200; **(21) AMBIPAR ENVIRONMENTAL MINING LTDA.**, sociedade inscrita no CNPJ sob o nº 61.059.978/0001-13, com sede no Estado de São Paulo, na Cidade de São Paulo, na Avenida Leôncio de Magalhães, nº 722, Bairro Jardim São Paulo (Zona Norte), CEP 02.042-000; **(22) AMBIPAR ENVIRONMENTAL NORDESTE LTDA.**, sociedade inscrita no CNPJ sob o nº 24.312.884/0001-88, com sede no Estado de Pernambuco, na Cidade de Jaboatão dos Guararapes, na Rodovia Empresário João Santos Filho, nº 2.619, Bairro Muribeca, CEP 54.350-100; **(23) AMBIPAR ENVIRONMENTAL NORDESTE S.A.**, sociedade inscrita no CNPJ sob o nº 35.960.890/0001-68, com sede no Estado de Pernambuco, na Cidade de Recife, na Rua Professor Aloisio Pessoa de Araújo, nº 75, Bairro Boa Viagem, CEP 51.021-410; **(24) AMBIPAR ENVIRONMENTAL SOLUTIONS - SOLUÇÕES AMBIENTAIS LTDA.**, sociedade inscrita no CNPJ sob o nº 00.679.427/0001-68, com sede no Estado de São Paulo, na Cidade de São Paulo, na Av. Pacaembu, nº 1.088, Bairro Pacaembu, CEP 01.234-000; **(25) AMBIPAR ENVIRONMENTAL SUPREMA INDUSTRIAL SOLUTIONS S.A.**, sociedade inscrita no CNPJ sob o nº 00.512.573/0001-02, com sede no Estado de Minas Gerais, na Cidade de Pedro Leopoldo, na Rod. Dr. Otávio Costa, nº 1.800, Bairro Doutor Lund, CEP 33.250-461; **(26) AMBIPAR ENVIRONMENTAL VIRASER S.A.**, sociedade inscrita no CNPJ sob o nº 17.346.336/0001-03, com sede no Estado de São Paulo, na Cidade de Nova Odessa, na Rod. Anhanguera, nº S/N, Bairro Zona de Produção Industrial Um (ZPI-01), CEP 13.388-220; **(27) AMBIPAR ESG BRASIL S.A.**, sociedade inscrita no CNPJ sob o nº 41.000.384/0001-20, com sede no Estado de São Paulo, na Cidade de Nova Odessa, na Rod. Anhanguera, S/N, Bairro Distrito Industrial I, CEP 13.388-220; **(28) AMBIPAR ESG RISK MANAGEMENT LTDA.**, sociedade inscrita no CNPJ sob o nº 11.078.062/0001-32, com sede no Estado de São Paulo, na Cidade de São Paulo, na Av. Angélica, nº 2.346, Bairro Consolação, CEP 01.228-200; **(29) AMBIPAR FLYONE SERVIÇO AÉREO ESPECIALIZADO, COMÉRCIO E SERVIÇOS S.A.**, sociedade inscrita no CNPJ sob o nº 03.945.337/0001-60, com sede no Estado do Rio de Janeiro, na Cidade de Rio de Janeiro, na Av. Ayrton Senna, nº 2.541, Bairro Barra da Tijuca, CEP 22.775-002; **(30) AMBIPAR GREEN TECH LTDA.**, sociedade inscrita no CNPJ sob o nº 03.175.428/0001-63, com sede no Estado de Minas Gerais, na Cidade de Belo Horizonte, na Av. do Contorno, nº 6.594, Bairro Savassi, CEP 30.110-044; **(31) AMBIPAR HEALTH WASTE SERVICES S.A.**, sociedade inscrita no CNPJ sob o nº 26.893.667/0001-54, com sede no Estado de Pernambuco, na Cidade de Recife, na R. Pereira Barreto, nº 200, Bairro Passarinho, CEP 52.165-050; **(32) AMBIPAR INCORPORATION INVESTMENTS LTDA.**, sociedade inscrita no CNPJ sob o nº 12.696.314/0001-50, com sede no Estado de São Paulo, na Cidade de São Paulo, na Av. Pacaembu, nº 1088, Bairro Pacaembu, CEP 01.234-000; **(33) AMBIPAR METAL RECYCLING LTDA.**, sociedade inscrita no CNPJ sob o nº 44.745.286/0001-00, com sede no Estado de Minas Gerais, na Cidade de Andradas, na Rod. MG 455 Andradas/Pinhal, S/N, Bairro Lagoa Dourada, CEP 37.795-000; **(34) AMBIPAR PARTICIPAÇÕES E EMPREENDIMENTOS S.A.**, sociedade inscrita no CNPJ sob o nº 12.648.266/0001-24, com sede no Estado de São Paulo, na Cidade de São Paulo, na Av. Pacaembu, nº 1.088, Bairro Pacaembu, CEP 01.234-000; **(35) AMBIPAR RESPONSE ANALYTICAL S.A.**, sociedade inscrita no CNPJ sob o nº 10.335.931/0001-02, com sede no Estado do Espírito Santo, na Cidade de ARACRUZ, na Rua Perobas, nº 190, Bairro Coqueiral, CEP 29.199-117; **(36) AMBIPAR RESPONSE DRACARES APOIO MARÍTIMO E PORTUÁRIO S.A.**, sociedade inscrita no CNPJ sob o nº 07.049.258/0001-21, com sede no Estado de Santa Catarina, na Cidade de São Francisco do Sul, na Rua Fernandes Dias, nº 456, Bairro Centro, CEP 89.330-166; **(37) AMBIPAR RESPONSE EMERCENCY MEDICAL SERVICES H S.A.**, sociedade inscrita no CNPJ sob o nº 05.959.078/0001-51, com sede no Estado do Paraná, na Cidade de Pinhais, na R. Vinte e Quatro de Maio, nº 299, Bairro Estância Pinhais, CEP 83.323 060; **(38) AMBIPAR RESPONSE EMERGENCY MEDICAL SERVICES R S.A.**, sociedade inscrita no CNPJ sob o nº 02.464.053/0001-99, com sede no Estado do Paraná, na Cidade de Pinhais, na Rua Vinte e Quatro de Maio, nº 299, Bairro Estância Pinhais, CEP 83.323-060; **(39) AMBIPAR RESPONSE EMERGENCY MEDICAL SERVICES S S.A.**, sociedade inscrita no CNPJ sob o nº 07.759.154/0001-00, com sede no Estado do Paraná, na Cidade de Pinhais, na Rua Vinte e Quatro de Maio, nº 299, Bairro Estância Pinhais, CEP 83.323-060; **(40) AMBIPAR RESPONSE ENVIRONMENTAL REMEDIATION LTDA.**, sociedade inscrita no CNPJ sob o nº 14.233.110/0001-08, com sede no Estado de São Paulo, na Cidade de Indaiatuba, na Rua Augusto Poltronieri, nº 243, Bairro Park Comercial de Indaiatuba, CEP 13.347-443; **(41) AMBIPAR RESPONSE ENVIRONMENTAL SERVICES LTDA.**, sociedade inscrita no CNPJ sob o nº 10.550.896/0001-36, com sede no Estado do Espírito Santo, na Cidade Vitória, na Rua Manoel Feu Subtil, nº 60, Bairro Enseada do Sua, CEP 29.050-917; **(42) AMBIPAR RESPONSE ESPÍRITO SANTO S.A.**, sociedade inscrita no CNPJ sob o nº 27.853.153/0001-38, com sede no Estado do Espírito Santo, na Cidade de Vitória, na R Manoel Feu Subtil, nº 60, Bairro Enseada de Sua, CEP 29.050-917; **(43) AMBIPAR RESPONSE FAUNA E FLORA LTDA.**, sociedade inscrita no CNPJ sob o nº 39.793.153/0001-79, com sede no Estado do Espírito Santo, na Cidade de Vitória, na Rua Manoel Feu Subtil, nº 60, Bairro Enseada do Sua, CEP 29.050-917; **(44) AMBIPAR RESPONSE GEOCIÊNCIAS LTDA.**, sociedade inscrita no CNPJ sob o nº 17.732.383/0001-95, com sede no Estado do Espírito Santo, na Cidade de Vitória, na Rua Manoel Feu Subtil, nº 60, Bairro Enseada do Sua, CEP 29.050-917; **(45) AMBIPAR RESPONSE INDUSTRIAL ROBOT S.A.**, sociedade inscrita no CNPJ sob o nº 33.294.016/0001-03, com sede no Estado de São Paulo, na Cidade de Jacareí, na Rua Harold Barnsley Holland, nº 1.151, Bairro Rio Abaixo, CEP 12.334-403; **(46) AMBIPAR RESPONSE INDUSTRIAL SERVICES S.A.**, sociedade inscrita no CNPJ sob o nº 39.233.457/0001-81, com sede no Estado do Rio de Janeiro, na Cidade de Rio das Ostras, na Av. Dos Bandeirantes, nº 690, Bairro Enseada das Gaivotas, CEP 28.897-188; **(47) AMBIPAR RESPONSE MARINE S.A.**, sociedade inscrita no CNPJ sob o nº 06.086.769/0001-50, com sede no Estado do Rio de Janeiro, na Cidade de Niterói, na Rua Engenheiro Fábio Goulart, nº 163, Bairro Ilha da Conceição, CEP 24.050-090; **(48) AMBIPAR RESPONSE MARITIME SERVICES PDA S.A.**, sociedade inscrita no CNPJ sob o nº 04.978.039/0001-39, com sede no Estado do Espírito Santo, na Cidade de Vitória, na Rua das Palmeiras, nº 795, Bairro Santa Lucia, CEP 29.056-210; **(49) AMBIPAR RESPONSE S.A.**, sociedade inscrita no CNPJ sob o nº 11.414.555/0001-04, com sede no Estado de São Paulo, na Cidade de São Paulo, na Av. Pacaembu, nº 1.088, Bairro Pacaembu, CEP 01.234-000; **(50) AMBIPAR RESPONSE TANK CLEANING S.A.**, sociedade inscrita no CNPJ sob o nº 18.591.097/0001-10, com sede no Estado do Rio de Janeiro, na Cidade de Niterói, na Pça. Marechal Stenio Caio de Albuquerque Lima,

nº 102, Bairro Centro, CEP 24.030-290; **(51) AMBIPAR WASTE TO ENERGY S.A.**, sociedade inscrita no CNPJ sob o nº 05.458.585/0001-01, com sede no Estado de Pernambuco, na Cidade de Jaboatão dos Guararapes, na Rod. Empresário João Santos Filho, nº 2.619, Bairro Muribeca, CEP 54.350-100; **(52) AMBIPAR WORKFORCE SOLUTION - MÃO DE OBRA TEMPORÁRIA LTDA.**, sociedade inscrita no CNPJ sob o nº 19.825.185/0001-00, com sede no Estado de São Paulo, na Cidade de Nova Odessa, na Rod. Anhanguera, S/N, Bairro Distrito Industrial I (ZPI-01), CEP 13.388-220; **(53) BOOMERA AMBIPAR GESTÃO AMBIENTAL S.A.**, sociedade inscrita no CNPJ sob o nº 14.512.293/0001-09, com sede no Estado de São Paulo, na Cidade de São Paulo, na Av. Angélica, nº 2.346, Bairro Consolação, CEP 01.228-200; **(54) DRYPOL AMBIPAR ENVIRONMENTAL PET SOLUTIONS S.A.**, sociedade inscrita no CNPJ sob o nº 04.942.888/0001-32, com sede no Estado de São Paulo, na Cidade de Diadema, na Rua Romeu Cicarelli, nº 67, Bairro Vila Odete, CEP 09.942-010; **(55) EMERGÊNCIA PARTICIPAÇÕES S.A.**, sociedade inscrita no CNPJ sob o nº 10.645.019/0001-49, com sede no Estado de São Paulo, na Cidade de São Paulo, na Av. Angélica, nº 2.346, Bairro Consolação, CEP 01.228-200; **(56) ENVIRONMENTAL ESG PARTICIPAÇÕES S.A.**, sociedade inscrita no CNPJ sob o nº 09.527.023/0001-23, com sede no Estado de São Paulo, na Cidade de Nova Odessa, na Rod. Anhanguera, S/N, Bairro Distrito Industrial, CEP 13.388-220; **(57) JM SERVIÇOS INTEGRADOS S.A.**, sociedade inscrita no CNPJ sob o nº 05.120.343/0001-03, com sede no Estado do Paraná, na Cidade de Morretes, na Rua Dionísio Gonçalves do Nascimento, nº 102, Bairro Raia Velha, CEP 83.350-000; **(58) RG RESPONSE S A**, sociedade inscrita no CNPJ sob o nº 14.113.259/0001-53, com sede no Estado do Mato Grosso, na Cidade de Cuiabá, na Av. Professora Edna Maria de Albuquerque Affi (Jd. Imperial 2ª E, LT 27, Bairro Jardim Imperial, CEP 78.076-001; **(59) RMC2 SOLUÇÕES AMBIENTAIS LTDA.**, sociedade inscrita no CNPJ sob o nº 28.077.248/0001-70, com sede no Estado de São Paulo, na Cidade de Indaiatuba, na Al. Jupiter, nº 1.123, Bairro Distrito Industrial Nova Era, CEP 13.347-397; **(60) TERRA DRONE BRASIL SERVIÇOS DE ENGENHARIA S.A.**, sociedade inscrita no CNPJ sob o nº 29.301.466/0001-09, com sede no Estado do Rio de Janeiro, na Cidade de Rio de Janeiro, na Av. Olegário Maciel, nº 531, Bairro Barra da Tijuca, CEP 22.621-200; **(61) AMBIPAR ENVIRONMENT CULLET RECICLYNG BRASIL S.A.**, sociedade anônima inscrita no CNPJ sob o nº 54.229.824/0001-67, com sede no Estado de São Paulo, na Cidade de São Paulo, na Avenida Angélica, nº 2.346, Bairro Consolação, CEP 01.228-200; **(62) AMBIPAR ENVIRONMENT POS CONSUMO LTDA.**, sociedade limitada inscrita no CNPJ sob o nº 55.940.475/0001-50, com sede no Estado de São Paulo, na Cidade de São Paulo, na Avenida Angélica, nº 2.346, Bairro Consolação, CEP 01.228-200; **(63) AMBIPAR ENVIRONMENTAL ECOPARQUE S.A.**, sociedade anônima inscrita no CNPJ sob o nº 53.172.475/0001-21, com sede no Estado de Pernambuco, na Cidade de Igarassu, na Rodovia BR 101 Norte, S/N, Bairro Área Rural de Igarassu, CEP 53.659 899; **(64) AMBIPAR ENVIRONMENT INDUSTRIAL WATER SOLUTIONS LTDA.**, sociedade inscrita no CNPJ sob o nº 10.808.894/0001-02, com sede no Estado de São Paulo, na Cidade de Piracicaba, na Rua Frei Vital de Primeiro, nº 247, bairro Vila Pacaembu, CEP 13.424-580; **(65) AMBIPAR RESPONSE PARTICIPAÇÕES BRASIL S.A.**, sociedade inscrita no CNPJ sob o nº 58.238.535/0001-85, com sede no Estado de São Paulo, na Cidade de São Paulo, na Av. Angélica, nº 2.346, Bairro Consolação, CEP 01.228-200; **(66) AMAZONIA INCORPORAÇÃO E PARTICIPAÇÃO S.A.**, sociedade inscrita no CNPJ sob o nº 13.113.933/0001-37, com sede no Estado de São Paulo, na Cidade de São Paulo, na Av. Pacaembu, nº 1.088, Bairro Pacaembu, CEP 01.234-000; **(67) NUTRIGÁS S.A.**, sociedade inscrita no CNPJ sob o nº 39.793.260/0011-79, com filial no Estado de São Paulo, na Cidade de São Paulo, na Av. Pacaembu, nº 1088, Bairro Pacaembu, CEP 01.234-000; **(68) NUTRIPETRO S.A.**, sociedade inscrita no CNPJ sob o nº 10.608.868/0001-22, com sede no Estado do Espírito Santo, na Cidade de Aracruz, na Av. Professor Aparício Alvarenga, S/N, Bairro Barra do Riacho, CEP 29.197-556; **(69) CRICARE PRAIA HOTEL LTDA.**, sociedade inscrita no CNPJ sob o nº 17.855.660/0001-57, com sede no Estado do Espírito Santo, na Cidade de Conceição da Barra, na Rua Capitão Antero Faria, S/N, Bairro Centro, CEP 29.960-970; **(70) EVEREST PARTICIPAÇÕES E EMPREENDIMENTOS S.A.**, sociedade inscrita no CNPJ sob o nº 13.051.485/0001-94, com sede no Estado de São Paulo, na Cidade de São Paulo, na Av. Pacaembu, nº 1.088, Bairro Pacaembu, CEP 01.234-000; **(71) AMBIPAR LUX S.À.R.L.**, sociedade inscrita no Registro de Comércio e Sociedades de Luxemburgo ("RCSL") sob o nº B279448, com sede em Luxemburgo e AMBIPAR EMERGENCY RESPONSE, sociedade inscrita no CNPJ sob o nº 49.261.471/0001-42 CO-390269, com sede nas Ilhas Cayman.

Nos termos dos arts. 6º e 52 da Lei nº 11.101/2005, determino o que segue:

**I – DISPENSA DE CERTIDÕES**

Fica dispensada a apresentação de certidões negativas para o regular exercício das atividades pelas requerentes.

**II – DO NOME EMPRESARIAL**

Determino que as requerentes acresçam, após o respectivo nome empresarial, a expressão "em recuperação judicial".

**III – DA SUSPENSÃO DAS AÇÕES**

A) Suspendo todas as ações e execuções movidas contra as requerentes, na forma do art. 6º, § 4º, da Lei nº 11.101/2005, a contar de 24/9/2025, por 180 (cento e oitenta) dias corridos, permanecendo os autos no juízo de origem, ressalvadas as hipóteses dos §§ 1º, 2º e 7º do art. 6º, bem como aquelas relativas a créditos excetuados nos §§ 3º e 4º do art. 49 da mesma lei. Para obstar interpretações equivocadas, fixo como fato gerador desta recuperação judicial o dia 24/9/2025 (data do protocolo da tutela cautelar antecedente).

B) Ratifico os efeitos da tutela cautelar deferida no evento 9 e referendada pelo Exmo. Des. Rel. Mauro Pereira Martins, em decisão monocrática no Agravo de Instrumento nº 3001406-29.2025.8.19.0000/RJ. Para adequada publicidade e compreensão, reproduzo o teor do evento 9, assinalando que a suspensão vigorará durante

o stay period. Assim, no período:

i) suspende-se a exigibilidade e o curso da prescrição dos créditos e das obrigações (inclusive de fazer, não fazer e dar) das requerentes e partes relacionadas, cujos fatos geradores sejam coincidentes ou anteriores à data acima;

ii) suspendem-se as execuções e quaisquer medidas de cobrança contra as requerentes e partes relacionadas relativas a créditos ou obrigações (inclusive de fazer, não fazer e dar) cujos fatos geradores sejam coincidentes ou anteriores à referida data;

iii) vedam-se quaisquer formas de retenção, arresto, penhora, sequestro, busca e apreensão e constrição judicial ou extrajudicial sobre bens das requerentes e de suas partes relacionadas, oriundas de demandas judiciais ou extrajudiciais com fatos geradores coincidentes ou anteriores à mesma data.

C) Em consonância com a tutela de urgência concedida no Agravo de Instrumento nº 3001406-29.2025.8.19.0000/RJ, dou ampla publicidade à decisão de segunda instância e a ratifico, determinando:

i) aos fornecedores de serviços essenciais que se abstenham de interromper o fornecimento de bens e serviços ao GRUPO AMBIPAR e de criar embaraços de qualquer natureza ao regular cumprimento das disposições contratuais, com fundamento em inadimplemento de créditos sujeitos à recuperação judicial;

ii) aos credores, que se abstenham de excutir garantias fiduciárias, inclusive cessão fiduciária de direitos creditórios sobre quaisquer contas e aplicações financeiras, bem como de se apropriar de quaisquer valores e aplicações financeiras do Grupo Ambipar;

iii) a suspensão da eficácia de toda e qualquer cláusula resolutiva expressa que autorize a rescisão de contratos essenciais à manutenção das operações das agravantes;

iv) aos credores, que se abstenham de declarar o vencimento antecipado de dívidas relativas a créditos não sujeitos aos efeitos da recuperação judicial, abstendo-se de promover apreensão, retirada, bloqueio ou qualquer outra restrição ao uso de bens vinculados aos respectivos instrumentos contratuais;

v) às empresas locadoras ou arrendatárias de equipamentos, que se abstenham de bloquear, paralisar ou de qualquer forma obstar o uso de equipamentos objeto dos contratos de locação indicados pelas agravantes. O descumprimento das obrigações ora fixadas acarretará multa de R$ 100.000,00 por ato de descumprimento, ou 5% (cinco por cento) do valor do contrato, o que for maior.

### IV – DO REPRESENTANTE ESTRANGEIRO (ART. 167-B DA LRF)

Nos termos do art. 167-B, caput, IV, da LRF, nomeio o Sr. Ricardo Rosanova Garcia, brasileiro, solteiro, administrador, RG nº 21.152.028-7 SSP/SP, CPF nº 259.792.868-37, como representante estrangeiro (foreign representative) de qualquer Requerente, a fim de que, se necessário, possa apresentar-se perante autoridades estrangeiras e atuar em processos estrangeiros de reestruturação de dívidas, em qualquer jurisdição em que tal atuação se mostre necessária ou útil, incluindo, sem limitação, recuperação judicial ou procedimento concursal similar, sejam processos principais, não principais ou acessórios, conforme a legislação aplicável das respectivas jurisdições.

### V – DA APRESENTAÇÃO DE CONTAS MENSAIS

Determino que as recuperandas apresentem contas demonstrativas mensais durante todo o processamento da recuperação judicial, até o quinto dia útil do mês subsequente, remetendo cópia à Administração Judicial Conjunta no mesmo prazo, para cumprimento do art. 22, II, "c", da LRF, sob pena de destituição de seus administradores.

### VI – DAS INTIMAÇÕES

Determino as intimações do Ministério Público e das Fazendas Públicas Federal, Estaduais e Municipais nas quais as recuperandas exerçam atividade empresarial. Com fundamento no art. 6º do CPC, determino que as recuperandas indiquem, em petição avulsa, todos os Municípios em que exerçam atividade, para fins de intimação dos respectivos entes.

### VII – OFÍCIOS ÀS JUNTAS COMERCIAIS

Expeçam-se ofícios às Juntas Comerciais competentes para anotação do pedido de recuperação nos respectivos registros, devendo constar, após o nome empresarial, a expressão "em Recuperação Judicial". Com fundamento no art. 6º do CPC, determino que as recuperandas informem, em petição avulsa, as Juntas Comerciais que deverão ser oficiadas.

### VIII – DA PUBLICAÇÃO DO EDITAL

Determino a expedição e publicação do edital previsto no art. 52, § 1º, da Lei nº 11.101/2005, devendo ser observada a consolidação substancial desta recuperação judicial.

### IX – DA HABILITAÇÃO ADMINISTRATIVA

Determino que os credores, a contar da publicação do edital a que alude o art. 52, § 1º, da Lei nº 11.101/2005, apresentem, no prazo de 15 (quinze) dias, suas habilitações ou divergências à Administração Judicial Conjunta, a qual deverá observar tratar-se de recuperação judicial em consolidação substancial. O prazo é contado em dias corridos.

### X – DA PUBLICAÇÃO DA RELAÇÃO DE CREDORES PELA ADMINISTRAÇÃO JUDICIAL

Nos termos do art. 7º, § 2º, da LRF, o administrador judicial, com base nas informações e documentos colhidos na forma do caput e § 1º do art. 7º, publicará edital contendo a relação de credores no prazo de 45 (quarenta e cinco) dias, contado do término do prazo do § 1º do art. 7º, indicando local, horário e prazo comum em que as pessoas mencionadas no art. 8º terão acesso à documentação que fundamentou a relação, sendo a contagem de prazo efetuada em dias corridos. A Administração Judicial deverá observar a consolidação substancial.

### XI – DAS IMPUGNAÇÕES

O credor que impugnar a lista apresentada pela Administração Judicial (art. 7º, § 2º) deverá DISTRIBUIR A IMPUGNAÇÃO POR DEPENDÊNCIA, no EPROC, como INCIDENTE PROCESSUAL, no prazo de 10 (dez) dias, na forma do art. 8º da LRF, processando-se nos termos do art. 13 e seguintes. Ressalto que a apresentação de impugnação nos autos principais é VEDADA e será tida por intempestiva, por configurar erro grosseiro, destacando-se que o prazo é contado em dias corridos.

A serventia fica desde já autorizada a excluir, por certidão e independentemente de conclusão, impugnações indevidamente protocoladas nestes autos principais.

### XII – DAS HABILITAÇÕES RETARDATÁRIAS

As habilitações retardatárias deverão ser distribuídas POR DEPENDÊNCIA, diretamente no EPROC, como INCIDENTE PROCESSUAL, conforme art. 10, §§ 5º e 6º, da Lei nº 11.101/2005. É VEDADA a habilitação nestes autos principais.

A serventia fica desde já autorizada a excluir, por certidão e independentemente de conclusão, habilitações indevidamente apresentadas no feito principal.

### XIII – DA APRESENTAÇÃO DO PLANO

As recuperandas deverão apresentar os planos de recuperação no prazo de 60 (sessenta) dias, contado da publicação desta decisão, observando os requisitos do art. 53 da Lei nº 11.101/2005 e a existência de consolidação substancial, ressaltando que o prazo é contado em dias corridos.

No ato de apresentação, deverão providenciar a minuta do edital em mídia em formato Microsoft Word e o recolhimento das custas processuais.

### XIV – DAS OBJEÇÕES

As objeções ao plano serão apresentadas nestes autos no prazo de 30 (trinta) dias, contado da publicação da relação de credores de que trata o art. 7º, § 2º, da LRF. O prazo é contado em dias corridos.

### XV – DA NÃO INTERVENÇÃO

Para resguardar a celeridade e a eficiência processuais e evitar tumulto no regular andamento do feito, fica LIMITADA A INTERVENÇÃO de credores e terceiros interessados nos autos principais desta recuperação judicial, salvo quando a lei expressamente o permitir (v.g., apresentação de objeções ou recursos).

Qualquer requerimento estranho ao curso regular deverá ser formulado em apartado, como procedimento incidental, com vista às Recuperandas, à Administração Judicial e ao Ministério Público.

### XVI – DAS INTIMAÇÕES

FICA VEDADA a anotação, nestes autos, de advogados de todos os credores e interessados, competindo-lhes acompanhar o andamento do processo no sítio eletrônico deste Egrégio Tribunal de Justiça, sendo as intimações dos atos processuais realizadas por publicação no Diário da Justiça eletrônico (D.O.).

### XVII – DA ADMINISTRAÇÃO JUDICIAL

Consideradas as particularidades do feito, esta Magistrada registra que não adota, como regra, a sistemática de processo competitivo para a nomeação do Administrador Judicial, tal como prevista no evento 9.

Todavia, atuando nesta demanda em substituição ao Magistrado responsável pelo prosseguimento do caso, reputo necessário preservar o método por ele determinado e já em curso, prestigiando-se a orientação do Juízo natural e evitando-se insegurança jurídica.

Em contrapartida, o art. 52, I, da LRF impõe ao Juízo, ao deferir o processamento, o dever de nomear Administrador Judicial. Assim, para cumprimento do dispositivo legal, procederei à nomeação de um Administrador Judicial, dentre os indicados no evento 9, para atuar provisoriamente até o encerramento do processo competitivo. Não obstante, na análise final do processo competitivo, o Magistrado responsável poderá, se entender pertinente, nomear dois Administradores Judiciais, de acordo com as premissas da jurisprudência já estabelecida neste tribunal de justiça.

Ressalvo, ademais, o entendimento desta Magistrada quanto à conveniência da nomeação conjunta em recuperações judiciais de reconhecida magnitude e complexidade. A coerência do Juízo com suas próprias decisões, por sinal, é vetor de segurança jurídica. Em caso análogo, o do Clube de Regatas Vasco da Gama/Vasco SAF, deferi a nomeação de dois Administradores Judiciais, solução que, embora impugnada pelo Ministério Público, foi mantida em sede recursal pelo Desembargador Cesar Felipe Cury (AI nº 0020234-27.2025.8.19.0000), exatamente em razão da complexidade do feito e da necessidade de maior eficiência fiscalizatória sem incremento de custos.

Nesse tocante, ainda que o Ministério Público Estadual costume opor-se à nomeação conjunta, sob alegação de ausência de previsão expressa, o Tribunal de Justiça do Estado do Rio de Janeiro tem admitido a medida em hipóteses de alta complexidade, em linha com os precedentes: AI nº 0009137-98.2023.8.19.0000 (Grupo Oi), relatoria da Desembargadora Mônica Maria Costa Di Piero, e AI nº 0002604-26.2023.8.19.0000 (Lojas Americanas), relatoria da Desembargadora Leila Santos Lopes.

Em tais julgados, assentou-se a possibilidade de atuação conjunta, sem majoração remuneratória, quando devidamente justificada pela envergadura do processo, pela multidisciplinaridade exigida e pela busca de eficiência e transparência na fiscalização, além da expressa divisão de tarefas comunicada ao Juízo.

No mesmo sentido, o Centro de Estudos e Debates-CEDES/TJRJ-Direito empresarial, aprovou o Enunciado nº 1 estabelecendo que **"É admissível a nomeação conjunta de mais de um Administrador Judicial no processamento da recuperação judicial, devidamente fundamentada pelo Juízo em razão da complexidade e quando a estrutura do grupo econômico ou a multiplicidade de estabelecimentos justificar uma clara divisão de funções, desde que observado o disposto no art. 24, § 1º, da Lei 11.101/2005 e o art. 5º, §§ 3º e 4º, da Resolução 393/2021/CNJ." (grifei).**

Registre-se, ainda, a prática observada em outros Tribunais em recuperações de grande porte/complexidade, como nos casos das Recuperações Judiciais da Samarco Mineração, processo n. 5046520-86.2021.8.13.0024 e Cruzeiro Esporte Clube, processo n. 5145674-43.2022.8.13.0024.

Diante disso, perfilho a compreensão de que, em cenários como o presente, a nomeação de dois Administradores Judiciais tende a proporcionar maior transparência, especialização e eficiência, sem concentração indevida de honorários e com ganho de qualidade técnica e de acessibilidade aos credores.

A remuneração, na linha que adoto, deve ser partilhada na proporção de 50% para cada Administração, de modo a impedir ônus adicional às recuperandas e prejuízo aos credores.

Quanto aos parâmetros de escolha, observados os critérios estimulados pelo CNJ e por este Egrégio Tribunal (transparência e rotatividade), adoto: a) expertise necessária e comprovada para processos de grande complexidade; b) confiança do Juízo na atuação; c) ausência de nomeação pretérita por esta Magistrada, privilegiando diversidade; d) ausência de mais de quatro nomeações simultâneas neste Juízo.

Em respeito à decisão do evento 9, a escolha recairá, provisoriamente e dentre os indicados, sobre: (1) VPJ Administração Judicial (CNPJ 55.870.751/0001-50), na pessoa do Dr. Victor Saraiva Torres; (2) Neves, Figueiredo, Cerqueira e Souza, na pessoa do Dr. Athos de Andrade Figueira Neves (OAB/RJ 211747); (3) Augusto Alves Moreira Neto (Gomes de Mattos Advogados Associados); (4) Carapetcov Administração Judicial, na pessoa do Dr. Thiago Carapetcov (OAB/RJ 151772).

### A) Da expertise necessária e comprovada para atuação em processos de grande complexidade

Não tive, até o momento, acesso aos currículos de todos os Administradores listados, uma vez que o prazo para o encerramento do processo competitivo vai se encerrar em 03 de novembro de 2025. Por isonomia, deixo excepcionalmente de aplicar este critério nesta escolha provisória.

### B) Da confiança do Juízo

Nos termos do art. 5º, caput, da Resolução CNJ 393/2021 e do art. 6º, caput, do Provimento CGJ 38/2022, consigno conhecimento pretérito da atuação da Administração Judicial Neves, Figueiredo, Cerqueira e Souza (nomeações por outro Magistrado na 4ª Vara Empresarial), com avaliação positiva quanto à colaboração, diligência e probidade.

Em relação ao Dr. Thiago Carapetcov, quando esta Magistrada esteve à frente da 7ª Vara Empresarial, constatou-se atuação ética, proba e cooperativa na recuperação da Real Distribuidora Única Rio Comércio de Refrigeração Ltda., com comunicação contínua e efetiva com o Juízo, embora nomeado por outro Magistrado.

Em relação aos demais, não houve oportunidade de avaliação direta, razão pela qual a experiência e a confiança aferidas em relação àquela Administração e ao referido profissional amparam a escolha provisória de um dos dois para atuar até o desfecho do processo competitivo.

**C) Da ausência de nomeação pretérita por esta Magistrada**

Houve nomeação anterior da Administração Neves, Figueiredo, Cerqueira e Souza por esta Magistrada no processo 0080942-85.1998.8.19.0001. Por sua vez, a Carapetcov Administração Judicial, embora conte com a confiança deste Juízo quanto à atuação do Dr. Thiago Carapetcov, ainda não foi objeto de nomeação por esta Magistrada.

Em critério lógico, objetivo e transparente — e para fomentar a diversidade de atuações, entendo adequada a nomeação da Carapetcov Administração Judicial, a título provisório, até o encerramento do processo competitivo.

**D) Da ausência de nomeação em mais de quatro recuperações judiciais neste Juízo**

Verifiquei, em consulta interna, a inexistência de atuação da Carapetcov Administração Judicial em mais de quatro recuperações judiciais perante este Juízo, nos termos do art. 6º, § 3º, do Provimento CGJ 38/2022.

**Pelo esposado, NOMEIO, A TÍTULO PROVISÓRIO, até o encerramento do processo competitivo, a CARAPETCOV ADMINISTRAÇÃO JUDICIAL (CNPJ 60.437.945/0001-05)**, com endereço na Praça Quinze de Novembro, sala 502, Centro – RJ, sup.r.mercado 12, representada por THIAGO CARAPETCOV (OAB/RJ 151772), e-mail: [thiago@carapetcovaj.com.br] (**mailto:thiago@carapetcovaj.com.br**).

Sem prejuízo, e conforme já exposto, na análise final do processo competitivo, o Magistrado responsável poderá, se entender pertinente, nomear dois Administradores Judiciais, de acordo com as premissas da jurisprudência já estabelecida neste tribunal de justiça e julgados supracitados.

À serventia para intimar o Administrador Judicial a fim de que, no prazo de 24 (vinte e quatro) horas, manifeste aceitação e lavre o termo próprio.

Havendo aceitação, comunique-se, pelo e-mail [dgfaj.diaaiauxjus@tjrj.jus.br] (mailto:dgfaj.diaaiauxjus@tjrj.jus.br), a Divisão de Acompanhamento e Análise de Indicadores (DIAAI/CGJ), na forma do Provimento CGJ nº 22/2023. Por fim, considerando o processo competitivo em curso, deixo de aplicar a Recomendação nº 141/2023 do CNJ.

**XVII.1 –** A Administração Judicial Provisória fica advertida de que, na remuneração pelo encargo provisório, a ser posteriormente arbitrada pelo Juízo, deverão estar incluídos todos os gastos com profissionais externos (advogados, contadores, economistas e assemelhados) e demais custos administrativos necessários ao regular processamento do feito, lembrando que a decisão de nomeação só se tornará definitiva com o termo do processo competitivo a ser analisado com a entrega final dos documentos.

**XVII.2 –** Nos termos do art. 22, III, "c", da LRF, a Administração Judicial Provisória deverá apresentar, neste feito principal, relatório mensal do desenvolvimento das atividades das recuperandas até o 20º (vigésimo) dia do mês subsequente.

**XVII.3 –** A Administração Judicial deverá apresentar, no prazo de 30 (trinta) dias úteis, relatório circunstanciado, neste feito principal, abrangendo as atividades das sociedades (aspectos financeiros e econômicos), a fim de demonstrar ao Juízo e aos credores a realidade das recuperandas.

**XVII.4 –** A Administração Judicial deverá indicar endereço eletrônico específico e providenciar, no prazo máximo de 15 (quinze) dias, respostas a ofícios e solicitações de outros juízos e órgãos públicos, independentemente de prévia deliberação judicial. Com a juntada do e-mail, fica a serventia autorizada a encaminhar as comunicações diretamente à Administração Judicial, nos termos do art. 22, I, "m", da Lei 11.101/2005.

**XVII.5 –** O descumprimento dos ônus processuais poderá ensejar substituição ou destituição da Administração Judicial, conforme o caso concreto.

**XVIII – DO PEDIDO DE APRESENTAÇÃO DA RELAÇÃO INTEGRAL DOS FUNCIONÁRIOS**

No que concerne aos pedidos de sigilo relativos aos documentos referidos no art. 51, incisos IV, VI e VII, da LRF, determino que as recuperandas instaurem incidente processual próprio e juntem as respectivas peças no prazo de 48 (quarenta e oito) horas, devendo, em seguida, peticionar nestes autos para informar a numeração do incidente, que deverá tramitar em segredo de justiça.

Em relação aos incisos IV e VII, há inequívoco interesse dos credores, devidamente relacionados ou habilitados em tempo, em conhecer a força de trabalho da devedora (identificação, cargos e remunerações), bem como os dados necessários ao escrutínio econômico-financeiro, a fim de avaliarem, de modo amplo, a viabilidade do PRJ.

De outro lado, não se pode converter o processo recuperacional em via de acesso indiscriminado, por terceiros alheios ao feito, a dados íntimos de empregados e a informações bancárias e fiscais das recuperandas.

Impõe-se, pois, a ponderação entre (i) o direito dos credores, titulares da prerrogativa de aprovar ou rejeitar o PRJ, ao acesso informacional indispensável à formação de sua vontade, e (ii) a tutela da intimidade e da vida privada dos trabalhadores, bem como dos sigilos bancário e fiscal das devedoras. Dessa ponderação resulta a seguinte disciplina: o sigilo dos documentos previstos nos incisos IV e VII será mitigado apenas em favor dos credores com direito de voto, que poderão acessá-los para embasar sua decisão sobre o PRJ.

Para evitar tumulto processual, os credores interessados, isto é, aqueles aptos a aprovar ou rejeitar o PRJ, deverão requisitar diretamente à Administração Judicial as documentações dos incisos IV e VII. Caberá à Administração Judicial disponibilizá-las no prazo de 48 (quarenta e oito) horas, contado do recebimento do pedido, independentemente de nova ordem judicial, comunicando às recuperandas a relação das partes que obtiveram acesso. Em caso de negativa, a Administração Judicial deverá, de imediato, submeter a este Juízo as razões da não disponibilização.

Por sua vez, no que respeita aos bens pessoais de administradores e sócios controladores (art. 51, VI), o sigilo permanece integral. A divulgação dessas informações não contribui para o regular andamento desta recuperação e, ao revés, expõe desnecessariamente a segurança e a intimidade dos administradores e sócios-controladores, frisando-se que esse sigilo, por óbvio, será aplicado ao Judiciário, ao MP e à Administração Judicial nomeada, auxiliar do Juízo.

Ao Cartório para retificar a classe processual, vez que a recuperação judicial foi deferida.

Publique-se. Intimem-se.

Vista ao Ministério Público.

---

Documento assinado eletronicamente por **CAROLINE ROSSY BRANDAO FONSECA, Juíza de Direito**, em 30/10/2025, às 13:43:11, conforme art. 1º, III, "b", da Lei 11.419/2006. A autenticidade do documento pode ser conferida no site https://eproc1g.tjrj.jus.br/eproc/externo_controlador.php? acao=consulta_autenticidade_documentos, informando o código verificador **190000767220v3** e o código CRC **fad7c6cd**.

---

**3014764-58.2025.8.19.0001**                                                                 **190000767220 .V3**

**Exhibit A-2**

**Certified Translation of the Processing Order**



**REPÚBLICA FEDERATIVA DO BRASIL**
*FEDERATIVE REPUBLIC OF BRAZIL*
**ANTONIO DARI ANTUNES ZHBANOVA**
TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL·- *CERTIFIED PUBLIC TRANSLATOR*
ldioma/Language: Inglês - Português/*English - Portuguese*
Matrícula Jucepe nº 406 • CPF 756.770.758-68
Rua Princesa Isabel nº 206 - Aloisio Pinto - Garanhuns (PE) CEP : 55.292-21 0
*Telefone/Phone/Whatsapp* +55 11  9 8784 1006 – (87) 92000-9314 - e-mail: dari.zhbanova@gmail.com  (skype: antonio.dari)

| TRANSLATION No. WT 59387 | BOOK No. 240 | PAGE No.  001 |
| --- | --- | --- |

I, the undersigned Sworn Translator and Commercial Interpreter, hereby CERTIFY this is the description and faithful translation of a DOCUMENT written in Portuguese, which I translate as follows:

Judiciary of the State of Rio de Janeiro
Capital District
3a  Commercial Court of the Capital District
AV. ERASMO BRAGA, 115, LAMINA I, SALA 713, Floor I, Room 713 - Neighborhood: Downtown - ZIP Code: 20020903 - Phone: 21 31332724 - Email: cap03vemp@tjrj.jus.br
PRELIMINARY INJUNCTION No. 3014764-58.2025.8.19.0001/RJ
PETITIONER: AMBIPAR RESPONSE ENVIRONMENTAL CONSULTING OFFSHORE S.A.
DEFENDANT: DEUTSCHE BANK SA GERMAN BANK
ORDER/DECISION
The court records pertaining to the petition for judicial reorganization filed by the AMBIPAR GROUP, comprising the following companies: (1) AMBIPAR RESPONSE ENVIRONMENTAL CONSULTING OFFSHORE S.A., a company registered with the CNPJ under No. 12.285.662/0001-34, with its principal place of business in the State of Rio de Janeiro, in the City of Rio de Janeiro, at Rua Lauro Muller, No. 116, Botafogo neighborhood, ZIP Code 22.290-160; (2) AMBIPAR CBL INDÚSTRIA E COMÉRCIO DE MANUFATURADOS S.A., a corporation registered with the CNPJ under No. 08.607.957/0001-02, with headquarters in the State of Paraná, in the City of São José dos Pinhais, at Rua Wenceslau Marek, No. 63, Águas Belas neighborhood, ZIP Code 83.010-520; (3) AMBIPAR CERTIFICATION LTDA., a limited liability company registered with the CNPJ under No. 39.658.648/0001-95, headquartered in the State of São Paulo, in the City of São Paulo, at Avenida Angélica, No. 2,346, Consolação neighborhood, ZIP Code 01.228-200; (4) AMBIPAR COMPLIANCE SOLUTIONS S.A., a corporation registered with the CNPJ under No. 86.450.624/0001-26, headquartered in the State of Minas Gerais, in the City of Belo Horizonte, at Avenida do Contorno, No. 6,594, Savassi neighborhood, ZIP Code 30-110044; (5) AMBIPAR C-SAFETY COMÉRCIO, INDÚSTRIA E SERVIÇOS LTDA., a limited liability company registered with the CNPJ under No. 22,036.291/0001-00, headquartered in the State of Rio de Janeiro, in the City of Niterói, at Rua Manoel Pacheco de Carvalho, No. 102, Centro neighborhood, ZIP Code 24.030-290; (6) AMBIPAR ECO PRODUCTS S.A., a corporation registered with the CNPJ under No. 02.941.454/0001-92, headquartered in the State of São Paulo, in the City of Nova Odessa, at Rodovia Anhanguera, S/N, Zona de Produção Industrial Um (ZPI-01) neighborhood, ZIP Code 13.388-220; (7) AMBIPAR ENVIRONMENT CIRCULAR ECONOMY FPI PARANÁ LTDA., a limited liability company registered with the CNPJ under No. 26.611.091/0001-95, headquartered in the State of Paraná, in the City of Rolândia, at Rua Hungria, No. 1,909, Manoel Muller Neighborhood, ZIP Code 86.601-770; (8) AMBIPAR ENVIRONMENT CIRCULAR ECONOMY FPI S.A., a corporation registered with the CNPJ under No. 07.714.426/0001-56, headquartered in the State of Paraná, in the City of São José dos Pinhais, at Rua Wenceslau Marek, No. 63, Aeroporto neighborhood, ZIP Code 83.010-520; (9) AMBIPAR ENVIRONMENT CIRCULAR ECONOMY NE LTDA., a limited liability company registered with the

This document was signed by Antonio Dari Antunes Zhbanova. To validate the document and its signatures, access https://asp.assinaturasempapel.com.br/validate/6WHWH-KG88F-AU2T8-L7QVM



FEDERATIVE REPUBLIC OF BRAZIL · REPÚBLICA FEDERATIVA DO BRASIL



**REPÚBLICA FEDERATIVA DO BRASIL**
*FEDERATIVE REPUBLIC OF BRAZIL*
**A N T O N I O   D A R I   A N T U N E S   Z H B A N O V A**
TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL·- *CERTIFIED PUBLIC TRANSLATOR*
ldioma/Language: Inglês - Português/*English - Portuguese*
Matrícula Jucepe nº 406 • CPF 756.770.758-68
Rua Princesa Isabel nº 206  - Aloisio Pinto -  Garanhuns (PE) CEP :  55.292-21 0
*Telefone/Phone/Whatsapp* +55 11  9 8784 1006 – (87) 92000-9314 - e-mail: dari.zhbanova@gmail.com  (skype: antonio.dari)

| TRANSLATION No. WT 59387 | BOOK No. 240 | PAGE No.  002 |
| --- | --- | --- |

CNPJ under No. 16.625.236/0001-53, headquartered in the State of Ceará, in the City of Juazeiro do Norte, at Rua Manoel Cassimiro, No. 57, Prefeito Carlos Alberto da Cruz neighborhood, ZIP Code 63.041-018; (10) AMBIPAR ENVIRONMENT CIRCULAR ECONOMY RM S.A., a public limited company ( ) registered with the CNPJ under No. 05.034.679/0001-53, headquartered in the State of São Paulo, in the City of São José dos Campos, at Avenida Doutor Sebastião Henrique da Cunha Pontes, No. 8,000, Chácaras Reunidas neighborhood, ZIP Code 12.238-365; (11) AMBIPAR ENVIRONMENT ECONOMIA CIRCULAR NORDESTE S.A., a corporation registered with the CNPJ under No.° 08.143.344/0001-61, headquartered in the State of Ceará, in the City of Juazeiro do Norte, at Avenida do Agricultor, No. 567, Três Marias neighborhood, ZIP Code 63.015130; (12) AMBIPAR ENVIRONMENT MANAUS LTDA., a limited liability company registered with the CNPJ under No. 12.163.869/0001-36, headquartered in the State of Amazonas, in the City of Manaus, at Avenida Abiurana, No. 666, Distrito Industrial I neighborhood, ZIP Code 69.075-010; (13) AMBIPAR ENVIRONMENT RESIDENTIAL COLLECTION S.A., a corporation registered with the CNPJ under No. 10.652.751/0001-46, headquartered in the State of São Paulo, in the City of São Paulo, at Rua João Antônio de Oliveira, No. 453, Mooca neighborhood, ZIP Code 03.111-010; (14) AMBIPAR ENVIRONMENT REVERSE MANUFACTURING S.A., a corporation registered with the CNPJ under No. 10.711.268/0001-95, headquartered in the State of São Paulo, in the City of Nova Odessa, at Rod. Anhanguera, S/N, Zona de Produção Industrial Um (ZPI-01) neighborhood, ZIP Code 13.388 220; (15) AMBIPAR ENVIRONMENT WASTE MANAGEMENT AL S.A., a corporation registered with the CNPJ under No. 02.234.179/0001-77, with headquarters in the State of Alagoas, in the City of Marechal Deodoro, at Rua Em Projeto Sítio Volta D'água, S/N, Santa Rita Neighborhood, ZIP Code 57.160-000; (16) AMBIPAR ENVIRONMENT WASTE MANAGEMENT SUL LTDA., a limited liability company registered with the CNPJ under No. 13.244.668/0001-26, headquartered in the State of Paraná, in the City of São José dos Pinhais, at Rodovia BR-376, No. 17.433, Barro Preto neighborhood, ZIP Code 83.015-820; (17) AMBIPAR ENVIRONMENTAL CENTROESTE S.A., a corporation registered with the CNPJ under No. 09.255.903/0001-98, headquartered in the State of Mato Grosso, in the City of Rondonópolis, at Rua Mario Rossignolo, No. 406, Distrito Industrial neighborhood, ZIP Code 78.745-790; (18) AMBIPAR ENVIRONMENTAL GLASS CULLET RECYCLING SP LTDA., a company registered with the CNPJ under No. 04.875.792/0001-07, headquartered in the State of São Paulo, in the City of Guarulhos, at Avenida Jaraguá 246, Cidade Industrial Satélite de São Paulo neighborhood, ZIP Code 07.221-050; (19) AMBIPAR ENVIRONMENTAL GREEN TIRE AMBIENTAL LTDA., a company registered with the CNPJ under No.° 42.317.705/0001-87, headquartered in the State of Pernambuco, in the City of Jaboatão dos Guararapes, at Rodovia Empresário João Santos Filho, No. 2,619, Muribeca neighborhood, ZIP Code 54.350-100; (20) AMBIPAR ENVIRONMENTAL MACHINES S.A., a company registered with the CNPJ under No. 21.000.046/0001-80, headquartered in the State of São Paulo, in the City of São Paulo, at Avenida Angélica, No. 2,346, Consolação neighborhood, ZIP Code 01.228-200; (21) AMBIPAR ENVIRONMENTAL MINING LTDA., a company registered with the CNPJ under No. 61.059.978/0001-13, headquartered in the State of São Paulo, in the City of São Paulo, at Avenida Leôncio de Magalhães, No. 722, Jardim São Paulo neighborhood (North Zone), ZIP Code 02.042-000; (22) AMBIPAR ENVIRONMENTAL NORDESTE LTDA., a company registered with the CNPJ under No.

This document was signed by Antonio Dari Antunes Zhbanova. To validate the document and its signatures, access https://asp.assinaturasempapel.com.br/validate/6WHWH-KG88F-AU2T8-L7QVM



REPÚBLICA FEDERATIVA DO BRASIL — FEDERATIVE REPUBLIC OF BRAZIL



# REPÚBLICA FEDERATIVA DO BRASIL
## *FEDERATIVE REPUBLIC OF BRAZIL*
## A N T O N I O   D A R I   A N T U N E S   Z H B A N O V A

TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL·- *CERTIFIED PUBLIC TRANSLATOR*
Idioma/Language: Inglês - Português/*English - Portuguese*
Matrícula Jucepe nº 406 • CPF 756.770.758-68
Rua Princesa Isabel nº 206  - Aloisio Pinto -  Garanhuns (PE) CEP :  55.292-21 0
*Telefone/Phone/Whatsapp* +55 11  9 8784 1006 – (87) 92000-9314 - e-mail: dari.zhbanova@gmail.com  (skype: antonio.dari)

TRANSLATION No. WT 59387          BOOK No. 240          PAGE No.  003

24.312.884/0001-88, with headquarters in the city of Jaboatão dos Guararapes, State of Pernambuco, at Rodovia Empresário João Santos Filho, No. 2,619, Muribeca neighborhood, ZIP Code 54.350-100; (23) AMBIPAR ENVIRONMENTAL NORDESTE S.A., a company registered with the CNPJ under No. 35.960.890/0001-68, headquartered in the State of Pernambuco, in the City of Recife, at Rua Professor Aloisio Pessoa de Araújo, No. 75, Boa Viagem neighborhood, ZIP code 51.021-410; (24) AMBIPAR ENVIRONMENTAL SOLUTIONS - SOLUÇÕES AMBIENTAIS LTDA., a company registered with the CNPJ under No. 00.679.427/0001-68, headquartered in the State of São Paulo, in the City of São Paulo, at Av. Pacaembu, No. 1,088, Pacaembu neighborhood, ZIP Code 01.234-000; (25) AMBIPAR ENVIRONMENTAL SUPREMA INDUSTRIAL SOLUTIONS S.A., a company registered with the CNPJ under No. 00.512.573/0001-02, with headquarters in the State of Minas Gerais, in the City of Pedro Leopoldo, at Rod. Dr. Otávio Costa, No. 1,800, Doutor Lund neighborhood, ZIP Code 33.250-461; (26) AMBIPAR ENVIRONMENTAL VIRASER S.A., a company registered with the CNPJ under No. 17.346.336/0001-03, headquartered in the State of São Paulo, in the City of Nova Odessa, at Rod. Anhanguera, No. S/N, Zona de Produção Industrial Um (ZPI-01) neighborhood, ZIP Code 13.388-220; (27) AMBIPAR ESG BRASIL S.A., a company registered with the CNPJ under No. 41.000.384/0001-20, headquartered in the State of São Paulo, in the City of Nova Odessa, on Rod. Anhanguera, S/N, District Industrial I, ZIP Code 13.388-220; (28) AMBIPAR ESG RISK MANAGEMENT LTDA., a company registered with the CNPJ under No. 11.078.062/0001-32, headquartered in the State of São Paulo, in the City of São Paulo, at Av. Angélica, No. 2,346, Consolação neighborhood, ZIP Code 01228-200; (29) AMBIPAR FLYONE SPECIALIZED AIR SERVICES, TRADE AND SERVICES S.A., a company registered with the CNPJ under No. 03.945.337/0001-60, headquartered in the State of Rio de Janeiro, in the City of Rio de Janeiro, at Av. Ayrton Senna, No. 2,541, Barra da Tijuca neighborhood, ZIP Code 22.775-002; (30) AMBIPAR GREEN TECH LTDA., a company registered with the CNPJ under No. 03.175.428/0001-63, with its headquarters in the State of Minas Gerais, in the City of Belo Horizonte, at Av. do Contorno, No. 6,594, Savassi neighborhood, ZIP Code 30.110-044; (31) AMBIPAR HEALTH WASTE SERVICES S.A., a company registered with the CNPJ under No. 26.893.667/0001-54, headquartered in the State of Pernambuco, in the City of Recife, at R. Pereira Barreto, No. 200, Passarinho Neighborhood, ZIP Code 52.165-050; (32) AMBIPAR INCORPORATION INVESTMENTS LTDA., a company registered with the CNPJ under No. 12.696.314/0001-50, headquartered in the State of São Paulo, in the City of São Paulo, at Av. Pacaembu, No. 1088, Pacaembu neighborhood, ZIP Code 01.234-000; (33) AMBIPAR METAL RECYCLING LTDA., a company registered with the CNPJ under No. 44.745.286/0001-00, headquartered in the State of Minas Gerais, in the City of Andradas, on Rod. MG 455 Andradas/Pinhal, S/N, Lagoa Dourada neighborhood, ZIP Code 37.795-000; (34) AMBIPAR PARTICIPAÇÕES E EMPREENDIMENTOS S.A., a company registered with the CNPJ under No. 12.648.266/0001-24, headquartered in the State of São Paulo, in the City of São Paulo, at Av. Pacaembu, No. 1,088, Pacaembu neighborhood, ZIP Code 01.234-000; (35) AMBIPAR RESPONSE ANALYTICAL S.A., a company registered with the CNPJ under No. 10.335.931/0001-02, with headquarters in the State of Espírito , in the City of ARACRUZ, at Rua Perobas, No. 190, Coqueiral neighborhood, ZIP Code 29.199-117; (36) AMBIPAR RESPONSE DRACARES APOIO MARÍTIMO E PORTUÁRIO S.A., a company

This document was signed by Antonio Dari Antunes Zhbanova. To validate the document and its signatures, access
https://asp.assinaturasempapel.com.br/validate/6WHWH-KG88F-AU2T8-L7QVM





**REPÚBLICA FEDERATIVA DO BRASIL**
*FEDERATIVE REPUBLIC OF BRAZIL*
**ANTONIO DARI ANTUNES ZHBANOVA**

TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL·- *CERTIFIED PUBLIC TRANSLATOR*
ldioma/Language: Inglês - Português/*English - Portuguese*
Matrícula Jucepe nº 406 • CPF 756.770.758-68
Rua Princesa Isabel nº 206  - Aloisio Pinto - Garanhuns (PE) CEP : 55.292-21 0
*Telefone/Phone/Whatsapp* +55 11  9 8784 1006 – (87) 92000-9314 - e-mail: dari.zhbanova@gmail.com  (skype: antonio.dari)

TRANSLATION No. WT 59387　　　　　BOOK No. 240　　　　　　　　PAGE No.  004

registered with the CNPJ under No. 07.049.258/0001-21, headquartered in the State of Santa Catarina, in the City of São Francisco do Sul, at Rua Fernandes Dias, No. 456, Centro neighborhood, ZIP code 89.330-166; (37) AMBIPAR RESPONSE EMERGENCY MEDICAL SERVICES H S.A., a company registered with the CNPJ under No. 05.959.078/0001-51, headquartered in the State of Paraná, in the City of Pinhais, at Vinte e Quatro de Maio, No. 299, Estância Pinhais neighborhood, ZIP Code 83.323-060; (38) AMBIPAR RESPONSE EMERGENCY MEDICAL SERVICES R S.A., a company registered with the CNPJ under No. 02.464.053/0001-99, with headquarters in the State of Paraná, in the City of Pinhais, at Rua Vinte e Quatro de Maio, No. 299, Estância Pinhais neighborhood, ZIP Code 83.323-060; (39) AMBIPAR RESPONSE EMERGENCY MEDICAL SERVICES S S.A., a company registered with the CNPJ under No. 07.759.154/0001-00, headquartered in the State of Paraná, in the City of Pinhais, at Rua Vinte e Quatro de Maio, No. 299, Estância Pinhais neighborhood, ZIP Code 83.323-060; (40) AMBIPAR RESPONSE ENVIRONMENTAL REMEDIATION LTDA., a company registered with the CNPJ under No. 14.233.110/0001-08, headquartered in the State of São Paulo, in the City of Indaiatuba, at Rua Augusto Poltronieri, No. 243, Park Comercial de Indaiatuba neighborhood, ZIP Code 13.347-443; (41) AMBIPAR RESPONSE ENVIRONMENTAL SERVICES LTDA., a company registered with the CNPJ under No. 10.550.896/0001-36, headquartered in the State of Espírito Santo, in the City of Vitória, at Rua Manoel Feu Subtil, No. 60, Enseada do Sua neighborhood, ZIP Code 29.050-917; (42) AMBIPAR RESPONSE ESPÍRITO SANTO S.A., a company registered with the CNPJ under No. 27.853.153/0001-38, headquartered in the State of Espírito Santo, in the city of Vitória, at Rua Manoel Feu Subtil, No. 60, Enseada de Sua neighborhood, ZIP Code 29.050-917; (43) AMBIPAR RESPONSE FAUNA E FLORA LTDA., a company registered with the CNPJ under No. 39.793.153/0001-79, headquartered in the State of Espírito Santo, in the City of Vitória, at Rua Manoel Feu Subtil, No. 60, Enseada do Sua neighborhood, ZIP Code 29.050-917; (44) AMBIPAR RESPONSE GEOCIÊNCIAS LTDA., a company registered with the CNPJ under No. 17.732.383/0001-95, headquartered in the State of Espírito Santo, in the City of Vitória, at Rua Manoel Feu Subtil, No. 60, Enseada do Sua neighborhood, ZIP Code 29.050-917; (45) AMBIPAR RESPONSE INDUSTRIAL ROBOT S.A., a company registered with the CNPJ under No. 33.294.016/0001-03, headquartered in the State of São Paulo, in the City of Jacareí, at Rua Harold Barnsley Holland, No. 1,151, Rio Abaixo neighborhood, ZIP Code 12.334-403; (46) AMBIPAR RESPONSE INDUSTRIAL SERVICES S.A., a company registered with the CNPJ under No. 39.233.457/0001-81, headquartered in the State of Rio de Janeiro, in the City of Rio das Ostras, at Av. Dos Bandeirantes, No. 690, Enseada das Gaivotas neighborhood, ZIP Code 28.897-188; (47) AMBIPAR RESPONSE MARINE S.A., a company registered with the CNPJ under No. 06.086.769/0001-50, with headquarters in the State of Rio de Janeiro, in the City of Niterói, at Rua Engenheiro Fábio Goulart, No. 163, Ilha da Conceição neighborhood, ZIP Code 24.050-090; (48) AMBIPAR RESPONSE MARITIME SERVICES PDA S.A., a company registered with the CNPJ under No. 04.978.039/0001-39, with headquarters in the State of Espírito Santo, at Rua das Palmeiras, No. 795, Santa Lucia neighborhood, Vitória city, Espírito Santo state, ZIP Code 29.056-210; (49) AMBIPAR RESPONSE S.A., a company registered with the CNPJ under No. 11.414.555/0001-04, with headquarters in the State of São Paulo, in the City of São Paulo, at Av. Pacaembu, No. 1,088, Pacaembu neighborhood, ZIP Code 01.234-000; (50) AMBIPAR RESPONSE

This document was signed by Antonio Dari Antunes Zhbanova. To validate the document and its signatures, access https://asp.assinaturasempapel.com.br/validate/6WHWH-KG88F-AU2T8-L7QVM



RE**PÚBLICA FEDERATIVA DO BRASIL** · **FEDERATIVE REPUBLIC OF BRAZIL**



**REPÚBLICA FEDERATIVA DO BRASIL**
*FEDERATIVE REPUBLIC OF BRAZIL*
**ANTONIO DARI ANTUNES ZHBANOVA**
TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL·- *CERTIFIED PUBLIC TRANSLATOR*
ldioma/Language: Inglês - Português/*English - Portuguese*
Matrícula Jucepe nº 406 • CPF 756.770.758-68
Rua Princesa Isabel nº 206  - Aloisio Pinto -  Garanhuns (PE) CEP :  55.292-21 0
*Telefone/Phone/Whatsapp* +55 11  9 8784 1006 – (87) 92000-9314 - e-mail: dari.zhbanova@gmail.com  (skype: antonio.dari)

TRANSLATION No. WT 59387          BOOK No. 240                    PAGE No.  005

TANK CLEANING S.A., a company registered with the CNPJ under No. 18.591.097/0001-10, headquartered in the State of Rio de Janeiro, in the City of Niterói, at Praça Marechal Stenio Caio de Albuquerque Lima, No. 102, Centro neighborhood, ZIP Code 24.030-290; (51) AMBIPAR WASTE TO ENERGY S.A., a company registered with the CNPJ under No. 05.458.585/0001-01, headquartered in the State of Pernambuco, in the City of Jaboatão dos Guararapes, at Rod. Empresário João Santos Filho, No. 2,619, Muribeca Neighborhood, ZIP Code 54.350-100; (52) AMBIPAR WORKFORCE SOLUTION - MÃO DE OBRA TEMPORÁRIA LTDA., a company registered with the CNPJ under No. 19.825.185/0001-00, headquartered in the State of São Paulo, in the City of Nova Odessa, at Rod. Anhanguera, S/N, Distrito Industrial I neighborhood (ZPI-01), ZIP Code 13388-220; (53) BOOMERA AMBIPAR GESTÃO AMBIENTAL S.A., a company registered with the CNPJ under No. 14.512.293/0001-09, with headquarters in the State of São Paulo, in the City of São Paulo, at Av. Angélica, No. 2,346, Consolação neighborhood, ZIP Code 01228-200; (54) DRYPOL AMBIPAR ENVIRONMENTAL PET SOLUTIONS S.A., a company registered with the CNPJ under No. 04.942.888/0001-32, with headquarters in the State of São Paulo, in the City of Diadema, at Rua Romeu Cicarelli, No. 67, Vila Odete neighborhood, ZIP Code 09.942010; (55) EMERGÊNCIA PARTICIPAÇÕES S.A., a company registered with the CNPJ under No. 10.645.019/0001-49, headquartered in the State of São Paulo, in the City of São Paulo, at Av. Angélica, No. 2,346, Consolação neighborhood, ZIP Code 01.228-200; (56) ENVIRONMENTAL ESG PARTICIPAÇÕES S.A., a company registered with the CNPJ under No. 09.527.023/0001-23, with its headquarters in the State of São Paulo, in the City of Nova Odessa, at Rod. Anhanguera, S/N, Distrito Industrial neighborhood, ZIP Code 13.388-220; (57) JM SERVIÇOS INTEGRADOS S.A., a company registered with the CNPJ under No. 05.120.343/0001-03, headquartered in the State of Paraná, in the City of Morretes, at Rua Dionísio Gonçalves do Nascimento, No. 102, Raia Velha neighborhood, ZIP Code 83.350-000; (58) RG RESPONSE S.A., a company registered with the CNPJ under No. 14.113.259/0001-53, headquartered in the State of Mato Grosso, in the City of Cuiabá, at Av. Professora Edna Maria de Albuquerque Affi (Jd. Imperial 2a  E, LT 27, Jardim Imperial neighborhood, ZIP Code 78.076-001; (59) RMC2 SOLUÇÕES AMBIENTAIS LTDA., a company registered with the CNPJ under No. 28.077.248/0001-70, headquartered in the State of São Paulo, in the City of Indaiatuba, at Al. Jupiter, No. 1,123, Distrito Industrial Nova Era neighborhood, ZIP Code 13.347-397; (60) TERRA DRONE BRASIL SERVIÇOS DE ENGENHARIA S.A., a corporation registered with the CNPJ under No. 29.301.466/0001-09, headquartered in the State of Rio de Janeiro, in the City of Rio de Janeiro, at Av. Olegário Maciel, No. 531, Barra da Tijuca neighborhood, ZIP Code 22.621200; (61) AMBIPAR ENVIRONMENT CULLET RECICLYNG BRASIL S.A., a corporation registered with the CNPJ under No. 54.229.824/0001-67, headquartered in the State of São Paulo, in the City of São Paulo, at Avenida Angélica, No. 2,346, Consolação neighborhood, ZIP Code 01.228-200; (62) AMBIPAR ENVIRONMENT POS CONSUMO LTDA., a limited liability company registered with the CNPJ under No. 55.940.475/0001-50, with headquarters in the State of São Paulo, in the City of São Paulo, at Avenida Angélica, No. 2,346, Consolação neighborhood, ZIP Code 01.228-200; (63) AMBIPAR ENVIRONMENTAL ECOPARQUE S.A., a corporation registered with the CNPJ under No. 53.172.475/0001-21, headquartered in the State of Pernambuco, in the City of Igarassu, at Rodovia BR 101 Norte, S/N, Igarassu Rural Area, ZIP Code 53.659

This document was signed by Antonio Dari Antunes Zhbanova. To validate the document and its signatures, access https://asp.assinaturasempapel.com.br/validate/6WHWH-KG88F-AU2T8-L7QVM





REPÚBLICA FEDERATIVA DO BRASIL
*FEDERATIVE REPUBLIC OF BRAZIL*
ANTONIO DARI ANTUNES ZHBANOVA
TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL·- *CERTIFIED PUBLIC TRANSLATOR*
ldioma/Language: Inglês - Português/*English - Portuguese*
Matrícula Jucepe nº 406 • CPF 756.770.758-68
Rua Princesa Isabel nº 206 - Aloisio Pinto - Garanhuns (PE) CEP : 55.292-21 0
*Telefone/Phone/Whatsapp* +55 11  9 8784 1006 – (87) 92000-9314 - e-mail: dari.zhbanova@gmail.com  (skype: antonio.dari)

TRANSLATION No. WT 59387          BOOK No. 240                    PAGE No.  006

899; (64) AMBIPAR ENVIRONMENT INDUSTRIAL WATER SOLUTIONS LTDA., a company registered with the CNPJ under No. 10.808.894/0001-02, headquartered in the State of São Paulo, in the City of Piracicaba, at Rua Frei Vital de Primeiro, No. 247, Vila Pacaembu neighborhood, ZIP Code 13.424-580; (65) AMBIPAR RESPONSE PARTICIPAÇÕES BRASIL S.A., a company registered with the CNPJ under No.° 58.238.535/0001-85, with headquarters in the State of São Paulo, in the City of São Paulo, at Av. Angélica, No. 2,346, Consolação neighborhood, ZIP Code 01.228-200; (66) AMAZONIA INCORPORAÇÃO E PARTICIPAÇÃO S.A., a company registered with the CNPJ under No. 13.113.933/0001-37, with headquarters in the State of São Paulo, in the City of São Paulo, at Av. Pacaembu, No. 1,088, Pacaembu neighborhood, ZIP Code 01.234-000; (67) NUTRIGÁS S.A., a corporation registered with the CNPJ under No. 39.793.260/0011-79, with a branch in the State of São Paulo, in the City of São Paulo, at Av. Pacaembu, No. 1088, Pacaembu neighborhood, ZIP Code 01.234-000; (68) NUTRIPETRO S.A., a corporation registered with the CNPJ under No. 10.608.868/0001-22, with headquarters in the State of Espírito Santo, in the City of Aracruz, at Av. Professor Aparício Alvarenga, S/N, Barra do Riacho neighborhood, ZIP Code 29.197-556; (69) CRICARE PRAIA HOTEL LTDA., a company registered with the CNPJ under No. 17.855.660/0001-57, headquartered in the State of Espírito Santo, in the City of Conceição da Barra, at Rua Capitão Antero Faria, S/N, Centro neighborhood, ZIP Code 29.960-970; (70) EVEREST PARTICIPAÇÕES E EMPREENDIMENTOS S.A., a company registered with the CNPJ under No. 13.051.485/0001-94, headquartered in the State of São Paulo, in the City of São Paulo, at Av. Pacaembu, No. 1,088, Pacaembu neighborhood, ZIP Code 01.234-000; (71) AMBIPAR LUX S.À.R.L., a company registered with the Luxembourg Trade and Companies Register ("RCSL") under No. B279448, with its principal place of business in Luxembourg, and AMBIPAR EMERGENCY RESPONSE, a company registered with the CNPJ under No. 49.261.471/0001-42 CO-390269, headquartered in the Cayman Islands, pursuant to Articles 47 et seq. of Law No. 11.101/2005 ("LRF").

In the procedural timeline, it is important to note that on September 24, 2025 (Event 1), the plaintiffs filed a motion for preliminary injunctive relief on an ex parte basis, based on Articles 6, § 12, and 189 of Law No. 11,101/05-LRJ, and Articles 300 et seq. of the Code of Civil Procedure (CPC). As a premise, they describe adequate financial and cash flow health, with payroll, obligations to suppliers, financial institutions, and taxes kept up to date, these totaling approximately R$ 500 million annually, in addition to the generation of approximately 23,000 direct jobs (not counting indirect ones).

On the financial-contractual front, they note that on September 18, 2025, AMBIPAR LUX S.À.R.L. entered into a loan agreement with Deutsche Bank AG for USD 35,000,000.00, in addition to three derivative swap contracts ( ), with an amendment to include payment in kind using securities issued abroad (green bonds). Due to the linkage to the loan agreements, the base amount for calculating the debt in USD, pursuant to the swap agreements, would total USD 550,000,000.00.

Consequently, they argue that Deutsche Bank began to calculate and demand additional collateral based not only on the negative spread of the swap rates but also on the depreciation of the PIK Bonds in the foreign market—securities that would only be delivered in the future, upon maturity of the swaps. Consequently, with the incorporation of future credit risk related to the PIK Bonds, the bank allegedly demanded that AMBIPAR PARTICIPAÇÕES make contributions far exceeding what would be required, resulting in cash

This document was signed by Antonio Dari Antunes Zhbanova. To validate the document and its signatures, access
https://asp.assinaturasempapel.com.br/validate/6WHWH-KG88F-AU2T8-L7QVM





**REPÚBLICA FEDERATIVA DO BRASIL**
*FEDERATIVE REPUBLIC OF BRAZIL*
**ANTONIO DARI ANTUNES ZHBANOVA**

TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL - *CERTIFIED PUBLIC TRANSLATOR*
ldioma/Language: Inglês - Português/*English - Portuguese*
Matrícula Jucepe nº 406 • CPF 756.770.758-68
Rua Princesa Isabel nº 206 - Aloisio Pinto - Garanhuns (PE) CEP : 55.292-21 0
*Telefone/Phone/Whatsapp* +55 11  9 8784 1006 – (87) 92000-9314 - e-mail: dari.zhbanova@gmail.com  (skype: antonio.dari)

| | | |
|---|---|---|
| TRANSLATION No. WT 59387 | BOOK No. 240 | PAGE No.  007 |

outflows exceeding R$ 200 million in recent days.

At the same time, they emphasize that virtually all of the group's financial contracts contain cross-default clauses, which pose a very serious risk of immediate insolvency. The scope of this cross-default would imply a financial shortfall of over R$ 10 billion, considering all transactions with financial institutions that are creditors of the group in the event of a request for judicial reorganization.

In addition, they argue that the situation has been exacerbated by the possibility that certain financial institutions could seize billions of reais from the petitioners' checking accounts and investments without the need for a court order, which would render the conduct of business unfeasible. The risk, they state, is imminent and concrete, since some institutions have already notified the petitioners to declare early maturity and adopt appropriate judicial and extrajudicial remedies.

In light of this situation, the Decision (Event 9) recognized the jurisdiction of this Reorganization Court and granted the preliminary injunction for a period of 30 days, extendable for the same period, effective as of the date and time of filing of the initial petition for the preliminary injunction. With this decision, the following were suspended: (i) the enforceability and the running of the statute of limitations on the claims and obligations (including those to do, not to do, and to deliver) of the petitioners and related parties arising from coinciding or prior triggering events; (ii) enforcement proceedings and other collection measures against the petitioners and related parties regarding such claims/obligations; and, furthermore, (iii) any form of withholding, attachment, seizure, search and seizure, and judicial or extrajudicial enforcement against the assets of the petitioners and their related parties was prohibited, when arising from claims whose credits/obligations have coinciding or prior triggering events.

Similarly, it was determined that the effects of early maturity or accelerated amortization clauses and the enforcement of any guarantees in contracts entered into with the petitioners and related parties (including principal and related contracts) shall be suspended, even in the event that the petitioners file for judicial reorganization or seek a preliminary injunction; likewise, new declarations of early maturity (or the suspension of the effects of those already made), e r accelerated amortization, and/or the enforcement of guarantees linked to contracts relating to credits and obligations (including do, do not do, and deliver obligations) with coinciding or prior triggering events were prohibited.

Regarding the appointment of a Judicial Administrator (AJ), a competitive process was initiated between: (1) VPJ ADMINISTRAÇÃO JUDICIAL, CNPJ 55.870.751/0001-50, represented by its partner, Dr. Victor Saraiva Torres; (2) NEVES, FIGUEIREDO, CERQUEIRA E SOUZA, represented by its partner, Dr. Athos de Andrade Figueira Neves, OAB/RJ 211747/RJ, email [athosneves@nfcsadvogados.com.br  ] (mailto:athosneves@nfcsadvogados.com.br); (3) Augusto Alves Moreira Neto, of the law firm Gomes de Mattos Advogados Associados, email [augusto.neto@gomesdemattos.com.br  ] (mailto:augusto.neto@gomesdemattos.com.br  ); (4) CARAPETCOV ADMINISTRAÇÃO JUDICIAL, represented by its partner, Dr. Thiago Carapetcov, OAB/RJ 151772/RJ, email [thiago@carapetcovaj.com.br ] (mailto:thiago@carapetcovaj.com.br).

Subsequently, challenges were filed. Following the decision, the Public Prosecutor's Office filed a motion for clarification, and various creditors, primarily financial institutions, raised, in summary: (1) lack of jurisdiction of this Court; (2) failure to comply with Art. 49, § 3, of Law 11.101/2005; (3) failure to comply

This document was signed by Antonio Dari Antunes Zhbanova. To validate the document and its signatures, access
https://asp.assinaturasempapel.com.br/validate/6WHWH-KG88F-AU2T8-L7QVM





**REPÚBLICA FEDERATIVA DO BRASIL**
*FEDERATIVE REPUBLIC OF BRAZIL*
**A N T O N I O  D A R I  A N T U N E S  Z H B A N O V A**
TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL - *CERTIFIED PUBLIC TRANSLATOR*
ldioma/Language: Inglês - Português/*English - Portuguese*
Matrícula Jucepe  nº 406 • CPF 756.770.758-68
Rua  Princesa  Isabel  nº 206  -  Aloisio  Pinto  -  Garanhuns  (PE) CEP :  55.292-21 0
*Telefone/Phone/Whatsapp* +55 11  9 8784 1006 – (87) 92000-9314 - e-mail: dari.zhbanova@gmail.com  (skype: antonio.dari)

| TRANSLATION No. WT 59387 | BOOK No. 240 | PAGE No.  008 |
|---|---|---|

with Art. 193-A of the same law; and (4) failure to demonstrate the conditions for filing the petition for judicial reorganization.

In response, the Decision (Event 65) partially granted the Public Prosecutor's Office's motion, solely to order that the representation of all plaintiffs be regularized by the time the main petition is filed, within 30 days. As for the other issues raised by the creditors, including the ruling on the motions for clarification in events 48 and 57 and the ruling on the retraction due to AI No. 300120367.2025.8.19.0000, converted the review into a procedural step, establishing that (a) the plaintiff shall objectively indicate the Group's headquarters and branches in this Judicial District that it considers its principal establishment(s), including documentary evidence regarding the volume of business in Rio de Janeiro, São Paulo, and Nova Odessa, within 5 days; (b) within the same period, creditors may supplement the case with new documents indicating the principal establishment in the District of São Paulo or Nova Odessa; (c) between the 6th and 10th day following service of the summons, statements regarding the submitted documentation; (d) within the same period, and with the utmost respect for the principle of non-surprise, the plaintiff shall comment on the other issues in the order; (e) the plaintiff and creditors shall state their interest in mediation, designating a professional to replace CEJUSC, and, until then, the referral of the case to the Center, as determined in the preliminary injunction, shall be suspended.

Also in this decision, regarding the request in Event 53 concerning possible non-compliance with the preliminary injunction by ADDIANTE S.A., ORIZON MEIO AMBIENTE S.A., LM TRANSPORTES INTERESTADUAIS SERVIÇOS E COMERCIO S.A., and others, it was ordered that the plaintiffs be summoned to submit, within 15 days, the contractual clauses whose termination they seek to prevent.

Subsequently, the plaintiffs (events 89/91) amended the initial petition to file a petition for judicial reorganization of the AMBIPAR GROUP. As historical context, they state: founded in 1995, initially focused on industrial waste management; in May 1996, expansion into the logistics sector with GETEL LOGÍSTICA, beginning to operate in transportation for large companies and industries throughout Brazil. Decades of growth followed, described as exponential, driven by pioneering spirit and service excellence, combined with an unwavering commitment to environmental preservation, job creation, income generation, and local development.

In 2005, they established BRASIL AMBIENTAL CENTRAL DE TRATAMENTO DE RESÍDUOS (CTR). In 2008, PLANETA AMBIENTAL - CENTRAL DE SERVIÇOS COMPARTILHADOS was founded, with a focus on emergency response. They highlight continuous investments in technology, technical training, and corporate governance, with compliance and transparency standards that have elevated the group's reputation in the sector. In this vein, rather than merely a service conglomerate, it positions itself as an agent of environmental transformation, promoting a circular economy, waste valorization, and large-scale decarbonization.

They report that in September 2010, AMBIPAR PARTICIPAÇÕES E EMPREENDIMENTOS S.A. ("AMBIPAR PARTICIPAÇÕES") was founded with the purpose of consolidating control over the group's various companies. In May 2011, the holding company became the group's parent company and, in the same month, acquired 51% of DESCARTE CERTO (the reverse manufacturing division, responsible for the post-consumer product chain). In 2019, a rebranding took place, accompanied by a corporate restructuring

This document was signed by Antonio Dari Antunes Zhbanova. To validate the document and its signatures, access
https://asp.assinaturasempapel.com.br/validate/6WHWH-KG88F-AU2T8-L7QVM





**REPÚBLICA FEDERATIVA DO BRASIL**
*FEDERATIVE REPUBLIC OF BRAZIL*
**ANTONIO DARI ANTUNES ZHBANOVA**
TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL - *CERTIFIED PUBLIC TRANSLATOR*
ldioma/Language: Inglês - Português/*English - Portuguese*
Matrícula Jucepe nº 406 • CPF 756.770.758-68
Rua Princesa Isabel nº 206 - Aloisio Pinto - Garanhuns (PE) CEP : 55.292-21 0
*Telefone/Phone/Whatsapp* +55 11 9 8784 1006 – (87) 92000-9314 - e-mail: dari.zhbanova@gmail.com (skype: antonio.dari)

TRANSLATION No. WT 59387                BOOK No. 240                PAGE No. 009

that divided the group into two verticals: AMBIPAR RESPONSE and AMBIPAR ENVIRONMENTAL (environmental solutions consolidated in the Environmental Vertical; emergency response, in the Response Vertical).

In the capital markets, in July 2020, the company went public on B3, allowing the group to raise approximately R$ 1.08 billion through the issuance of AMBIPAR PARTICIPAÇÕES shares. The following year, AMBIPAR EMERGENCY RESPONSE went public on the NYSE, a milestone in governance and strategic relevance. The funds, as reported, were allocated to organic expansion and acquisitions in Brazil and abroad, consolidating leadership in environmental management.

Starting in 2020, they mention acquisitions such as REVALORE, SUPPLY, VERDE GHAIA, and ÂMBITO, and throughout 2021, AFC, METAL AR, CENTROESTE, BOOMERA, ECOLÓGICA NORDESTE (through AFC), BIOFÍLICA, DRYPOL, TRICICLO, SUPREMA, SIR, BRASIL COLETA, MCZ, ECOLÓGICA RESÍDUOS, WATU, and ECOTEC, all of which are strategic for waste management. Finally, they report a network of 600 operational bases in more than 41 countries, strategically located near industrial hubs, ports, highways, and railways.

With regard to jurisdiction, they identify the group's principal place of business as the facility located at Rua Lauro Muller No. 116, Botafogo, 27th floor, Rio de Janeiro, owned by the plaintiff AMBIPAR RESPONSE & ENVIRONMENTAL CONSULTING OFFSHORE S/A. They allege that the city accounts for the largest share of business (approx. 18.4% of net income), compared to 12.3% in São Paulo and -8.4% in Nova Odessa; furthermore, Rio de Janeiro reportedly has the highest revenue (R$ 303.2 million, compared to R$ 69.4 million in São Paulo and R$ 1.6 million in Nova Odessa). Between São Paulo and Rio de Janeiro, they point out that São Paulo is where the group generates and contracts the least, thus not constituting "the highest volume of business."

With regard to the joint plaintiffs, they cite support in Article 69-G of the Fiscal Responsibility Law (LRF), as the companies are under the corporate control of the same holding company (AMBIPAR PARTICIPAÇÕES E EMPREENDIMENTOS S.A.), as shown in the organizational chart in Document 7 of Event 89. Pursuant to Article 69-J of the LRF, they highlight compliance with the provisions of the subparagraphs, given the hundreds of cross-guarantees entered into by the group's companies—one of the drivers of the crisis—which justifies the plaintiffs' standing, as the cross-default affected the entire group in a chain reaction, with the holding company acting as guarantor for numerous contracts. As an example, they cite the debt instrument of AMBIPAR FLYONE with Banco ABC S.A. (Doc. 09 of Event 89), in which the holding company and EMERGÊNCIA PARTICIPAÇÕES S.A. are listed as guarantors. At the same time, they explain that the control relationship and the composition of the corporate structure are reflected in the aforementioned organizational chart and point out that the administrative, legal, financial, and governance structures are interconnected, such that the segregation of assets and liabilities would require an excessive expenditure of time and resources. For this reason, they request authorization to proceed with the judicial reorganization through procedural and substantive consolidation, with the prerogative to consolidate the assets and liabilities into a single plan or segregate them into more than one, depending on future negotiation circumstances with thousands of creditors and other stakeholders.

In their assessment of the crisis, they note that, in February 2024, AMBIPAR LUX S.À R.L., a subsidiary of

This document was signed by Antonio Dari Antunes Zhbanova. To validate the document and its signatures, access https://asp.assinaturasempapel.com.br/validate/6WHWH-KG88F-AU2T8-L7QVM





**REPÚBLICA FEDERATIVA DO BRASIL**
*FEDERATIVE REPUBLIC OF BRAZIL*
**ANTONIO DARI ANTUNES ZHBANOVA**

TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL·- *CERTIFIED PUBLIC TRANSLATOR*
ldioma/Language: Inglês - Português/*English - Portuguese*
Matrícula Jucepe nº 406 • CPF 756.770.758-68
Rua Princesa Isabel nº 206  - Aloisio Pinto - Garanhuns  (PE) CEP :  55.292-21 0
*Telefone/Phone/Whatsapp* +55 11  9 8784 1006 – (87) 92000-9314 - e-mail: dari.zhbanova@gmail.com  (skype: antonio.dari)

TRANSLATION No. WT 59387                 BOOK No. 240                 PAGE No.  0010

AMBIPAR PARTICIPAÇÕES, carried out its first issuance of Green Bonds in the amount of USD 750,000,000.00, maturing in 2031 ("Green Bonds 2031"). This transaction was linked to a Derivative Contract (swap) initially entered into with Bank of America for the purpose of currency hedging. As is customary when the issuer is non-operational and funds raised abroad are invested in operations in Brazil, the debt is paid in reais, which is why the risk of exchange rate fluctuations is mitigated through a swap. As described, the swap operates as a risk exchange (dollar for reais), with periodic adjustments to the "margin requirement" and final settlement upon maturity—characterized as protection, not speculation.

Later, in February 2025, AMBIPAR LUX carried out its second Green Bond issuance (amounting to USD 493 million, maturing in 2033 — "Green Bonds 2033"). Part of this funding (USD 200 million) was used to prepay the first issuance, and here too the transaction was linked to a currency swap, this time with Deutsche Bank. According to reports, the first swap (with Bank of America) was transferred to Deutsche Bank in a context where the then-director of Bank of America, Mr. João Arruda, began working as CFO of Ambipar; shortly thereafter, through a negotiation led by him, the 2031 Green Bonds swap was transferred to Deutsche Bank, and subsequently, the second swap (for the 2033 Green Bonds) was entered into directly with Deutsche Bank. All of this, they maintain, was done without the approval of the Board of Directors and without compliance with internal procedures at the foreign banks, a matter currently under criminal investigation in an inquiry against Mr. João Arruda and others.

In the aftermath, the plaintiff states that it entered into a new master derivatives agreement with Deutsche Bank (Doc. 10 of Event 89) and three swap agreements relating to the 2031 Green Bonds, in addition to the swap relating to the 2033 Green Bonds. On August 18, 2025, with the swaps migrated to Deutsche Bank, AMBIPAR LUX entered into a Loan and Guarantee Agreement ("LOAN DT - 18S") with the bank, securing a loan of USD 35,000,000.00, disbursed on the same date.

Also in August 2025, the derivatives were amended to include, in Clause 5, a provision for payment in kind (PIK) of the Green Bonds issued abroad. Under this mechanism, if the bank were ultimately the debtor, it could pay the difference by delivering the securities at face value rather than at market price—an advantage that increases as the bond price falls. It is noted that, on the date of the amendments (August 18, 2025), there was abnormal volatility in the bonds; starting on August 19, 2025, they describe a "clearly orchestrated attack" with a drop in values that had been stable until then.

In summary, they state that until August 18, 2025, the swaps were non-speculative in nature and limited to currency hedging, justified by dollar-denominated debt and revenues primarily in reais. After Mr. João Arruda joined as CFO, the original swaps were transferred to Deutsche Bank and amended with a rule that introduced a

speculative element: the price fluctuation of Green Bonds issued by Ambipar Lux, an emerging-market asset subject to short sellers—a dynamic that, in this specific case, is alleged to have occurred.

On September 19, 2025, Mr. João Arruda submitted his resignation from the position of CFO of Ambipar Participações via email to the Board at 10:30 p.m. Since he refused to facilitate the transition until a new CFO was appointed, the videoconference with bondholders that he had called the previous day was canceled; this was a forum in which he would have explained the deterioration of the securities and the amendment with Deutsche Bank, which, according to the plaintiffs, contributed to spreading panic in the

This document was signed by Antonio Dari Antunes Zhbanova. To validate the document and its signatures, access
https://asp.assinaturasempapel.com.br/validate/6WHWH-KG88F-AU2T8-L7QVM





**REPÚBLICA FEDERATIVA DO BRASIL**
*FEDERATIVE REPUBLIC OF BRAZIL*
**ANTONIO DARI ANTUNES ZHBANOVA**
TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL·- *CERTIFIED PUBLIC TRANSLATOR*
ldioma/Language: Inglês - Português/*English - Portuguese*
Matrícula Jucepe nº 406 • CPF 756.770.758-68
Rua Princesa Isabel nº 206 - Aloisio Pinto - Garanhuns (PE) CEP : 55.292-21 0
*Telefone/Phone/Whatsapp* +55 11  9 8784 1006 – (87) 92000-9314 - e-mail: dari.zhbanova@gmail.com  (skype: antonio.dari)

TRANSLATION No. WT 59387          BOOK No. 240          PAGE No.  0011

market.

Subsequently, Deutsche Bank began demanding additional collateral from AMBIPAR PARTICIPAÇÕES in amounts far exceeding those originally defined in the swaps. Even a few days before the injunction was granted, the collateral margins already amounted to nearly R$ 200 million (an adjustment that would, in theory, reflect the Liquidation Value upon immediate termination). The margin calls, however, were allegedly based on an improper interpretation of the amendment and on the bank's unilateral calculations, with embedded surcharges and pricing curves detached from reality, including not only exchange rates and interest rates but also the decline in PIK Bonds—securities that might or might not be delivered in the future, at par val , only at maturity. After demanding R$ 200 million, a new injection of R$ 60 million was required, under penalty of automatic and early maturity of the swaps and the USD 35 million loan.

Immediately thereafter, Banco Santander sent a notice to the AMBIPAR GROUP, even before the filing of the preceding injunction, declaring the early maturity of debts related to Bank Credit Notes unrelated to derivatives, demanding payment of approximately USD 120 million within 24 hours. Deutsche Bank's move reportedly triggered a chain reaction among other banks, fearful of systemic default; according to the narrative, this chain reaction would have led the group to ruin, which was prevented by the preliminary injunction and, now, by the main petition for reorganization.

In this vein, they point out that the main debt—bonds totaling more than USD 1 billion—would also be subject to early maturity, pursuant to the Indenture (Section 6.01—Events of Default, item "v"). In other words: the maturity of the swap debts and the Loan Agreement with Deutsche Bank, combined with the early maturity of over USD 120 million declared by Santander, and potentially by other institutions, would act as a trigger for a cascade of maturities across the entire group.

In this new scenario, given the concrete risk of early maturity of more than R$ 10 billion, the group saw no alternative but to file this petition for judicial reorganization, in order to restore its debt profile and restructure its liabilities without affecting cash flow and rendering operations unviable.

With regard to contracts secured by a fiduciary assignment of receivables, they emphasize that any non-bankruptcy-related matters should be analyzed during the verification of claims, which is the initial responsibility of the Judicial Administrator, subject to review by the Court. Regarding Article 193-A of the Fiscal Responsibility Law (LRF), they note that, if there is an early maturity clause in the swap contract due to a petition for judicial reorganization, the financial institution may declare maturity to determine the creditor's and debtor's positions, facilitating subsequent setoff; any credit balance, if existing in favor of the institution, must be included in the reorganization proceedings.

In conclusion, they request:

(i) the confirmation of the granted urgent preliminary injunction, particularly regarding the suspension of the effectiveness of the early maturity clauses for debts, with the sole exception of swap contracts, pursuant to Article 193-A of the LRF, without permitting the enforcement or appropriation of any credit balance; and

(ii) the suspension of enforcement proceedings and other collection measures against the Ambipar Group, in addition to the prohibition of any form of withholding, attachment, seizure, search and seizure, and judicial or extrajudicial attachment of the debtors' assets, pursuant to Article 6 of the LRF, in line with the preliminary injunction to be ratified;

This document was signed by Antonio Dari Antunes Zhbanova. To validate the document and its signatures, access https://asp.assinaturasempapel.com.br/validate/6WHWH-KG88F-AU2T8-L7QVM





**REPÚBLICA FEDERATIVA DO BRASIL**
*FEDERATIVE REPUBLIC OF BRAZIL*
**ANTONIO DARI ANTUNES ZHBANOVA**
TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL·- *CERTIFIED PUBLIC TRANSLATOR*
Idioma/Language: Inglês - Português/*English - Portuguese*
Matrícula Jucepe nº 406 • CPF 756.770.758-68
Rua Princesa Isabel nº 206 - Aloisio Pinto - Garanhuns (PE) CEP : 55.292-21 0
*Telefone/Phone/Whatsapp* +55 11 9 8784 1006 – (87) 92000-9314 - e-mail: dari.zhbanova@gmail.com (skype: antonio.dari)

TRANSLATION No. WT 59387          BOOK No. 240          PAGE No.  0012

(iii) the granting of the preliminary injunction requested in Event 53, ordering that: (iii.a) suppliers of essential services refrain from interrupting the supply of goods and services to the Ambipar Group and from creating obstacles of any nature to regular contractual performance, based on an alleged default on credits subject to this reorganization; (iii.b) the effectiveness of express termination clauses authorizing the termination of essential contracts be suspended solely due to the filing of the motion for preliminary relief or this reorganization petition; (iii.c) financial institutions and other creditors shall refrain from declaring the early maturity of debts related to non-subject credits, as well as from seizing, removing, freezing, or otherwise restricting the use of assets linked to such instruments, as long as the petitioners remain in compliance with their financial obligations; and (iii.d) equipment leasing companies/lessees refrain from blocking, halting, or obstructing the use of the equipment covered by the attached lease agreements, under penalty of a fine of R$ 100,000 for noncompliance;

(iv) the appointment of a Judicial Administrator, pursuant to Article 52, I, of the LRF;

(v) pursuant to and for the purposes of subparagraph IV of the main provision of Article 167-B of the Fiscal Responsibility Law (LRF), the appointment of Mr. Ricardo Rosanova Garcia, a Brazilian citizen, single, business administrator, ID No. 21.152.028-7 SSP/SP, CPF No. 259.792.868-37, as foreign representative of any Applicant, so that, if necessary, he may appear before any foreign authority and act in any foreign debt restructuring proceeding, regardless of jurisdiction, including (without limitation) judicial reorganization or similar insolvency proceedings, whether principal, non-principal, or ancillary proceedings, as permitted by applicable law;

(vi) subject to compliance with all requirements of Article 69-J of the LRF, authorization to proceed with the judicial reorganization under procedural and substantive consolidation, to allow the Group to consolidate assets and liabilities into a single plan or segregate them into more than one, as required by future business circumstances with its thousands of creditors and other stakeholders;

(vii) the waiver of the requirement to submit clearance certificates so that the Petitioners may conduct their business and participate in bids before any public or private entities;

(viii) the notification of the Public Prosecutor's Office and the federal and state treasuries, as well as those of the Federal District and municipalities where branches are located, pursuant to Article 52, V, of the Fiscal Responsibility Law (LRF); and

(ix) the publication of the Notice provided for in Article 52, § 1, of the LRF.

Subsequently, the Decision (Event 96), considering the need for factual clarifications to determine the court's jurisdiction, postponed the decision on the processing of the judicial reorganization. On a provisional basis: (a) it granted procedural and substantive consolidation; (b) it ratified, pending further decision and to the extent that proceedings regarding jurisdiction remain pending, the preliminary injunction in Event 9, which suspended enforceability, statute of limitations, enforcement actions, and collections relating to claims/obligations with triggering events that are concurrent or prior, including early maturity or accelerated amortization clauses, specifying that: (b.1) credits secured by fiduciary guarantees are excluded from the suspension order, limited to the value of the asset provided as collateral; and ( ) such credits, however, may not be sold or removed from the petitioners' premises during the stay period, the initial term of which has been brought forward; (b.2) fiduciary assignments of credit rights (receivables) are not subject

This document was signed by Antonio Dari Antunes Zhbanova. To validate the document and its signatures, access https://asp.assinaturasempapel.com.br/validate/6WHWH-KG88F-AU2T8-L7QVM





**REPÚBLICA FEDERATIVA DO BRASIL**
*FEDERATIVE REPUBLIC OF BRAZIL*
**A N T O N I O   D A R I   A N T U N E S   Z H B A N O V A**
TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL·- *CERTIFIED PUBLIC TRANSLATOR*
ldioma/Language: Inglês - Português/*English - Portuguese*
Matrícula Jucepe nº 406 • CPF 756.770.758-68
Rua Princesa Isabel nº 206  - Aloisio Pinto -  Garanhuns  (PE)  CEP :  55.292-21 0
*Telefone/Phone/Whatsapp* +55 11  9 8784 1006 – (87) 92000-9314 - e-mail: dari.zhbanova@gmail.com  (skype: antonio.dari)

TRANSLATION No. WT 59387          BOOK No. 240          PAGE No.  0013

to the suspension order; (b.3) early maturity and set-off clauses in repurchase agreements and derivative transactions are excluded from the suspension, pursuant to Article 193-A of the Fiscal Responsibility Law (LRF), as well as early maturity clauses for credits not subject to the suspension, as this Court is not competent to review their legality; (c) denied the request for preliminary relief in Event 53, through which the petitioners sought to unilaterally impose the continuation of the contractual relationship on suppliers; (d) granted, as a preliminary relief measure, an exemption from the requirement to present a certificate of no judicial reorganization for the purpose of conducting business activities and participating in bids, without prejudice to the demonstration of economic viability by other means; (e) granted an additional 5 days for the plaintiff to supplement the information necessary to determine jurisdiction, clarifying an inconsistency highlighted in the decision and presenting a new table showing turnover broken down by location of the head office/contracted branch establishments, in relation to São Paulo, Nova Odessa, Rio de Janeiro, and now also São Francisco do Sul (headquarters of the company DRACARES); (f) partially granted the motions to vacate in Events 48, 52, 57, and 93, acknowledging the obscurity of the decision in Event 9, and declared it in accordance with the terms of the latter; (g) partially exercised the power to reconsider the decision due to the appeals filed (3001203-67.2025.8.19.0000; 3001277-24.2025.8.19.0000 and 3001284-16.2025.8.19.0000), in the exact terms of this decision; (h) authorized the documents referred to in item 233 of the petition in Event 89 to be filed under seal within 5 days and, in the event of difficulties with the eProc system, permitted the creation of a confidential secondary proceeding (deposit with a notary public was deemed impractical); (i) determined that, as of the 6th day following publication, creditors would have an additional 5 days to comment on the documents in item "e," in accordance with the adversarial process; (j) ordered the summons of the Judicial Administrators (AJs) to submit their proposals, in accordance with the procedure then established and, based on the principle of cooperation, with a view to establishing better parameters for the approval of fees, which would clarify the total amount of the group's CFOs' remuneration.

Shortly thereafter, the plaintiffs (event 113) reported a second-instance decision following the filing of an interlocutory appeal against the aforementioned decision, regarding jurisdiction and the granting of emergency relief. In summary, they report that the Reporting Judge, in a sole-judge decision, dismissed documentary inconsistencies and, after reviewing the submitted documents, recognized the jurisdiction of this 3rda  Business Court of the Capital District to process, with the urgency required by the nature of the proceedings, the petition for reorganization, and fully granted the emergency injunctions, in the terms transcribed:

"For all the foregoing reasons, I GRANT the preliminary injunction to recognize the jurisdiction of the 3rd a Commercial Court of the Capital District to process, with the urgency required by the nature of the proceedings, the petition for judicial reorganization filed by the appellants ( ), as well as to grant the emergency relief requested in the petition for judicial reorganization, ordering: I) that suppliers of essential services refrain from interrupting the supply of goods and services to the Ambipar Group and from creating obstacles of any nature to the regular fulfillment of contractual provisions, based on default on credits subject to judicial reorganization; II) that the respective creditors refrain from enforcing fiduciary guarantees, including the fiduciary assignment of credit rights over any accounts and financial investments,

This document was signed by Antonio Dari Antunes Zhbanova. To validate the document and its signatures, access https://asp.assinaturasempapel.com.br/validate/6WHWH-KG88F-AU2T8-L7QVM





**REPÚBLICA FEDERATIVA DO BRASIL**
*FEDERATIVE REPUBLIC OF BRAZIL*
**ANTONIO DARI ANTUNES ZHBANOVA**
TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL·- *CERTIFIED PUBLIC TRANSLATOR*
ldioma/Language: Inglês - Português/*English - Portuguese*
Matrícula Jucepe nº 406 • CPF 756.770.758-68
Rua Princesa Isabel nº 206 - Aloisio Pinto - Garanhuns (PE) CEP : 55.292-21 0
*Telefone/Phone/Whatsapp* +55 11  9 8784 1006 – (87) 92000-9314 - e-mail: dari.zhbanova@gmail.com  (skype: antonio.dari)

TRANSLATION No. WT 59387          BOOK No. 240          PAGE No.  0014

and from appropriating any funds or financial investments of the Ambipar Group; III) the suspension of the effectiveness of any and all express termination clauses authorizing the termination of contracts essential to the maintenance of the appellants' operations; IV) that creditors refrain from declaring the early maturity of debts related to credits not subject to the effects of judicial reorganization, refraining from seizing, removing, freezing, or otherwise restricting the use of any assets linked to the respective contractual instruments; V) that equipment leasing companies or lessees refrain from blocking, paralyzing, or in any way obstructing the use of equipment that is the subject of the lease agreements indicated by the appellants. Failure to comply with the obligations set forth herein shall result in the imposition of a fine of R$ 100,000.00 for each act of non-compliance, or 5% (five percent) of the contract value, whichever is greater." (emphasis added)

In light of this recognition of jurisdiction "to proceed with the urgency required by the nature of the proceedings" and the granting of the injunctions, they requested an urgent review of the petition for judicial reorganization filed in Event 89.

The Court Clerk's Office (Event 114) certified receipt of the decision issued by the Honorable Judge Mauro Pereira Martins, who, in summary, recognized "the jurisdiction of the 3rda  Business Court of the Capital District, to process...", ordering the lower court to review, with due urgency, the filed petition for judicial reorganization. Consequently, the case file was closed.

At the same time, a Petition (event 116) was filed by FLÁVIA YAMADA DOS SANTOS RAMOS and MAIKE YAMADA DOS SANTOS, claiming to be shareholders holding, jointly, 45% of the capital stock of DRYPOL AMBIPAR ENVIRONMENTAL PET SOLUTIONS S.A., one of the companies included in the plaintiff group of this reorganization. They report that, on July 30, 2021, they sold 55% of DRYPOL's equity to ENVIRONMENTAL ESG PARTICIPAÇÕES S/A, a vehicle of the AMBIPAR Group. They emphasize that DRYPOL has a robust and independent track record as a family-owned business dedicated to its operations and credibility, and, as they maintain, it remained independent and of integrity even after the AMBIPAR Group acquired a stake in its capital stock. Consequently, they argue that DRYPOL's situation is absurd and exceptional, as the company was never authorized to file the preliminary injunction petition filed in its name on September 24, 2025, and now, on October 20, 2025, to file for judicial reorganization and bankruptcy ( ).

They add that the lack of authorization is evident, since, despite the filing of legal documents on behalf of various petitioners, the distinguished attorneys who signed the pleadings do not hold a power of attorney granted by DRYPOL. Furthermore, they maintain that DRYPOL is autonomous, with its own independent activities, and that there are other shareholders with a significant stake (45%), who hold an express right to remain as members of the Board of Directors (Doc. 3, Clause 6.3.1), as well as veto powers on various matters within the jurisdiction of the Extraordinary General Meeting (EGM), including the filing of judicial reorganization. They emphasize that this is not just another SPE of the group, nor is it a company whose reorganization needs to be processed jointly (much less in a substantial consolidation). Finally, they request the rejection of the judicial reorganization proceedings for DRYPOL and, if necessary, the dismissal of the proceedings in substantial consolidation with the other petitioners, ordering that, at least with respect to DRYPOL, the proceedings proceed under procedural consolidation.

This document was signed by Antonio Dari Antunes Zhbanova. To validate the document and its signatures, access
https://asp.assinaturasempapel.com.br/validate/6WHWH-KG88F-AU2T8-L7QVM





**REPÚBLICA FEDERATIVA DO BRASIL**
*FEDERATIVE REPUBLIC OF BRAZIL*
**A N T O N I O   D A R I   A N T U N E S   Z H B A N O V A**
TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL - *CERTIFIED PUBLIC TRANSLATOR*
ldioma/Language: Inglês - Português/*English - Portuguese*
Matrícula Jucepe nº 406 • CPF 756.770.758-68
Rua Princesa Isabel nº 206  - Aloisio Pinto - Garanhuns (PE) CEP : 55.292-21 0
*Telefone/Phone/Whatsapp* +55 11  9 8784 1006 – (87) 92000-9314 - e-mail: dari.zhbanova@gmail.com  (skype: antonio.dari)

| TRANSLATION No. WT 59387 | BOOK No. 240 | PAGE No.  0015 |
|---|---|---|

Finally, there is a Petition (Event 118), filed by BANCO ABC BRASIL S.A., which states that there is no approval from minority shareholders regarding certain companies of the Group.

This is the report on the status of the proceedings to date, in sufficient detail to guide the rendering of a decision.

I. Preliminary: JURISDICTION

First, it is important to note the following from the case file: Judge Leonardo de Castro Gomes initially affirmed this Court's jurisdiction to hear the case; however, in light of the dispute regarding the principal place of business and in the interest of transparency and the right to be heard, he ordered the parties to submit additional documents to clarify the disputed issues.

Following this order, a decision was rendered by the Honorable Reporting Judge Mauro Pereira Martins in Interlocutory Appeal No. 3001406-29.2025.8.19.0000/RJ, which resolved the dispute and established this Court as having jurisdiction to hear the judicial reorganization case, in the following terms:

"The documentary evidence produced thus far in the proceedings shows that the Ambipar Group, although it operates in several countries and has a significant volume of activities in the State of São Paulo, concentrates the management and execution of the largest volume of business in the State of Rio de Janeiro, a determining factor for the jurisdiction of the court in the judicial reorganization, as can be seen from the following table containing data related to its business activities. The higher volume of business directly impacts revenue, operating income, and profit margin, which, in turn, are substantially higher compared to the performance observed in the State of São Paulo, as can be seen from the following data reported by the debtors: '- City SP: It has Net Operating Revenue (NOR) of 40,634 and Net Income (NI) of 4,984, equivalent to a 12.3% margin. It has 75 employees, resulting in a Net Profit per employee of 66.5. - City, RJ: It stands out as the group's main operation, with Net Operating Revenue of 210,986 and Net Profit of 38,898 (18.4% margin), involving 246 employees. The LL per employee is 158.1, indicating high productivity and a significant concentration of the group's economic operations in this city. - Nova Odessa, SP: It shows negative performance, with a ROL of 131,228 and an LL of -11,020 (an 8.4% margin), employing 243 staff members. The LL per employee is negative (-45.3), indicating that the unit does not generate significant profit and exhibits low operational efficiency. It should be emphasized that the content of the information contained in the documents attached to the case file has not been refuted by any other evidence produced by the interested creditors. From this perspective, it falls to the courts of Rio de Janeiro to jointly hear and decide the petition for judicial reorganization regarding the companies belonging to the same economic group, since, according to documents attached to the case file, the largest volume of business is concentrated here, especially in light of the absence of concrete evidence to the contrary."

In the same vein, the case file contains the opinion of professor and legal scholar Daniel Carnio Costa, which supports the determination of jurisdiction in this court, highlighting, among other points:

"(...)30. According to the understanding of the STJ, the debtor's principal place of business, especially in the case of judicial reorganization of large economic groups, should be the location where the largest volume of business is concentrated, as this criterion generally ensures greater effectiveness and consistency in the judicial reorganization process, the objective of which is the recovery of the company in crisis. 31. In this specific case, it is evident that the Ambipar Group is one of the largest conglomerates in the

This document was signed by Antonio Dari Antunes Zhbanova. To validate the document and its signatures, access https://asp.assinaturasempapel.com.br/validate/6WHWH-KG88F-AU2T8-L7QVM





## REPÚBLICA FEDERATIVA DO BRASIL
### *FEDERATIVE REPUBLIC OF BRAZIL*
### ANTONIO DARI ANTUNES ZHBANOVA

TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL - *CERTIFIED PUBLIC TRANSLATOR*
ldioma/Language: Inglês - Português/*English - Portuguese*
Matrícula Jucepe nº 406 • CPF 756.770.758-68
Rua Princesa Isabel nº 206 - Aloisio Pinto - Garanhuns (PE) CEP : 55.292-21 0
*Telefone/Phone/Whatsapp* +55 11  9 8784 1006 – (87) 92000-9314 - e-mail: dari.zhbanova@gmail.com  (skype: antonio.dari)

| TRANSLATION No. WT 59387 | BOOK No. 240 | PAGE No.  0016 |
|---|---|---|

environmental sector, operating in 41 countries with over 600 operational bases. The group operates in waste management, material recovery, and environmental emergency response, generating over 23,000 direct jobs and paying approximately R$ 500 million in annual taxes, in addition to serving over 12,000 shareholders both domestically and internationally. 32. According to information provided by the Group, the city of Rio de Janeiro, among all other cities in the country and worldwide, concentrates the majority of the group's operations, generating the highest revenue, operating income, and profit margin. This factor demonstrates that the ability to pay debts—a central element of the reorganization process—is located in this judicial district. RJ also houses significant operational infrastructure for the Group, including bases in Duque de Caxias, at the Port of Açu, and at the Barra da Tijuca airport (where the entire helicopter fleet is located), concentrating strategic activities in the oil and gas, port, and maritime support sectors. Furthermore, the Rio de Janeiro headquarters, located at Rua Lauro Muller, No. 116, 27th Floor, Botafogo, is responsible for managing the group's largest volume of critical business, as it is there that strategic and administrative decisions regarding the most relevant economic operations are concentrated. (...) 47. In light of the information presented, it is concluded that jurisdiction to hear the judicial reorganization of the AMBIPAR Group lies with the Judicial Reorganization Court of the District of Rio de Janeiro (...)" (emphasis added).

In comparison, it is evident that the measures ordered by the Honorable Judge Leonardo Gomes ( ), aimed at strengthening the evidence through adversarial proceedings, contributed to the proper investigation of the matter, subsequently evaluated in the single-judge decision in the second instance, authored by Judge Mauro Martins, who deemed the evidence presented by the Petitioners to be sufficient, following the determination of the trial court, to establish jurisdiction in this District.

Thus, in light of the evidentiary proceedings ordered by the trial court and, consequently, of the decision rendered in Interlocutory Appeal No. 3001406-29.2025.8.19.0000/RJ, in addition to the technical grounds transcribed above, it is hereby established, pursuant to Articles 3 and 69-G, § 2, of Law 11.101/05, that this Commercial Court has jurisdiction to hear the Ambipar Group's petition for judicial reorganization.

2. Regarding the objections raised by the partners of DRYPOL and Banco ABC

Regarding the objections raised by partners MAIKE YAMADA DOS SANTOS and FLÁVIA YAMADA DOS SANTOS RAMOS of the business entity DRYPOL, directed at ENVIRONMENTAL ESG PARTICIPAÇÕES S/A (event 116), as well as the statement by BANCO ABC BRASIL S.A. (event 118), I acknowledge the arguments presented.

It must not be forgotten, however, that the legislature, in Articles 116, sole paragraph, and 122, sole paragraph, both of Law No. 6,404/1976 (Corporation Law), expressly provided for circumstances in which the controlling shareholder may adopt drastic measures for the benefit of a company in crisis.

Having established the normative framework—namely, the controlling shareholder's duty to guide the company toward fulfilling its corporate purpose (Art. 116, sole paragraph) and the standing of the management, with the controlling shareholder's consent, to file for reorganization (Art. 122, sole paragraph)—I now turn to examining the enabling requirement for the measure, namely, urgency.

The urgency justifying the measure is established (i) by the granted preliminary injunction (event 9) and (ii) by the sole-judge decision of Reporting Judge MAURO PEREIRA MARTINS in Interlocutory Appeal No.

This document was signed by Antonio Dari Antunes Zhbanova. To validate the document and its signatures, access https://asp.assinaturasempapel.com.br/validate/6WHWH-KG88F-AU2T8-L7QVM





**REPÚBLICA FEDERATIVA DO BRASIL**
*FEDERATIVE REPUBLIC OF BRAZIL*
**A N T O N I O   D A R I   A N T U N E S   Z H B A N O V A**
TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL·- *CERTIFIED PUBLIC TRANSLATOR*
ldioma/Language: Inglês - Português/*English - Portuguese*
Matrícula Jucepe nº 406 • CPF 756.770.758-68
Rua Princesa Isabel nº 206  - Aloisio Pinto -  Garanhuns (PE) CEP :  55.292-21 0
*Telefone/Phone/Whatsapp* +55 11  9 8784 1006 – (87) 92000-9314 - e-mail: dari.zhbanova@gmail.com  (skype: antonio.dari)

| TRANSLATION No. WT 59387 | BOOK No. 240 | PAGE No.  0017 |
|---|---|---|

3001406-29.2025.8.19.0000/RJ, which emphasized the need for a prompt resolution of the proceedings, lest it "cause uncertainty in the market, with serious economic repercussions and speculation regarding the actual financial condition of the appellants, further exacerbating the crisis of the business group."

Given this framework, and based on Articles 116, sole paragraph, and 122, sole paragraph, of the Brazilian Corporations Law, it is concluded that the urgency required to authorize the filing of a petition for judicial reorganization is established, without prejudice to the Petitioners, within a reasonable period to be set by this Court, convening a general meeting to specifically deliberate on the ratification of the measure and related measures.

3. Procedural and Substantive Consolidation

With regard to the request for substantive consolidation, it is important to note the exceptional nature of the measure, pursuant to Article 69-J, caput and subparagraphs, of the Fiscal Responsibility Law (LRF), and it is certain that its judicial authorization does not require a resolution by the general meeting of creditors.

From a regulatory standpoint, authorization requires: (i) proof of interconnection and commingling between the debtors' assets or liabilities, such that identifying ownership is impractical without excessive expenditure of time or resources; combined with (ii) a demonstration of at least two of the scenarios provided for in the subparagraphs of Article 69-J of the LRF, namely: a) the existence of cross-guarantees; b) a relationship of control or dependence; c) total or partial identity of the corporate structure; d) joint market activity among the applicants.

In this specific case, an analysis of the case file and the arguments put forward by the petitioners demonstrates that these requirements are met. On the one hand, the interconnection and commingling of assets and liabilities have been demonstrated, with particular emphasis on cross-guarantees. This circumstance arises from the very basis of the claim, since the cross-maturity of the debts has a cascading effect on the entire group, such that a reorganization petition filed by one company triggers the enforcement of guarantees and the early maturity of the obligations of others, as argued by the petitioners and evidenced in Annex 9 ("DOC 8") of Event 89.

Furthermore, from the perspective of the relationship of control and dependence, the organizational chart contained in Annex 8 ("DOC 6") of Event 89 clearly and objectively demonstrates the control exercised by the holding company over various group companies, as well as the integration of their governance. In this scenario, the segregation of assets and liabilities would require an excessive expenditure of time and resources, as already noted by this Court in the decision of Event 96.

Given this situation, a refusal to proceed with substantial consolidation would result in significant legal uncertainty, as the isolated recovery of one company, in a context of cross-guarantees and interlinked maturities, tends to precipitate the insolvency of the others.

Consequently, considering the evidence presented and having verified the requirements of Article 69-J, caput and subparagraphs I and II, of the LRF, the request for substantial consolidation must be granted.

4. Requirements for Granting the Request for Substantial Consolidation

Having recognized the possibility of substantial consolidation under the terms of Article 69-J of Law 11.101/05, I now proceed to examine compliance with the legal requirements for the processing of this judicial reorganization.

This document was signed by Antonio Dari Antunes Zhbanova. To validate the document and its signatures, access https://asp.assinaturasempapel.com.br/validate/6WHWH-KG88F-AU2T8-L7QVM





**REPÚBLICA FEDERATIVA DO BRASIL**
*FEDERATIVE REPUBLIC OF BRAZIL*
**ANTONIO DARI ANTUNES ZHBANOVA**
TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL·- *CERTIFIED PUBLIC TRANSLATOR*
ldioma/Language: Inglês - Português/*English - Portuguese*
Matrícula Jucepe nº 406 • CPF 756.770.758-68
Rua Princesa Isabel nº 206  - Aloisio Pinto -  Garanhuns  (PE) CEP :  55.292-21 0
*Telefone/Phone/Whatsapp* +55 11  9 8784 1006 – (87) 92000-9314 - e-mail: dari.zhbanova@gmail.com  (skype: antonio.dari)

TRANSLATION No. WT 59387                   BOOK No. 240                        PAGE No.  0018

---

The evidence in the case file clearly demonstrates the causes of the economic and financial crisis, since, after Mr. João Arruda joined AMBIPAR PARTICIPAÇÕES as CFO, it became evident that the swap contracts originally entered into with Bank of America were transferred to Deutsche Bank and subsequently amended to provide for the possibility of payment in kind using the Green Bonds issued by AMBIPAR LUX abroad. With this amendment, an element of a speculative nature was introduced, whereas the preceding adjustments were non-speculative in nature and limited to currency hedging, as set forth in the initial petition.

The consistency of the evidentiary record is evident in the charts in item 113 of Exhibit 89, when compared with the accompanying documentation, which reveal anomalous volatility in the Green Bonds and, upon preliminary review, point to a possible orchestrated attack, given the sharp decline shown in the material.

Following this turning point, Deutsche Bank began requiring AMBIPAR PARTICIPAÇÕES to provide additional collateral at levels higher than those originally stipulated in the swaps, ultimately demanding a capital injection of R$ 60 million, under penalty of automatic and early maturity of the derivative contracts and the resulting USD 35 million loan signed with the institution itself.

This acceleration, in turn, triggered a chain reaction among other financial institutions, driven by fears of systemic default within the Ambipar Group—a dynamic explained by the inclusion, in the Group's financial contracts, of cross-default clauses, whereby the acceleration of one obligation has ripple effects on the others.

In this context, the granted preliminary injunction (event 9) proved, and remains, indispensable to the preservation of business operations: the absence of the protection afforded by Law 11.101/05 would reveal a high probability of the immediate collapse of a conglomerate of undeniable economic significance.

It should also be noted that the petitioners demonstrated, clearly and objectively, that the trigger for the crisis stemmed from specific mismanagement, allegedly attributable to Mr. João Arruda, in his capacity as CFO of AMBIPAR PARTICIPAÇÕES. Nevertheless, the feasibility of overcoming the situation was simultaneously demonstrated, since, given the adequate financial and cash flow health, the extensive payroll, obligations to suppliers and financial institutions, and the payment of taxes in the approximate annual amount of R$ 500,000,000.00 remained in good standing.

Added to this economic component is the institutional aspect: the turnaround is projected through the possibility of renegotiating liabilities with creditors, enabling the continuity of production and employment. As highlighted in the initial petition, the Ambipar Group has a distinguished track record in environmental management, promoting sustainable development and the preservation of 2.5 million hectares in the Amazon Rainforest.

From a principled perspective, granting the petition aligns with Article 47 of the Fiscal Responsibility Law (preservation of the company) and, furthermore, serves to protect investors' interests and the stability of the capital markets: since the companies undergoing reorganization are issuers with shares available on the stock market, the judicial uncertainty regarding the proceedings, as long as it persists, creates instability that affects price formation and allocation decisions, with potentially deleterious effects on the liquidity and value of the securities. A prompt judicial resolution, therefore, not only preserves the company and economic activity but also mitigates information asymmetries and protects investor confidence.

---

This document was signed by Antonio Dari Antunes Zhbanova. To validate the document and its signatures, access
https://asp.assinaturasempapel.com.br/validate/6WHWH-KG88F-AU2T8-L7QVM





**REPÚBLICA FEDERATIVA DO BRASIL**
*FEDERATIVE REPUBLIC OF BRAZIL*
**ANTONIO DARI ANTUNES ZHBANOVA**
TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL·- *CERTIFIED PUBLIC TRANSLATOR*
ldioma/Language: Inglês - Português/*English - Portuguese*
Matrícula Jucepe nº 406 • CPF 756.770.758-68
Rua Princesa Isabel nº 206 - Aloisio Pinto - Garanhuns (PE) CEP : 55.292-21 0
*Telefone/Phone/Whatsapp* +55 11  9 8784 1006 – (87) 92000-9314 - e-mail: dari.zhbanova@gmail.com  (skype: antonio.dari)

TRANSLATION No. WT 59387          BOOK No. 240          PAGE No.  0019

Under these conditions, the elements characterizing the initiation of judicial reorganization proceedings are present, pursuant to Article 51, I, of Law 11,101/05.

With regard to the documentation required by Articles 48 and 51 of the LRF, the petitioners indicated, in items 140/141, the "docs" corresponding to the respective subparagraphs, although with numbering that does not correspond exactly.

Once the clerical error was corrected, the documents were located, in chronological order, in event 90, "others," items 17, 18, 19, 20, and 21; the list of creditors is contained in event 89, "others," item 12.

The certificates from the protest registries located at the headquarters and branches of the petitioners were identified in event 90, "other," item 35; and the list of all legal actions and arbitration proceedings (including those of a labor nature), as well as other relevant documents, are contained in Exhibit 90, "Others," items 39, 40, 41, and 42.

As for subparagraphs IV, VI, and VII of Article 51 of the LRF and the management cash flow report, this Court, in its decision regarding Exhibit 97, item 7, authorized their filing under seal, emphasizing the inappropriateness of filing them with a notary's office, a decision that is hereby upheld in its entirety.

It should be noted that the petitioners have demonstrated the regular exercise of activities for more than two (2) years, satisfying Article 48 of Law 11.101/05, as well as the cumulative requirements of its subparagraphs I, II, III, and IV; likewise, the requirements of Article 69-J, main text and subparagraphs, of Law 11.101/05 have been met.

Finally, considering the need to preserve the company as a producer of goods and services, its importance in generating tax revenue and jobs, as well as the body of evidence contained in the case file, I GRANT THE PETITION FOR JUDICIAL RECOVERY of the AMBIPAR GROUP, IN SUBSTANTIAL CONSOLIDATION, pursuant to Article 69-J of the Fiscal Responsibility Law (LRF). comprising the following companies: (1) AMBIPAR RESPONSE ENVIRONMENTAL CONSULTING OFFSHORE S.A., a company registered with the CNPJ under No. 12.285.662/0001-34, with its headquarters in the State of Rio de Janeiro, in the City of Rio de Janeiro, at Rua Lauro Muller, No. 116, Botafogo neighborhood, ZIP Code 22.290-160; (2) AMBIPAR CBL INDÚSTRIA E COMÉRCIO DE MANUFATURADOS S.A., a corporation registered with the CNPJ under No. 08.607.957/0001-02, with headquarters in the State of Paraná, in the City of São José dos Pinhais, at Rua Wenceslau Marek, No. 63, Águas Belas neighborhood, ZIP Code 83.010-520; (3) AMBIPAR CERTIFICATION LTDA., a limited liability company registered with the CNPJ under No. 39.658.648/0001-95, with headquarters in the State of São Paulo, in the City of São Paulo, at Avenida Angélica, No. 2,346, Consolação neighborhood, ZIP Code 01.228-200; (4) AMBIPAR COMPLIANCE SOLUTIONS S.A., a corporation registered with the CNPJ under No. 86.450.624/0001-26, headquartered in the State of Minas Gerais, in the City of Belo Horizonte, at Avenida do Contorno, No. 6,594, Savassi neighborhood, ZIP Code 30.110-044; (5) AMBIPAR C-SAFETY COMÉRCIO, INDÚSTRIA E SERVIÇOS LTDA., a limited liability company registered with the CNPJ under No. 22.036.291/0001-00, headquartered in the State of Rio de Janeiro, in the City of Niterói, at Rua Manoel Pacheco de Carvalho, No. 102, Centro neighborhood, ZIP Code 24.030-290; (6) AMBIPAR ECO PRODUCTS S.A., a corporation registered with the CNPJ under No. 02.941.454/0001-92, headquartered in the State of São Paulo, in the City of Nova Odessa, on Anhanguera Highway, S/N, Industrial Production

This document was signed by Antonio Dari Antunes Zhbanova. To validate the document and its signatures, access https://asp.assinaturasempapel.com.br/validate/6WHWH-KG88F-AU2T8-L7QVM





**REPÚBLICA FEDERATIVA DO BRASIL**
*FEDERATIVE REPUBLIC OF BRAZIL*
**A N T O N I O   D A R I   A N T U N E S   Z H B A N O V A**
TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL·- *CERTIFIED PUBLIC TRANSLATOR*
ldioma/Language: Inglês - Português/*English - Portuguese*
Matrícula Jucepe nº 406 • CPF 756.770.758-68
Rua Princesa Isabel nº 206  - Aloisio Pinto - Garanhuns (PE) CEP :  55.292-21 0
*Telefone/Phone/Whatsapp* +55 11  9 8784 1006 – (87) 92000-9314 - e-mail: dari.zhbanova@gmail.com  (skype: antonio.dari)

TRANSLATION No. WT 59387          BOOK No. 240          PAGE No.  0020

Zone One (ZPI-01) neighborhood, ZIP Code 13.388-220; (7) AMBIPAR ENVIRONMENT CIRCULAR ECONOMY FPI PARANÁ LTDA., a limited liability company registered with the CNPJ under No. 26.611.091/0001-95, headquartered in the State of Paraná, in the City of Rolândia, at Rua Hungria, No. 1,909, Manoel Muller Neighborhood, ZIP Code 86.601-770; (8) AMBIPAR ENVIRONMENT CIRCULAR ECONOMY FPI S.A., a corporation registered with the CNPJ under No.  07.714.426/0001-56, headquartered in the State of Paraná, in the City of São José dos Pinhais, at Rua Wenceslau Marek, No. 63, Aeroporto Neighborhood, ZIP Code 83.010-520; (9) AMBIPAR ENVIRONMENT CIRCULAR ECONOMY NE LTDA., a limited liability company registered with the CNPJ under No. 16.625.236/0001-53, headquartered in the State of Ceará, in the City of Juazeiro do Norte, at Rua Manoel Cassimiro, No.57, Prefeito Carlos Alberto da Cruz neighborhood, ZIP Code 63.041-018; (10) AMBIPAR ENVIRONMENT CIRCULAR ECONOMY RM S.A., a corporation registered with the CNPJ under No. 05.034.679/0001 53, headquartered in the State of São Paulo, in the City of São José dos Campos, at Avenida Doutor Sebastião Henrique da Cunha Pontes, No. 8,000, Chácaras Reunidas neighborhood, ZIP Code 12.238-365; (11) AMBIPAR ENVIRONMENT ECONOMIA CIRCULAR NORDESTE S.A., a corporation registered with the CNPJ under No.° 08.143.344/0001-61, headquartered in the State of Ceará, in the City of Juazeiro do Norte, at Avenida do Agricultor, No. 567, Três Marias neighborhood, ZIP Code 63.015-130; (12) AMBIPAR ENVIRONMENT MANAUS LTDA., a limited liability company registered with the CNPJ under No. 12.163.869/0001-36, headquartered in the State of Amazonas, in the City of Manaus, at Avenida Abiurana, No. 666, Distrito Industrial I neighborhood, ZIP Code 69.075-010; (13) AMBIPAR ENVIRONMENT RESIDENTIAL COLLECTION S.A., a corporation registered with the CNPJ under No. 10.652.751/0001 46, headquartered in the State of São Paulo, in the City of São Paulo, at Rua João Antônio de Oliveira, No. 453, Mooca neighborhood, ZIP Code 03.111-010; (14) AMBIPAR ENVIRONMENT REVERSE MANUFACTURING S.A., a corporation registered with the CNPJ under No. 10.711.268/0001-95, headquartered in the State of São Paulo, in the City of Nova Odessa, on Rod. Anhanguera, S/N, Industrial Production Zone One (ZPI-01), ZIP Code 13.388 220; (15) AMBIPAR ENVIRONMENT WASTE MANAGEMENT AL S.A., a corporation registered with the CNPJ under No. 02.234.179/0001-77, headquartered in the State of Alagoas, in the City of Marechal Deodoro, at Rua Em Projeto Sítio Volta D'água, S/N, Santa Rita neighborhood, ZIP Code 57.160-000; (16) AMBIPAR ENVIRONMENT WASTE MANAGEMENT SUL LTDA., a limited liability company registered with the CNPJ under No. 13.244.668/0001-26, headquartered in the State of Paraná, in the City of São José dos Pinhais, on Highway BR-376, No. 17,433, Barro Preto neighborhood, ZIP Code 83.015-820; (17) AMBIPAR ENVIRONMENTAL CENTROESTE S.A., a corporation registered with the CNPJ under No. 09.255.903/0001-98, headquartered in the State of Mato Grosso, in the City of Rondonópolis, at Rua Mario Rossignolo, No. 406, Distrito Industrial neighborhood, ZIP Code 78.745-790; (18) AMBIPAR ENVIRONMENTAL GLASS CULLET RECYCLING SP LTDA., a company registered with the CNPJ under No. 04.875.792/0001-07, headquartered in the State of São Paulo, in the City of Guarulhos, at Avenida Jaraguá, No. 246, Cidade Industrial Satélite de São Paulo neighborhood, ZIP Code 07.221-050; (19) AMBIPAR ENVIRONMENTAL GREEN TIRE AMBIENTAL LTDA., a company registered with the CNPJ under No. 42.317.705/0001-87, headquartered in the State of Pernambuco, in the City of Jaboatão dos

This document was signed by Antonio Dari Antunes Zhbanova. To validate the document and its signatures, access https://asp.assinaturasempapel.com.br/validate/6WHWH-KG88F-AU2T8-L7QVM





**REPÚBLICA FEDERATIVA DO BRASIL**
*FEDERATIVE REPUBLIC OF BRAZIL*
**A N T O N I O   D A R I   A N T U N E S   Z H B A N O V A**
TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL - *CERTIFIED PUBLIC TRANSLATOR*
ldioma/Language: Inglês - Português/*English - Portuguese*
Matrícula Jucepe nº 406 • CPF 756.770.758-68
Rua  Princesa  Isabel  nº 206  - Aloisio  Pinto  -  Garanhuns  (PE)  CEP :  55.292-21 0
*Telefone/Phone/Whatsapp* +55 11  9 8784 1006 – (87) 92000-9314 - e-mail: dari.zhbanova@gmail.com  (skype: antonio.dari)

TRANSLATION No. WT 59387          BOOK No. 240          PAGE No.  0021

Guararapes, at Rodovia Empresário João Santos Filho, No. 2,619, Muribeca neighborhood, ZIP code 54.350-100; (20) AMBIPAR ENVIRONMENTAL MACHINES S.A., a company registered with the CNPJ under No. 21.000.046/0001-80, headquartered in the State of São Paulo, in the City of São Paulo, at Avenida Angélica, No. 2,346, Consolação neighborhood, ZIP Code 01-228-200; (21) AMBIPAR ENVIRONMENTAL MINING LTDA., a company registered with the CNPJ under No. 61,059,978/0001-13, headquartered in the State of São Paulo, in the City of São Paulo, at Avenida Leôncio de Magalhães, No. 722, Jardim São Paulo neighborhood (North Zone), ZIP Code 02.042-000; (22) AMBIPAR ENVIRONMENTAL NORDESTE LTDA., a company registered with the CNPJ under No. 24.312.884/0001-88, with headquarters in the State of Pernambuco, in the City of Jaboatão dos Guararapes, at Rodovia Empresário João Santos Filho, No. 2,619, Muribeca neighborhood, ZIP Code 54.350-100; (23) AMBIPAR ENVIRONMENTAL NORDESTE S.A., a company registered with the CNPJ under No. 35.960.890/0001-68, headquartered in the State of Pernambuco, in the City of Recife, at Rua Professor Aloisio Pessoa de Araújo, No. 75, Boa Viagem neighborhood, ZIP Code 51.021-410; (24) AMBIPAR ENVIRONMENTAL SOLUTIONS - SOLUÇÕES AMBIENTAIS LTDA., a company registered with the CNPJ under No. 00.679.427/0001-68, headquartered in the State of São Paulo, in the City of São Paulo, at Av. Pacaembu, No. 1,088, Pacaembu neighborhood, ZIP Code 01.234-000; (25) AMBIPAR ENVIRONMENTAL SUPREMA INDUSTRIAL SOLUTIONS S.A., a company registered with the CNPJ under No. 00.512.573/0001-02, headquartered in the State of Minas Gerais, in the City of Pedro Leopoldo, at Rod. Dr. Otávio Costa, No. 1,800, Doutor Lund neighborhood, ZIP Code 33.250-461; (26) AMBIPAR ENVIRONMENTAL VIRASER S.A., a company registered with the CNPJ under No. 17.346.336/0001-03, headquartered in the State of São Paulo, in the City of Nova Odessa, at Rod. Anhanguera, No. S/N, Zona de Produção Industrial Um (ZPI-01) neighborhood, ZIP Code 13.388-220; (27) AMBIPAR ESG BRASIL S.A., a company registered with the CNPJ under No. 41.000.384/0001-20, headquartered in the State of São Paulo, in the City of Nova Odessa, on Rod. Anhanguera, S/N, District Distrito Industrial I, ZIP Code 13.388-220; (28) AMBIPAR ESG RISK MANAGEMENT LTDA., a company registered with the CNPJ under No. 11.078.062/0001-32, headquartered in the State of São Paulo, in the City of São Paulo, at Av. Angélica, No. 2,346, Consolação neighborhood, ZIP Code 01.228-200; (29) AMBIPAR FLYONE SPECIALIZED AIR SERVICES, TRADE AND SERVICES S.A., a company registered with the CNPJ under No. 03.945.337/0001-60, headquartered in the State of Rio de Janeiro, in the City of Rio de Janeiro, at Av. Ayrton Senna, No. 2,541, Barra da Tijuca neighborhood, ZIP Code 22.775-002; (30) AMBIPAR GREEN TECH LTDA., a company registered with the CNPJ under No. 03.175.428/0001-63, headquartered in the State of Minas Gerais, in the City of Belo Horizonte, at Av. do Contorno, No. 6,594, Savassi District , ZIP Code 30.110-044; (31) AMBIPAR HEALTH WASTE SERVICES S.A., a company registered with the CNPJ under No. 26.893.667/0001-54, with headquarters in the State of Pernambuco, in the City of Recife, at R. Pereira Barreto, No. 200, Passarinho neighborhood, ZIP Code 52.165-050; (32) AMBIPAR INCORPORATION INVESTMENTS LTDA., a company registered with the CNPJ under No. 12.696.314/0001-50, headquartered in the State of São Paulo, in the City of São Paulo, at Av. Pacaembu, No. 1088, Pacaembu Neighborhood, ZIP Code 01.234-000; (33) AMBIPAR METAL RECYCLING LTDA., a company registered with the CNPJ under No. 44.745.286/0001-00, headquartered in the State of

This document was signed by Antonio Dari Antunes Zhbanova. To validate the document and its signatures, access
https://asp.assinaturasempapel.com.br/validate/6WHWH-KG88F-AU2T8-L7QVM





**REPÚBLICA FEDERATIVA DO BRASIL**
*FEDERATIVE REPUBLIC OF BRAZIL*
**A N T O N I O   D A R I   A N T U N E S   Z H B A N O V A**
TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL·- *CERTIFIED PUBLIC TRANSLATOR*
ldioma/Language: Inglês - Português/*English - Portuguese*
Matrícula Jucepe nº 406 • CPF 756.770.758-68
Rua Princesa Isabel nº 206 - Aloisio Pinto - Garanhuns (PE) CEP : 55.292-21 0
*Telefone/Phone/Whatsapp* +55 11  9 8784 1006 – (87) 92000-9314 - e-mail: dari.zhbanova@gmail.com  (skype: antonio.dari)

| TRANSLATION No. WT 59387 | BOOK No. 240 | PAGE No.  0022 |
|---|---|---|

Minas Gerais, in the City of Andradas, at Rod. MG 455 Andradas/Pinhal, S/N, Lagoa Dourada neighborhood, ZIP Code 37.795-000; (34) AMBIPAR PARTICIPAÇÕES E EMPREENDIMENTOS S.A., a company registered with the CNPJ under No. 12.648.266/0001-24, headquartered in the State of São Paulo, in the City of São Paulo, at Av. Pacaembu, No. 1,088, Pacaembu neighborhood, ZIP Code 01.234-000; (35) AMBIPAR RESPONSE ANALYTICAL S.A., a company registered with the CNPJ under No. 10.3 3 5.931/0001-02, headquartered in the State of Espírito Santo, in the City of ARACRUZ, at Rua Perobas, No. 190, Coqueiral neighborhood, ZIP Code 29.199-117; (36) AMBIPAR RESPONSE DRACARES APOIO MARÍTIMO E PORTUÁRIO S.A., a company registered with the CNPJ under No. 07.049.258/0001-21, headquartered in the State of Santa Catarina, in the City of São Francisco do Sul, at Rua Fernandes Dias, No. 456, Centro Neighborhood, ZIP Code 89.330-166; (37) AMBIPAR RESPONSE EMERGENCY MEDICAL SERVICES H S.A., a company registered with the CNPJ under No. 05.959.078/0001-51, headquartered in the State of Paraná, in the City of Pinhais, at Rua Vinte e Quatro de Maio, No. 299, Estância Pinhais neighborhood, ZIP Code 83.323 060; (38) AMBIPAR RESPONSE EMERGENCY MEDICAL SERVICES R S.A., a company registered with the CNPJ under No. 02.464.053/0001-99, headquartered in the State of Paraná, in the City of Pinhais, at Rua Vinte e Quatro de Maio, No. 299, Estância Pinhais neighborhood, ZIP Code 83.323-060; (39) AMBIPAR RESPONSE EMERGENCY MEDICAL SERVICES S S.A., a company registered with the CNPJ under No. 07.759.154/0001-00, headquartered in the State of Paraná, in the City of Pinhais, at Rua Vinte e Quatro de Maio, No. 299, Estância Pinhais neighborhood, ZIP Code 83.323-060; (40) AMBIPAR RESPONSE ENVIRONMENTAL REMEDIATION LTDA., a company registered with the CNPJ under No. 14.233.110/0001-08, headquartered in the State of São Paulo, in the City of Indaiatuba, at Rua Augusto Poltronieri, No. 243, Park Comercial de Indaiatuba neighborhood, ZIP Code 13.347-443; (41) AMBIPAR RESPONSE ENVIRONMENTAL SERVICES LTDA., a company registered with the CNPJ under No. 10.550.896/0001-36, headquartered in the State of Espírito Santo, in the City of Vitória, at Rua Manoel Feu Subtil, No. 60, Enseada do Sua neighborhood, ZIP Code 29.050-917; (42) AMBIPAR RESPONSE ESPÍRITO SANTO S.A., a company registered with the CNPJ under No. 27.853.153/0001-38, with headquarters in the State of Espírito Santo, in the city of Vitória, at Rua Manoel Feu Subtil, No. 60, Enseada de Sua neighborhood, ZIP Code 29.050-917; (43) AMBIPAR RESPONSE FAUNA E FLORA LTDA., a company registered with the CNPJ under No. 39.793.153/0001-79, headquartered in the State of Espírito Santo, in the City of Vitória, at Rua Manoel Feu Subtil, No. 60, Enseada do Sua neighborhood, ZIP Code 29.050-917; (44) AMBIPAR RESPONSE GEOCIÊNCIAS LTDA., a company registered with the CNPJ under No. 17.732.383/0001-95, headquartered in the State of Espírito Santo, in the City of Vitória, at Rua Manoel Feu Subtil, No. 60, Enseada do Sua neighborhood, ZIP Code 29.050-917; (45) AMBIPAR RESPONSE INDUSTRIAL ROBOT S.A., a company registered with the CNPJ under No. 33.294.016/0001-03, headquartered in the State of São Paulo, in the City of Jacareí, at Rua Harold Barnsley Holland, No. 1,151, Rio Abaixo neighborhood, ZIP Code 12.334-403; (46) AMBIPAR RESPONSE INDUSTRIAL SERVICES S.A., a company registered with the CNPJ under No. 39.233.457/0001-81, headquartered in the State of Rio de Janeiro, in the City of Rio das Ostras, at Av. Dos Bandeirantes, No. 690, Enseada das Gaivotas neighborhood, ZIP Code 28.897-188; (47) AMBIPAR RESPONSE MARINE

This document was signed by Antonio Dari Antunes Zhbanova. To validate the document and its signatures, access https://asp.assinaturasempapel.com.br/validate/6WHWH-KG88F-AU2T8-L7QVM





**REPÚBLICA FEDERATIVA DO BRASIL**
*FEDERATIVE REPUBLIC OF BRAZIL*
**ANTONIO DARI ANTUNES ZHBANOVA**
TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL - *CERTIFIED PUBLIC TRANSLATOR*
ldioma/Language: Inglês - Português/*English - Portuguese*
Matrícula Jucepe nº 406 • CPF 756.770.758-68
Rua Princesa Isabel nº 206 - Aloisio Pinto - Garanhuns (PE) CEP : 55.292-21 0
*Telefone/Phone/Whatsapp* +55 11  9 8784 1006 – (87) 92000-9314 - e-mail: dari.zhbanova@gmail.com  (skype: antonio.dari)

TRANSLATION No. WT 59387          BOOK No. 240          PAGE No.  0023

S.A., a company registered with the CNPJ under No. 06.086.769/0001-50, headquartered in the State of Rio de Janeiro, in the City of Niterói, at Rua Engenheiro Fábio Goulart, No. 163, Ilha da Conceição neighborhood, ZIP Code 24.050-090; (48) AMBIPAR RESPONSE MARITIME SERVICES PDA S.A., a company registered with the CNPJ under No. 04.978.039/0001-39, headquartered in the State of Espírito Santo, in the City of Vitória, at Rua das Palmeiras, No. 795, Santa Lucia neighborhood, ZIP Code 29.056-210; (49) AMBIPAR RESPONSE S.A., a company registered with the CNPJ under No. 11.414.555/0001-04, headquartered in the State of São Paulo, in the City of São Paulo, at Av. Pacaembu, No. 1,088, Pacaembu neighborhood, ZIP Code 01.234-000; (50) AMBIPAR RESPONSE TANK CLEANING S.A., a corporation registered with the CNPJ under No. 18.591.097/0001-10, with headquarters in the State of Rio de Janeiro, in the City of Niterói, at Praça Marechal Stenio Caio de Albuquerque Lima, No. 102, Centro neighborhood, ZIP Code 24.030-290; (51) AMBIPAR WASTE TO ENERGY S.A., a company registered with the CNPJ under No. 05.458.585/0001-01, headquartered in the State of Pernambuco, in the City of Jaboatão dos Guararapes, at Rod. Empresário João Santos Filho, No. 2,619, Muribeca Neighborhood, ZIP Code 54.350-100; (52) AMBIPAR WORKFORCE SOLUTION - MÃO DE OBRA TEMPORÁRIA LTDA., a company registered with the CNPJ under No. 19.825.185/0001-00, with headquarters in the State of São Paulo, in the City of Nova Odessa, on Rod. Anhanguera, S/N, Distrito Industrial I (ZPI-01) neighborhood, ZIP Code 13.388-220; (53) BOOMERA AMBIPAR GESTÃO AMBIENTAL S.A., a company registered with the CNPJ under No. 14.512.293/0001-09, with headquarters in the State of São Paulo, in the City of São Paulo, at Av. Angélica, No. 2,346, Consolação neighborhood, ZIP Code 01.228-200; (54) DRYPOL AMBIPAR ENVIRONMENTAL PET SOLUTIONS S.A., a company registered with the CNPJ under No. 04.942.888/0001-32, headquartered in the State of São Paulo, in the City of Diadema, at Rua Romeu Cicarelli, No. 67, Vila Odete neighborhood, ZIP Code 09.942-010; (55) EMERGÊNCIA PARTICIPAÇÕES S.A., a corporation registered with the CNPJ under No. 10.645.019/0001-49, with its principal place of business in the State of São Paulo, in the City of São Paulo, at Av. Angélica, No. 2,346, Consolação neighborhood, ZIP Code 01.228-200; (56) ENVIRONMENTAL ESG PARTICIPAÇÕES S.A., a company registered with the CNPJ under No. 09.527.023/0001-23, with its headquarters in the State of São Paulo, in the City of Nova Odessa, at Rod. Anhanguera, S/N, Distrito Industrial neighborhood, ZIP Code 13.388-220; (57) JM SERVIÇOS INTEGRADOS S.A., a company registered with the CNPJ under No. 05.120.343/0001-03, headquartered in the State of Paraná, in the City of Morretes, at Rua Dionísio Gonçalves do Nascimento, Raia Velha Neighborhood, ZIP Code 83.350-000; (58) RG RESPONSE S A, a company registered with the CNPJ under No. 14.113.259/0001-53, headquartered in the State of Mato Grosso, in the City of Cuiabá, at Av. Professora Edna Maria de Albuquerque Affí (Jd. Imperial 2a E, LT 27, Jardim Imperial neighborhood, ZIP Code 78.076-001; (59) RMC2 SOLUÇÕES AMBIENTAIS LTDA., a company registered with the CNPJ under No. 28.077.248/0001-70, headquartered in the State of São Paulo, in the City of Indaiatuba, at Al. Jupiter, No. 1,123, Distrito Industrial Nova Era neighborhood, ZIP Code 13.347-397; (60) TERRA DRONE BRASIL SERVIÇOS DE ENGENHARIA S.A., a company registered with the CNPJ under No. 29.301.466/0001-09, headquartered in the State of Rio de Janeiro, in the City of Rio de Janeiro, at Av. Olegário Maciel, No. 531, Barra da Tijuca neighborhood, ZIP Code 22.621-200; (61) AMBIPAR ENVIRONMENT CULLET RECYCLING BRASIL S.A., a corporation registered with the

This document was signed by Antonio Dari Antunes Zhbanova. To validate the document and its signatures, access https://asp.assinaturasempapel.com.br/validate/6WHWH-KG88F-AU2T8-L7QVM





**REPÚBLICA FEDERATIVA DO BRASIL**
*FEDERATIVE REPUBLIC OF BRAZIL*
**ANTONIO DARI ANTUNES ZHBANOVA**
TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL·- *CERTIFIED PUBLIC TRANSLATOR*
ldioma/Language: Inglês - Português/*English - Portuguese*
Matrícula Jucepe nº 406 • CPF 756.770.758-68
Rua Princesa Isabel nº 206 - Aloisio Pinto - Garanhuns (PE) CEP : 55.292-21 0
*Telefone/Phone/Whatsapp* +55 11  9 8784 1006 – (87) 92000-9314 - e-mail: dari.zhbanova@gmail.com  (skype: antonio.dari)

TRANSLATION No. WT 59387          BOOK No. 240          PAGE No.  0024

CNPJ under No. 54.229.824/0001-67, headquartered in the State of São Paulo, in the City of São Paulo, at Avenida Angélica, No. 2,346, Consolação neighborhood, ZIP Code 01.228-200; (62) AMBIPAR ENVIRONMENT POS CONSUMO LTDA., a limited liability company registered with the CNPJ under No. 55.940.475/0001-50, headquartered in the State of São Paulo, in the City of São Paulo, at Avenida Angélica, No. 2,346, Consolação Neighborhood, ZIP Code 01.228-200; (63) AMBIPAR ENVIRONMENTAL ECOPARQUE S.A., a corporation registered with the CNPJ under No. 53.172.475/0001-21, with headquarters in the State of Pernambuco, in the City of Igarassu, on BR 101 North Highway, S/N, Igarassu Rural Area, ZIP Code 53.659 899; (64) AMBIPAR ENVIRONMENT INDUSTRIAL WATER SOLUTIONS LTDA., a company registered with the CNPJ under No. 10.808.894/0001-02, headquartered in the State of São Paulo, in the City of Piracicaba, at Rua Frei Vital de Primeiro, No. 247, Vila Pacaembu neighborhood, ZIP Code 13.424-580; (65) AMBIPAR RESPONSE PARTICIPAÇÕES BRASIL S.A., a company registered with the CNPJ under No. 58.238.535/0001-85, with headquarters in the State of São Paulo, in the City of São Paulo, at Av. Angélica, No. 2,346, Consolação neighborhood, ZIP Code 01.228-200; (66) AMAZONIA INCORPORAÇÃO E PARTICIPAÇÃO S.A., a company registered with the CNPJ under No. 13.113.933/0001-37, with its headquarters in the State of São Paulo, in the City of São Paulo, at Av. Pacaembu, No. 1,088, Pacaembu neighborhood, ZIP Code 01.234-000; (67) NUTRIGÁS S.A., a company registered with the CNPJ under No. 39.793.260/0011-79, with a branch in the State of São Paulo, in the City of São Paulo, at Av. Pacaembu, No. 1088, Pacaembu neighborhood, ZIP Code 01.234-000; (68) NUTRIPETRO S.A., a company registered with the CNPJ under No. 10.608.868/0001-22, with headquarters in the State of Espírito Santo, in the City of Aracruz, at Av. Professor Aparício Alvarenga, S/N, Barra do Riacho neighborhood, ZIP Code 29.197-556; (69) CRICARE PRAIA HOTEL LTDA., a company registered with the CNPJ under No. 17.855.660/0001-57, headquartered in the State of Espírito Santo, in the City of Conceição da Barra, at Rua Capitão Antero Faria, S/N, Centro neighborhood, ZIP Code 29.960-970; (70) EVEREST PARTICIPAÇÕES E EMPREENDIMENTOS S.A., a company registered with the CNPJ under No. 13.051.485/0001-94, headquartered in the State of São Paulo, in the City of São Paulo, at Av. Pacaembu, No. 1,088, Pacaembu District, ZIP Code 01.234-000; (71) AMBIPAR LUX S.À.R.L., a company registered with the Luxembourg Trade and Companies Register ( ) ("RCSL") under No. B279448, with headquarters in Luxembourg, and AMBIPAR EMERGENCY RESPONSE, a company registered with the CNPJ under No. 49.261.471/0001-42 CO-390269, with headquarters in the Cayman Islands.

Pursuant to Articles 6 and 52 of Law No. 11,101/2005, I hereby order the following:

**I - WAIVER OF CERTIFICATES**

The applicants are exempt from presenting clearance certificates for the regular conduct of their activities.

**II - BUSINESS NAME**

I hereby order that the applicants add the phrase "under judicial reorganization" after their respective business names.

**III - SUSPENSION OF PROCEEDINGS**

A) I hereby suspend all lawsuits and enforcement proceedings filed against the petitioners, pursuant to Article 6, Paragraph 4, of Law No. 11,101/2005, effective September 24, 2025, for 180 (one hundred and

This document was signed by Antonio Dari Antunes Zhbanova. To validate the document and its signatures, access
https://asp.assinaturasempapel.com.br/validate/6WHWH-KG88F-AU2T8-L7QVM





**REPÚBLICA FEDERATIVA DO BRASIL**
*FEDERATIVE REPUBLIC OF BRAZIL*
**ANTONIO DARI ANTUNES ZHBANOVA**
TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL·- *CERTIFIED PUBLIC TRANSLATOR*
ldioma/Language: Inglês - Português/*English - Portuguese*
Matrícula Jucepe nº 406 • CPF 756.770.758-68
Rua Princesa Isabel nº 206 - Aloisio Pinto - Garanhuns (PE) CEP : 55.292-21 0
*Telefone/Phone/Whatsapp* +55 11  9 8784 1006 – (87) 92000-9314 - e-mail: dari.zhbanova@gmail.com  (skype: antonio.dari)

| TRANSLATION No. WT 59387 | BOOK No. 240 | PAGE No.  0025 |
| --- | --- | --- |

eighty) calendar days, with the case files remaining in the court of origin, except in the cases provided for in paragraphs 1, 2, and 7 of Article 6, as well as those relating to claims exempted in paragraphs 3 and 4 of Article 49 of the same law. To prevent misinterpretations, I hereby establish September 24, 2025 (the date of filing of the preceding preliminary injunction) as the effective date of this judicial reorganization.

B) I ratify the effects of the preliminary injunction granted in Event 9 and endorsed by the Honorable Reporting Judge Mauro Pereira Martins, in a sole-judge decision in Interlocutory Appeal No. 3001406-29.2025.8.19.0000/RJ. For proper publicity and understanding, I reproduce the content of Event 9, noting that the suspension shall remain in effect during the stay period. Thus, during this period:

i) the enforceability and the running of the statute of limitations for the claims and obligations (including obligations to do, not to do, and to deliver) of the petitioners and related parties, whose triggering events coincide with or precede the date above, are suspended;

ii) enforcement proceedings and any collection measures against the petitioners and related parties regarding claims or obligations (including obligations to perform, refrain from performing, and deliver) whose triggering events coincide with or precede the aforementioned date are suspended;

iii) Any form of withholding, attachment, seizure, search and seizure, and judicial or extrajudicial enforcement against the assets of the petitioners and their related parties, arising from judicial or extrajudicial proceedings with triggering events occurring on or prior to the same date, is prohibited.

C) In accordance with the emergency relief granted in Interlocutory Appeal No. 3001406-29.2025.8.19.0000/RJ, I hereby give full publicity to the appellate court's decision and ratify it, ordering:

i) that providers of essential services refrain from interrupting the supply of goods and services to the AMBIPAR GROUP and from creating obstacles of any nature to the regular fulfillment of contractual provisions, based on default on credits subject to judicial reorganization;

ii) that creditors refrain from enforcing fiduciary guarantees, including the fiduciary assignment of credit rights over any accounts and financial investments, as well as from appropriating any funds and financial investments of the Ambipar Group;

iii) the suspension of the effectiveness of any and all express termination clauses authorizing the termination of contracts essential to the maintenance of the appellants' operations;

iv) creditors to refrain from declaring the early maturity of debts related to credits not subject to the effects of judicial reorganization, and to refrain from seizing, removing, freezing, or otherwise restricting the use of assets linked to the respective contractual instruments;

v) equipment lessors or lessees, who shall refrain from blocking, paralyzing, or in any way obstructing the use of equipment that is the subject of the lease agreements indicated by the appellants. Failure to comply with the obligations set forth herein shall result in a fine of R$ 100,000.00 per act of non-compliance, or 5% (five percent) of the contract value, whichever is greater.

IV - FOREIGN REPRESENTATIVE (ART. 167-B OF THE LRF)

Pursuant to Article 167-B, paragraph 1, item IV, of the LRF, I hereby appoint Mr. Ricardo Rosanova Garcia, a Brazilian citizen, single, administrator, ID No. 21.152.028-7 SSP/SP, CPF No. 259.792.868-37, as the foreign representative of any Applicant, so that, if necessary, he may appear before foreign authorities and act in foreign debt restructuring proceedings in any jurisdiction where such action proves necessary or

This document was signed by Antonio Dari Antunes Zhbanova. To validate the document and its signatures, access https://asp.assinaturasempapel.com.br/validate/6WHWH-KG88F-AU2T8-L7QVM





**REPÚBLICA FEDERATIVA DO BRASIL**
*FEDERATIVE REPUBLIC OF BRAZIL*
**A N T O N I O   D A R I   A N T U N E S   Z H B A N O V A**
TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL - *CERTIFIED PUBLIC TRANSLATOR*
ldioma/Language: Inglês - Português/*English - Portuguese*
Matrícula Jucepe nº 406 • CPF 756.770.758-68
Rua Princesa Isabel nº 206  - Aloisio Pinto - Garanhuns (PE) CEP : 55.292-21 0
*Telefone/Phone/Whatsapp* +55 11  9 8784 1006 – (87) 92000-9314 - e-mail: dari.zhbanova@gmail.com  (skype: antonio.dari)

TRANSLATION No. WT 59387              BOOK No. 240                              PAGE No.  0026

useful, including, without limitation, judicial reorganization or similar insolvency proceedings, whether principal, non-principal, or ancillary proceedings, in accordance with the applicable laws of the respective jurisdictions.

V - SUBMISSION OF MONTHLY ACCOUNTS

I hereby order that the companies undergoing judicial reorganization submit monthly financial statements throughout the entire judicial reorganization process, by the fifth business day of the following month, and forward a copy to the Joint Judicial Administration within the same timeframe, in compliance with Article 22, II, "c," of the Fiscal Responsibility Law (LRF), under penalty of removal of their administrators.

VI - NOTIFICATIONS

I order that the Public Prosecutor's Office and the Federal, State, and Municipal Treasury Offices in the jurisdictions where the companies under reorganization conduct business activities be served with summonses. Pursuant to Article 6 of the Code of Civil Procedure (CPC), I order that the companies under reorganization list, in a separate petition, all municipalities in which they operate, for the purpose of serving summonses on the respective entities.

VII - OFFICIAL LETTERS TO THE COMMERCIAL REGISTRIES

Official letters shall be sent to the competent Commercial Registries to record the petition for reorganization in their respective registries, and the phrase "under Judicial Reorganization" must appear after the business name. Pursuant to Article 6 of the CPC, I hereby order the companies undergoing reorganization to list, in a separate petition, the Commercial Registries to which such letters are to be sent.

VIII - PUBLICATION OF THE NOTICE

I order the issuance and publication of the notice provided for in Article 52, Paragraph 1 of the , of Law No. 11,101/2005, subject to the substantial consolidation of this judicial reorganization.

IX - ADMINISTRATIVE REGISTRATION

I hereby order that creditors, as of the publication of the notice referred to in Article 52, § 1, of Law No. 11,101/2005, submit, within fifteen (15) days, their claims or objections to the Joint Judicial Administration, which shall take into account that this is a judicial reorganization in substantial consolidation. The period is calculated in calendar days.

X - PUBLICATION OF THE LIST OF CREDITORS BY THE JUDICIAL ADMINISTRATION

Pursuant to Article 7, Paragraph 2, of the LRF, the judicial administrator, based on the information and documents collected in accordance with the caput and Paragraph 1 of Article 7, shall publish a notice containing the list of creditors within 45 (forty-five) days from the end of the period set forth in § 1 of Article 7, indicating the location, time, and common period during which the persons mentioned in Article 8 will have access to the documentation supporting the list, with the period being counted in calendar days. The Judicial Administration must observe the substantial consolidation.

XI - OBJECTIONS

A creditor who challenges the list presented by the Judicial Administration (Article 7, § 2) must FILE THE CHALLENGE BY DEPENDENCY in EPROC as a PROCEDURAL MOTION, within ten (10) days, pursuant to Art. 8 of the LRF, and the proceedings shall be conducted in accordance with Art. 13 et seq. I emphasize that the filing of an objection in the main case file is PROHIBITED and shall be deemed

This document was signed by Antonio Dari Antunes Zhbanova. To validate the document and its signatures, access https://asp.assinaturasempapel.com.br/validate/6WHWH-KG88F-AU2T8-L7QVM





**REPÚBLICA FEDERATIVA DO BRASIL**
*FEDERATIVE REPUBLIC OF BRAZIL*
**A N T O N I O   D A R I   A N T U N E S   Z H B A N O V A**
TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL·- *CERTIFIED PUBLIC TRANSLATOR*
ldioma/Language: Inglês - Português/*English - Portuguese*
Matrícula Jucepe nº 406 • CPF 756.770.758-68
Rua Princesa Isabel nº 206  - Aloisio Pinto -  Garanhuns (PE) CEP :  55.292-21 0
*Telefone/Phone/Whatsapp* +55 11  9 8784 1006 – (87) 92000-9314 - e-mail: dari.zhbanova@gmail.com  (skype: antonio.dari)

TRANSLATION No. WT 59387             BOOK No. 240                     PAGE No.  0027

untimely, as it constitutes a gross error, noting that the deadline is calculated in calendar days.

The court clerk's office is hereby authorized to exclude, by means of a certificate and regardless of the conclusion, objections improperly filed in these main case records.

## XII - LATE FILINGS

Late claims must be filed BY DEPARTMENT, directly in EPROC, as a PROCEDURAL MOTION, pursuant to Article 10, paragraphs 5 and 6, of Law No. 11,101/2005. The filing of claims in these main case files is PROHIBITED.

The court clerk's office is hereby authorized to exclude, by means of a certificate and regardless of the outcome, qualifications improperly submitted in the main case.

## XIII - SUBMISSION OF THE PLAN

The companies undergoing reorganization must submit their reorganization plans within 60 (sixty) days from the publication of this decision, in compliance with the requirements of Article 53 of Law No. 11,101/2005 and the existence of substantial consolidation, noting that the period is calculated in calendar days.

Upon submission, they must provide the draft of the public notice in Microsoft Word format and pay the court costs.

## XIV - OBJECTIONS

Objections to the plan shall be filed in this case within 30 (thirty) days from the publication of the list of creditors referred to in Article 7, § 2, of the LRF. The period is calculated in c y calendar days.

## XV - NON-INTERVENTION

To ensure procedural speed and efficiency and to avoid disruption to the regular progress of the case, the INTERVENTION of creditors and interested third parties in the main case file of this judicial reorganization is LIMITED, except where expressly permitted by law (e.g., filing of objections or appeals).

Any request unrelated to the regular proceedings must be filed separately, as an incidental proceeding, addressed to the Debtors, the Court-Appointed Administrator, and the Public Prosecutor's Office.

## XVI - SUMMONSES

It is PROHIBITED to record, in these proceedings, the attorneys for all creditors and interested parties; it is their responsibility to monitor the progress of the case on the website of this Honorable Court of Justice, with service of process for procedural acts being effected by publication in the electronic Official Gazette (D.O.).

## XVII - JUDICIAL ADMINISTRATION

Considering the particularities of this case, this Judge notes that she does not, as a rule, adopt the competitive process system for the appointment of the Judicial Administrator, as provided for in Event 9.

However, acting in this case in lieu of the Judge responsible for proceeding with the case, I deem it necessary to preserve the method determined by him and already underway, thereby upholding the guidance of the competent court and avoiding legal uncertainty.

Conversely, Article 52, I, of the LRF imposes on the Court, upon granting the proceeding, the duty to appoint a Judicial Administrator. Thus, to comply with the legal provision, I will proceed to appoint a Judicial Administrator from among those listed in Item 9 to serve provisionally until the conclusion of the

This document was signed by Antonio Dari Antunes Zhbanova. To validate the document and its signatures, access
https://asp.assinaturasempapel.com.br/validate/6WHWH-KG88F-AU2T8-L7QVM





**REPÚBLICA FEDERATIVA DO BRASIL**
*FEDERATIVE REPUBLIC OF BRAZIL*
**ANTONIO DARI ANTUNES ZHBANOVA**
TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL·- *CERTIFIED PUBLIC TRANSLATOR*
ldioma/Language: Inglês - Português/*English - Portuguese*
Matrícula Jucepe nº 406 • CPF 756.770.758-68
Rua Princesa Isabel nº 206 - Aloisio Pinto - Garanhuns (PE) CEP : 55.292-21 0
*Telefone/Phone/Whatsapp* +55 11  9 8784 1006 – (87) 92000-9314 - e-mail: dari.zhbanova@gmail.com  (skype: antonio.dari)

| TRANSLATION No. WT 59387 | BOOK No. 240 | PAGE No.  0028 |
|---|---|---|

competitive process. Nevertheless, in the final analysis of the competitive process, the presiding judge may, if deemed appropriate, appoint two Judicial Administrators, in accordance with the principles of established case law in this court of justice.

I further note this Judge's understanding regarding the advisability of joint appointment in judicial reorganizations of recognized magnitude and complexity. The Court's consistency with its own decisions, incidentally, is a source of legal certainty. In a similar case, that of Clube de Regatas Vasco da Gama/Vasco SAF, I granted the appointment of two Judicial Administrators, a solution that, although challenged by the Public Prosecutor's Office, was upheld on appeal by Judge Cesar Felipe Cury (AI No. 0020234-27.2025.8.19.0000), precisely due to the complexity of the case and the need for greater oversight efficiency without increasing costs.

In this regard, although the State Public Prosecutor's Office typically opposes joint appointments, alleging a lack of express provision, the Court of Justice of the State of Rio de Janeiro has permitted the measure in highly complex cases, in line with the precedents: AI No. 0009137¬98.2023.8.19.0000 (Oi Group), reported by Judge Mônica Maria Costa Di Piero, and AI No. 0002604¬26.2023.8.19.0000 (Lojas Americanas), reported by Judge Leila Santos Lopes.

In these rulings, the possibility of joint action was established, without additional compensation, when duly justified by the scope of the case, the multidisciplinary nature required, and the pursuit of efficiency and transparency in oversight, in addition to the express division of tasks communicated to the Court.

In the same vein, the Center for Studies and Debates (CEDES)/TJRJ-Business Law approved Statement No. 1, establishing that "The joint appointment of more than one Judicial Administrator in the processing of judicial reorganization is permissible, duly justified by the Court due to complexity and when the structure of the economic group or the multiplicity of establishments justifies a clear division of functions, provided that the provisions of Art. 24, § 1, of Law 11,101/2005 and Art. 5, §§ 3 and 4, of Resolution 393/2021/CNJ are observed." (emphasis added).

It should also be noted that this practice is observed in other courts in large-scale/complex reorganization cases, such as in the Judicial Reorganizations of Samarco Mineração, case no. 5046520-86.2021.8.13.0024 and Cruzeiro Esporte Clube, case no. 5145674-43.2022.8.13.0024.

In light of this, I share the view that, in scenarios such as the present one, the appointment of two Judicial Administrators tends to provide greater transparency, specialization, and efficiency, without undue concentration of fees and with gains in technical quality and accessibility for creditors.

Remuneration, in accordance with my approach, should be divided in the proportion of 50% for each administration, so as to prevent additional burdens on the companies undergoing reorganization and harm to creditors.

As for the selection criteria, in accordance with the standards promoted by the CNJ and this Honorable Court (transparency and rotation), I adopt: a) necessary and proven expertise for highly complex proceedings; b) the Court's confidence in the administrator's performance; c) absence of prior appointment by this Judge, prioritizing diversity; d) absence of more than four simultaneous appointments in this Court.

In accordance with the decision in Item 9, the selection will provisionally fall, from among the nominees, on: (1) VPJ Judicial Administration (CNPJ 55.870.751/0001-50), in the person of Dr. Victor Saraiva Torres;

This document was signed by Antonio Dari Antunes Zhbanova. To validate the document and its signatures, access
https://asp.assinaturasempapel.com.br/validate/6WHWH-KG88F-AU2T8-L7QVM





**REPÚBLICA FEDERATIVA DO BRASIL**
*FEDERATIVE REPUBLIC OF BRAZIL*
**A N T O N I O   D A R I   A N T U N E S   Z H B A N O V A**
TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL·- *CERTIFIED PUBLIC TRANSLATOR*
ldioma/Language: Inglês - Português/*English - Portuguese*
Matrícula Jucepe nº 406 • CPF 756.770.758-68
Rua Princesa Isabel nº 206 - Aloisio Pinto - Garanhuns (PE) CEP : 55.292-21 0
*Telefone/Phone/Whatsapp* +55 11  9 8784 1006 – (87) 92000-9314 - e-mail: dari.zhbanova@gmail.com  (skype: antonio.dari)

TRANSLATION No. WT 59387          BOOK No. 240          PAGE No.  0029

(2) Neves, Figueiredo, Cerqueira e Souza, represented by Dr. Athos de Andrade Figueira Neves (OAB/RJ 211747); (3) Augusto Alves Moreira Neto (Gomes de Mattos Advogados Associados); (4) Carapetcov Judicial Administration, represented by Dr. Thiago Carapetcov (OAB/RJ 151772).

A) The necessary and proven expertise to handle highly complex cases

I have not yet had access to the résumés of all the Administrators listed, since the deadline for the competitive process is November 3, 2025. For the sake of fairness, I am exceptionally omitting this criterion in this provisional selection.

B) The Court's confidence

Pursuant to Article 5, paragraph 1, of CNJ Resolution 393/2021 and Article 6, paragraph 1, of CGJ Provision 38/2022, I note prior knowledge of the performance of the Neves, Figueiredo, Cerqueira, and Souza Judicial Administration (appointments made by another Judge in the 4th Commercial Court), with a positive assessment regarding collaboration, diligence, and integrity.

Regarding Dr. Thiago Carapetcov, when this Judge presided over the 4th Commercial Court, his conduct was found to be ethical, upright, and cooperative in the reorganization of Real Distribuidora Única Rio Comércio de Refrigeração Ltda., with continuous and effective communication with the Court, although he was appointed by another Judge.

Regarding the others, there was no opportunity for direct evaluation, which is why the experience and trust assessed in relation to that Administration and the aforementioned professional support the provisional selection of one of the two to serve until the conclusion of the competitive process.

C) Regarding the absence of a prior appointment by this Judge

There was a prior appointment of the Neves, Figueiredo, Cerqueira, and Souza Administration by this Judge in case 0080942-85.1998.8.19.0001. In turn, Carapetcov Judicial Administration, although it has this Court's confidence regarding the performance of Mr. Thiago Carapetcov, has not yet been appointed by this Judge.

Based on logical, objective, and transparent criteria—and to promote diversity in representation—I deem it appropriate to appoint Carapetcov Judicial Administration on a provisional basis until the conclusion of the competitive process.

D) Regarding the absence of appointment in more than four judicial reorganizations before this Court

I verified, through an internal review, that Carapetcov Judicial Administration has not acted in more than four judicial reorganizations before this Court, pursuant to Article 6, Paragraph 3, of CGJ Provision 38/2022.

For the foregoing reasons, I APPOINT, ON A PROVISIONAL BASIS, until the conclusion of the competitive process, CARAPETCOV ADMINISTRAÇÃO JUDICIAL (CNPJ 60.437.945/0001-05), with address at Praça Quinze de Novembro, room 502, Centro - RJ, sup.r.mercado 12, represented by THIAGO CARAPETCOV (OAB/RJ 151772), email: [thiago@carapetcovaj .com.br] (mailto:thiago@carapetcovaj.com.br).

Without prejudice, and as previously stated, in the final analysis of the competitive process, the presiding judge may, if deemed appropriate, appoint two Judicial Administrators, in accordance with the principles of established case law in this court of justice and the aforementioned judgments.

This document was signed by Antonio Dari Antunes Zhbanova. To validate the document and its signatures, access https://asp.assinaturasempapel.com.br/validate/6WHWH-KG88F-AU2T8-L7QVM





**REPÚBLICA FEDERATIVA DO BRASIL**
*FEDERATIVE REPUBLIC OF BRAZIL*
**A N T O N I O  D A R I  A N T U N E S  Z H B A N O V A**
TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL - *CERTIFIED PUBLIC TRANSLATOR*
ldioma/Language: Inglês - Português/*English - Portuguese*
Matrícula Jucepe nº 406 • CPF 756.770.758-68
Rua Princesa Isabel nº 206 - Aloisio Pinto - Garanhuns (PE) CEP : 55.292-21 0
*Telefone/Phone/Whatsapp* +55 11  9 8784 1006 – (87) 92000-9314 - e-mail: dari.zhbanova@gmail.com  (skype: antonio.dari)

| TRANSLATION No. WT 59387 | BOOK No. 240 | PAGE No.  0030 |
|---|---|---|

To the court clerk's office to notify the Judicial Administrator so that, within 24 (twenty-four) hours, he may express his acceptance and execute the appropriate document.

Upon acceptance, please notify, via email [dgfaj.diaaiauxjus@tjrj.jus.br] (mailto:dgfaj.diaaiauxjus@tjrj.jus.br), the Division of Monitoring and Analysis of Indicators (DIAAI/CGJ), in accordance with CGJ Provision No. 22/2023. Finally, considering the ongoing competitive process, I hereby waive the application of CNJ Recommendation No. 141/2023 of the .

XV II.1 - The Provisional Judicial Administration is hereby advised that the remuneration for the provisional assignment, to be subsequently determined by the Court, must include all expenses related to external professionals (lawyers, accountants, economists, and similar professionals) and other administrative costs necessary for the proper processing of the case, bearing in mind that the appointment decision will only become final upon the conclusion of the competitive process to be analyzed with the final submission of documents.

XV II.2 - Pursuant to Article 22, III, "c," of the LRF, the Provisional Judicial Administration must submit, in this main proceeding, a monthly report on the progress of the activities of the companies undergoing reorganization by the 20th (twentieth) day of the following month.

XV II.3 - The Judicial Administration shall submit, within thirty (30) business days, a detailed report in this main proceeding covering the companies' activities (financial and economic aspects), in order to demonstrate to the Court and the creditors the actual financial condition of the companies undergoing reorganization.

XV II.4 - The Judicial Administration shall provide a specific email address and ensure, within a maximum of 15 (fifteen) days, responses to official communications and requests from other courts and public agencies, regardless of prior judicial decision. Upon submission of the email address, the court clerk's office is authorized to forward communications directly to the Judicial Administration, pursuant to Article 22, I, "m," of Law 11.101/2005.

XV II.5 - Failure to comply with procedural obligations may result in the replacement or removal of the Judicial Administration, as appropriate.

XVIII - REQUEST FOR SUBMISSION OF A COMPLETE LIST OF EMPLOYEES

With regard to requests for confidentiality concerning the documents referred to in Article 51, items IV, VI, and VII, of the LRF, I order that the companies undergoing reorganization file a separate procedural motion and attach the relevant documents within 48 (forty-eight) hours, and must then file a motion in this case to provide the case number of the procedural motion, which shall be processed under judicial secrecy.

With regard to subparagraphs IV and VII, there is an unequivocal interest on the part of creditors, duly listed or qualified in a timely manner, in knowing the debtor's workforce (identification, positions, and compensation), as well as the data necessary for economic and financial scrutiny, in order to comprehensively assess the viability of the PRJ.

On the other hand, the reorganization proceeding cannot be turned into a means of indiscriminate access, by third parties unrelated to the case, to employees' private data and to the banking and tax information of the companies undergoing reorganization.

It is therefore necessary to balance (i) the right of creditors, who hold the prerogative to approve or reject

This document was signed by Antonio Dari Antunes Zhbanova. To validate the document and its signatures, access https://asp.assinaturasempapel.com.br/validate/6WHWH-KG88F-AU2T8-L7QVM





## REPÚBLICA FEDERATIVA DO BRASIL
### *FEDERATIVE REPUBLIC OF BRAZIL*
### ANTONIO DARI ANTUNES ZHBANOVA

TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL·- *CERTIFIED PUBLIC TRANSLATOR*
ldioma/Language: Inglês - Português/*English - Portuguese*
Matrícula Jucepe nº 406 • CPF 756.770.758-68
Rua Princesa Isabel nº 206  - Aloisio Pinto - Garanhuns (PE) CEP :  55.292-21 0
*Telefone/Phone/Whatsapp* +55 11  9 8784 1006 – (87) 92000-9314 - e-mail: dari.zhbanova@gmail.com  (skype: antonio.dari)

| TRANSLATION No. WT 59387 | BOOK No. 240 | PAGE No.  0031 |
|---|---|---|

---

the PRJ, to access information indispensable to forming their decision, and (ii) the protection of workers' privacy and personal life, as well as the debtors' banking and tax confidentiality. This balancing results in the following rule: the confidentiality of the documents provided for in Article , items IV and VII, will be lifted only for creditors with voting rights, who may access them to inform their decision regarding the PRJ. To avoid procedural disruption, interested creditors—that is, those eligible to approve or reject the PRJ—must request the documents under items IV and VII directly from the Judicial Administration. It shall be incumbent upon the Judicial Administration to make them available within 48 (forty-eight) hours from receipt of the request, regardless of any new court order, and to notify the companies undergoing reorganization of the list of parties that have obtained access. In the event of a refusal, the Judicial Administration must immediately submit to this Court the reasons for not making the documents available.

In turn, with respect to the personal assets of administrators and controlling partners (Art. 51, VI), confidentiality remains absolute. The disclosure of this information does not contribute to the proper conduct of this reorganization and, on the contrary, unnecessarily exposes the security and privacy of the administrators and controlling partners, emphasizing that this confidentiality, obviously, will apply to the Judiciary, the Public Prosecutor's Office, and the appointed Judicial Administration, an auxiliary of the Court.

To the Registry to amend the procedural classification, since the judicial reorganization has been granted. Publish. Notify the parties.

Forward to the Public Prosecutor's Office.

Document electronically signed by CAROLINE ROSSY BRANDAO FONSECA, Judge, on 10/30/2025, at 1:43:11 p.m., pursuant to Art. 1, III, "b," of Law 11,419/2006. The authenticity of the document can be verified on the website https://eproc1g.tjrj.jus.br/eproc/externo_controlador.php? acao=consulta_autenticidade_documentos, by entering the verification code 190000767220v3 and the CRC code fad7c6cd.

3014764-58.2025.8.19.0001
190000767220.V3

---

Nothing else was contained in said original, which I return with this faithful translation. In witness whereof, I have hereunto set my hand and seal of office, June 12, 2026.

Emoluments according to the law.



Electronically signed by:
Antonio Dari Antunes Zhbanova
CPF: ***.770.758-**
Date: 6/12/2026 2:08:13PM -03:00



This document was signed by Antonio Dari Antunes Zhbanova. To validate the document and its signatures, access https://asp.assinaturasempapel.com.br/validate/6WHWH-KG88F-AU2T8-L7QVM





# SIGNATURES MANIFEST



## Validation code: 6WHWH-KG88F-AU2T8-L7QVM

This document was signed by the following signatories on the dates indicated (Brasília time zone):

✔ Antonio Dari Antunes Zhbanova (CPF ***.770.758-**) on 6/12/2026 2:08PM - Signed electronically

| IP address | Geolocation |
|---|---|
| 179.102.14.227 | Not available |

| Authentication | antonio.dari@overtimes.com.br (Verified) |
|---|---|
| Login | |

o0QVVStA/uZGQ/qIkzct7DhqNpAPPllVsN+Can2+yRE=                    SHA-256

To verify signatures, access the  validation direct link for this document:

https://asp.assinaturasempapel.com.br/validate/6WHWH-KG88F-AU2T8-L7QVM

Or access the signed document search available at the link below and provide the validation code:

https://asp.assinaturasempapel.com.br/validate

**Exhibit B-1**

**Ambipar Topco Authorizing Resolutions**

ambipar®

**AMBIPAR PARTICIPAÇÕES E EMPREENDIMENTOS S.A. – EM RECUPERAÇÃO JUDICIAL**
CNPJ/MF nº 12.648.266/0001-24
NIRE 35.300.384.466

**ATA DE REUNIÃO DE CONSELHO DE ADMINISTRAÇÃO**
**REALIZADA EM 23 DE JUNHO DE 2026**

**1.    DATA, HORA E LOCAL**: Realizada no dia 23 de junho de 2026, às 17:30h, na sede social da **AMBIPAR PARTICIPAÇÕES E EMPREENDIMENTOS S.A. – EM RECUPERAÇÃO JUDICIAL** ("Companhia"), na Avenida Pacaembu, nº 1.088, Sala 09, Pacaembu, na Cidade de São Paulo, Estado de São Paulo, CEP 01234-000, de modo exclusivamente digital.

**2.    CONVOCAÇÃO**: Dispensadas as formalidades de convocação tendo em vista a presença virtual da totalidade dos membros do Conselho de Administração, nos termos do Estatuto Social da Companhia.

**3.    MESA**: Presidente da Mesa: Sra. Alessandra Bessa Alves de Melo; Secretária da Mesa: Sra. Ana Carolina Britte Bruno.

**4.    ORDEM DO DIA**: Deliberar sobre: **(i)** a forma e os termos do acordo de apoio à reestruturação financeira da Companhia e de suas afiliadas (em conjunto denominadas "Grupo Ambipar"), a ser celebrado com determinados credores detentores de parcela relevante do valor de principal agregado em aberto dos *Green Bonds* emitidos pelo Grupo Ambipar com vencimento em 2031 e em 2033 ("Credores Apoiadores"), intitulado *Restructuring Support Agreement* ("Acordo de Apoio"), bem como sobre a celebração do Acordo de Apoio e de seus respectivos anexos e a consumação das operações neles previstas e **(ii)** a nomeação do Sr. Thiago da Costa Silva, Diretor Financeiro da Companhia, como representante estrangeiro da Companhia ("Representante Estrangeiro") em relação à recuperação judicial do Grupo Ambipar atualmente em curso ("Recuperação Judicial"), nos termos da seção 101(24) do US Bankruptcy Code, com poderes para representar a Companhia nos Chapter 15 Proceedings junto ao United States Bankruptcy Court for the Southern District of Texas ("Tribunal Norte-Americano").

**5.    DELIBERAÇÕES**: Prestados os esclarecimentos necessários, após análise dos documentos referentes às matérias constantes da ordem do dia da presente reunião, os membros do Conselho de Administração presentes, por unanimidade de votos e sem quaisquer restrições, deliberaram o quanto segue:

**5.1**    Aprovar, em todos os seus termos, *(a)* a forma e os termos do Acordo de Apoio, incluindo todos os anexos e cronogramas a ele relativos; *(b)* a celebração e cumprimento do Acordo de Apoio e de seus anexos pela Companhia, e *(c)* a consumação das operações previstas no Acordo de Apoio e em seus anexos, com eventuais alterações e acréscimos que qualquer Pessoa Autorizada (conforme definido abaixo) venha, a seu exclusivo critério, a considerar necessários ou convenientes, ficando reconhecido que a assinatura do Acordo de Apoio e de seus anexos constituirá prova conclusiva de sua aprovação, observados, ainda, os termos abaixo descritos.

1

**ambipar**⊛

**5.1.1**   A Companhia fica autorizada, por intermédio de qualquer de seus diretores ou procuradores com poderes para tanto nos termos de seu Estatuto Social e/ou documentos de representação, com plenos poderes de subdelegação, em nome e por conta da Companhia (cada qual, uma "Pessoa Autorizada"), a praticar todos os atos necessários ou convenientes para que a Companhia celebre, execute, entregue, certifique, protocole e/ou registre o Acordo de Apoio substancialmente na forma apresentada aos membros do Conselho de Administração previamente à esta reunião, bem como quaisquer outros documentos, contratos, instrumentos e certidões exigidos pelo Acordo de Apoio.

**5.1.2**   A Companhia fica autorizada, por intermédio de qualquer Pessoa Autorizada, a praticar todos os atos e firmar, celebrar, executar, entregar, emitir ou protocolar, junto a quaisquer pessoas, inclusive autoridades governamentais, todos os contratos, documentos, instrumentos, certidões, consentimentos ou renúncias, e respectivos aditivos, bem como a efetuar ou causar a efetivação de todos os pagamentos necessários ou convenientes para a execução do Acordo de Apoio e das operações de reestruturação previstas nele e em seus anexos, conforme o caso ("Operações de Reestruturação"), servindo a prática de tais atos como prova conclusiva da referida autorização.

**5.1.3**   A Companhia fica autorizada, por intermédio de qualquer Pessoa Autorizada, a celebrar quaisquer *(a)* contratos pelos quais uma afiliada da Companhia forneça recursos para o pagamento de honorários profissionais e outros custos associados ao Acordo de Apoio e às Operações de Reestruturação, e/ou *(b)* contratos com quaisquer terceiros, ou quaisquer operações, para a prestação de serviços ou contratação de seguros relacionados ao Acordo de Apoio e às Operações de Reestruturação ("Documentos Acessórios"), bem como a praticar todos os atos e efetuar todos os pagamentos que considere necessários ou convenientes para dar cumprimento ao ora deliberado.

**5.1.4**   Ficam ratificados e aprovados, em todos os seus termos, todos os atos anteriormente praticados pela Companhia ou por qualquer Pessoa Autorizada em conexão com o Acordo de Apoio ou as Operações de Reestruturação, incluindo, sem limitação, a assinatura de quaisquer contratos, deliberações, cartas, notificações, certidões, recibos, autorizações, instruções, liberações, renúncias, procurações e demais documentos, bem como o pagamento de quaisquer honorários e despesas correlatos.

**5.2**   Aprovar a nomeação do Sr. Thiago da Costa Silva, Diretor Financeiro da Companhia, como Representante Estrangeiro nos termos da seção 101(24) do US Bankruptcy Code, com poderes para representar a Companhia no âmbito dos Chapter 15 Proceedings junto ao Tribunal Norte-Americano, ficando o Representante Estrangeiro autorizado a praticar todos os atos necessários, em nome e por conta da Companhia, para a obtenção das medidas requeridas nos Chapter 15 Proceedings, bem como quaisquer outras medidas correlatas consideradas prudentes e em conformidade com os termos do Acordo de Apoio, observados, ainda, os termos abaixo descritos.

**5.2.1**   O Representante Estrangeiro fica autorizado e constituído de poderes para executar e protocolar, em nome e por conta da Companhia, todas as petições, cronogramas, declarações,

2

Docusign Envelope ID: 30CF9315-08B9-80A6-83A6-C8D9762EFC55

**ambipar®**

moções, listas, requerimentos, peças e demais documentos ("Petições do Chapter 15 Proceedings") no âmbito dos Chapter 15 Proceedings perante o Tribunal Norte-Americano, incluindo a realização de eventuais alterações e acréscimos que o Representante Estrangeiro venha, a seu exclusivo critério, a considerar necessários ou convenientes, ficando reconhecido que a execução e entrega das Petições do Chapter 15 Proceedings pelo Representante Estrangeiro constituirá prova conclusiva de sua aprovação.

**5.2.2** O Representante Estrangeiro fica autorizado e constituído de poderes, com plenos poderes de subdelegação, em nome e por conta da Companhia, a praticar e executar todos os atos e providências que considere necessários, convenientes ou desejáveis em conexão com os Chapter 15 Proceedings ou com as Petições do Chapter 15 Proceedings, em conformidade com o Acordo de Apoio, incluindo, sem limitação: *(a)* contratar e manter Kurtzman Carson Consultants, LLC d/b/a Verita Global ("Verita") como agente de informações no âmbito dos Chapter 15 Proceedings; *(b)* celebrar os respectivos contratos de prestação de serviços e pagar os adiantamentos pertinentes à contratação da Verita; e *(c)* negociar, celebrar, entregar, cumprir e protocolar quaisquer documentos, cronogramas, declarações, listas, acordos, certidões, aditivos e/ou instrumentos adicionais em conexão com ou para promover os Chapter 15 Proceedings, com vistas à sua condução bem-sucedida.

**5.2.3** O Representante Estrangeiro fica autorizado e constituído de poderes para executar e protocolar, em nome e por conta da Companhia, moção ou adesão (*joinder*) nos autos do Chapter 11 Proceedings, requerendo sua suspensão ou extinção, nos termos e em conformidade com o Acordo de Apoio.

**5.2.4** Ficam ratificados e aprovados, em todos os seus termos, todos os atos anteriormente praticados pelo Representante Estrangeiro em conexão com os Chapter 15 Proceedings, incluindo, sem limitação, a assinatura de quaisquer contratos, deliberações, cartas, notificações, certidões, recibos, autorizações, instruções, liberações, renúncias, procurações e demais documentos, bem como o pagamento de quaisquer honorários e despesas correlatos.

**5.2.5** Para fins de esclarecimento, fica consignado que a nomeação do Sr. Thiago da Costa Silva nos termos acima é realizada em substituição ao Sr. Ricardo Rosanova Garcia, inicialmente nomeado como representante estrangeiro nos autos do processo de recuperação judicial do Grupo Ambipar, em curso perante o Juízo da 3ª Vara Empresarial da Comarca da Capital do Estado do Rio de Janeiro sob o nº 3014764-58.2025.8.19.0001, tendo em vista que o Sr. Ricardo Rosanova Garcia deixou de exercer cargo de diretor estatutário de quaisquer das entidades do Grupo Ambipar.

**6.** **ENCERRAMENTO**: Nada mais havendo a ser tratado, foi encerrada a reunião, da qual se lavrou a presente ata que, lida e achada conforme, foi assinada por todos os presentes.

São Paulo, 23 de junho de 2026.

*[assinaturas na próxima página]*

3

**ambipar®**

*[Página de assinaturas da Ata de Reunião de Conselho de Administração da Ambipar Participações e Empreendimentos S.A. – Em Recuperação Judicial, realizada em 23 de junho de 2026.]*

**Mesa**:

Alessandra Bessa Alves de Melo
Presidente

Ana Carolina Britte Bruno
Secretária

**Conselheiros Presentes**:

Alessandra Bessa Alves de Melo

José Carlos de Souza

Marco Antonio Zanini

Marcos de Mendonça Peccin

Tercio Borlenghi Junior

4



## Certificate Of Completion

Envelope Id: 30CF9315-98B9-80A6-83A6-C8D9762EFC55

Subject: Complete with Docusign: ARCA_AmbiparParticipações_23.06.2026.pdf

Source Envelope:

| | | |
|---|---|---|
| Document Pages: 4 | Signatures: 7 | Envelope Originator: |
| Certificate Pages: 5 | Initials: 0 | Ana Paula Gomes |
| AutoNav: Enabled | | AVENIDA ANGELICA, 2346 - ANDAR 5 |
| EnvelopeId Stamping: Enabled | | CONJ51SALA4 - CONSOLACAO |
| Time Zone: (UTC-03:00) Brasilia | | SAO PAULO, SP  01228-200 |
| | | ana.gomes@ambipar.com |
| | | IP Address: 24.83.199.90 |

Status: Completed

## Record Tracking

| | | |
|---|---|---|
| Status: Original | Holder: Ana Paula Gomes | Location: DocuSign |
| 23 June 2026 \| 18:10 | ana.gomes@ambipar.com | |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Alessandra Bessa Alves de Melo<br>alessandra.bessa@ambipar.com<br>Conselheira<br>Security Level: Email, Account Authentication (None) | Assinado por:<br>*Alessandra Bessa Alves de Melo*<br>DD13D3364E4E41C...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 200.148.210.114 | Sent: 23 June 2026 \| 18:17<br>Viewed: 23 June 2026 \| 18:23<br>Signed: 23 June 2026 \| 18:28 |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 01 August 2024 \| 14:12<br>ID: 58f0b757-428f-4b9d-9bee-6b54a18b0a2c | | |
| Ana Carolina Britte Bruno<br>ana.bruno@ambipar.com<br>Security Level: Email, Account Authentication (None) | Assinado por:<br>*Ana Carolina Britte Bruno*<br>1F57ED3D9133410...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address:<br>2804:7f0:d81e:168:6dfb:a310:ba05:aa69<br>Signed using mobile | Sent: 23 June 2026 \| 18:17<br>Viewed: 23 June 2026 \| 18:40<br>Signed: 23 June 2026 \| 18:40 |
| **Electronic Record and Signature Disclosure:**<br>Not Offered via Docusign | | |
| José Carlos de Souza<br>josecarlos.souza@ambipar.com<br>Security Level: Email, Account Authentication (None) | Assinado por:<br>*José Carlos de Souza*<br>E41BB5759C1B457...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address:<br>2804:7f0:ba43:3b6e:31cc:230e:a250:b1b6 | Sent: 23 June 2026 \| 18:17<br>Viewed: 23 June 2026 \| 18:25<br>Signed: 23 June 2026 \| 18:26 |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 23 June 2026 \| 18:25<br>ID: e23566ab-4498-48a1-926b-3d83cdeabad3 | | |
| Marco Antonio Zanini<br>marco.zanini@ambipar.com<br>Security Level: Email, Account Authentication (None) | Assinado por:<br>*Marco Antonio Zanini*<br>2AC87ED9293C46D...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 200.225.206.4 | Sent: 23 June 2026 \| 18:17<br>Viewed: 24 June 2026 \| 10:56<br>Signed: 24 June 2026 \| 10:57 |

**Electronic Record and Signature Disclosure:**

| Signer Events | Signature | Timestamp |
|---|---|---|
| Accepted: 24 June 2026 \| 10:56<br>ID: 6d39b86a-1552-4543-91b3-ee7bedba5f3f | | |
| Marcos de Mendonça Peccin<br>marcos.peccin@ambipar.com<br>Security Level: Email, Account Authentication<br>(None) | **Assinado por:**<br>*Marcos de Mendonça Peccin*<br>3E819400709547B...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address:<br>2804:7f0:6402:5c80:8d3c:46bc:31f6:2791 | Sent: 23 June 2026 \| 18:17<br>Viewed: 24 June 2026 \| 11:57<br>Signed: 24 June 2026 \| 12:02 |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 24 June 2026 \| 11:57<br>ID: e9093d64-d916-458e-a600-4d53a422d5ec | | |
| Tércio Borlenghi Junior<br>tbj@tbj.com.br<br>Security Level: Email, Account Authentication<br>(None) | DocuSigned by:<br>*Tércio Borlenghi Junior*<br>DDA6E6B2213D4E6...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 201.48.107.5 | Sent: 23 June 2026 \| 18:17<br>Viewed: 23 June 2026 \| 18:43<br>Signed: 23 June 2026 \| 18:44 |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 29 August 2024 \| 19:33<br>ID: 2adca25d-c3d4-480a-be76-7cc8bd9814ff | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 23 June 2026 \| 18:17 |
| Certified Delivered | Security Checked | 23 June 2026 \| 18:43 |
| Signing Complete | Security Checked | 23 June 2026 \| 18:44 |
| Completed | Security Checked | 24 June 2026 \| 12:02 |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

Electronic Record and Signature Disclosure created on: 12 June 2024 | 18:15

Case 26-90709   Document 7   Filed in TXSB on 07/09/26   Page 82 of 166

Parties agreed to: Alessandra Bessa Alves de Melo, José Carlos de Souza, Marco Antonio Zanini, Marcos de Mendonça Peccin, Tércio Borlenghi Junior

**ELECTRONIC RECORD AND SIGNATURE DISCLOSURE**

From time to time, EMERGENCIA PARTICIPACOES SA (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

**Getting paper copies**

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

**Withdrawing your consent**

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

**Consequences of changing your mind**

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

**All notices and disclosures will be sent to you electronically**

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact EMERGENCIA PARTICIPACOES SA:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: diana.alves@ambipar.com

**To advise EMERGENCIA PARTICIPACOES SA of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at diana.alves@ambipar.com and in the body of such request you must state: your previous email address, your new email address.  We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from EMERGENCIA PARTICIPACOES SA**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to diana.alves@ambipar.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with EMERGENCIA PARTICIPACOES SA**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to diana.alves@ambipar.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent..  The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify EMERGENCIA PARTICIPACOES SA as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by EMERGENCIA PARTICIPACOES SA during the course of your relationship with EMERGENCIA PARTICIPACOES SA.

**Exhibit B-2**

**Certified Translation of Ambipar Topco Authorizing Resolutions**

**ROBERTO VERAS BICA**
**Tradutor Público e Intérprete Comercial - Inglês**
**Sworn Translator**
**JUCERJA Nº 244**
**CPF/MF 634.302.748-34**

p. 400

268.046(001) Livro 241 Fl. 400-415

**I, the undersigned Sworn Public Translator and Commercial Interpreter, with full faith and credit throughout the Federative Republic of Brazil, duly appointed and commissioned by the Board of Trade of the State of Rio de Janeiro (JUCERJA) and registered therewith under No 244, DO HEREBY CERTIFY AND ATTEST that a document set forth in the Portuguese language was presented to me for translation into English, which I have lawfully performed, by virtue of my official Capacity, as follows: -------------------------------**

------------------------------------------------------------

DocuSign Envelope ID: 30CF9315-98B9-80A6-83A6-C8D9762EFC55

*(Ambipar logo)* --------------------------------------------

------------------------------------------------------------

**AMBIPAR PARTICIPAÇÕES E EMPREENDIMENTOS S.A. - UNDER JUDICIAL RECOVERY** -------------------------------------------

CNPJ/MF No. 12.648.266/0001-24 ----------------------------

NIRE 35,300,384,466 ----------------------------------------

**MINUTES OF THE BOARD OF DIRECTORS MEETING HELD ON JUNE 23, 2026** -------------------------------------------------------

**1. DATE, TIME, AND LOCATION**: Held on June 23, 2026, at 5:30 p.m., at the headquarters of **AMBIPAR PARTICIPAÇÕES E EMPREENDIMENTOS S.A. - UNDER JUDICIAL RECOVERY** ("Company"), located at Avenida Pacaembu, n° 1.088, Sala 09, Pacaembu, na Cidade de São Paulo, Estado de São Paulo, CEP 01234-000, exclusively in digital form. ---------------

**2. CALL NOTICE**: The call notice formalities of the meeting were waived, given that virtually all members of the Board of Directors were present, in accordance with the Company's Articles of Incorporation. ---------------------

**3. BOARD**: Chair of the Board: Ms. Alessandra Bessa Alves de Melo; Secretary of the Board: Ms. Ana Carolina Britte Bruno. --------------------------------------------------



**ROBERTO VERAS BICA**
**Tradutor Público e Intérprete Comercial - Inglês**
**Sworn Translator**
**JUCERJA Nº 244**
**CPF/MF 634.302.748-34**

p. 401

**4. AGENDA**: To deliberate on: **(i)** the form and terms of the agreement to support the financial restructuring of the Company and its affiliates (collectively referred to as "Ambipar Group"), to be entered into with certain creditors holding a significant portion of the outstanding aggregate principal amount of the *Green Bonds* issued by the Ambipar Group maturing in 2031 and 2033 ("Supporting Creditors"), entitled *Restructuring Support Agreement* ("Support Agreement"), as well as the execution of the Support Agreement and its respective exhibits and the completion of the transactions set forth therein, and **(ii)** the appointment of Mr. Thiago da Costa Silva, the Company's Chief Financial Officer, as the Company's foreign representative ("Foreign Representative") in connection with the Ambipar Group's ongoing judicial reorganization ("Judicial Reorganization"), pursuant to section 101(24) of the U.S. Bankruptcy Code, with authority to represent the Company in the Chapter 15 proceedings before the United States Bankruptcy Court for the Southern District of Texas ("U.S. Court"). ------------

**5. RESOLUTIONS**: After the necessary clarifications were provided and following a review of the documents pertaining to the items on the agenda for this meeting, the members of the Board of Directors present, by unanimous vote and without any restrictions, resolved as follows: --------------------------------------------------

**5.1** To approve, in its entirety, *(a)* the form and terms of the Support Agreement, including all annexes and schedules related thereto; *(b)* the execution and performance by the



**ROBERTO VERAS BICA**
**Tradutor Público e Intérprete Comercial - Inglês**
**Sworn Translator**
**JUCERJA Nº 244**
**CPF/MF 634.302.748-34**

p. 402

Company of the Support Agreement and its annexes, and *(c)* the completion of the transactions set forth in the Support Agreement and its annexes, with any amendments and additions that any Authorized Person (as defined below) may, in its sole discretion, deem necessary or appropriate, it being understood that the signing of the Support Agreement and its annexes shall constitute conclusive evidence of their approval, subject also to the terms described below. ------------------------------------

**5.1.1** The Company is hereby authorized, through any of its directors or agents authorized to do so under the terms of its Bylaws and/or powers of attorney, with full authority to subdelegate, in the name and on behalf of the Company (each, an "Authorized Person"), to perform all acts necessary or convenient for the Company to enter into, execute, deliver, certify, file, and/or register the Support Agreement substantially in the form presented to the members of the Board of Directors prior to this meeting, as well as any other documents, contracts, instruments, and certificates required by the Support Agreement. --------------------------------------------------

**5.1.2** The Company is authorized, through any Authorized Person, to perform all acts and to sign, enter into, execute, deliver, issue, or file, with any persons, including government authorities, all contracts, documents, instruments, certificates, consents, or waivers, and their respective amendments, as well as to make or cause to be made all payments necessary or convenient for the performance of the Support Agreement



**ROBERTO VERAS BICA**
**Tradutor Público e Intérprete Comercial - Inglês**
**Sworn Translator**
**JUCERJA Nº 244**
**CPF/MF 634.302.748-34**

p. 403

and the restructuring transactions provided for therein and in its annexes, as applicable ("Restructuring Transactions"), with the performance of such acts serving as conclusive evidence of said authorization. -------------

**5.1.3** The Company is authorized, through any Authorized Person, to enter into any *(a)* agreements under which an affiliate of the Company provides funds for the payment of professional fees and other costs associated with the Support Agreement and the Restructuring Transactions, and/or *(b)* agreements with any third parties, or any transactions, for the provision of services or the purchase of insurance related to the Support Agreement and the Restructuring Transactions ("Ancillary Documents"), as well as to take all actions and make all payments it deems necessary or appropriate to comply with the provisions hereby resolved. ------------------------------------------

**5.1.4** All acts previously performed by the Company or by any Authorized Person in connection with the Support Agreement or the Restructuring Transactions are hereby ratified and approved in their entirety, including, without limitation, the signing of any contracts, resolutions, letters, notices, certificates, receipts, authorizations, instructions, releases, waivers, powers of attorney, and other documents, as well as the payment of any related fees and expenses. ----------------------------

**5.2** Approve the appointment of Mr. Thiago da Costa Silva, the Company's Chief Financial Officer, as Foreign Representative pursuant to Section 101(24) of the U.S. Bankruptcy Code, with authority to represent the Company



**ROBERTO VERAS BICA**
**Tradutor Público e Intérprete Comercial - Inglês**
**Sworn Translator**
**JUCERJA Nº 244**
**CPF/MF 634.302.748-34**

p. 404

in the Chapter 15 Proceedings before the U.S. Court, the Foreign Representative being authorized to take all necessary actions, in the name and on behalf of the Company, to obtain the relief sought in the Chapter 15 Proceedings, as well as any other related measures deemed prudent and in accordance with the terms of the Support Agreement, subject also to the terms described below. -----

**5.2.1** The Foreign Representative is hereby authorized and empowered to file and serve, in the name and on behalf of the Company, all petitions, schedules, statements, motions, lists, requests, pleadings, and other documents ("Chapter 15 Proceedings Petitions") within the scope of the Chapter 15 Proceedings before the U.S. Court, including making any amendments and additions that the Foreign Representative may, in its sole discretion, deem necessary or appropriate, it being acknowledged that the filing and submission of the Chapter 15 Proceedings Filings by the Foreign Representative shall constitute conclusive evidence of their approval. --------------------

**5.2.2** The Foreign Representative is hereby authorized and empowered, with full authority to subdelegate, in the name and on behalf of the Company, to take and carry out all acts and measures that he deems necessary, appropriate, or desirable in connection with the Chapter 15 Proceedings or the Petitions in the Chapter 15 Proceedings, in accordance with the Support Agreement, including, without limitation: *(a)* engage and retain Kurtzman Carson Consultants, LLC d/b/a Verita Global ("Verita") as information agent in connection with the Chapter 15 Proceedings; *(b)* enter into



**ROBERTO VERAS BICA**
**Tradutor Público e Intérprete Comercial - Inglês**
**Sworn Translator**
**JUCERJA Nº 244**
**CPF/MF 634.302.748-34**

p. 405

the respective service agreements and pay the relevant advance payments for the engagement of Verita; and *(c)* to negotiate, execute, deliver, perform, and file any documents, schedules, statements, lists, agreements, certificates, amendments, and/or additional instruments in connection with or to advance the Chapter 15 Proceedings, with a view to their successful conduct. ------------------

**5.2.3** The Foreign Representative is hereby authorized and empowered to file, on behalf of and for the account of the Company, a motion or joinder *(joinder)* in the Chapter 11 Proceedings, requesting their suspension or termination, under the terms and in accordance with the Support Agreement. -------------------------------------------------

**5.2.4** The following are hereby ratified and approved in their entirety: all acts previously performed by the Foreign Representative in connection with the Chapter 15 Proceedings, including, without limitation, the signing of any contracts, resolutions, letters, notices, certificates, receipts, authorizations, instructions, releases, waivers, powers of attorney, and other documents, as well as the payment of any related fees and expenses. -------------------------------------------------

**5.2.5** For clarification purposes, it is hereby noted that the appointment of Mr. Thiago da Costa Silva, as stated above, is appointed to replace Mr. Ricardo Rosanova Garcia, initially appointed as foreign representative in the Ambipar Group's judicial reorganization proceedings, currently pending before the 3rd Commercial Court of the Capital District of the State of Rio de Janeiro under case



**ROBERTO VERAS BICA**
**Tradutor Público e Intérprete Comercial - Inglês**
**Sworn Translator**
**JUCERJA Nº 244**
**CPF/MF 634.302.748-34**

p. 406

no. 3014764-58.2025.8.19.0001, given that Mr. Ricardo Rosanova Garcia is no longer serving as a statutory director of any of the Ambipar Group's entities. ----------

**6.  CLOSING**: With no further business to discuss, the meeting was adjourned. These minutes were drawn up, read aloud, found to be in order, and signed by all those present. ----------------------------------------------------

São Paulo, June 23, 2026. ---------------------------------

*[signatures on the next page]* ----------------------------

----------------------------------------------------------

*[Signature Page of the Minutes of the Board of Directors Meeting of Ambipar Participações e Empreendimentos S.A.] – Under judicial reorganization, filed on June 23, 2026.]* ---

----------------------------------------------------------

**Board:** ----------------------------------------------------

*(Digital Signature Information)* --------------------------

Alessandra Bessa Alves de Melo ---------------------------

President -------------------------------------------------

----------------------------------------------------------

*(Digital Signature Information)* --------------------------

Ana Carolina Britte Bruno --------------------------------

Secretary ------------------------------------------------

----------------------------------------------------------

**Board Members Present:** ------------------------------------

*(Digital Signature Information)* --------------------------

Alessandra Bessa Alves de Melo ---------------------------

----------------------------------------------------------

*(Digital Signature Information)* --------------------------

José Carlos de Souza -------------------------------------



**ROBERTO VERAS BICA**
**Tradutor Público e Intérprete Comercial - Inglês**
**Sworn Translator**
**JUCERJA Nº 244**
**CPF/MF 634.302.748-34**

p. 407

```
------------------------------------------------------------
Marco Antonio Zanini ---------------------------------------
(Digital Signature Information) ----------------------------
------------------------------------------------------------
Marcos de Mendonça Peccin -----------------------------------
(Digital Signature Information) ----------------------------
------------------------------------------------------------
(Digital Signature Information) ----------------------------
Tercio Borlenghi Jr. ---------------------------------------
------------------------------------------------------------
(Docusign logo) --------------------------------------------
------------------------------------------------------------
```

**Certificate of Completion**

| | | |
|---|---|---|
| Envelope ID: 30CF9315-98B9-80A6-83A6-C8D9762EFC55 | | Status: Completed |
| Subject: Complete with DocuSign: ARCA_AmbiparParticipações_June 23, 2026.pdf | | --- |
| Source Envelope: | | --- |
| Document Pages: 4 | Signatures: 7 | Envelope Originator: |
| Certificate Pages: 5 | Initials: 0 | Ana Paula Gomes |
| AutoNav: Enabled | --- | AVENIDA ANGELICA, 2346 - ANDAR 5 |
| EnvelopeId Stamping: Enabled | --- | CONJ51SALA4 - CONSOLATION |
| Time Zone: (UTC-03:00) Brasília | --- | SAO PAULO, SP 01228-200 |
| --- | --- | ana.gomes@ambipar.com |
| --- | --- | IP Address: 24.83.199.90 |

```
------------------------------------------------------------
```

**Record Tracking**

| | | |
|---|---|---|
| Status: Original | Holder: Ana Paula Gomes | Location: DocuSign |
| June 23, 2026 | 6:10 p.m. | ana.gomes@ambipar.com | --- |
| **Signer Events** | **Signature** | **Timestamp** |
| Alessandra Bessa Alves de Melo | *(Digital Signature Information)* | Sent: June 23, 2026 | 6:17 p.m. |
| alessandra.bessa@ambipar.com | --- | Viewed: June 23, 2026 | 6:23 p.m. |
| Advisor | --- | Signed: June 23, 2026 | 6:28 p.m. |
| Security Level: Email, Account Authentication (None) | Signature Adoption: Pre-selected Style | --- |
| --- | Using an IP Address: 200,148,210,114 | --- |
| **Disclosure Regarding Electronic Records and Signatures:** | --- | --- |



**ROBERTO VERAS BICA**
**Tradutor Público e Intérprete Comercial - Inglês**
**Sworn Translator**
**JUCERJA Nº 244**
**CPF/MF 634.302.748-34**

p. 408

| | | |
|---|---|---|
| Accepted: August 1, 2024 \| 2:12 p.m. | --- | --- |
| ID: 58f0b757-428f-4b9d-9bee-6b54a18b0a2c | --- | --- |
| Ana Carolina Britte Bruno | *(Digital Signature Information)* | Sent: June 23, 2026 \| 6:17 p.m. |
| ana.bruno@ambipar.com | --- | Viewed: June 23, 2026 \| 6:40 p.m. |
| Security Level: Email, Account Authentication (None) | --- | Signed: June 23, 2026 \| 6:40 p.m. |
| --- | Signature Adoption: Pre-selected Style | --- |
| --- | Using an IP Address: | --- |
| --- | 2804:7f0:d81e:168:6dfb:a310:ba05:aa69 | --- |
| --- | Signed using mobile | --- |
| **Disclosure Regarding Electronic Records and Signatures:** | --- | --- |
| Not Offered via DocuSign | --- | --- |
| José Carlos de Souza | *(Digital Signature Information)* | Sent: June 23, 2026 \| 6:17 p.m. |
| josecarlos.souza@ambipar.com | --- | Viewed: 23 June 2026 \| 18:25 |
| Security Level: Email, Account Authentication (None) | --- | Signed: 23 June 2026 \| 18:26 |
| --- | Signature Adoption: Pre-selected Style | --- |
| --- | Using an IP Address: | --- |
| --- | 2804:7f0:ba43:3b6e:31cc:230e:a250:b1b6 | --- |
| **Disclosure Regarding Electronic Records and Signatures:** | --- | --- |
| Accepted: 23 June 2026 \| 18:25 | --- | --- |
| ID: e23566ab-4498-48a1-926b-3d83cdeabad3 | --- | --- |
| Marco Antonio Zanini | *(Digital Signature Information)* | Sent: June 23, 2026 \| 6:17 p.m. |
| marco.zanini@ambipar.com | --- | Viewed: 24 June 2026 \| 10:56 |
| Security Level: Email, Account Authentication (None) | --- | Signed: 24 June 2026 \| 10:57 |
| --- | Signature Adoption: Pre-selected Style | --- |
| --- | Using an IP Address: 200.225.206.4 | --- |
| **Disclosure Regarding Electronic Records and Signatures:** | --- | --- |

— — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — —

| Signer Events | Signature | Timestamp |
|---|---|---|
| Accepted: 24 June 2026 \| 10:56 | --- | --- |
| ID: 6d39b86a-1552-4543-91b3-ee7bedba5f3f | --- | --- |
| Marcos de Mendonça Peccin | *(Digital Signature Information)* | Sent: June 23, 2026 \| 6:17 p.m. |
| marcos.peccin@ambipar.com | --- | Viewed: 24 June 2026 \| 11:57 |
| Security Level: Email, Account Authentication (None) | --- | Signed: 24 June 2026 \| 12:02 |
| --- | Signature Adoption: Pre-selected Style | --- |
| --- | Using an IP Address: | --- |
| --- | 2804:7f0:6402:5c80:8d3c:46bc:31f6:2791 | --- |



**ROBERTO VERAS BICA**
**Tradutor Público e Intérprete Comercial - Inglês**
**Sworn Translator**
**JUCERJA Nº 244**
**CPF/MF 634.302.748-34**

p. 409

| Disclosure Regarding Electronic Records and Signatures: | --- | --- |
|---|---|---|
| Accepted: 24 June 2026 \| 11:57 | --- | --- |
| ID: e9093d64-d916-458e-a600-4d53a422d5ec | --- | --- |
| Tércio Borlenghi Junior | *(Digital Signature Information)* | Sent: June 23, 2026 \| 6:17 p.m. |
| tbj@tbj.com.br | --- | Viewed: 23 June 2026 \| 18:43 |
| Security Level: Email, Account Authentication (None) | --- | Signed: 23 June 2026 \| 18:44 |
| --- | Signature Adoption: Pre-selected Style | --- |
| --- | Using an IP Address: 201.48.107.5 | --- |
| Disclosure Regarding Electronic Records and Signatures: | --- | --- |
| Accepted: August 29, 2024 \| 7:33 p.m. | --- | --- |
| ID: 2adca25d-c3d4-480a-be76-7cc8bd9814ff | --- | --- |

------------------------------------------------------------

| In-Person Signer Events | Signature | Timestamp |
|---|---|---|
| Delivery Events Editor | Status | Timestamp |
| Agent Delivery Events | Status | Timestamp |
| Intermediary Delivery Events | Status | Timestamp |
| Certified Delivery Events | Status | Timestamp |
| Carbon Copy Events | Status | Timestamp |
| Witness Events | Signature | Timestamp |
| Notary Events | Signature | Timestamp |
| Envelope Summary Events | Status | Timestamps |
| Envelope Sent | Hashed/Encrypted | June 23, 2026 \| 6:17 p.m. |
| Certified Delivered | Security Checked | 23 June 2026 \| 18:43 |
| Signing Complete | Security Checked | 23 June 2026 \| 18:44 |
| Completed | Security Checked | 24 June 2026 \| 12:02 |
| Payment Events | Status | Timestamps |
| Electronic Record and Signature Disclosure | | |

------------------------------------------------------------

Electronic Record and Signature Disclosure created on: 12 June 2024 | 18:15 ----------------------------------------- Parties agreed to: Alessandra Bessa Alves de Melo, José Carlos de Souza, Marco Antonio Zanini, Marcos de Mendonça Peccin, Tércio Borlenghi Junior --------------------------- ------------------------------------------------------ **ELECTRONIC RECORD AND SIGNATURE DISCLOSURE** ----------------



**ROBERTO VERAS BICA**
**Tradutor Público e Intérprete Comercial - Inglês**
**Sworn Translator**
**JUCERJA Nº 244**
**CPF/MF 634.302.748-34**

p. 410

From time to time, EMERGENCIA PARTICIPACOES SA (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system. -----------
 -------------------------------------------------------------
**Getting paper copies** --------------------------------------
At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below. ---------------------------------------------------
 -------------------------------------------------------------
**Withdrawing your consent** ----------------------------------



**ROBERTO VERAS BICA**
**Tradutor Público e Intérprete Comercial - Inglês**
**Sworn Translator**
**JUCERJA Nº 244**
**CPF/MF 634.302.748-34**

p. 411

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below. --------------------------------------------- --------------------------------------------------------------

**Consequences of changing your mind** ------------------------ If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us. ----------------------------------------- --------------------------------------------------------------

**All notices and disclosures will be sent to you electronically** --------------------------------------------- Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to



**ROBERTO VERAS BICA**
**Tradutor Público e Intérprete Comercial - Inglês**
**Sworn Translator**
**JUCERJA Nº 244**
**CPF/MF 634.302.748-34**

p. 412

be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us. -----------------------------------

 ------------------------------------------------------------

**How to contact EMERGENCIA PARTICIPACOES SA:** --------------- You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows: ------------------------------- To contact us by email send messages to: diana.alves@ambipar.com ------------------------------------

 ------------------------------------------------------------

**To advise EMERGENCIA PARTICIPACOES SA of your new email address** ----------------------------------------------------- To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at diana.alves@ambipar.com and in the body of such request



**ROBERTO VERAS BICA**
**Tradutor Público e Intérprete Comercial - Inglês**
**Sworn Translator**
**JUCERJA Nº 244**
**CPF/MF 634.302.748-34**

p. 413

you must state: your previous email address, your new email address. We do not require any other information from you to change your email address. -------------------- If you created a DocuSign account, you may update it with your new email address through your account preferences. --

------------------------------------------------------------

**To request paper copies from EMERGENCIA PARTICIPACOES SA** -- To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to diana.alves@ambipar.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any. -------------------------------

------------------------------------------------------------

**To withdraw your consent with EMERGENCIA PARTICIPACOES SA** - To inform us that you no longer wish to receive future notices and disclosures in electronic format you may: ----- i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may; - ii. send us an email to diana.alves@ambipar.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process.. ------------------------------------------------

------------------------------------------------------------



**ROBERTO VERAS BICA**
**Tradutor Público e Intérprete Comercial - Inglês**
**Sworn Translator**
**JUCERJA Nº 244**
**CPF/MF 634.302.748-34**

p. 414

**Required hardware and software** --------------------------
The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements. --------------------------------------
--------------------------------------------------------
**Acknowledging your access and consent to receive and sign documents electronically** --------------------------------
To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system. --------------------------------------------------
By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that: -----
• You can access and read this Electronic Record and Signature Disclosure; and --------------------------------
• You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic



**ROBERTO VERAS BICA**
**Tradutor Público e Intérprete Comercial - Inglês**
**Sworn Translator**
**JUCERJA Nº 244**
**CPF/MF 634.302.748-34**

p. 415

Record and Disclosure to a location where you can print it, for future reference and access; and ------------------

• Until or unless you notify EMERGENCIA PARTICIPACOES SA as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by EMERGENCIA PARTICIPACOES SA during the course of your relationship with EMERGENCIA PARTICIPACOES SA. ------------

 ------------------------------------------------------------
**THIS WAS THE FULL TEXT of said document, the true translation whereof I ATTEST.**---------------------------------------------------------------------------------------------------
**WITNESS MY HAND AND SEAL, June 24, 2026.** -------------------------------------------



**Exhibit B-3**

**Ambipar Response Authorizing Resolutions**

**Ambipar Emergency Response**

**Executive Officer Resolution**

**Adopted as of June 23, 2026**

The undersigned, being the duly appointed chief executive officer and director (the "**Authorized Officers**"), respectively of Ambipar Emergency Response (the "**Company**"), acting jointly, hereby adopt the following resolutions pursuant to and in accordance with the authority granted to them under the Amended and Restated Articles of Association of the Company (the "**Articles of Association**") and the written resolutions of the board of directors of the Company passed on February 9, 2023 (the "**February 2023 Board Resolutions**"):

**WHEREAS**, pursuant to the Articles of Association and the February 2023 Board Resolutions, the Authorized Officers acting jointly, are authorized and empowered, to bind, or take any actions in the name and on behalf of, the Company;

**WHEREAS**, the Authorized Officers noted that, pursuant to the decision of the Brazilian Court dated October 30, 2025, rendered in connection with the granting of the processing of the judicial reorganization proceeding (the "**RJ Proceeding**") in Case No. 3014764-58.2025.8.19.0001 before the Third Business Court of the Capital District of Rio de Janeiro (the "**Brazilian Court**"), the Brazilian Court appointed Mr. Ricardo Rosanova Garcia as the foreign representative of the Company (the "**Foreign Representative**");

**WHEREAS**, the Authorized Officers noted the need to replace Ricardo Rosanova Garcia as the Foreign Representative, on the basis that Ricardo Rosanova Garcia is no longer employed by the Company or any of its affiliates;

**WHEREAS** the Authorized Officers have determined that it is in the best interests of the Company it to enter into a restructuring support agreement, on or around the date hereof, substantially in the form presented to the Authorized Officers (together with all exhibits and schedules thereto, the "**Restructuring Support Agreement**"), by and among the Company, certain of its affiliates (collectively, the "**Company Parties**"), and the creditors party thereto, pursuant to which, among other things, the Company Parties agree to effectuate certain restructuring transactions on the terms and subject to the conditions set forth therein (the "**Restructuring Transactions**").

**WHEREAS**, the Authorized Officers have determined that it is in the best interests of the Company to authorize the actions set forth below in furtherance of the foregoing February 2023 Board Resolutions.

**NOW, THEREFORE, BE IT RESOLVED**, that in accordance with the Articles of Association and the February 2023 Board Resolutions, the Authorized Officers, acting jointly, hereby (a) authorize the execution of the Restructuring Support Agreement and the carry out the actions contemplated by the Restructuring Support Agreement, including the Restructuring Transactions; (b) appoint Thiago da Costa Silva as the Foreign Representative of the Company in respect of the RJ Proceeding, as that term is defined in section 101(24) of the US Bankruptcy Code, to represent the Company in any cases with respect to the Company that may be commenced pursuant to chapter 15 of the US Bankruptcy Code (the "**Chapter 15 Cases**") to seek recognition of the RJ Proceeding pursuant; and (c) authorize the Foreign Representative to take all necessary actions on behalf of the Company to commence the Chapter 15 Cases, if and when appropriate, and to obtain the relief sought therein and any further related relief deemed prudent and consistent with the terms of the Restructuring Support Agreement to be entered into by the Company and its affiliates.

**RESOLVED FURTHER**, that the Authorized Officers, acting jointly, hereby authorize and direct any officer, attorney-in-fact, agent, or representative of the Company to prepare, execute, deliver, and file (or cause to be prepared, executed, delivered, and filed) any and all applications, petitions, motions, declarations, certificates, notices, consents, and other documents or instruments, in each case as may be necessary or advisable to effectuate the appointment of Thiago da Costa Silva as the Foreign Representative.

**IN WITNESS WHEREOF**, the undersigned Authorized Officers have executed this resolution as of the date first written above.

Assinado por:

*Thiago da Costa Silva*
D2F918DA80A94FD...

Name: Thiago da Costa Silva

Title: Director

Signed by:

*Ricardo Chagas*
0B53340F57B145F...

Name: Ricardo Chagas

Title: Chief Executive Officer

**Exhibit B-4**

**Ambipar Environment Authorizing Resolutions**

**ENVIRONMENTAL ESG PARTICIPAÇÕES S.A. – EM RECUPERAÇÃO JUDICIAL**
CNPJ/MF n° 09.527.023/0001-23
NIRE 35.300.412.923

**ATA DE REUNIÃO DO CONSELHO DE ADMINISTRAÇÃO**
**REALIZADA EM 23 DE JUNHO DE 2026**

**1.     DATA, HORA E LOCAL:** Realizada no dia 23 de junho de 2026, às 18h30, na sede social da **ENVIRONMENTAL ESG PARTICIPAÇÕES S.A. – EM RECUPERAÇÃO JUDICIAL** ("Companhia"), localizada na Cidade de Nova Odessa, no Estado de São Paulo, na Rodovia Anhanguera, s/n, Km 120, galpão 05, Distrito Industrial I, CEP 13.388-220, de forma exclusivamente digital.

**2.     CONVOCAÇÃO E PRESENÇA:** Dispensadas as formalidades de convocação tendo em vista a presença virtual da totalidade dos membros do Conselho de Administração, nos termos do Estatuto Social da Companhia.

**3.     MESA:** Presidente da Mesa - Sra. Alessandra Bessa Alves de Melo; Secretária da Mesa - Sra. Ana Carolina Britte Bruno.

**4.     ORDEM DO DIA:** Deliberar sobre: **(i)** a forma e os termos do acordo de apoio à reestruturação financeira da Ambipar Participações e Empreendimentos S.A. – Em Recuperação Judicial e de suas afiliadas, incluindo a Companhia (em conjunto denominadas "Grupo Ambipar"), a ser celebrado com determinados credores detentores de parcela relevante do valor de principal agregado em aberto dos *Green Bonds* emitidos pelo Grupo Ambipar com vencimento em 2031 e em 2033 ("Credores Apoiadores"), intitulado *Restructuring Support Agreement* ("Acordo de Apoio"), bem como sobre a celebração do Acordo de Apoio e de seus respectivos anexos e a consumação das operações nele previstas; e **(ii)** a nomeação do Sr. Thiago da Costa Silva, Diretor Presidente e Financeiro da Companhia, como representante estrangeiro da Companhia ("Representante Estrangeiro") em relação à recuperação judicial do Grupo Ambipar atualmente em curso ("Recuperação Judicial"), nos termos da seção 101(24) do US Bankruptcy Code, com poderes para representar a Companhia nos Chapter 15 Proceedings junto ao United States Bankruptcy Court for the Southern District of Texas ("Tribunal Norte-Americano").

**5.     DELIBERAÇÕES:** Prestados os esclarecimentos necessários, após análise dos documentos referentes às matérias constantes da ordem do dia da presente reunião, os membros do Conselho de Administração presentes, por unanimidade de votos e sem quaisquer restrições, deliberaram o quanto segue:

**5.1.**     Aprovar, em todos os seus termos, *(a)* a forma e os termos do Acordo de Apoio, incluindo todos os anexos e cronogramas a ele relativos; *(b)* a celebração e cumprimento do Acordo de Apoio e de seus anexos pela Companhia, e *(c)* a consumação das operações previstas no Acordo de Apoio e em seus anexos, com eventuais alterações e acréscimos que qualquer Pessoa Autorizada (conforme definido abaixo) venha, a seu exclusivo critério, a considerar necessários ou convenientes, ficando reconhecido que a assinatura do Acordo de Apoio e de seus anexos constituirá prova conclusiva de sua aprovação, observados, ainda, os termos abaixo descritos.

1

**5.1.1.** A Companhia fica autorizada, por intermédio de qualquer de seus diretores ou procuradores com poderes para tanto nos termos de seu Estatuto Social e/ou documentos de representação, com plenos poderes de subdelegação, em nome e por conta da Companhia (cada qual, uma "Pessoa Autorizada"), a praticar todos os atos necessários ou convenientes para que a Companhia celebre, execute, entregue, certifique, protocole e/ou registre o Acordo de Apoio substancialmente na forma apresentada aos membros do Conselho de Administração previamente à esta reunião, bem como quaisquer outros documentos, contratos, instrumentos e certidões exigidos pelo Acordo de Apoio.

**5.1.2.** A Companhia fica autorizada, por intermédio de qualquer Pessoa Autorizada, a praticar todos os atos e firmar, celebrar, executar, entregar, emitir ou protocolar, junto a quaisquer pessoas, inclusive autoridades governamentais, todos os contratos, documentos, instrumentos, certidões, consentimentos ou renúncias, e respectivos aditivos, bem como a efetuar ou causar a efetivação de todos os pagamentos necessários ou convenientes para a execução do Acordo de Apoio e das operações de reestruturação previstas nele e em seus anexos, conforme o caso ("Operações de Reestruturação"), servindo a prática de tais atos como prova conclusiva da referida autorização.

**5.1.3.** A Companhia fica autorizada, por intermédio de qualquer Pessoa Autorizada, a celebrar quaisquer *(a)* contratos pelos quais uma afiliada da Companhia forneça recursos para o pagamento de honorários profissionais e outros custos associados ao Acordo de Apoio e às Operações de Reestruturação, e/ou *(b)* contratos com quaisquer terceiros, ou quaisquer operações, para a prestação de serviços ou contratação de seguros relacionados ao Acordo de Apoio e às Operações de Reestruturação ("Documentos Acessórios"), bem como a praticar todos os atos e efetuar todos os pagamentos que considere necessários ou convenientes para dar cumprimento ao ora deliberado.

**5.1.4.** Ficam ratificados  e aprovados, em todos os seus termos, todos os atos anteriormente praticados pela Companhia ou por qualquer Pessoa Autorizada em conexão com o Acordo de Apoio ou as Operações de Reestruturação, incluindo, sem limitação, a assinatura de quaisquer contratos, deliberações, cartas, notificações, certidões, recibos, autorizações, instruções, liberações, renúncias, procurações e demais documentos, bem como o pagamento de quaisquer honorários e despesas correlatos.

**5.2.** Aprovar a nomeação do Sr. Thiago da Costa Silva, Diretor Presidente e Financeiro da Companhia, como Representante Estrangeiro nos termos da seção 101(24) do US Bankruptcy Code, com poderes para representar a Companhia no âmbito dos Chapter 15 Proceedings junto ao Tribunal Norte-Americano, ficando o Representante Estrangeiro autorizado a praticar todos os atos necessários, em nome e por conta da Companhia, para a obtenção das medidas requeridas nos Chapter 15 Proceedings, bem como quaisquer outras medidas correlatas consideradas prudentes e em conformidade com os termos do Acordo de Apoio, observados, ainda, os termos abaixo descritos.

**5.2.1.** O Representante Estrangeiro fica autorizado e constituído de poderes para executar e protocolar, em nome e por conta da Companhia, todas as petições, cronogramas, declarações, moções, listas, requerimentos, peças e demais documentos ("Petições do Chapter 15 Proceedings") no âmbito dos Chapter 15 Proceedings perante o Tribunal Norte-Americano, incluindo a realização de eventuais alterações e acréscimos que o Representante Estrangeiro venha, a seu exclusivo critério, a

2

considerar necessários ou convenientes, ficando reconhecido que a execução e entrega das Petições do Chapter 15 Proceedings pelo Representante Estrangeiro constituirá prova conclusiva de sua aprovação.

**5.2.2.** O Representante Estrangeiro fica autorizado e constituído de poderes, com plenos poderes de subdelegação, em nome e por conta da Companhia, a praticar e executar todos os atos e providências que considere necessários, convenientes ou desejáveis em conexão com os Chapter 15 Proceedings ou com as Petições do Chapter 15 Proceedings, em conformidade com o Acordo de Apoio, incluindo, sem limitação: *(a)* contratar e manter Kurtzman Carson Consultants, LLC d/b/a Verita Global ("Verita") como agente de informações no âmbito dos Chapter 15 Proceedings; *(b)* celebrar os respectivos contratos de prestação de serviços e pagar os adiantamentos pertinentes à contratação da Verita; e *(c)* negociar, celebrar, entregar, cumprir e protocolar quaisquer documentos, cronogramas, declarações, listas, acordos, certidões, aditivos e/ou instrumentos adicionais em conexão com ou para promover os Chapter 15 Proceedings, com vistas à sua condução bem-sucedida.

**5.2.3.** O Representante Estrangeiro fica autorizado e constituído de poderes para executar e protocolar, em nome e por conta da Companhia, moção ou adesão (*joinder*) nos autos do Chapter 11 Proceedings, requerendo sua suspensão ou extinção, nos termos e em conformidade com o Acordo de Apoio.

**5.2.4.** Ficam ratificados e aprovados, em todos os seus termos, todos os atos anteriormente praticados pelo Representante Estrangeiro em conexão com os Chapter 15 Proceedings, incluindo, sem limitação, a assinatura de quaisquer contratos, deliberações, cartas, notificações, certidões, recibos, autorizações, instruções, liberações, renúncias, procurações e demais documentos, bem como o pagamento de quaisquer honorários e despesas correlatos.

**5.2.5.** Para fins de esclarecimento, fica consignado que a nomeação do Sr. Thiago da Costa Silva nos termos acima é realizada em substituição ao Sr. Ricardo Rosanova Garcia, inicialmente nomeado como representante estrangeiro nos autos do processo de recuperação judicial do Grupo Ambipar, em curso perante o Juízo da 3ª Vara Empresarial da Comarca da Capital do Estado do Rio de Janeiro sob o nº 3014764-58.2025.8.19.0001, tendo em vista que o Sr. Ricardo Rosanova Garcia deixou de exercer cargo de diretor estatutário de quaisquer das entidades do Grupo Ambipar.

**6.** **ENCERRAMENTO:** Nada mais havendo a ser tratado, foi encerrada a reunião, da qual se lavrou a presente ata que, lida e achada conforme, foi assinada por todos os presentes.

Nova Odessa, 23 de junho de 2026.

*[assinaturas na próxima página]*

3

*[Página de assinaturas da Ata de Reunião de Conselho de Administração da Environmental ESG Participações S.A. – Em Recuperação Judicial, realizada em 23 de junho de 2026.]*

**Mesa**:

Assinado por:

*Alessandra Bessa Alves de Melo*

DD13D3364E4E41C...

Alessandra Bessa Alves de Melo
Presidente

Assinado por:

*Ana Carolina Britte Bruno*

1F57ED3D9133410...

Ana Carolina Britte Bruno
Secretária

**Conselheiros Presentes**:

Assinado por:

*Alessandra Bessa Alves de Melo*

DD13D3364E4E41C...

Alessandra Bessa Alves de Melo

DocuSigned by:

*Tércio Borlenghi Junior*

DDA6E6B2213D4E6...

Tercio Borlenghi Junior

DocuSigned by:

*Dennys Spencer de Maio*

F5260EAE1BC64AD...

Dennys Spencer de Maio

4

**Docusign**

## Certificate Of Completion

Envelope Id: AFD4A17A-AF70-8D80-820D-885E24EFEBA7          Status: Completed
Subject: Complete with Docusign: RCA_EnvironmentalESG_23.06.2026.pdf
Source Envelope:
Document Pages: 4                    Signatures: 5              Envelope Originator:
Certificate Pages: 5                 Initials: 0                Ana Paula Gomes
AutoNav: Enabled                                                AVENIDA ANGELICA, 2346 - ANDAR 5
EnvelopeId Stamping: Enabled                                    CONJ51SALA4 - CONSOLACAO
Time Zone: (UTC-03:00) Brasilia                                 SAO PAULO, SP  01228-200
                                                                ana.gomes@ambipar.com
                                                                IP Address: 24.83.199.90

## Record Tracking

Status: Original                     Holder: Ana Paula Gomes           Location: DocuSign
        23 June 2026 | 15:40                 ana.gomes@ambipar.com

| Signer Events | Signature | Timestamp |
|---|---|---|
| Alessandra Bessa Alves de Melo<br>alessandra.bessa@ambipar.com<br>Conselheira<br>Security Level: Email, Account Authentication (None) | Assinado por:<br>*Alessandra Bessa Alves de Melo*<br>DD13D3364E4E41C...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 201.48.107.5 | Sent: 23 June 2026 \| 15:43<br>Viewed: 23 June 2026 \| 16:05<br>Signed: 23 June 2026 \| 16:07 |
| **Electronic Record and Signature Disclosure:**<br>     Accepted: 01 August 2024 \| 14:12<br>     ID: 58f0b757-428f-4b9d-9bee-6b54a18b0a2c | | |
| Ana Carolina Britte Bruno<br>ana.bruno@ambipar.com<br>Security Level: Email, Account Authentication (None) | Assinado por:<br>*Ana Carolina Britte Bruno*<br>1F57ED3D9133410...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 177.69.194.209 | Sent: 23 June 2026 \| 15:43<br>Viewed: 23 June 2026 \| 16:18<br>Signed: 23 June 2026 \| 16:18 |
| **Electronic Record and Signature Disclosure:**<br>     Not Offered via Docusign | | |
| Dennys Spencer de Maio<br>dennys.spencer@ambipar.com<br>Security Level: Email, Account Authentication (None) | DocuSigned by:<br>*Dennys Spencer de Maio*<br>F5260EAE1BC64AD...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 199.219.214.254 | Sent: 23 June 2026 \| 15:43<br>Viewed: 23 June 2026 \| 18:23<br>Signed: 23 June 2026 \| 18:25 |
| **Electronic Record and Signature Disclosure:**<br>     Accepted: 23 June 2026 \| 18:23<br>     ID: 5781ae7c-827b-4d43-a69a-dcd8202915b8 | | |
| Tércio Borlenghi Junior<br>tbj@tbj.com.br<br>Security Level: Email, Account Authentication (None) | DocuSigned by:<br>*Tércio Borlenghi Junior*<br>DDA6E6B2213D4E6...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 200.148.210.114 | Sent: 23 June 2026 \| 15:43<br>Viewed: 23 June 2026 \| 18:45<br>Signed: 23 June 2026 \| 18:45 |
| **Electronic Record and Signature Disclosure:**<br>     Accepted: 29 August 2024 \| 19:33<br>     ID: 2adca25d-c3d4-480a-be76-7cc8bd9814ff | | |

| In Person Signer Events | Signature | Timestamp |
| --- | --- | --- |

| Editor Delivery Events | Status | Timestamp |
| --- | --- | --- |

| Agent Delivery Events | Status | Timestamp |
| --- | --- | --- |

| Intermediary Delivery Events | Status | Timestamp |
| --- | --- | --- |

| Certified Delivery Events | Status | Timestamp |
| --- | --- | --- |

| Carbon Copy Events | Status | Timestamp |
| --- | --- | --- |

| Witness Events | Signature | Timestamp |
| --- | --- | --- |

| Notary Events | Signature | Timestamp |
| --- | --- | --- |

| Envelope Summary Events | Status | Timestamps |
| --- | --- | --- |
| Envelope Sent | Hashed/Encrypted | 23 June 2026 \| 15:43 |
| Certified Delivered | Security Checked | 23 June 2026 \| 18:45 |
| Signing Complete | Security Checked | 23 June 2026 \| 18:45 |
| Completed | Security Checked | 23 June 2026 \| 18:45 |

| Payment Events | Status | Timestamps |
| --- | --- | --- |

**Electronic Record and Signature Disclosure**

Electronic Record and Signature Disclosure created on: 12 June 2024 1:18:15
Parties agreed to: Alessandra Bessa Alves de Melo, Dennys Spencer de Maio, Tércio Borlenghi Junior

Case 26-90709   Document 7   Filed in TXSB on 07/09/26   Page 112 of 166

**ELECTRONIC RECORD AND SIGNATURE DISCLOSURE**

From time to time, EMERGENCIA PARTICIPACOES SA (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

**Getting paper copies**

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

**Withdrawing your consent**

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

**Consequences of changing your mind**

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

**All notices and disclosures will be sent to you electronically**

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact EMERGENCIA PARTICIPACOES SA:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: diana.alves@ambipar.com

**To advise EMERGENCIA PARTICIPACOES SA of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at diana.alves@ambipar.com and in the body of such request you must state: your previous email address, your new email address.  We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from EMERGENCIA PARTICIPACOES SA**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to diana.alves@ambipar.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with EMERGENCIA PARTICIPACOES SA**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to diana.alves@ambipar.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent..  The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify EMERGENCIA PARTICIPACOES SA as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by EMERGENCIA PARTICIPACOES SA during the course of your relationship with EMERGENCIA PARTICIPACOES SA.

## Exhibit B-5

**Certified Translation of Ambipar Environment Authorizing Resolutions**

**ROBERTO VERAS BICA**
**Tradutor Público e Intérprete Comercial - Inglês**
**Sworn Translator**
**JUCERJA Nº 244**
**CPF/MF 634.302.748-34**



p. 39

268.020(001) Livro 243 Fl. 39-53

**I, the undersigned Sworn Public Translator and Commercial Interpreter, with full faith and credit throughout the Federative Republic of Brazil, duly appointed and commissioned by the Board of Trade of the State of Rio de Janeiro (JUCERJA) and registered therewith under No 244, DO HEREBY CERTIFY AND ATTEST that a document set forth in the Portuguese language was presented to me for translation into English, which I have lawfully performed, by virtue of my official Capacity, as follows:** ------------------------------

 ----------------------------------------------------------------

Docusign Envelope ID: AFD4A17A-AF70-8D80-820D-885E24EFEBA7

**ENVIRONMENTAL ESG PARTICIPAÇÕES S.A. - UNDER COURT-SUPERVISED REORGANIZATION** ---------------------------------

CNPJ/MF No. 09.527.023/0001-23 ----------------------------

NIRE 35.300.412.923 ---------------------------------------

**MINUTES OF THE BOARD OF DIRECTORS MEETING HELD ON JUNE 23, 2026** --------------------------------------------------------

1. **DATE, TIME, AND LOCATION:** Held on June 23, 2026, at 6:30 p.m., at the headquarters of **ENVIRONMENTAL ESG PARTICIPAÇÕES S.A. - UNDER COURT-SUPERVISED REORGANIZATION** ("Company"), located in the city of Nova Odessa, in the state of São Paulo, at Rodovia Anhanguera, s/n, Km 120, Warehouse 05, Industrial District I, Postal Code [CEP] 13.388-220, exclusively online. --------------------------

2. **NOTICE OF MEETING AND ATTENDANCE:** The formalities for convening the meeting were waived, given that virtually all members of the Board of Directors were present, in accordance with the Company's Articles of Incorporation. --

3. **CHAIR:** Chairperson - Ms. Alessandra Bessa Alves de Melo; Secretary of the Chair - Ms. Ana Carolina Britte Bruno. -------------------------------------------------------



ROBERTO VERAS BICA
Tradutor Público e Intérprete Comercial - Inglês
Sworn Translator
JUCERJA Nº 244
CPF/MF 634.302.748-34

p. 40

**4. <u>AGENDA</u>:** To resolve on: **(i)** the form and terms of the agreement to support the financial restructuring of Ambipar Participações e Empreendimentos S.A. - In connection with the court-supervised reorganization of the Company and its affiliates, including the Company (collectively referred to as "<u>Ambipar Group</u>"), to be entered into with certain creditors holding a significant portion of the outstanding aggregate principal amount of the *Green Bonds* issued by the Ambipar Group maturing in 2031 and 2033 ("<u>Supporting Creditors</u>"), entitled *Restructuring Support Agreement* ("<u>Support Agreement</u>"), as well as on the execution of the Support Agreement and its respective exhibits and the completion of the transactions set forth therein; and **(ii)** the appointment of Mr. Thiago da Costa Silva, the Company's Chief Executive Officer and Chief Financial Officer, as the Company's foreign representative ("<u>Foreign Representative</u>") in connection with the Ambipar Group's ongoing court-supervised reorganization ("<u>Court-supervised reorganization</u>"), pursuant to section 101(24) of the U.S. Bankruptcy Code, with authority to represent the Company in Chapter 15 proceedings before the United States Bankruptcy Court for the Southern District of Texas ("<u>U.S. Court</u>"). ------------

**5. <u>RESOLUTIONS</u>:** After the necessary clarifications were provided and following a review of the documents pertaining to the items on the agenda for this meeting, the members of the Board of Directors present, by unanimous vote and without any restrictions, resolved as follows: ----------------------------------------------------



ROBERTO VERAS BICA
Tradutor Público e Intérprete Comercial - Inglês
Sworn Translator
JUCERJA Nº 244
CPF/MF 634.302.748-34

p. 41

**5.1.** To approve, in its entirety, *(a)* the form and terms of the Support Agreement, including all annexes and schedules related thereto; *(b)* the execution and performance by the Company of the Support Agreement and its annexes, and *(c)* the completion of the transactions set forth in the Support Agreement and its annexes, with any amendments and additions that any Authorized Person (as defined below) may, in its sole discretion, deem necessary or appropriate, it being acknowledged that the signing of the Support Agreement and its annexes shall constitute conclusive evidence of their approval, subject also to the terms described below. -----------------------

**5.1.1.** The Company is hereby authorized, through any of its officers or attorneys-in-fact with the necessary powers under its Articles and/or powers of attorney, with full authority to subdelegate, in the name and on behalf of the Company (each, an "Authorized Person"), to perform all acts necessary or convenient for the Company to enter into, execute, deliver, certify, file, and/or register the Support Agreement substantially in the form presented to the members of the Board of Directors prior to this meeting, as well as any other documents, contracts, instruments, and certificates required by the Support Agreement. -------------------------------------------------

**5.1.2.** The Company is hereby authorized, through any Authorized Person, to perform all acts and to sign, enter into, execute, deliver, issue, or file with any persons, including government authorities, all contracts, documents, instruments, certificates, consents, or



ROBERTO VERAS BICA
Tradutor Público e Intérprete Comercial - Inglês
Sworn Translator
JUCERJA Nº 244
CPF/MF 634.302.748-34

p. 42

waivers, and their respective amendments, as well as to make or cause to be made all payments necessary or appropriate for the performance of the Support Agreement and the restructuring transactions set forth therein and in its annexes, as applicable ("Restructuring Transactions"), with the performance of such acts serving as conclusive evidence of such authorization. -------------

**5.1.3.** The Company is authorized, through any Authorized Person, to enter into any *(a)* agreements under which an affiliate of the Company provides funds for the payment of professional fees and other costs associated with the Support Agreement and the Restructuring Transactions, and/or *(b)* contracts with any third parties, or any transactions, for the provision of services or the purchase of insurance related to the Support Agreement and the Restructuring Transactions ("Ancillary Documents"), as well as to take all actions and make all payments it deems necessary or appropriate to comply with the terms hereby resolved. --------------------------------------------------

**5.1.4.** All acts previously performed by the Company or by any Authorized Person in connection with the Support Agreement or the Restructuring Transactions are hereby ratified and approved in their entirety, including, without limitation, the signing of any contracts, resolutions, letters, notices, certificates, receipts, authorizations, instructions, releases, waivers, powers of attorney, and other documents, as well as the payment of any related fees and expenses. ---------------------------



ROBERTO VERAS BICA
Tradutor Público e Intérprete Comercial - Inglês
Sworn Translator
JUCERJA Nº 244
CPF/MF 634.302.748-34

p. 43

**5.2.** To approve the appointment of Mr. Thiago da Costa Silva, the Company's Chief Executive Officer and Chief Financial Officer, as Foreign Representative pursuant to Section 101(24) of the U.S. Bankruptcy Code, with authority to represent the Company in the Chapter 15 Proceedings before the U.S. Court, and the Foreign Representative is hereby authorized to take all necessary actions, in the name and on behalf of the Company, to obtain the relief sought in the Chapter 15 Proceedings, as well as any other related relief deemed prudent and in accordance with the terms of the Support Agreement, subject also to the terms described below. ----------------

**5.2.1.** The Foreign Representative is hereby authorized and empowered to file and serve, in the name and on behalf of the Company, all petitions, schedules, statements, motions, lists, requests, pleadings, and other documents ("Petitions in Chapter 15 Proceedings") within the scope of the Chapter 15 Proceedings before the U.S. Court, including making any amendments and additions that the Foreign Representative may, in its sole discretion, deem necessary or appropriate, it being acknowledged that the filing and submission of the Chapter 15 Proceedings Petitions by the Foreign Representative shall constitute conclusive evidence of their approval. --------------------

**5.2.2.** The Foreign Representative is hereby authorized and empowered, with full authority to subdelegate, in the name and on behalf of the Company, to take and carry out all acts and measures that it deems necessary, appropriate, or desirable in connection with the Chapter 15 Proceedings or



ROBERTO VERAS BICA
Tradutor Público e Intérprete Comercial - Inglês
Sworn Translator
JUCERJA Nº 244
CPF/MF 634.302.748-34

p. 44

the Petitions in the Chapter 15 Proceedings, in accordance with the Support Agreement, including, without limitation: *(a)* engage and retain Kurtzman Carson Consultants, LLC d/b/a Verita Global ("Verita") as information agent in connection with the Chapter 15 Proceedings; *(b)* enter into the respective service agreements and pay the relevant advance payments for the engagement of Verita; and *(c)* to negotiate, execute, deliver, perform, and file any documents, schedules, statements, lists, agreements, certificates, amendments, and/or additional instruments in connection with or to further the Chapter 15 Proceedings, with a view to their successful conduct. ------------------

**5.2.3.** The Foreign Representative is hereby authorized and empowered to file, on behalf of and for the account of the Company, a motion or joinder in the Chapter 11 Proceedings, requesting their suspension or termination, under the terms and in accordance with the Support Agreement. -------------------------------------------------

**5.2.4.** The following are hereby ratified and approved in their entirety: all acts previously performed by the Foreign Representative in connection with the Chapter 15 Proceedings, including, without limitation, the signing of any contracts, resolutions, letters, notices, certificates, receipts, authorizations, instructions, releases, waivers, powers of attorney, and other documents, as well as the payment of any related fees and expenses. -------------------------------------------------

**5.2.5.** For the sake of clarity, it is hereby noted that Mr. Thiago da Costa Silva, as stated above, is appointed



**ROBERTO VERAS BICA**
**Tradutor Público e Intérprete Comercial - Inglês**
**Sworn Translator**
**JUCERJA Nº 244**
**CPF/MF 634.302.748-34**

p. 45

to replace Mr. Ricardo Rosanova Garcia, initially appointed as foreign representative in the Ambipar Group's court-supervised reorganization proceedings, currently pending before the 3rd Commercial Court of the Capital District of the State of Rio de Janeiro under case no. 3014764-58.2025.8.19.0001, given that Mr. Ricardo Rosanova Garcia is no longer serving as a statutory director of any of the Ambipar Group's entities. --------------------------

**6. ADJOURNMENT:** With no further business to discuss, the meeting was adjourned. These minutes were drawn up, read aloud, found to be in order, and signed by all those present. -----------------------------------------------------
Nova Odessa, June 23, 2026. ------------------------------
*[signatures on the next page]* ----------------------------
*[Signature Page of the Minutes of the Board of Directors Meeting of Environmental ESG Participações S.A.] – Under court-supervised reorganization, filed on June 23, 2026.]* -
**Chair:** ------------------------------------------------------
*(Digital Signature Information)* ---------------------------
Alessandra Bessa Alves de Melo, President ----------------
*(Digital Signature Information)* ---------------------------
Ana Carolina Britte Bruno, Secretary ---------------------
**Board Members Present:** -------------------------------------
*(Digital Signature Information)* ---------------------------
Alessandra Bessa Alves de Melo ----------------------------
*(Digital Signature Information)* ---------------------------
Tercio Borlenghi Junior. ----------------------------------
*(Digital Signature Information)* ---------------------------
Dennys Spencer de Maio -----------------------------------



**ROBERTO VERAS BICA**
**Tradutor Público e Intérprete Comercial - Inglês**
**Sworn Translator**
**JUCERJA Nº 244**
**CPF/MF 634.302.748-34**

p. 46

```
------------------------------------------------------------
(Logo) -----------------------------------------------------
```
**Certificate Of Completion** -------------------------------
```
Envelope Id: AFD4A17A-AF70-8D80-820D-885E24EFEBA7 ---------
Subject:        Complete        with        Docusign:
RCA_EnvironmentalESG_23.06.2026.pdf -----------------------
Source Envelope: (Blank) ----------------------------------
Document Pages: 4 -----------------------------------------
Certificate Pages: 5 --------------------------------------
AutoNav: Enabled ------------------------------------------
EnvelopeId Stamping: Enabled ------------------------------
Time Zone: (UTC-03:00) Brasilia ---------------------------
Signatures: 5 ---------------------------------------------
Initials: 0 -----------------------------------------------
Status: Completed -----------------------------------------
Envelope Originator: Ana Paula Gomes ----------------------
AVENIDA ANGELICA, 2346 - ANDAR 5 CONJ51SALA4 - CONSOLAÇÃO
SÃO PAULO, SP 01228-200 ana.gomes@ambipar.com ------------
IP Address: 24.83.199.90 ----------------------------------
```
**Record Tracking** --------------------------------------------
```
Status: Original ------------------------------------------
Holder: Ana Paula Gomes - ana.gomes@ambipar.com -----------
Location: DocuSign ----------------------------------------
23 June 2026 | 15:40 --------------------------------------
------------------------------------------------------------
```



| Signer Events | Signature | Timestamp |
|---|---|---|
| Alessandra Bessa Alves de Melo | | Sent: 23 June 2026 \| 15:43 |
| alessandra.bessa@ambipar.com | *(Digital signature information)* | Viewed: 23 June 2026 \| 16:05 |
| Conselheira | | Signed: 23 June 2026 \| 16:07 |
| Security Level: Email, Account Authentication (None) | Signature Adoption: Pre-selected Style | --- |
| | Using IP Address: 201.48.107.5 | |

**ROBERTO VERAS BICA**
**Tradutor Público e Intérprete Comercial - Inglês**
**Sworn Translator**
**JUCERJA Nº 244**
**CPF/MF 634.302.748-34**

p. 47

| | | |
|---|---|---|
| **Electronic Record and Signature Disclosure:**<br>Accepted: 01 August 2024 \| 14:12<br>ID: 58f0b757-428f-4b9d-9bee-6b54a18b0a2c | --- | --- |
| Ana Carolina Britte Bruno | *(Digital signature information)* | Sent: 23 June 2026 \| 15:43 |
| ana.bruno@ambipar.com | | Viewed: 23 June 2026 \| 16:18 |
| Security Level: Email, Account Authentication (None) | --- | Signed: 23 June 2026 \| 16:18 |
| --- | Signature Adoption: Pre-selected Style | --- |
| | Using IP Address: 177.69.194.209 | |
| **Electronic Record and Signature Disclosure:**<br>Not Offered via Docusign | --- | --- |
| Dennys Spencer de Maio | *(Digital signature information)* | Sent: 23 June 2026 \| 15:43 |
| dennys.spencer@ambipar.com | | Viewed: 23 June 2026 \| 18:23 |
| Security Level: Email, Account Authentication (None) | | Signed: 23 June 2026 \| 18:25 |
| --- | Signature Adoption: Pre-selected Style | --- |
| | Using IP Address: 199.219.214.254 | |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 23 June 2026 \| 18:23<br>ID: 5781ae7c-827b-4d43-a69a-dcd8202915b8 | --- | --- |
| Tércio Borlenghi Junior | *(Digital signature information)* | Sent: 23 June 2026 \| 15:43 |
| tbj@tbj.com.br | | Viewed: 23 June 2026 \| 18:45 |
| Security Level: Email, Account Authentication (None) | Signature Adoption: Pre-selected Style | Signed: 23 June 2026 \| 18:45 |
| | Using IP Address: 200.148.210.114 | |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 29 August 2024 \| 19:33<br>ID: 2adca25d-c3d4-480a-be76-7cc8bd9814ff | --- | --- |

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – –

| In Person Signer Events | Signature | Timestamp |
|---|---|---|
| **Editor Delivery Events** | **Status** | **Timestamp** |
| **Agent Delivery Events** | **Status** | **Timestamp** |
| **Intermediary Delivery Events** | **Status** | **Timestamp** |
| **Certified Delivery Events** | **Status** | **Timestamp** |
| **Carbon Copy Events** | **Status** | **Timestamp** |
| **Witness Events** | **Signature** | **Timestamp** |
| **Notary Events** | **Signature** | **Timestamp** |
| **Envelope Summary Events** | **Status** | **Timestamps** |
| Envelope Sent | Hashed/Encrypted | 23 June 2026 \| 15:43 |
| Certified Delivered | Security Checked | 23 June 2026 \| 18:45 |
| Signing Complete | Security Checked | 23 June 2026 \| 18:45 |



**ROBERTO VERAS BICA**
**Tradutor Público e Intérprete Comercial - Inglês**
**Sworn Translator**
**JUCERJA Nº 244**
**CPF/MF 634.302.748-34**

p. 48

| Completed | Security Checked | 23 June 2026 | 18:45 |
|---|---|---|
| **Payment Events** | **Status** | **Timestamps** |
| **Electronic Record and Signature Disclosure** | | |

------------------------------------------------------------

Electronic Record and Signature Disclosure created on: 12 June 2024 | 18:15 ---------------------------------------- Parties agreed to: Alessandra Bessa Alves de Melo, Dennys Spencer de Maio, Tércio Borlenghi Junior ------------------ **ELECTRONIC RECORD AND SIGNATURE DISCLOSURE** ---------------- From time to time, EMERGENCIA PARTICIPACOES SA (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system. ----------- **Getting paper copies** -------------------------------------- At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such



ROBERTO VERAS BICA
**Tradutor Público e Intérprete Comercial - Inglês**
**Sworn Translator**
**JUCERJA Nº 244**
**CPF/MF 634.302.748-34**

p. 49

time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below. --------------------------------------------------------

**Withdrawing your consent** ----------------------------------
If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below. --------------------------------------------

**Consequences of changing your mind** ------------------------
If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us. ------------------------------------------

**All notices and disclosures will be sent to you electronically** ----------------------------------------------



ROBERTO VERAS BICA
Tradutor Público e Intérprete Comercial - Inglês
Sworn Translator
JUCERJA Nº 244
CPF/MF 634.302.748-34

p. 50

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us. -----------------------------------

**How to contact EMERGENCIA PARTICIPACOES SA:** --------------- You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows: ------------------------------ To contact us by email send messages to: diana.alves@ambipar.com -----------------------------------

**To advise EMERGENCIA PARTICIPACOES SA of your new email address** -----------------------------------------------------



ROBERTO VERAS BICA
Tradutor Público e Intérprete Comercial - Inglês
Sworn Translator
JUCERJA Nº 244
CPF/MF 634.302.748-34

p. 51

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at diana.alves@ambipar.com and in the body of such request you must state: your previous email address, your new email address. We do not require any other information from you to change your email address. -------------------- If you created a DocuSign account, you may update it with your new email address through your account preferences. -- **To request paper copies from EMERGENCIA PARTICIPACOES SA** -- To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to diana.alves@ambipar.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any. ------------------------------ **To withdraw your consent with EMERGENCIA PARTICIPACOES SA** - To inform us that you no longer wish to receive future notices and disclosures in electronic format you may: ----- i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may; - ii. send us an email to diana.alves@ambipar.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online



**ROBERTO VERAS BICA**
**Tradutor Público e Intérprete Comercial - Inglês**
**Sworn Translator**
**JUCERJA Nº 244**
**CPF/MF 634.302.748-34**

p. 52

documents will be that transactions may take a longer time to process.. ------------------------------------------------

**Required hardware and software** --------------------------

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements. --------------------------------------

**Acknowledging your access and consent to receive and sign documents electronically** --------------------------------

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system. --------------------------------------------------

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that: -----

• You can access and read this Electronic Record and Signature Disclosure; and -------------------------------



**ROBERTO VERAS BICA**
**Tradutor Público e Intérprete Comercial - Inglês**
**Sworn Translator**
**JUCERJA Nº 244**
**CPF/MF 634.302.748-34**

p. 53

• You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and ------------------

• Until or unless you notify EMERGENCIA PARTICIPACOES SA as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by EMERGENCIA PARTICIPACOES SA during the course of your relationship with EMERGENCIA PARTICIPACOES SA. ------------

---------------------------------------------------------------

**THIS WAS THE FULL TEXT of said document, the true translation whereof I ATTEST.**----------------------------------------------------------------------------------------------------
**WITNESS MY HAND AND SEAL, June 24, 2026.**-------------------------------------------



**Exhibit B-6**

**Emergência Authorizing Resolutions**

**EMERGÊNCIA PARTICIPAÇÕES S.A. – EM RECUPERAÇÃO JUDICIAL**
CNPJ/MF nº 10.645.019/0001-49
NIRE 35.300.444.230

**ATA DE ASSEMBLEIA GERAL EXTRAORDINÁRIA**
**REALIZADA EM 23 DE JUNHO DE 2026**

**1.** **DATA, HORA E LOCAL:** Realizada no dia 23 de junho de 2026, às 19h, na sede social da **EMERGÊNCIA PARTICIPAÇÕES S.A. – EM RECUPERAÇÃO JUDICIAL** ("Companhia"), localizada na Cidade de São Paulo, estado de São Paulo, na Avenida Angélica, nº 2.346, 5º andar, Conj. 51, Sala 4, Consolação, CEP 01228-200, de forma exclusivamente digital.

**2.** **CONVOCAÇÃO E PRESENÇA:** Dispensada a publicação de editais de convocação, na forma do disposto no artigo 124, § 4º, da Lei nº 6.404, de 15 de dezembro de 1976, conforme alterada ("Lei das S.A."), por estar presente à assembleia acionista representando a totalidade do capital social da Companhia.

**3.** **MESA:** Presidente da Mesa - Sr. Thiago da Costa Silva; Secretária da Mesa - Sra. Isabel Cristina Monteiro de Souza.

**4.** **ORDEM DO DIA:** Deliberar sobre: **(i)** a forma e os termos do acordo de apoio à reestruturação financeira da Ambipar Participações e Empreendimentos S.A. – Em Recuperação Judicial e de suas afiliadas, incluindo a Companhia (em conjunto denominadas "Grupo Ambipar"), a ser celebrado com determinados credores detentores de parcela relevante do valor de principal agregado em aberto dos *Green Bonds* emitidos pelo Grupo Ambipar com vencimento em 2031 e em 2033 ("Credores Apoiadores"), intitulado *Restructuring Support Agreement* ("Acordo de Apoio"), bem como sobre a celebração do Acordo de Apoio e de seus respectivos anexos e a consumação das operações nele previstas; e **(ii)** a nomeação do Sr. Thiago da Costa Silva, Diretor Financeiro da Companhia, como representante estrangeiro da Companhia ("Representante Estrangeiro") em relação à recuperação judicial do Grupo Ambipar atualmente em curso ("Recuperação Judicial"), nos termos da seção 101(24) do US Bankruptcy Code, com poderes para representar a Companhia nos Chapter 15 Proceedings junto ao United States Bankruptcy Court for the Southern District of Texas ("Tribunal Norte-Americano").

**5.** **DELIBERAÇÕES:** Prestados os esclarecimentos necessários, após análise dos documentos referentes às matérias constantes da ordem do dia da presente assembleia, foi deliberado, sem quaisquer ressalvas ou restrições, quanto segue:

**5.1.** Aprovar, em todos os seus termos, *(a)* a forma e os termos do Acordo de Apoio, incluindo todos os anexos e cronogramas a ele relativos; *(b)* a celebração e cumprimento do Acordo de Apoio e de seus anexos pela Companhia, e *(c)* a consumação das operações previstas no Acordo de Apoio e em seus anexos, com eventuais alterações e acréscimos que qualquer Pessoa Autorizada (conforme definido abaixo) venha, a seu exclusivo critério, a considerar necessários ou convenientes, ficando reconhecido que a assinatura do Acordo de Apoio e de seus anexos constituirá prova conclusiva de sua aprovação, observados, ainda, os termos abaixo descritos.

1

**5.1.1.** A Companhia fica autorizada, por intermédio de qualquer de seus diretores ou procuradores com poderes para tanto nos termos de seu Estatuto Social e/ou documentos de representação, com plenos poderes de subdelegação, em nome e por conta da Companhia (cada qual, uma "Pessoa Autorizada"), a praticar todos os atos necessários ou convenientes para que a Companhia celebre, execute, entregue, certifique, protocole e/ou registre o Acordo de Apoio substancialmente na forma apresentada à acionista previamente à esta assembleia, bem como quaisquer outros documentos, contratos, instrumentos e certidões exigidos pelo Acordo de Apoio.

**5.1.2.** A Companhia fica autorizada, por intermédio de qualquer Pessoa Autorizada, a praticar todos os atos e firmar, celebrar, executar, entregar, emitir ou protocolar, junto a quaisquer pessoas, inclusive autoridades governamentais, todos os contratos, documentos, instrumentos, certidões, consentimentos ou renúncias, e respectivos aditivos, bem como a efetuar ou causar a efetivação de todos os pagamentos necessários ou convenientes para a execução do Acordo de Apoio e das operações de reestruturação previstas nele e em seus anexos, conforme o caso ("Operações de Reestruturação"), servindo a prática de tais atos como prova conclusiva da referida autorização.

**5.1.3.** A Companhia fica autorizada, por intermédio de qualquer Pessoa Autorizada, a celebrar quaisquer *(a)* contratos pelos quais uma afiliada da Companhia forneça recursos para o pagamento de honorários profissionais e outros custos associados ao Acordo de Apoio e às Operações de Reestruturação, e/ou *(b)* contratos com quaisquer terceiros, ou quaisquer operações, para a prestação de serviços ou contratação de seguros relacionados ao Acordo de Apoio e às Operações de Reestruturação ("Documentos Acessórios"), bem como a praticar todos os atos e efetuar todos os pagamentos que considere necessários ou convenientes para dar cumprimento ao ora deliberado.

**5.1.4.** Ficam ratificados e aprovados, em todos os seus termos, todos os atos anteriormente praticados pela Companhia ou por qualquer Pessoa Autorizada em conexão com o Acordo de Apoio ou as Operações de Reestruturação, incluindo, sem limitação, a assinatura de quaisquer contratos, deliberações, cartas, notificações, certidões, recibos, autorizações, instruções, liberações, renúncias, procurações e demais documentos, bem como o pagamento de quaisquer honorários e despesas correlatos.

**5.2.** Aprovar a nomeação do Sr. Thiago da Costa Silva, Diretor Financeiro da Companhia, como Representante Estrangeiro nos termos da seção 101(24) do US Bankruptcy Code, com poderes para representar a Companhia no âmbito dos Chapter 15 Proceedings junto ao Tribunal Norte-Americano, ficando o Representante Estrangeiro autorizado a praticar todos os atos necessários, em nome e por conta da Companhia, para a obtenção das medidas requeridas nos Chapter 15 Proceedings, bem como quaisquer outras medidas correlatas consideradas prudentes e em conformidade com os termos do Acordo de Apoio, observados, ainda, os termos abaixo descritos.

**5.2.1.** O Representante Estrangeiro fica autorizado e constituído de poderes para executar e protocolar, em nome e por conta da Companhia, todas as petições, cronogramas, declarações, moções, listas, requerimentos, peças e demais documentos ("Petições do Chapter 15 Proceedings") no âmbito dos Chapter 15 Proceedings perante o Tribunal Norte-Americano, incluindo a realização de eventuais alterações e acréscimos que o Representante Estrangeiro venha, a seu exclusivo critério, a

2

considerar necessários ou convenientes, ficando reconhecido que a execução e entrega das Petições do Chapter 15 Proceedings pelo Representante Estrangeiro constituirá prova conclusiva de sua aprovação.

**5.2.2.** O Representante Estrangeiro fica autorizado e constituído de poderes, com plenos poderes de subdelegação, em nome e por conta da Companhia, a praticar e executar todos os atos e providências que considere necessários, convenientes ou desejáveis em conexão com os Chapter 15 Proceedings ou com as Petições do Chapter 15 Proceedings, em conformidade com o Acordo de Apoio, incluindo, sem limitação: *(a)* contratar e manter Kurtzman Carson Consultants, LLC d/b/a Verita Global ("Verita") como agente de informações no âmbito dos Chapter 15 Proceedings; *(b)* celebrar os respectivos contratos de prestação de serviços e pagar os adiantamentos pertinentes à contratação da Verita; e *(c)* negociar, celebrar, entregar, cumprir e protocolar quaisquer documentos, cronogramas, declarações, listas, acordos, certidões, aditivos e/ou instrumentos adicionais em conexão com ou para promover os Chapter 15 Proceedings, com vistas à sua condução bem-sucedida.

**5.2.3.** O Representante Estrangeiro fica autorizado e constituído de poderes para executar e protocolar, em nome e por conta da Companhia, moção ou adesão (*joinder*) nos autos do Chapter 11 Proceedings, requerendo sua suspensão ou extinção, nos termos e em conformidade com o Acordo de Apoio.

**5.2.4.** Ficam ratificados e aprovados, em todos os seus termos, todos os atos anteriormente praticados pelo Representante Estrangeiro em conexão com os Chapter 15 Proceedings, incluindo, sem limitação, a assinatura de quaisquer contratos, deliberações, cartas, notificações, certidões, recibos, autorizações, instruções, liberações, renúncias, procurações e demais documentos, bem como o pagamento de quaisquer honorários e despesas correlatos.

**5.2.5.** Para fins de esclarecimento, fica consignado que a nomeação do Sr. Thiago da Costa Silva nos termos acima é realizada em substituição ao Sr. Ricardo Rosanova Garcia, inicialmente nomeado como representante estrangeiro nos autos do processo de recuperação judicial do Grupo Ambipar, em curso perante o Juízo da 3ª Vara Empresarial da Comarca da Capital do Estado do Rio de Janeiro sob o nº 3014764-58.2025.8.19.0001, tendo em vista que o Sr. Ricardo Rosanova Garcia deixou de exercer cargo de diretor estatutário de quaisquer das entidades do Grupo Ambipar.

**6.**     **ENCERRAMENTO:** Nada mais havendo a tratar, o Presidente declarou a assembleia encerrada e suspendeu os trabalhos para a lavratura da ata na forma de sumário dos fatos ocorridos, nos termos do artigo 130, §1°, da Lei das S.A. Ato contínuo, a ata foi lida e achada conforme por todos os presentes.

São Paulo, 23 de junho de 2026.

*[assinaturas na próxima página]*

3

*Página de assinaturas da Ata de Assembleia Geral Extraordinária da Emergência Participações S.A. – Em Recuperação Judicial, realizada em 23 de junho de 2026.*

**Mesa**:

Assinado por:

*Thiago da Costa Silva*

D2F918DA80A94FD...

Thiago da Costa Silva

Presidente

Assinado por:

*Isabel Cristina Monteiro de Souza*

D28BA9359066414...

Isabel Cristina Monteiro de Souza

Secretária

**Acionista:**

Assinado por:

*Thiago da Costa Silva*

D2F918DA80A94FD...

Signed by:

*Ricardo Cassio Rodrigues Chagas*

CD66465087294C1...

**AMBIPAR EMERGENCY RESPONSE**

p. Thiago da Costa Silva/Ricardo Cassio

Rodrigues Chagas

4

**Docusign**

## Certificate Of Completion

Envelope Id: 76E8AC23-6DC1-8398-81A4-510486D12E55

Status: Completed

Subject: Complete with Docusign: AGE_EmergênciaParticipações_22.06.2026.pdf

Source Envelope:

| | | |
|---|---|---|
| Document Pages: 4 | Signatures: 4 | Envelope Originator: |
| Certificate Pages: 5 | Initials: 0 | Ana Paula Gomes |
| AutoNav: Enabled | | AVENIDA ANGELICA, 2346 - ANDAR 5 |
| EnvelopeId Stamping: Enabled | | CONJ51SALA4 - CONSOLACAO |
| Time Zone: (UTC-03:00) Brasilia | | SAO PAULO, SP  01228-200 |
| | | ana.gomes@ambipar.com |
| | | IP Address: 24.83.199.90 |

## Record Tracking

| | | |
|---|---|---|
| Status: Original | Holder: Ana Paula Gomes | Location: DocuSign |
| 23 June 2026 \| 15:43 | ana.gomes@ambipar.com | |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Isabel Cristina Monteiro de Souza<br>validacao.isabelsouza@ambipar.com<br>Diretora<br>Security Level: Email, Account Authentication (None) | Assinado por:<br>*Isabel Cristina Monteiro de Souza*<br>D28BA9359066414...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 177.69.194.209 | Sent: 23 June 2026 \| 15:47<br>Viewed: 23 June 2026 \| 15:50<br>Signed: 23 June 2026 \| 15:51 |
| **Electronic Record and Signature Disclosure:**<br> Accepted: 23 June 2026 \| 15:50<br> ID: 0fbe38d4-aa59-48c4-abc6-d509ea00a614 | | |
| Ricardo Cassio Rodrigues Chagas<br>ricardo.chagas@ambipar.com<br>Security Level: Email, Account Authentication (None) | Signed by:<br>*Ricardo Cassio Rodrigues Chagas*<br>CD66465087294C1...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 166.198.157.40<br>Signed using mobile | Sent: 23 June 2026 \| 15:47<br>Viewed: 23 June 2026 \| 16:15<br>Signed: 23 June 2026 \| 16:17 |
| **Electronic Record and Signature Disclosure:**<br> Accepted: 23 June 2026 \| 16:15<br> ID: 486dbcf3-319e-4292-859d-4aec1c8611a5 | | |
| Thiago da Costa Silva<br>validacao.thiagosilva@ambipar.com<br>Director<br>AMBIPAR RESPONSE S.A.<br>Security Level: Email, Account Authentication (None) | Assinado por:<br>*Thiago da Costa Silva*<br>D2F918DA80A94FD...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 177.69.194.209 | Sent: 23 June 2026 \| 15:47<br>Viewed: 23 June 2026 \| 15:51<br>Signed: 23 June 2026 \| 15:51 |
| **Electronic Record and Signature Disclosure:**<br> Accepted: 23 June 2026 \| 15:51<br> ID: 5fd6f6dc-db47-4e7c-8452-c1e7deb2fbba | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 23 June 2026 \| 15:47 |
| Certified Delivered | Security Checked | 23 June 2026 \| 15:51 |
| Signing Complete | Security Checked | 23 June 2026 \| 15:51 |
| Completed | Security Checked | 23 June 2026 \| 16:17 |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

Case 26-90709   Document 7   Filed in TXSB on 07/09/26   Page 138 of 166

**ELECTRONIC RECORD AND SIGNATURE DISCLOSURE**

From time to time, EMERGENCIA PARTICIPACOES SA (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

**Getting paper copies**

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

**Withdrawing your consent**

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

**Consequences of changing your mind**

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

**All notices and disclosures will be sent to you electronically**

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact EMERGENCIA PARTICIPACOES SA:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: diana.alves@ambipar.com

**To advise EMERGENCIA PARTICIPACOES SA of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at diana.alves@ambipar.com and in the body of such request you must state: your previous email address, your new email address.  We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from EMERGENCIA PARTICIPACOES SA**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to diana.alves@ambipar.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with EMERGENCIA PARTICIPACOES SA**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to diana.alves@ambipar.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify EMERGENCIA PARTICIPACOES SA as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by EMERGENCIA PARTICIPACOES SA during the course of your relationship with EMERGENCIA PARTICIPACOES SA.

## Exhibit B-7

**Certified Translation of Emergência Authorizing Resolutions**

ROBERTO VERAS BICA
Tradutor Público e Intérprete Comercial - Inglês
Sworn Translator
JUCERJA Nº 244
CPF/MF 634.302.748-34



p. 54

268.020(002) Livro 243 Fl. 54-68

**I, the undersigned Sworn Public Translator and Commercial Interpreter, with full faith and credit throughout the Federative Republic of Brazil, duly appointed and commissioned by the Board of Trade of the State of Rio de Janeiro (JUCERJA) and registered therewith under No 244, DO HEREBY CERTIFY AND ATTEST that a document set forth in the Portuguese language was presented to me for translation into English, which I have lawfully performed, by virtue of my official Capacity, as follows:** -------------------------------

---------------------------------------------------------------

Docusign Envelope ID: 76E8AC23-6DC1-8398-81A4-510486D12E55

**EMERGÊNCIA PARTICIPAÇÕES S.A. - UNDER COURT-SUPERVISED REORGANIZATION** CNPJ/MF No. 10.645.019/0001-49 -------------- NIRE 35.300.444.230 --------------------------------------- **MINUTES OF THE EXTRAORDINARY GENERAL MEETING HELD ON JUNE 23, 2026** ---------------------------------------------------

**1. DATE, TIME, AND LOCATION:** Held on June 23, 2026, at 7:00 p.m., at the headquarters of **EMERGÊNCIA PARTICIPAÇÕES S.A. - UNDER COURT-SUPERVISED REORGANIZATION** ("Company"), located in the City of São Paulo, State of São Paulo, at Avenida Angélica, No. 2,346, 5th floor, Suite 51, Room 4, Consolação, Postal Code [CEP] 01228-200, exclusively online. ----------------------------------------------------

**2. NOTICE OF MEETING AND ATTENDANCE:** The publication of notices of meeting is waived, pursuant to the provisions of Article 124, paragraph 4, of Law No. 6,404, of December 15, 1976, as amended ("S.A. Act"), as shareholders representing the entirety of the Company's capital stock were present at the meeting. -----------------------------

**3. CHAIR:** Chair of the Board - Mr. Thiago da Costa Silva; Secretary of the Chair - Ms. Isabel Cristina Monteiro de Souza. -------------------------------------------------------



ROBERTO VERAS BICA
**Tradutor Público e Intérprete Comercial - Inglês**
**Sworn Translator**
**JUCERJA Nº 244**
**CPF/MF 634.302.748-34**

p. 55

**4. <u>AGENDA</u>:** To resolve on: **(i)** the form and terms of the agreement to support the financial restructuring of Ambipar Participações e Empreendimentos S.A. - In connection with the court-supervised reorganization of the Company and its affiliates, including the Company (collectively referred to as "<u>Ambipar Group</u>"), to be entered into with certain creditors holding a significant portion of the outstanding aggregate principal amount of the *Green Bonds* issued by the Ambipar Group maturing in 2031 and 2033 ("<u>Supporting Creditors</u>"), entitled *Restructuring Support Agreement* ("<u>Support Agreement</u>"), as well as regarding the execution of the Support Agreement and its respective exhibits and the completion of the transactions set forth therein; and **(ii)** the appointment of Mr. Thiago da Costa Silva, the Company's Chief Financial Officer, as the Company's foreign representative ("<u>Foreign Representative</u>") in connection with the Ambipar Group's ongoing court-supervised reorganization ("<u>Court-supervised reorganization</u>"), pursuant to section 101(24) of the U.S. Bankruptcy Code, with authority to represent the Company in Chapter 15 proceedings before the United States Bankruptcy Court for the Southern District of Texas ("<u>U.S. Court</u>"). -------------------------------------------

**5. <u>RESOLUTIONS</u>:** After providing the necessary clarifications and reviewing the documents pertaining to the items on the agenda of this meeting, the following was resolved, <u>without any reservations or restrictions</u>: -------

**5.1.** To approve, in its entirety, *(a)* the form and terms of the Support Agreement, including all annexes and



ROBERTO VERAS BICA
**Tradutor Público e Intérprete Comercial - Inglês**
**Sworn Translator**
**JUCERJA Nº 244**
**CPF/MF 634.302.748-34**

p. 56

schedules related thereto; *(b)* the execution and performance of the Support Agreement and its annexes by the Company, and *(c)* the completion of the transactions set forth in the Support Agreement and its annexes, with any amendments and additions that any Authorized Person (as defined below) may, in its sole discretion, deem necessary or appropriate, it being acknowledged that the signing of the Support Agreement and its annexes shall constitute conclusive evidence of their approval, subject also to the terms described below. ------------------------

**5.1.1.** The Company is hereby authorized, through any of its officers or attorneys-in-fact with the necessary powers under its Articles and/or powers of attorney, with full authority to subdelegate, in the name and on behalf of the Company (each, an "Authorized Person"), to perform all acts necessary or convenient for the Company to enter into, execute, deliver, certify, file, and/or register the Support Agreement substantially in the form presented to the shareholder prior to this meeting, as well as any other documents, contracts, instruments, and certificates required by the Support Agreement. ------------------------

**5.1.2.** The Company is hereby authorized, through any Authorized Person, to perform all acts and to sign, enter into, execute, deliver, issue, or file with any persons, including government authorities, all contracts, documents, instruments, certificates, consents, or waivers, and their respective amendments, as well as to make or cause to be made all payments necessary or convenient for the performance of the Support Agreement



ROBERTO VERAS BICA
Tradutor Público e Intérprete Comercial - Inglês
Sworn Translator
JUCERJA Nº 244
CPF/MF 634.302.748-34

p. 57

and the restructuring transactions set forth therein and in its annexes, as applicable ("Restructuring Transactions"), with the performance of such acts serving as conclusive evidence of such authorization. -------------

**5.1.3.** The Company is authorized, through any Authorized Person, to enter into any *(a)* agreements under which an affiliate of the Company provides funds for the payment of professional fees and other costs associated with the Support Agreement and the Restructuring Transactions, and/or *(b)* contracts with any third parties, or any transactions, for the provision of services or the purchase of insurance related to the Support Agreement and the Restructuring Transactions ("Ancillary Documents"), as well as to take all actions and make all payments it deems necessary or appropriate to comply with the resolutions adopted herein. -------------------------------------------

**5.1.4.** All acts previously performed by the Company or by any Authorized Person in connection with the Support Agreement or the Restructuring Transactions are hereby ratified and approved in their entirety, including, without limitation, the signing of any contracts, resolutions, letters, notices, certificates, receipts, authorizations, instructions, releases, waivers, powers of attorney, and other documents, as well as the payment of any related fees and expenses. ---------------------------

**5.2.** To approve the appointment of Mr. Thiago da Costa Silva, the Company's Chief Financial Officer, as Foreign Representative pursuant to Section 101(24) of the U.S. Bankruptcy Code, with authority to represent the Company



ROBERTO VERAS BICA
Tradutor Público e Intérprete Comercial - Inglês
Sworn Translator
JUCERJA Nº 244
CPF/MF 634.302.748-34

p. 58

in the Chapter 15 Proceedings before the U.S. Court, the Foreign Representative being authorized to take all necessary actions, in the name and on behalf of the Company, to obtain the relief sought in the Chapter 15 Proceedings, as well as any other related relief deemed prudent and in accordance with the terms of the Support Agreement, subject also to the terms described below. -----

**5.2.1.** The Foreign Representative is hereby authorized and empowered to file and serve, in the name and on behalf of the Company, all petitions, schedules, statements, motions, lists, requests, pleadings, and other documents ("Petitions in Chapter 15 Proceedings") within the scope of the Chapter 15 Proceedings before the U.S. Court, including making any amendments and additions that the Foreign Representative may, in its sole discretion, deem necessary or appropriate, it being acknowledged that the filing and submission of the Chapter 15 Proceedings Petitions by the Foreign Representative shall constitute conclusive evidence of their approval. --------------------

**5.2.2.** The Foreign Representative is hereby authorized and empowered, with full authority to subdelegate, in the name and on behalf of the Company, to take and carry out all acts and measures that it deems necessary, appropriate, or desirable in connection with the Chapter 15 Proceedings or the Petitions in the Chapter 15 Proceedings, in accordance with the Support Agreement, including, without limitation: *(a)* engage and retain Kurtzman Carson Consultants, LLC d/b/a Verita Global ("Verita") as information agent in connection with the Chapter 15 Proceedings; *(b)* enter into



ROBERTO VERAS BICA
Tradutor Público e Intérprete Comercial - Inglês
Sworn Translator
JUCERJA Nº 244
CPF/MF 634.302.748-34

p. 59

the respective service agreements and pay the relevant advance payments for the engagement of Verita; and *(c)* to negotiate, execute, deliver, perform, and file any documents, schedules, statements, lists, agreements, certificates, amendments, and/or additional instruments in connection with or to further the Chapter 15 Proceedings, with a view to their successful conduct. ------------------

**5.2.3.** The Foreign Representative is hereby authorized and empowered to file, on behalf of and for the account of the Company, a motion or joinder in the Chapter 11 Proceedings, requesting their suspension or termination, under the terms and in accordance with the Support Agreement. -------------------------------------------------

**5.2.4.** The following are hereby ratified and approved in their entirety: all acts previously performed by the Foreign Representative in connection with the Chapter 15 Proceedings, including, without limitation, the signing of any contracts, resolutions, letters, notices, certificates, receipts, authorizations, instructions, releases, waivers, powers of attorney, and other documents, as well as the payment of any related fees and expenses. -------------------------------------------------

**5.2.5.** For the sake of clarity, it is hereby noted that Mr. Thiago da Costa Silva, as stated above, is appointed to replace Mr. Ricardo Rosanova Garcia, initially appointed as foreign representative in the Ambipar Group's court-supervised reorganization proceedings, currently pending before the 3rd Commercial Court of the Capital District of the State of Rio de Janeiro under case no.



ROBERTO VERAS BICA
Tradutor Público e Intérprete Comercial - Inglês
Sworn Translator
JUCERJA Nº 244
CPF/MF 634.302.748-34

p. 60

3014764-58.2025.8.19.0001, given that Mr. Ricardo Rosanova Garcia is no longer serving as a statutory director of any of the Ambipar Group's entities. -------------------------

**6. ADJOURNMENT:** With no further business to discuss, the Chairman declared the meeting adjourned and suspended the proceedings to allow for the preparation of the minutes in the form of a summary of the events that took place, pursuant to Article 130, paragraph 1, of the Brazilian Corporation Law. Immediately afterward, the minutes were read and approved by all those present. -------------------

*São Paulo, June 23, 2026.* --------------------------------

*[signatures on the next page]* ----------------------------

*Signature Page for the Minutes of the Extraordinary General Meeting of Emergência Participações S.A. – Under court-supervised reorganization, which took place on June 23, 2026.* ----------------------------------------------

**Chair:** --------------------------------------------------

*(Digital Signature Information)* --------------------------

Thiago da Costa Silva -------------------------------------

President --------------------------------------------------

*(Digital Signature Information)* --------------------------

Isabel Cristina Monteiro de Souza, Secretary --------------

**Shareholder:** --------------------------------------------

*(Digital Signature Information)* --------------------------

**AMBIPAR EMERGENCY RESPONSE** ---------------------------------

by Fr. Thiago da Costa Silva and Ricardo Cassio Rodrigues Chagas ---------------------------------------------------

------------------------------------------------------------

*(Logo)* ---------------------------------------------------



**ROBERTO VERAS BICA**
**Tradutor Público e Intérprete Comercial - Inglês**
**Sworn Translator**
**JUCERJA Nº 244**
**CPF/MF 634.302.748-34**

p. 61

```
Certificate Of Completion -------------------------------
Envelope Id: 76E8AC23-6DC1-8398-81A4-510486D12E55 ---------
Subject:          Complete         with          Docusign:
AGE_EmergênciaParticipações_22.06.2026.pdf ----------------
Source Envelope: (Blank) ------------------------------------
Document Pages: 4 -------------------------------------------
Certificate Pages: 5 ----------------------------------------
AutoNav: Enabled --------------------------------------------
EnvelopeId Stamping: Enabled --------------------------------
Time Zone: (UTC-03:00) Brasilia -----------------------------
Signatures: 4 -----------------------------------------------
Initials: 0 -------------------------------------------------
Status: Completed -------------------------------------------
Envelope Originator: Ana Paula Gomes ------------------------
AVENIDA ANGÉLICA, 2346 - ANDAR 5 CONJ51SALA4 - CONSOLAÇÃO
SÃO PAULO, SP 01228-200 ana.gomes@ambipar.com -------------
IP Address: 24.83.199.90 ------------------------------------
```

**Record Tracking** ------------------------------------------
```
Status: Original --------------------------------------------
23 June 2026 | 15:43 ----------------------------------------
Holder: Ana Paula Gomes -------------------------------------
ana.gomes@ambipar.com ---------------------------------------
Location: DocuSign ------------------------------------------
     -------------------------------------------------------
```



| Signer Events | Signature | Timestamp |
|---|---|---|
| Isabel Cristina Monteiro de Souza | | Sent: 23 June 2026 \| 15:47 |
| validacao.isabelsouza@ambipar.com | *(Digital signature information)* | Viewed: 23 June 2026 \| 15:50 |
| Diretora | | Signed: 23 June 2026 \| 15:51 |
| Security Level: Email, Account Authentication (None) | Signature Adoption: Pre-selected Style | --- |
| | Using IP Address: 177.69.194.209 | |
| **Electronic Record and Signature** | --- | --- |

ROBERTO VERAS BICA
**Tradutor Público e Intérprete Comercial - Inglês**
**Sworn Translator**
**JUCERJA Nº 244**
**CPF/MF 634.302.748-34**

p. 62

| | | |
|---|---|---|
| **Disclosure:**<br>Accepted: 23 June 2026 \| 15:50<br>ID: 0fbe38d4-aa59-48c4-abc6-d509ea00a614 | | |
| Ricardo Cassio Rodrigues Chagas | *(Digital signature information)* | Sent: 23 June 2026 \| 15:47 |
| ricardo.chagas@ambipar.com | | Viewed: 23 June 2026 \| 16:15 |
| Security Level: Email, Account Authentication (None) | | Signed: 23 June 2026 \| 16:17 |
| --- | Signature Adoption: Pre-selected Style | --- |
| | Using IP Address: 166.198.157.40 | |
| | Signed using mobile | |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 23 June 2026 \| 16:15<br>ID: 486dbcf3-319e-4292-859d-4aec1c8611a5 | --- | --- |
| Thiago da Costa Silva | *(Digital signature information)* | Sent: 23 June 2026 \| 15:47 |
| validacao.thiagosilva@ambipar.com | | Viewed: 23 June 2026 \| 15:51 |
| Director | | Signed: 23 June 2026 \| 15:51 |
| AMBIPAR RESPONSE S.A. | | --- |
| Security Level: Email, Account Authentication (None) | Signature Adoption: Pre-selected Style | --- |
| | Using IP Address: 177.69.194.209 | |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 23 June 2026 \| 15:51<br>ID: 5fd6f6dc-db47-4e7c-8452-c1e7deb2fbba | --- | --- |

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – –

| In Person Signer Events | Signature | Timestamp |
|---|---|---|
| **Editor Delivery Events** | **Status** | **Timestamp** |
| **Agent Delivery Events** | **Status** | **Timestamp** |
| **Intermediary Delivery Events** | **Status** | **Timestamp** |
| **Certified Delivery Events** | **Status** | **Timestamp** |
| **Carbon Copy Events** | **Status** | **Timestamp** |
| **Witness Events** | **Signature** | **Timestamp** |
| **Notary Events** | **Signature** | **Timestamp** |
| **Envelope Summary Events** | **Status** | **Timestamps** |
| Envelope Sent | Hashed/Encrypted | 23 June 2026 \| 15:47 |
| Certified Delivered | Security Checked | 23 June 2026 \| 15:51 |
| Signing Complete | Security Checked | 23 June 2026 \| 15:51 |
| Completed | Security Checked | 23 June 2026 \| 16:17 |
| **Payment Events** | **Status** | **Timestamps** |
| **Electronic Record and Signature Disclosure** | | |

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – –



**ROBERTO VERAS BICA**
**Tradutor Público e Intérprete Comercial - Inglês**
**Sworn Translator**
**JUCERJA Nº 244**
**CPF/MF 634.302.748-34**

p. 63

Electronic Record and Signature Disclosure created on: 12 June 2024 | 18:15 --------------------------------------- Parties agreed to: Isabel Cristina Monteiro de Souza, Ricardo Cassio Rodrigues Chagas, Thiago da Costa Silva ---- **ELECTRONIC RECORD AND SIGNATURE DISCLOSURE** ---------------- From time to time, EMERGENCIA PARTICIPACOES SA (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system. ----------- **Getting paper copies** ------------------------------------- At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such



ROBERTO VERAS BICA
**Tradutor Público e Intérprete Comercial - Inglês**
**Sworn Translator**
**JUCERJA Nº 244**
**CPF/MF 634.302.748-34**

p. 64

paper copies from us by following the procedure described below. ------------------------------------------------------

**Withdrawing your consent** ---------------------------------
If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below. --------------------------------------------

**Consequences of changing your mind** ------------------------
If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us. ----------------------------------------

**All notices and disclosures will be sent to you electronically** ---------------------------------------------
Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations,



ROBERTO VERAS BICA
**Tradutor Público e Intérprete Comercial - Inglês**
**Sworn Translator**
**JUCERJA Nº 244**
**CPF/MF 634.302.748-34**

p. 65

acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us. ----------------------------------

**How to contact EMERGENCIA PARTICIPACOES SA:** --------------- You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows: ------------------------------- To contact us by email send messages to: diana.alves@ambipar.com ----------------------------------

**To advise EMERGENCIA PARTICIPACOES SA of your new email address** ---------------------------------------------------- To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at diana.alves@ambipar.com and in the body of such request you must state: your previous email address, your new



**ROBERTO VERAS BICA**
**Tradutor Público e Intérprete Comercial - Inglês**
**Sworn Translator**
**JUCERJA Nº 244**
**CPF/MF 634.302.748-34**

p. 66

email address. We do not require any other information from you to change your email address. -------------------- If you created a DocuSign account, you may update it with your new email address through your account preferences. --

**To request paper copies from EMERGENCIA PARTICIPACOES SA** -- To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to diana.alves@ambipar.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any. -------------------------------

**To withdraw your consent with EMERGENCIA PARTICIPACOES SA** - To inform us that you no longer wish to receive future notices and disclosures in electronic format you may: ----- i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may; - ii. send us an email to diana.alves@ambipar.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process.. ------------------------------------------------

**Required hardware and software** --------------------------- The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here:



**ROBERTO VERAS BICA**
**Tradutor Público e Intérprete Comercial - Inglês**
**Sworn Translator**
**JUCERJA Nº 244**
**CPF/MF 634.302.748-34**

p. 67

https://support.docusign.com/guides/signer-guide-signing-system-requirements. --------------------------------------

**Acknowledging your access and consent to receive and sign documents electronically** --------------------------------

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system. -----------------------------------------------------

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that: -----

• You can access and read this Electronic Record and Signature Disclosure; and --------------------------------

• You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and ------------------

• Until or unless you notify EMERGENCIA PARTICIPACOES SA as described above, you consent to receive exclusively through electronic means all notices, disclosures,



**ROBERTO VERAS BICA**
**Tradutor Público e Intérprete Comercial - Inglês**
**Sworn Translator**
**JUCERJA Nº 244**
**CPF/MF 634.302.748-34**

p. 68

authorizations, acknowledgements, and other documents that are required to be provided or made available to you by EMERGENCIA PARTICIPACOES SA during the course of your relationship with EMERGENCIA PARTICIPACOES SA. ------------

----------------------------------------------------------
**THIS WAS THE FULL TEXT of said document, the true translation whereof I ATTEST.**-------------------------------------------------------------------------------------
**WITNESS MY HAND AND SEAL, June 24, 2026.** -------------------------------------------



**Exhibit B-8**

**Luxco Authorizing Resolutions**

**Ambipar Lux S.à r.l.**
*Société à responsabilité limitée*
Registered Office: 17, boulevard F.W. Raiffeisen, L-2411 Luxembourg
Grand Duchy of Luxembourg
R.C.S. Luxembourg: B 279448
(the "**Company**")

**MINUTES OF THE MEETING OF THE BOARD OF MANAGERS OF THE COMPANY
HELD ON 16 JUNE 2026 AT 14:30 PM CET IN LUXEMBOURG
AT THE REGISTERED OFFICE OF THE COMPANY**

**Present:**

Thiago da Costa Silva, Class A Manager, attending by conference call;
Alessandra Bessa Alves De Melo, Class A Manager, attending by conference call;
Eric Lie, Class B Manager, attending in person; and
Maxime Roberti, Class B Manager, attending in person.

each a manager of the Company ("**Manager**") and together being all members of the board of managers (the "**Board**") of the Company.

The meeting was opened at 14:30 pm  (Luxembourg time) by Eric Lie, who is appointed as chair *pro tempore* of the meeting of the Board ("**Chair**"). The Chair designates Maxime Roberti as secretary (the "**Secretary**"). All members present confirm that they are able to hear each other and to communicate.

The Chairman noted and the Board confirmed that all Managers were present.

Each Manager confirms that he/she has been duly informed of the meeting, has full knowledge of the agenda of the meeting and has waived any convening formalities. The present meeting is thus duly constituted, and the Board could validly deliberate and decide on all items brought before it.

The Board noted that the meeting is being held in English with a simultaneous Portuguese translation.

The Board noted and approved the following agenda of the meeting:

*AGENDA*

*(1)        Approval of the Restructuring Support Agreement and related restructuring matters; and*
*(2)        Approval of the commencement of Chapter 15 proceedings and appointment of a foreign representative.*

Each of the Managers **confirmed** that (i) he/she has no opposite interest in the matters referred to herein, (ii) he/she is of the opinion that the matters referred to herein are in compliance with the Articles and the applicable legal provisions, and would not result in any breach of any restriction imposed by law, the Articles or any agreement to which the Company is party or by which the Company is bound, and (iii) he/she is of the opinion that the Restructuring Transactions (as defined below) do not involve any actual or potential conflict of interest between the Company and a Manager.

2

The Board **noted** that, on 20 October 2025, the Company and certain of its affiliates filed a petition for the commencement of *recuperação judicial* proceedings (the "**RJ Proceeding**"), which are currently being jointly administered before the judicial authorities of the Third Business Court of Rio de Janeiro (the "**Brazilian Court**"), pursuant to Brazilian Federal Law No. 11,101 of 9 February 2005 (as amended, supplemented, or otherwise modified from time to time, including any successor statute thereto and all rules and regulations promulgated thereunder, "**Brazilian Bankruptcy Law**").

The Board **noted** that, on 30 October 2025, the Brazilian Court entered an order granting the processing of the RJ Proceeding, granting a stay against all actions by creditors to collect the obligations from the Company and its affiliates and ordering the publication of a public notice informing creditors of the filing of the RJ Proceeding.

The Board **noted** that, on 20 October 2025, the Company filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**US Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Texas (the "**US Bankruptcy Court**") commencing the chapter 11 case captioned *In re Ambipar Emergency Response*, Case No. 25-90524 (ARP) (the "**Chapter 11 Case**"), which is currently pending before the US Bankruptcy Court.

The Board **noted** that it has carefully considered the available restructuring options for the Company and has determined, in its business judgment and having had regard to the interests of the Company's creditors in circumstances where the Company is insolvent or of doubtful solvency, that it is in the best interests of the Company and its creditors as a whole to suspend the Chapter 11 Case in favor of commencing chapter 15 cases seeking recognition of the RJ Proceeding pursuant to chapter 15 of the US Bankruptcy Code (the "**Chapter 15 Cases**").

The Board **noted** that, based on its deliberations, it is advisable to enter into a restructuring support agreement, on or around the 17 June 2026, substantially in the form presented to the Board (together with all exhibits and schedules thereto, the "**Restructuring Support Agreement**"), by and among the Company, certain of its affiliates (collectively, the "**Company Parties**"), and the creditors party thereto, pursuant to which, among other things, the Company Parties agree to effectuate certain restructuring transactions on the terms and subject to the conditions set forth therein (the "**Restructuring Transactions**").

The Board further **noted** that it is advisable to commence, if and when needed, petitions for an ancillary or recognition proceeding pursuant to the Chapter 15 Cases in accordance with the Restructuring Support Agreement, as well as such other documents necessary to effectuate the Restructuring Transactions.

The Board **noted** that it has had the opportunity to review and has reviewed the form and terms of the Restructuring Support Agreement.

The Board **noted** that, pursuant to the decision of the Brazilian Court dated 30 October 2025, rendered in connection with the granting of the processing of the RJ Proceeding in Case No. 3014764-58.2025.8.19.0001 before the Third Business Court of the Capital District of Rio de Janeiro, the Brazilian Court appointed Mr. Ricardo Rosanova Garcia as the foreign representative of the Company and the other applicants in the RJ Proceeding, pursuant to Article 167-B, paragraph 1, item IV, of the Brazilian Bankruptcy Law, so that he may appear before any foreign authority and act in any foreign debt restructuring proceeding, regardless of jurisdiction, including judicial reorganization or similar insolvency proceedings, whether principal, non-

principal, or ancillary proceedings, as permitted by applicable law (the "**Foreign Representative**"). The Board further **noted** that the Company believes Mr. Thiago da Costa Silva should replace Mr. Ricardo Rosanova Garcia as the Foreign Representative, on the basis that, given his closer involvement in the restructuring negotiations, Mr. da Costa Silva is better positioned to serve in that role, and accordingly **resolved** to take all actions necessary or advisable to seek the appointment of Mr. Thiago da Costa Silva as the Foreign Representative in substitution of Mr. Ricardo Rosanova Garcia.

The Board **noted** that it deems it in the best interests of the Company and its creditors as a whole to (a) ratify and confirm the appointment of the Foreign Representative in respect of the RJ Proceeding, as that term is defined in section 101(24) of the US Bankruptcy Code, to represent the Company in the Chapter 15 Cases in support of recognition of the RJ Proceeding, and (b) authorize the Foreign Representative to take all necessary actions on behalf of the Company to obtain the relief sought in the Chapter 15 Cases and any further related relief deemed prudent and consistent with the terms of the Restructuring Support Agreement.

The Board **noted** that, in reaching the determinations set forth herein, each Manager has exercised his or her informed business judgment and has acted in good faith, with the diligence and care of a reasonably prudent manager, and in the best corporate interest (*intérêt social*) of the Company, having due regard to: (i) the financial position of the Company and the Ambipar Group, including its current state of insolvency or doubtful solvency; (ii) the interests of the Company's creditors as a whole, including the holders of the green notes issued by the Company; (iii) the terms and conditions of the Restructuring Support Agreement, including the obligations, milestones, and governance protections set forth therein; (iv) the available alternatives to the Restructuring Transactions, including the continuation of the Chapter 11 Case and liquidation scenarios; (v) the professional advice received from the Company's legal and financial advisors; and (vi) the potential consequences of failing to implement the Restructuring Transactions in a timely manner, including the risk of value destruction for stakeholders. The Board has further determined that the Restructuring Transactions, including the entry into the Restructuring Support Agreement, the commencement of the Chapter 15 Cases, and the ratification of the appointment of the Foreign Representative, are each necessary and appropriate to preserve and maximize value for the benefit of the Company and its stakeholders, and that no reasonably available alternative course of action would better serve the Company's interests.

The Board **noted** that, notwithstanding anything to the contrary in the Restructuring Support Agreement, the Board retains its fiduciary obligations under applicable law and may take (or refrain from taking) any action with respect to the Restructuring Transactions to the extent the Board determines, in good faith based on the advice of counsel, that taking such action, or refraining from taking such action, is reasonably required to comply with applicable law, including pursuant to its fiduciary duties, without incurring any liability to any other party to the Restructuring Support Agreement.

In consideration of the above, the Board **noted and concluded** that the matters referred to in the present minutes would materially benefit and are in the best corporate interest (*intérêt social*) of the Company and would be for the purpose of carrying on its business.

The Board therefore **resolved** as follows:

**FIRST RESOLUTION – RESTRUCTURING SUPPORT AGREEMENT**

The Board unanimously **resolved** that:

4

(a) the (i) form and terms of the Restructuring Support Agreement, including all schedules and exhibits thereto, (ii) execution, delivery, and performance thereof, and (iii) consummation of the transactions contemplated thereunder by the Company be, and hereby are, authorized and approved in all respects, with such changes therein and additions thereto as any Authorized Person (as defined below) may in his or her discretion deem necessary or appropriate, it being acknowledged that the execution of the Restructuring Support Agreement and such other documents, agreements, instruments, and certificates as may be required or contemplated by the Restructuring Support Agreement, as applicable, shall be conclusive evidence of the approval thereof;

(b) the Company, Thiago da Costa Silva and Alessandra Bessa Alves De Melo (each, an "**Authorized Person**"), shall be, and hereby is, authorized, directed, and empowered, with full power of delegation, on behalf of and in the name of the Company, to take all actions necessary or appropriate for the Company to enter into, execute, deliver, certify, file, and/or record, and perform the obligations arising under the Restructuring Support Agreement substantially in the form presented to the Board, together with such other documents, agreements, instruments, and certificates as may be required by the Restructuring Support Agreement;

(c) in connection with or to carry out the actions contemplated by the Restructuring Support Agreement, including the Restructuring Transactions, the Company (and each Authorized Person) be, and hereby is, authorized, empowered, and directed, with full power of delegation, in the name and on behalf of the Company, to do such further acts and things as any Authorized Person or such duly authorized other person shall deem necessary or appropriate, including to do and perform (or cause to be done and performed), in the name and on behalf of the Company, all such acts and to sign, make, execute, deliver, issue or file (or cause to be signed, made, executed, delivered, issued or filed) with any person including any governmental authority or agency, all such agreements, documents, instruments, certificates, consents or waivers and all amendments to any such agreements, documents, instruments, certificates, consents or waivers and to pay, or cause to be paid, all such payments, as any of them may deem necessary or advisable in order to carry out the intent of the Restructuring Support Agreement and the Restructuring Transactions, the authority for the doing of any such acts and things and the signing, making, execution, delivery, issue and filing of such of the foregoing to be conclusively evidenced thereby;

(d) in connection with the Restructuring Support Agreement and the Restructuring Transactions, the Company (and each Authorized Person) shall be, and hereby is, authorized to do all such acts and things (including, without limitation, opening all necessary bank accounts, the standard resolutions required concerning opening bank accounts with the relevant banks, being adopted as if set out in these resolutions in full, and any other person authorized by resolution of the directors, all acting singly (unless otherwise resolved) being appointed as authorized signatory with respect to any such accounts) and to agree all fees, as might in the sole opinion and absolute discretion of any Authorized Person be necessary or desirable for the purpose of giving effect to, consummating or completing or procuring the performance and completion of the foregoing resolutions;

(e) the Company (and each Authorized Person) shall be, and hereby is, authorized, in the name and on behalf of the Company, to enter into any (i) agreement pursuant to which an affiliate of the Company provides funding to pay professional fees and other costs associated with the Restructuring Support Agreement and the Restructuring Transactions and/or; (ii) any agreement with any person, or any transaction, for services or insurance in connection with the Restructuring Support Agreement and the Restructuring Transactions, including to do and perform (or cause to be done and performed), in the name and on behalf of the Company, all such acts and to sign, make, execute, deliver, issue or file (or cause to be signed, made, executed, delivered, issued or filed) with

6/17/26 11:49 AM

any person including any governmental authority or agency, all such agreements, documents, instruments, certificates, consents or waivers and all amendments to any such agreements, documents, instruments, certificates, consents or waivers ("**Ancillary Documents**") and to pay, or cause to be paid, all such payments, as any of them may deem necessary or advisable in order to carry out the foregoing, the authority for the doing of any such acts and things and the signing, making, execution, delivery, issue and filing of such of the foregoing to be conclusively evidenced thereby;

(f) the Ancillary Documents shall be in such form as the Company (and each Authorized Person) shall in its absolute discretion and sole opinion approve, the signature of such Authorized Person on any of the Ancillary Documents being due evidence for all purposes of such Authorized Person's approval of the terms thereof on behalf of the Company;

(g) the Ancillary Documents (where required to be executed by the Company) shall be executed by any Authorized Person;

(h) the Ancillary Documents shall be valid, conclusive, binding on, and enforceable against the Company when executed and delivered in the manner set out above;

(i) all prior actions taken by the Company or any Authorized Person in connection with the Restructuring Support Agreement or the Restructuring Transactions, including but not limited to, the signing of any agreements, resolutions, letters, notices, certificates, acknowledgements, receipts, authorizations, instructions, releases, waivers, proxies and other documents (whether of a like nature or not) and the payment of all and any related fees and expenses be confirmed, ratified and approved in all respects.

**SECOND RESOLUTION – CHAPTER 15 CASES AND FOREIGN REPRESENTATIVE**

The Board unanimously **resolved** that:

(j) Thiago da Costa Silva  shall replace Ricardo Rosanova Garcia as the Foreign Representative of the Company in respect the RJ Proceeding in connection with the Chapter 15 Cases;

(k) the Foreign Representative be, and hereby is, authorized, empowered, and directed to execute and file in the name and on behalf of the Company all petitions, schedules, statements, motions, lists, applications, pleadings, and other documents (the "**Chapter 15 Filings**") in connection with the Chapter 15 Cases in the US Bankruptcy Court (with such changes therein and additions thereto as the Foreign Representative may in his discretion deem necessary or appropriate, it being acknowledged that the execution and delivery of such Chapter 15 Filings by the Foreign Representative with any changes thereto shall be conclusive evidence of the approval thereof);

(l) the Foreign Representative be, and hereby is, authorized, empowered, and directed, with full power of delegation, in the name and on behalf of the Company, to take and perform any and all further acts and deeds that the Foreign Representative deems necessary, appropriate, or desirable in connection with the Chapter 15 Cases or the Chapter 15 Filings and consistent with the Restructuring Support Agreement, including, without limitation, to (i) employ and retain Kurtzman Carson Consultants, LLC dba Verita Global ("Verita") to act as information agent in connection with the Chapter 15 Cases, (ii) execute appropriate retention agreements and pay appropriate retainers to retain the services of Verita in connection with the Chapter 15 Cases, and (iii) negotiate, execute, deliver, perform, and file any and all additional documents, schedules, statements, lists,

6

papers, agreements, certificates, and/or instruments (or any amendments or modifications thereto) in connection with, or in furtherance of, the Chapter 15 Cases with a view to the successful prosecution of such Chapter 15 Cases (such acts to be conclusive evidence that the Foreign Representative deemed the same to meet such standard);

(m) the Foreign Representative be, and hereby is, authorized, empowered, and directed to execute and file in the name and on behalf of the Company, a motion or joinder in the Chapter 11 Case seeking the suspension or dismissal thereof pursuant to and in accordance with the terms of the Restructuring Support Agreement; and

(n) all prior actions taken by the Foreign Representative in connection with the Chapter 15 Cases, including but not limited to, the signing of any agreements, resolutions, letters, notices, certificates, acknowledgements, receipts, authorizations, instructions, releases, waivers, proxies and other documents (whether of a like nature or not) and the payment of all and any related fees and expenses be confirmed, ratified and approved in all respects.

There being no further business to be discussed, the meeting was closed, and these minutes are signed by the members of the Board of the Company.

- signature page follows -

7

**Signature page to the Minutes of the Meeting of the Board of Managers of the Company**

The present minutes have been signed by all the members of the Board of the Company on the same document or on different counterparts which, together, form the circular resolutions of the Board of the Company.

**Class A Manager**

DocuSigned by:

*Thiago da Costa Silva*

8EB23F04EEC949B...

Mr Thiago da Costa Silva

**Class A Manager**

Assinado por:

*Alessandra Bessa Alves de Melo*

DD13D3364E4E41C...

Ms Alessandra Bessa Alves De Melo

**Class B Manager**

DocuSigned by:

F80B6E80EAA64C8...

Mr Eric Lie

**Class B Manager**

Signed by:

5A740C7B11BF4F7...

Mr Maxime Roberti

6/17/26 11:49 AM



## Certificado de Conclusão

| | | |
|---|---|---|
| Identificação de envelope: E4753775-B757-8AFF-811A-D4CF9E55467A | | Status: Concluído |
| Assunto: Complete with Docusign: 2026.06.16 - Ambipar Lux - Board Resolutions Restructuring and Chapter ... | | |
| Client Reference Number: BoM Ambipar | | |
| Envelope fonte: | | |
| Documentar páginas: 7 | Assinaturas: 4 | Remetente do envelope: |
| Certificar páginas: 2 | Rubrica: 0 | Eric Lie |
| Assinatura guiada: Ativado | | 26 New Street |
| Selo com EnvelopeId (ID do envelope): Desativado | | St Helier, Channel Islands  JE2 3RA |
| Fuso horário: (UTC) Dublin, Edimburgo, Lisboa, Londres | | eric.lie@ocorian.com |
| | | Endereço IP: 57.140.20.29 |

## Rastreamento de registros

| | | |
|---|---|---|
| Status: Original | Portador: Eric Lie | Local: DocuSign |
|     17/06/2026 11:05:03 |     eric.lie@ocorian.com | |

| Eventos do signatário | Assinatura | Registro de hora e data |
|---|---|---|
| Alessandra Bessa Alves de Melo<br>alessandra.bessa@ambipar.com<br>Nível de segurança: E-mail, Autenticação da conta (Nenhuma) | Assinado por:<br>*Alessandra Bessa Alves de Melo*<br>DD13D3364E4E41C...<br><br>Adoção de assinatura: Estilo pré-selecionado<br>Usando endereço IP: 200.148.210.114 | Enviado: 17/06/2026 11:07:57<br>Reenviado: 18/06/2026 10:56:26<br>Visualizado: 23/06/2026 22:40:29<br>Assinado: 23/06/2026 22:40:51 |
| **Termos de Assinatura e Registro Eletrônico:**<br>   Não oferecido através da Docusign | | |
| Eric LIE<br>eric.lie@ocorian.com<br>Manager<br>Nível de segurança: E-mail, Autenticação da conta (Nenhuma) | DocuSigned by:<br>*[signature]*<br>F80B6E80EAA64C8...<br><br>Adoção de assinatura: Imagem de assinatura carregada<br>Usando endereço IP: 57.140.20.29 | Enviado: 17/06/2026 11:07:51<br>Visualizado: 17/06/2026 11:08:56<br>Assinado: 17/06/2026 11:09:02 |
| **Termos de Assinatura e Registro Eletrônico:**<br>   Não oferecido através da Docusign | | |
| Maxime Michel Roberti<br>maxime.roberti@ocorian.com<br>Manager<br>Ocorian Services (Luxembourg) S.À R.L.<br>Nível de segurança: E-mail, Autenticação da conta (Nenhuma) | Signed by:<br>*[signature]*<br>5A740C7B11BF4F7...<br><br>Adoção de assinatura: Imagem de assinatura carregada<br>Usando endereço IP: 57.140.48.42 | Enviado: 17/06/2026 11:07:54<br>Visualizado: 17/06/2026 11:12:00<br>Assinado: 17/06/2026 11:12:05 |
| **Termos de Assinatura e Registro Eletrônico:**<br>   Não oferecido através da Docusign | | |
| Thiago da Costa Silva<br>thiago.silva@ambipar.com<br>Diretor Financeiro<br>Ambipar Response<br>Nível de segurança: E-mail, Autenticação da conta (Nenhuma) | DocuSigned by:<br>*Thiago da Costa Silva*<br>8EB23F04EEC949B...<br><br>Adoção de assinatura: Estilo pré-selecionado<br>Usando endereço IP: 38.74.192.135 | Enviado: 17/06/2026 11:07:55<br>Reenviado: 18/06/2026 10:56:28<br>Visualizado: 23/06/2026 22:38:17<br>Assinado: 23/06/2026 22:38:29 |
| **Termos de Assinatura e Registro Eletrônico:**<br>   Não oferecido através da Docusign | | |

| Eventos do signatário presencial | Assinatura | Registro de hora e data |
|---|---|---|

| Eventos de entrega do editor | Status | Registro de hora e data |
|---|---|---|

| Evento de entrega do agente | Status | Registro de hora e data |
|---|---|---|

| Eventos de entrega intermediários | Status | Registro de hora e data |
|---|---|---|

| Eventos de entrega certificados | Status | Registro de hora e data |
|---|---|---|

| Eventos de cópia | Status | Registro de hora e data |
|---|---|---|

| Eventos com testemunhas | Assinatura | Registro de hora e data |
|---|---|---|

| Eventos do tabelião | Assinatura | Registro de hora e data |
|---|---|---|

| Eventos de resumo do envelope | Status | Carimbo de data/hora |
|---|---|---|
| Envelope enviado | Com hash/criptografado | 17/06/2026 11:07:58 |
| Entrega certificada | Segurança verificada | 23/06/2026 22:38:17 |
| Assinatura concluída | Segurança verificada | 23/06/2026 22:38:29 |
| Concluído | Segurança verificada | 23/06/2026 22:40:51 |

| Eventos de pagamento | Status | Carimbo de data/hora |
|---|---|---|