United States Bankruptcy Court
Southern District of Texas
**ENTERED**
September 28, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO: 25-90524** |
| **AMBIPAR EMERGENCY RESPONSE,** | § | |
| | § | |
| **Debtor.** | § | |
| | § | **CHAPTER 11** |

---

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO: 26-90709** |
| **AMBIPAR EMERGENCY RESPONSE,** | § | |
| **Debtors.** | § | **Jointly Administered CHAPTER 15** |

**<u>MEMORANDUM OPINION GRANTING DEBTORS' MOTION FOR (I) RECOGNITION OF FOREIGN MAIN PROCEEDING AND (II) MOTION TO SUSPEND THE CHAPTER 11 CASE</u>**

This matter comes before the Court on Debtors'[1] *Motion for Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative and (III) Related Relief under Chapter 15 of the Bankruptcy Code* (the "Recognition Motion") and *Debtor Parties' Motion to Suspend the Chapter 11 Case* (the "Suspension Motion").[2] For the

[1] The Debtors in these Chapter 15 and Chapter 11 cases are: Ambipar Emergency Response ("AER"), Ambipar Lux S.à.r.l. ("LuxCo"), Ambipar Participações e Empreendimentos S.A. ("TopCo"), Environmental ESG Participações S.A. ("Ambipar Environment"), and Emergência Participações S.A. ("Emergência") (collectively, the "Debtors").

[2] All references herein to Debtors' Chapter 11 cases refer to those filings in Case No. 25-90524 (the "Chapter 11 Case"). All references herein to Debtors' Chapter 15 cases refer to those filings in Case No. 26-90709 (the "Chapter 15 Cases").

reasons explained below, the Court grants Debtors' Recognition Motion and grants Debtor AER's Suspension Motion.

**BACKGROUND**

The Debtors, along with their affiliates are a Brazilian corporate group (the "Ambipar Group") involved in the recycling, waste management, and emergency response businesses in Brazil and around the world.[3] Founded in 1995, the Debtors' business began as a waste management company and expanded into logistics and transportation for companies throughout Brazil.[4] Later, in 2005, the Ambipar Group began operating waste management centers in Brazil, and in 2008, it began its emergency response business.[5]

Debtor Topco was formed as a holding company for the Ambipar Group's operating subsidiaries.[6] Continuous expansion led the Ambipar Group into undertaking a comprehensive corporate restructuring.[7] It divided its operating subsidiaries into two primary business segments: Environment and Response.[8] The "Environment" segment handles, recycles, transports and processes residues and recyclable materials throughout Latin America.[9] The "Response" segment operates emergency response centers to respond to disasters, such as wildfires and oil spills.[10]

Topco's capital stock is listed on the B3 stock exchange in São Paulo, Brazil under the ticker symbol "AMBP3".[11] AER was also

[3] ECF No. 157-32, JX079 at 3.
[4] ECF No. 157-32, JX079 at 3.
[5] ECF No. 157-32, JX079 at 3.
[6] ECF No. 157-32, JX079 at 4.
[7] ECF No. 157-32, JX079 at 4.
[8] ECF No. 157-32, JX079 at 4.
[9] ECF No. 157-32, JX079 at 4.
[10] ECF No. 157-32, JX079 at 4.
[11] ECF No. 157-32, JX079 at 4.

previously traded on the NYSE American under the ticker symbol “AMBI”.[12]

Today, the Ambipar Group operates in more than 600 locations in 41 countries and employs more than 16,000 people.[13]

***Corporate Structure, Board of Directors, and Offices***

The chart below shows, in relevant part, the Ambipar Group’s corporate structure as it relates to the Debtors and their key affiliates:




Topco is a Brazilian-domiciled public company and serves as the Ambipar Group’s holding company.[14] It has no employees or independent operations.[15] The Topco board of directors (the “Topco Board”) is made up of six members, which include the Ambipar Group’s founder and principal shareholder, Tercio Borlenghi Junior (“Mr. Borlenghi”), and one independent director.[16] The Topco Board makes

[12] ECF No. 157-32, JX079 at 4. Due to the filing of its Chapter 11 Case, the Debtors’ listing on the NYSE American has been suspended. Previously, AER was registered with the U.S. Securities and Exchange Commission as a foreign private issuer. *See* ECF No. 161 at 11.

[13] ECF No. 157-32, JX079 at 4.

[14] ECF No. 157-32, JX079 at 5.

[15] ECF No. 157-32, JX079 at 4.

[16] ECF No. 157-32, JX079 at 5.

strategic decisions for the Ambipar Group and manages the operations from its headquarters in São Paulo, Brazil.[17] The Topco Board's meetings take place in Brazil, and each member is a citizen or resident of Brazil.[18]

AER is an exempted company incorporated with limited liability under the laws of the Cayman Islands and is the parent holding company for the Response business segment.[19] It has a registered office in the Cayman Islands, and its headquarters is located in São Paulo, Brazil.[20] AER's board (the "Response Board") is made up of eight members, including Mr. Borlenghi and three independent directors.[21] Post-petition, the Response Board appointed David Mack ("Mr. Mack") as an independent director and formed a special committee (the "Special Committee") with a broad delegation of authority regarding conflict matters between AER, Topco, and its related parties.[22] The Response Board appointed Mr. Mack to the Special Committee, and he remains the Special Committee's sole member.[23] All members of the Response Board are based in Brazil, with the exception of Mr. Mack who is a U.S. based independent director.[24] Topco owns 70.8% of AER, and the remaining 29.2% is owned by Opportunity Agro Fundo de Investimento em Participações Multiestratégia Investimento no Exterior ("Opportunity") (owning 24%) and other minority shareholders (owning 5.2%).[25]

---

[17] ECF No. 157-32, JX079 at 5–6.

[18] ECF No. 157-32, JX079 at 5.

[19] ECF No. 157-32, JX079 at 6.

[20] The Response business segment has a U.S. headquarters in Houston, TX, where through its operating subsidiaries, it employs approximately 230 people there. ECF No. 157-32, JX079 at 4. The Response business, through its operating subsidiaries, employs more than 7,000 employees worldwide—the large majority of whom are employed in Brazil. *See* ECF No. 175-73, DX-051 at 226:10–227:10; ECF No. 156-15, DX-003 at 10 ("As of December 31, 2024, we employed 5,137 in Brazil, 860 in other parts of Latin America, 1,307 in North America and 131 in Europe").

[21] ECF No. 157-32, JX079 at 5.

[22] ECF No. 157-32, JX079 at 5.

[23] ECF No. 157-32, JX079 at 5.

[24] *See* ECF No. 175-73, DX-051 at 226:10–227:10.

[25] *See* ECF No. 157-32, JX079 at 6.

Emergência is incorporated under the laws of Brazil and is a wholly-owned operating subsidiary of AER.[26] Its registered offices are in São Paulo, Brazil.[27]

Ambipar Environment is incorporated under the laws of Brazil with its registered offices in São Paulo, Brazil.[28] It is the parent company for the Environment business segment, and its direct parent is Topco.[29]

Luxco is a special purpose finance company incorporated in Luxembourg.[30] It has a registered office in Luxembourg and is a wholly-owned subsidiary of Topco.[31] Luxco has no employees or operations and is wholly dependent on the financial performance of other members of the Ambipar Group to repay its debts.[32] Luxco has a board of directors comprised of four directors, two in Brazil and two in Luxembourg.[33] However, Topco directs all of Luxco's business from Brazil and the Topco board has the ultimate decision-making power for Luxco.[34]

The Ambipar Group's central operational management center is in São Paulo, Brazil, where its senior management and other core operational staff are located—including its legal and human resources teams, information technology department, and business and finance teams.[35] Although AER and Luxco have registered offices in the Cayman Islands and Luxembourg respectively, neither has activities, assets, operations, or employees at those registered offices.[36] The books

[26] ECF No. 157-32, JX079 at 6.
[27] ECF No. 157-32, JX079 at 6–7.
[28] ECF No. 157-32, JX079 at 7.
[29] ECF No. 157-32, JX079 at 7.
[30] ECF No. 157-32, JX079 at 7.
[31] ECF No. 157-32, JX079 at 7.
[32] ECF No. 157-32, JX079 at 7.
[33] ECF No. 157-32, JX079 at 7.
[34] ECF No. 157-32, JX079 at 7.
[35] ECF No. 157-32, JX079 at 7.
[36] ECF No. 157-32, JX079 at 6–7.

and records of each of the Debtors are maintained in Brazilian *reais* and are located on servers in the São Paulo office.[37]

The Response business segment maintains a global presence, providing environmental and industrial emergency services operating in approximately 450 service centers worldwide.[38] These service centers are supported by four regional operations centers located in Brazil, Chile, the United Kingdom, and the United States.[39] In 2025, the Response business segment accounted for approximately 43% of the Ambipar Group's global revenue and, as of the petition date, employed approximately 7,000 employees.[40]

The Environment business segment operates in four countries with a prominent presence in Brazil, Chile, and other parts of Latin America.[41] In 2025, the Environment business segment accounted for approximately 57% of the Ambipar Group's global revenue and, as of the petition date, employed approximately 9,000 employees.[42]

Overall, the Ambipar Group's principal economic activity has been and continues to be in Brazil, which accounts for over 65% of the global revenue.[43]

***Capital Structure***

Luxco is the issuer of two series of sustainability-linked bonds (the "Green Notes").[44] Topco, AER[45], and Ambipar Environment are guarantors of those notes (the "Green Notes Guarantors").[46] The 2031

[37] *See* ECF No. 157-32, JX079 at 7–8; ECF No. 175-73, DX-051 at 44:18–45:6.

[38] ECF No. 157-32, JX079 at 9.

[39] ECF No. 157-32, JX079 at 9.

[40] ECF No. 157-32, JX079 at 9–10.

[41] ECF No. 157-32, JX-079 at 10.

[42] ECF No. 157-32, JX-079 at 11.

[43] ECF No. 157-32, JX-079 at 8.

[44] ECF No. 157-32, JX-079 at 11. *See generally* ECF No. 175-85, DX-063 (2031 Green Notes offering memoranda); ECF No. 175-86, DX-064 (2033 Green Notes offering memoranda).

[45] AER is a limited guarantor of the Green Notes. Those limited guaranties are for $ 328.2 million. *See* ECF No. 157-32, JX-079 at 6.

[46] ECF No. 157-32, JX-079 at 11.

Green Notes are due February 6, 2031 and are in an aggregate principal amount of approximately $553 million with interest accruing at a rate of 9.875% per year.[47] The 2033 Green Notes are due February 5, 2033 and are in an aggregate principal amount of approximately $493 million with interest accruing at a rate of 10.875% per year.[48] The Green Notes are each issued pursuant to the terms and conditions of New York-law governed indentures among Luxco, the Green Notes Guarantors, and The Bank of New York Mellon, as the Indenture Trustee.[49]

Additionally, Emergência is a guarantor of an approximately $90 million term loan facility (the "Itaú Loan").[50] The Itaú Loan Agreement is dated August 26, 2022 and is by and among non-debtor Ambipar Holding USA, Inc., as borrower; Emergência, as guarantor; and Itaú BBA International PLC, as lender.[51] The loan accrues interest at a rate of 6.36% annually and, as of the petition date, had an outstanding aggregate principal amount of $90 million.[52] The Itaú Loan Agreement is governed by the laws of New York.[53]

---

[47] ECF No. 175-85, DX-063 (2031 Green Notes offering memoranda).

[48] ECF No. 175-86, DX-064 (2033 Green Notes offering memoranda).

[49] ECF No. 157-32, JX-079 at 11; ECF No. 175-85, DX-063 at 159, 193 (2031 Green Notes offering memoranda); ECF No. 175-86, DX-064 at 168, 203–04 (2033 Green Notes offering memoranda).

[50] ECF No. 157-32, JX079 at 12; ECF No. 157-14, JX-061 at D-13–D-14 (Itaú Term Sheet attached to RSA).

[51] ECF No. 157-32, JX-079 at 12; ECF No. 157-14, JX-061 at 7.

[52] ECF No. 157-32, JX-079 at 12; ECF No. 157-14, JX-061 at D-13–D-14 (Itaú Term Sheet attached to RSA).

[53] ECF No. 157-32, JX-079 at 12.

Certain Debtors have also issued series of corporate debentures[54], guarantee Currency Swaps[55], and have significant intercompany obligations outstanding among themselves.[56]

***Events Leading to the RJ Proceeding***

In the third quarter of 2025, certain of the Debtors' affiliates faced increased financial distress.[57] Deutsche Bank demanded additional collateral contributions under the Currency Swaps and certain other financial institutions began notifying some members of the Ambipar Group of alleged defaults under financing agreements.[58]

On September 24, 2025, Topco and certain affiliates filed a petition with the Third Business Court of Rio de Janeiro (the "Brazilian Court") for a preliminary injunction (a *Tutela Cautelar Em Caráter Antecedente*) to enjoin certain creditor actions for thirty days while restructuring negotiations commenced.[59] The preliminary injunction was granted by the Brazilian Court on September 25, 2025.[60]

Following entry of the preliminary injunction, some of the Debtors' stakeholders began to organize.[61] Certain holders of the Green Notes formed an ad hoc group (the "AHG of Green Noteholders").

[54] *See* ECF No. 157-32, JX-079 at 11–12. Topco is the issuer of approximately R$1.3 billion in aggregate principal amount of two series of debentures maturing in April 2029. Ambipar Environment is the issuer of a series of debentures maturing in September 2029 in an aggregate principal amount of approximately R$250 million. Emergência is the issuer of two series of debentures maturing in September 2028 and September 2029, respectively and are approximately R$450 million.

[55] *See* ECF No. 157-32, JX-079 at 12. Deutsche Bank S.A. - Banco Alemão ("Deutsche Bank") is a counterparty to certain of the Ambipar Group's currency swap contracts (the "Currency Swaps"). Following the resignation of the Ambipar Group's chief financial officer, Deutsche Bank demanded that the Ambipar Group post additional collateral under the Currency Swaps.

[56] ECF No. 157-32, JX-079 at 12.

[57] *See* ECF No. 157-32, JX-079 at 12.

[58] *See* ECF No. 157-32, JX-079 at 13.

[59] ECF No. 157-32, JX-079 at 13, 48.

[60] ECF No. 157-32, JX-079 at 13.

[61] ECF No. 157-32, JX-079 at 13–14.

Additionally, AER's minority shareholders, Opportunity and HPX Capital Partners LLC ("HPX") also organized.

***RJ Proceeding***

On October 20, 2025 (the "RJ Petition Date"), Topco and certain subsidiaries (the "RJ Debtors") filed a petition with the Brazilian Court commencing a *recuperacão judicial* proceeding (the "RJ Proceeding") pursuant to Brazilian Federal Law No. 11.101 of February 9, 2005 (the "Brazilian Bankruptcy Act").[62] On October 30, 2025, the Brazilian Court entered an order: (i) granting the processing of the RJ Proceeding; (ii) staying collection actions by creditors and ordering a publication notice informing creditors of the RJ Proceeding; and (iii) granting substantive consolidation (*consolidação substancial*) of certain entities within the Ambipar Group (the "Processing Order").[63]

On December 19, 2025, the Ambipar Group filed an initial plan of reorganization in the RJ Proceeding, as is required by the mandatory deadlines imposed under Brazilian law.[64] The Foreign Representative contends that the initial plan filed is materially different from the RJ Plan contemplated by the restructuring support agreement (the "RSA") further discussed *infra*.[65] The RJ Proceeding is supervised by two court-appointed judicial administrators who, *inter alia*, "monitors the RJ, provides reports on the debtor's activities, promptly provides all information requested by interested creditors, assists in the verification of claims, and complies with other mandates."[66]

***Chapter 11 Case and RSA***

Alongside the RJ Proceeding, on October 20, 2025, Debtor AER filed a voluntary petition for relief under chapter 11 of title 11 of the

---

[62] ECF No. 157-32, JX-079 at 14; ECF No. 2 at 1. *See generally* ECF No. 157-2, JX-049 (RJ Petition).

[63] *See generally* ECF No. 156-55, DX-033 (Processing Order).

[64] ECF No. 157-32, JX-079 at 15.

[65] ECF No. 157-32, JX-079 at 15.

[66] ECF No. 157-39, JX-086 at 7–8; ECF No. 157-32, JX-079 at 15.

United States Code (the "Bankruptcy Code").[67] The Debtor initially indicated that it might not pursue a restructuring in the Chapter 11 Case, but represented that it sought to "protect the direct and indirect assets of the Debtor [AER], ensure fair treatment among the Debtor's stakeholders, and provide a readily-accessible forum for global parties-in-interest to be heard in connection with the Debtor's restructuring."[68]

On February 12, 2026, Debtor AER filed a motion seeking to extend the exclusivity periods.[69] The AHG of Green Noteholders and Opportunity objected.[70] Thereafter, Debtor AER and the AHG of Green Noteholders negotiated and filed a *Plan Scheduling Stipulation* which resolved the Ad Hoc Group's objection and set forth an agreed schedule for AER to file and solicit a proposed Chapter 11 Plan.[71] Following a contested hearing, on May 18, 2026, the Court granted AER an extension of the exclusivity periods.[72]

The Ambipar Group continued negotiations with the AHG of Green Noteholders on a comprehensive restructuring.[73] Ultimately, the parties entered into an RSA on July 9, 2026.[74] The RSA provides the framework for the pursuit of an amended plan in the RJ Proceeding. As of July 9, 2026, the RSA was executed by holders of approximately 53.8% of the Green Notes.[75] The RSA contemplates *inter alia*: $50 million in Fixed Payments, secured by a fiduciary lien over company property; the issuance of $925 million in New Secured Notes, intended to repay the

[67] Case No. 25-90524, ECF No. 1.

[68] ECF No. 156-29, DX-007 at 4; Case No. 25-90524, ECF No. 141 at 2.

[69] Case No. 25-90524, ECF No. 141.

[70] Case No. 25-90524, ECF No. 153; Case No. 25-90524, ECF No. 155.

[71] Case No. 25-90524, ECF No. 175.

[72] Case No. 25-90524, ECF No. 201.

[73] ECF No. 157-32, JX-079 at 17. As alleged by the AHG of Green Noteholders, in March 2026, certain members of the Ad Hoc Group of Green Noteholders executed nondisclosure agreements with the Ambipar Group to pursue restructuring negotiations. *See* ECF No. 154 at 6.

[74] ECF No. 156-68, DX-046 (RSA).

[75] ECF No. 156-68, DX-046 at 2.

existing Green Notes; payment of the AHG of Green Noteholders advisor fees; and releases from the AHG of Green Noteholders.[76]

***Chapter 15 Cases***

On June 16, 2026, Luxco's governing body appointed Thiago da Costa Silva as the Foreign Representative in connection with the RJ Proceeding and authorized him to commence these Chapter 15 Cases.[77] On June 23, 2026, the governing bodies of Topco, AER, Ambipar Environment, and Emergência authorized the same.[78]

On July 9, 2026, the Debtors filed voluntary petitions for relief under chapter 15 of the Bankruptcy Code.[79] The Debtors seek recognition of the RJ Proceeding as a foreign main proceeding and seek recognition of Mr. da Costa Silva as the foreign representative.[80] Concurrently, Debtor AER filed a motion in the Chapter 11 Case seeking to suspend the Chapter 11 Case—in favor of the relief requested in the Chapter 15 Case—pursuant to § 305 of the Bankruptcy Code.[81]

On August 21, 2026, the Court held a hearing on the Recognition Motion and the Suspension Motion.[82] The AHG of Financial Creditors[83], Caixa Bank, Deutsche Bank, and Opportunity (together, the "Objecting

---

[76] ECF No. 156-68, DX-046 at 16, 30–32, Ex. D.

[77] *See* ECF No. 156-60, DX-038.

[78] *See* ECF No. 156-56, DX-034; ECF No. 156-57, DX-035; ECF No. 156-58, DX-036; ECF No. 156-59, DX-037.

[79] ECF No. 1; Case No. 26-90710, ECF No. 1; Case No. 26-90711, ECF No. 1; Case No. 90712, ECF No. 1; Case No. 26-90713, ECF No. 1.

[80] ECF No. 2.

[81] Case No. 25-90524, ECF No. 254.

[82] ECF No. 179.

[83] The Ad Hoc Group of Financial Creditors is composed of: (i) Banco ABC Brasil S.A., (ii) Banco do Brasil S.A., (iii) Fundo De Investimento Em Direitos Creditórios Pcg-Brasil Multicarteira, (iv) Banco Bradesco S/A, (v) Banco Santander S.A., and (vi) Banco Sumitomo Mitsui Brasileiro S/A (together the "AHG of Financial Creditors"). It is comprised of holders of financial indebtedness of the Debtors. The group contends that the Brazilian Court's Substantive Consolidation Order renders each member of the AHG of Financial Creditors a creditor of each and every debtor in the RJ Proceeding. See ECF No. 129 at 5.

Parties") objected to the relief requested. Following a contested hearing, the Court took the matters under advisement.[84]

## JURISDICTION & VENUE

28 U.S.C. § 1334(a) provides district courts with jurisdiction over this proceeding. 28 U.S.C. § 157(b)(1) states that "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title." This proceeding has been referred to this Court under General Order 2012-6 (May 24, 2012). This Court has jurisdiction in this proceeding as it is a core proceeding which the Court can consider under 28 U.S.C. § 157(b)(2)(P). The Court has constitutional authority to enter final orders and judgments. *Stern v. Marshall*, 564 U.S. 462, 486–87 (2011). Each of the Debtors has property in the U.S. satisfying 11 U.S.C. § 109(a).

Proper venue in chapter 15 cases is governed by 28 U.S.C. § 1410. Under § 1410 a chapter 15 case may be commenced in U.S. district court for the district:

> (1) in which the debtor has its principal place of business or principal assets in the United States;
>
> (2) if the debtor does not have a place of business or assets in the United States, in which there is pending against the debtor an action or proceeding in a Federal or State court; or
>
> (3) in a case other than those specified in paragraph (1) or (2), in which venue will be consistent with the interests of justice and the convenience of the parties, having regard to the relief sought by the foreign representative.

[84] ECF No. 179.

28 U.S.C. § 1410.

Bankruptcy Rule 1014(b) applies to petitions commencing cases or seeking recognition under chapter 15 which may be filed in different districts by a debtor and an affiliate.[85] FED. R. BANKR. P. 1014(b). It provides that the court in the district where a petition is first filed may determine the district in which cases should proceed "in the interest of justice or for the convenience of the parties." FED. R. BANKR. P. 1014(b)(2). That court may do so on timely motion and after a hearing on notice to "the United States trustee; entities entitled to notice under Rule 2002(a); and other entities as the court orders." FED. R. BANKR. P. 1014(b)(2).

It is undisputed that venue is proper in this Court as it relates to AER. Debtor AER satisfies 28 U.S.C. § 1410 because its Chapter 11 Case was pending in this Court before it filed the instant Chapter 15 Case. It is also undisputed that the remaining Debtors are affiliates of AER, within the meaning of the Bankruptcy Code. *See* 11 U.S.C. § 101(2)(A)–(B). Bankruptcy Rule 1015(b)(1)(D) provides that a court may order joint administration of the estates pending in the same court if the debtors are a debtor and an affiliate. FED. R. BANKR. P. 1015(b)(1)(D). The Debtor's Chapter 15 Cases are jointly administered with Debtor AER as the lead debtor.[86] The Court concludes that venue is proper for all jointly administered Chapter 15 Debtors under 28 U.S.C. § 1410.

A result otherwise, would render Bankruptcy Rules 1014(b) and 1015 meaningless. Rule 1015(b)(1)(D) authorizes the Court to jointly administer the cases of a Debtor *and an affiliate*. Further, had the Chapter 15 Debtors filed in different districts, as suggested by the AHG of Financial Creditors[87], Rule 1014(b) would authorize this Court to

---

[85] A debtor's affiliate can encompass both a vertical, parent-subsidiary relationship and a horizontal, sibling relationship by entities owned or controlled by a common parent holding at least 20% of their voting securities. *See* 11 U.S.C. §§ 101(2)(A)–(B).

[86] *See* ECF No. 11.

[87] The AHG of Financial Creditors argue that venue here is improper for Luxco, Ambipar Environment, and Emergência. They contend that venue is proper in New

decide which district the cases should be proceed "in the interest of justice or for the convenience of the parties." Proceeding in different districts would likely result in "fragmentation or duplication of administration, increase expense, or delay closing the estate." FED. R. BANKR. P. 1014 advisory committee's note to subdivision(a). These factors bear directly "on the propriety of the transfer [or dismissal] under the standards prescribed in subdivision (a) [Bankruptcy Rule 1014(a)]." FED. R. BANKR. P. 1014 advisory committee's note to subdivision(a).

## LEGAL STANDARD

Generally, "recognition" of a foreign proceeding under §§ 1515 and 1517(a) of the Bankruptcy Code is the first step in obtaining relief under chapter 15. *In re SPhinX, LTD.*, 351 B.R. 103, 115 (Bankr. S.D.N.Y. 2006). Pursuant to § 1509, "[a] foreign representative may commence a case under section 1504 [11 U.S.C. § 1504] by filing directly with the court a petition for recognition of a foreign proceeding under section 1515 [11 U.S.C. § 1515]." 11 U.S.C. § 1509.

A petition for recognition, properly filed under § 1515 and submitted with certain requisite evidentiary documents, is evaluated under § 1517. *In re Geden Holdings, Ltd.*, No. 25-90138, 2025 Bankr. LEXIS 2117, 2025 WL 2484883 at *2 (Bankr. S.D. Tex. Aug. 28, 2025); *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd. (In re Provisional Liquidation)*, 374 B.R. 122, 127 (Bankr. S.D.N.Y. 2007). Section 1517(a) provides:

---

York because those entities own U.S. property in that jurisdiction by way of New York law governed agreements. Citing to *In re Serviços de Petróleo Constellation S.A* the AHG argues that venue should be assessed separately for each Debtor. 600 B.R. 237 (Bankr. S.D.N.Y. 2019). However, the debtor-by-debtor analysis in the cited case analyzed each debtors' COMI, not venue. *See id.* at 280–294. Instead, in assessing venue, the court there stated generally that the location of assets in New York made venue proper there under § 1410(1). *See id.* at 269.

> **(a)** Subject to section 1506 [11 U.S.C. § 1506], after notice and a hearing, an order recognizing a foreign proceeding shall be entered if—
>
> > **(1)** such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502 [11 U.S.C. § 1502];
> >
> > **(2)** the foreign representative applying for recognition is a person or body; and
> >
> > **(3)** the petition meets the requirements of section 1515 [11 U.S.C. § 1515].

11 U.S.C. § 1517.

Recognition under § 1517 is subject to the public policy exception. *See* 11 U.S.C. § 1506. Section 1506 provides: "Nothing in this chapter prevents the court from refusing to take an action governed by this chapter if the action would be manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506. Section 1506 follows article 5 of the Model Law on Cross-Border Insolvency and "has been narrowly interpreted on a consistent basis in courts around the world. The word 'manifestly' in international usage restricts the public policy exception to the most fundamental policies of the United States." H.R. REP. NO. 109-31, pt. 1, at 115 (2005); *Lavie v. Ran (In re Ran)*, 607 F.3d 1017, 1021 (5th Cir. 2010).

The word "shall" in § 1517(a) makes recognition mandatory where all the requirements of § 1517(a) have been satisfied, and there is no public policy basis under § 1506 to deny it. *See* 11 U.S.C. §§ 1517(a), 1506; *In re Black Gold S.A.R.L.*, 635 B.R. 517, 526 (B.A.P. 9th Cir. 2022); *In re PT Bakrie Telecom Tbk*, 628 B.R. 859, 870 (Bankr. S.D.N.Y. 2021). However, it is no "rubber stamp exercise" and the foreign representative bears the burden to prove all the requirements of § 1517. *See In re Oi Brasil Holdings Coöperatief U.A.,* 578 B.R. 169,

194 (Bankr. S.D.N.Y. 2017) [hereinafter "*Oi Brasil*"]; *In re Ran*, 607 F.3d at 1021.

## DISCUSSION

The Debtors request entry of an Order (i) granting recognition of the RJ Proceeding as a "foreign main proceeding," or in the alternative, as a "foreign nonmain proceeding," and (ii) recognizing the Foreign Representative as the "foreign representative" with regard to the RJ Proceeding.[88] Further, Debtor AER requests entry of an order suspending the Chapter 11 Case in favor of the Chapter 15 Case.[89] For the forgoing reasons, the Court grants both the Recognition Motion and the Suspension Motion.

### I. All the requirements of § 1517 have been met.

Subject to any constraints § 1506 may impose, the Court shall grant recognition if all the requirements of § 1517 are met. The Court will discuss each requirement in turn.

#### A. The Brazilian RJ Proceeding is a Foreign Main Proceeding under §§ 1517(a)(1) and 1517(b).

Under § 1502(4), a "'foreign main proceeding' means a foreign proceeding pending in the country where the debtor has the center of its main interest," also referred to as the debtor's "COMI." 11 U.S.C. § 1502(4); *see also In re Ran*, 607 F.3d at 1022 (denying recognition of a proceeding as a foreign main proceeding because debtor's COMI was not in the jurisdiction where the foreign proceeding was taking place); *In re Mod. Land (China) Co., Ltd.*, 641 B.R. 768, 781 (Bankr. S.D.N.Y. 2022) (recognizing foreign main proceeding); *In re Ocean Rig UDW, Inc.*, 570 B.R. 687, 702 (Bankr. S.D.N.Y. 2017) (recognizing foreign main proceeding).

---

[88] ECF No. 2.
[89] Case No. 25-90524, ECF No. 254.

While COMI is not necessarily defined under the Bankruptcy Code, § 1516(c) establishes that the "debtor's registered office . . . is presumed to be the center of the debtor's main interests." 11 U.S.C. § 1516(c). Pursuant to the introductory clause of § 1516(c), however, a COMI presumption is a rebuttable presumption. 11 U.S.C. § 1516(c) (providing a COMI presumption "[i]n the absence of evidence to the contrary"); *In re SPhinX, LTD.*, 351 B.R. at 117.; *In re Provisional Liquidation*, 389 B.R. at 336 (noting the COMI presumption may be overcome, particularly in the case of a "letterbox company"). Section 1516(c)'s presumption is given even less weight when a debtor's COMI is in serious dispute. *In re SPhinX, LTD.*, 351 B.R. at 117.

Courts often consider various factors in determining whether § 1516(c)'s COMI presumption has been overcome. These factors include:

> the location of the debtor's headquarters; the location of those who actually manage the debtor (which, conceivably could be the headquarters of a holding company); the location of the debtor's primary assets; the location of a majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and/or the jurisdiction whose law would apply to most disputes.

*Id.* These factors are non-exclusive and a helpful guide, "but consideration of these specific factors is neither required nor dispositive." *Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 137 (2d Cir. 2013). Rather than applying these factors "mechanically," courts should view them "in light of chapter 15's emphasis on protecting the reasonable interests of parties in interest pursuant to fair procedures and the maximization of the debtor's value." *In re SPhinX, LTD.*, 351 B.R. at 117.

Courts have often equated a debtor's COMI with the debtor's principal place of business or "nerve center"—where those who manage the business "direct, control and coordinate the corporation's activities."

*See In re Think3 Inc.*, No. 11-11925-HCM, 2011 Bankr. LEXIS 5349, at *17–18 (Bankr. W.D. Tex. Sep. 12, 2011). Additionally, courts inquire as to where the debtor actually conducts its business, which may not be where it is registered or incorporated. *In re Fairfield Sentry Ltd.*, 714 F.3d at 130 ("COMI lies where the debtor conducts its regular business . . . ."); *In re Brit. Am. Ins. Co.*, 425 B.R. 884, 909 (Bankr. S.D. Fla. 2010).

Further, the Fifth Circuit finds it "important that the debtor's COMI be ascertainable by third parties." *In re Ran*, 607 F.3d at 1025; *In re Fairfield Sentry Ltd.*, 714 F.3d at 130. As such, in determining a debtor's COMI, courts often examine the expectations of creditors and other interested third parties. *See In re InterCement Brasil S.A*, 668 B.R. 802, 818–19 (Bankr. S.D.N.Y. 2025)*; In re Mod. Land (China) Co., Ltd.*, 641 B.R. at 782; *In re Brit. Am. Ins. Co.*, 425 B.R. at 912 ("The location of a debtor's COMI should be readily ascertainable by third parties."). Creditor expectations can be evaluated through public information available to creditors to inform them of the nature and risk of their investments. *In re InterCement Brasil S.A*, 668 B.R. at 818. "In practice, the evaluation of creditor expectations has focused on reviewing disclosures in offering memoranda and indentures." *Id.*

A COMI analysis should be performed on an entity-by-entity basis. *See Oi Brasil,* 578 B.R. at 206. Additionally, "a debtor's COMI should be determined based on its activities at or around the time the Chapter 15 petition is filed," rather than the time the foreign proceeding was initiated. *See In re Fairfield Sentry, LTD.*, 714 F.3d at 137. Consideration of the debtor's entire operational history is not the proper inquiry. *See id.* at 138.

Upon consideration of all the relevant testimony and evidence, the Court finds that each of the Debtors has its COMI in Brazil. The Objecting Parties only dispute AER's COMI, however, the Court will discuss each Debtor's COMI in turn.

***(1) Topco***

Topco is a Brazilian-domiciled company. Topco's registered office and headquarters are in Brazil. The parties have not offered any evidence to rebut a presumption that Topco's COMI is in Brazil. The Topco Board is in Brazil, where it manages and oversees operations related to the Ambipar Group. Topco is a registered taxpayer in Brazil where it pays taxes in *reais*. It keeps its books and records in Brazil. Thus, the Court concludes that Topco's COMI is in Brazil.

***(2) Ambipar Environment***

Ambipar Environment is similarly formed under the laws of Brazil. Its registered office and headquarters are in Brazil, where the Topco board manages Ambipar Environment from Brazil. The parties have not presented any evidence to rebut a presumption that Ambipar Environment's COMI is anywhere but Brazil. Thus, the Court concludes that Ambipar Environment's COMI is in Brazil.

***(3) Emergência***

Emergência is an entity formed under Brazilian law. It has a registered office and headquarters in Brazil. No evidence has been submitted to suggest that Emergência's COMI is located anywhere other than its registered office. Thus, the Court concludes the Emergência's COMI is in Brazil.

***(4) Luxco***

Luxco is a special purpose finance company formed under the laws of Luxembourg. Although it maintains a registered office in Luxembourg, it has no operations, employees, activities, or assets there. Luxco's exclusive purpose is to borrow and repay the Green Notes. It is completely dependent on the Debtors (except for Emergência), as guarantors, to repay the Green Notes. The final Offering Memoranda for the Green Notes details that the Ambipar Group believes it is a "leading environment, emergency response and industrial field service

provider *in Brazil*."[90] Further, the Offering Memoranda notes that if the parties were unable to pay its indebtedness, then it "may become subject to insolvency proceedings *in Brazil*."[91] In reviewing the public information available to creditors, through the disclosures in the Offering Memoranda, it is reasonable for creditors to expect to be dealing with a Brazilian-based company. Thus, based on all of these factors, the Court concludes the Luxco's COMI is in Brazil.

***(5) AER***

AER is an exempted limited liability company incorporated under the laws of the Cayman Islands and has a registered office there. Thus, it is presumed, absent any evidence to the contrary, that its COMI is in the Cayman Islands. However, that is not the case here. Although it maintains a registered office in the Cayman Islands, it has no operations, employees, activities, or assets in the Cayman Islands. It has one direct, wholly-owned subsidiary, Emergência—a Brazilian entity whose COMI in Brazil is not disputed. As a holding company for the Response business segment, AER has no employees, operations or business independent of the Ambipar Group, whose principal economic activity has been and continues to be in Brazil with over 65% of Ambipar Group's global revenue coming from Brazil.[92] Its corporate headquarters is in São Paulo, Brazil.

AER's "nerve center" is in Brazil because key decision makers for AER are in Brazil. *See In re OAS S.A.*, 533 B.R. 83, 100–01 (Bankr. S.D.N.Y. 2015). Topco, a Brazilian entity, holds 96% of the voting power in AER.[93] The Response Board manages and oversees AER from Brazil. Each officer of the Response Board, except for Mr. Mack, the independent director, resides in Brazil and is a citizen of Brazil. AER's books and records are recorded and reported in *reais* and maintained in Brazil. AER is a registered taxpayer in Brazil. AER also benefits from

[90] ECF No. 175-85, DX-063 at 1 (emphasis added).
[91] ECF No. 175-85, DX-063 at 73 (emphasis added).
[92] ECF No. 157-32, JX-079 at 8.
[93] ECF No. 157-37, JX-084 at 8

the operations that take place in the São Paulo Office, *e.g.*, the legal and human resources teams, information technology department, and business and finance teams located there.

Further, it is reasonable to believe that the majority of AER's creditors, the Green Noteholders, expected to be dealing with a Brazilian-based company. AER is a limited guarantor of the Green Notes. As noted *supra*, the Offering Memoranda suggests to creditors that the Ambipar Group's business is primarily based in Brazil where it would likely be subject to Brazilian bankruptcy proceedings should it default on its loans.

In *Oi Brasil*, the Court similarly analyzed a holding company's COMI by looking to an offering memorandum to determine the creditors' expectations. 578 B.R. at 180; *see also In re OAS S.A.*, 533 B.R. at 101–03. There, the offering memorandum included an almost identical disclosure to one in the Green Note Offering Memoranda. *See Oi Brasil*, 578 B.R. at 180. The court found this disclosure persuasive in determining that the debtors COMI was in Brazil.[94] *Oi Brasil*, 578 B.R. at 228. Here, while the Green Noteholders' rights are governed by New York law, the Green Noteholders expected to receive repayment from the cash generated by the operations of the Ambipar Group, and in the event of a default, might ultimately have to enforce their creditor rights in a Brazilian bankruptcy court. *See In re OAS S.A.*, 533 B.R. 103 (concluding that a debtor's COMI was in Brazil because creditors understood they were investing in a Brazilian-based business despite incorporation in Austria).

[94] *Compare Oi Brasil*, 578 B.R. at 180 (disclosing that "[i]f we are unable to pay our indebtedness, including our obligations under the notes, then we may become subject to bankruptcy proceedings in Brazil. Brazilian bankruptcy laws are significantly different from, and may be less favorable to creditors than, those of the United States"), *with* ECF No. 175-85, DX-063 at 73 ("If we are unable to pay our indebtedness, including our obligations under the Note Guarantees, then we may become subject to insolvency proceedings in Brazil. The bankruptcy law of Brazil currently in effect is significantly different from, and may be less favorable to creditors than, that of certain other jurisdictions.").

Therefore, based on the factors above, the Court concludes that AER's COMI is in Brazil.

Objecting Parties contend that AER's COMI shifted to the U.S. based on AER's restructuring activities in this Court.[95] However, AER has had and continues to have strong connections to Brazil, by and through its integration into the Ambipar Group and the Response board who oversees the Response segment.[96] Further, AER has been subject to parallel bankruptcy proceedings in both the U.S. ***and*** Brazil. And although AER conducted a handful of meetings in the U.S. to negotiate the RSA, the decision to enter into the RSA was made by Mr. da Costa Silva, in Brazil.[97]

The Court concludes that each of the Debtors' COMI is in Brazil. Because the Brazilian RJ Proceeding is "pending in the country where the debtor[s] [have] the center of its main interests," it is a foreign main proceeding within the meaning of 11 U.S.C. § 1502(4).[98] Thus, 11 U.S.C. § 1517(a)(1) is satisfied.

### B. The Foreign Representative is a Person.

Section 1517(a)(2) requires that the "foreign representative applying for recognition [be] a person or body." 11 U.S.C. § 1517(a)(2). Section 101(24) defines a "foreign representative" as:

> [A] person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to

---

[95] The AHG of Financial Creditors cite to *In re Siu-Fung* to support their argument that COMI shifted to the U.S., based on Debtor AER's restructuring activities. However, *In re Siu Fung* is distinguishable because this Court noted the debtor's restructuring activities only to confirm the debtor's COMI as the place where it was registered.

[96] ECF No. 160-17, JX-085 at 43 (demonstrating the Response business segment's strong operational presence in Brazil with over 5,000 employees and 341 response centers).

[97] ECF No. 175-73, DX-051 at 64–65.

[98] Because the Court has concluded the RJ Proceeding is a foreign main proceeding, the Court need not assess whether to grant recognition of the Brazilian RJ Proceeding as a foreign nonmain proceeding.

> administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24). Mr. da Costa Silva is a person duly appointed and authorized by the Debtors via corporate resolution to act as the foreign representative of the Brazilian RJ Proceeding and commence the Chapter 15 Cases here.[99] Thus, 11 U.S.C. § 1517(a)(2) has been satisfied.

### C. The Debtors' Petitions Meet the Requirements of § 1515.

Section 1517(a)(3) requires that a petition for recognition meet all the requirements of § 1515. 11 U.S.C. § 1517(a)(3). Section 1515 states the requirements for an application for recognition. *See* 11 U.S.C. § 1515. Section 1515(a) provides that a foreign representative applies to the court for recognition of a foreign proceeding by filing a petition for recognition. 11 U.S.C. § 1515(a). Section 1515(b) requires that a recognition petition include evidence of the existence of a foreign proceeding and appointment of the foreign representative. *See* 11 U.S.C. § 1515(b)(1) (certified copy of decision commencing foreign proceeding and appointing foreign representative); 11 U.S.C. § 1515(b)(2) (certificate from the foreign court affirming existence of the foreign proceeding and appointment of the foreign representative); 11 U.S.C. § 1515(b)(3) (any other acceptable evidence). The document referred to in §§ 1515(b)(1) and (b)(2) must be translated into English. *See* 11 U.S.C. § 1515(d). Additionally, Section 1515(c) requires that a petition include a statement identifying all foreign proceedings with respect to the debtor that is known to the foreign representative. 11 U.S.C. § 1515(c).

All § 1515 requirements have been satisfied. The Foreign Representative properly filed petitions for recognition (the

[99] *See* ECF No. 156-60, DX-038; ECF No. 156-56, DX-034; ECF No. 156-57, DX-035; ECF No. 156-58, DX-036; ECF No. 156-59, DX-037.

"Petitions").[100] The Foreign Representative has submitted with the Petitions, each translated into English, the Brazilian Court's Processing Order and Authorizing Resolutions—evidencing the existence of an RJ Proceeding and the appointment of Mr. da Costa Silva as Foreign Representative. Lastly, the Petitions identify the RJ Proceeding as the only foreign proceeding pending with respect to each Debtor.[101]

Thus, because all the requirements of § 1515 have been satisfied, 11 U.S.C. § 1517(a)(3) is also satisfied. The Court concludes that the Foreign Representative has met his burden in proving all the requirements of 11 U.S.C. § 1517(a). Thus, it shall grant Debtors' Recognition Motion and enter an Order recognizing the RJ Proceeding.[102]

## II. Recognizing the Brazilian RJ Proceeding is Not Manifestly Contrary to U.S. Public Policy.

Section 1517 is subject to the public policy exception of § 1506, which provides, "[n]othing in this chapter prevents the court from refusing to take an action governed by this chapter if the action would be manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506. Section 1506 is a narrow exception intended to be invoked only under the most "exceptional circumstances concerning matters of fundamental importance for the United States." *In re Ran*, 607 F.3d at 1021; *In re OAS S.A.*, 533 B.R. at 103 (noting that "federal courts in the United States have uniformly adopted the narrow application of the public policy exception."). Courts often focus on whether the foreign proceeding is procedurally unfair and whether the

[100] ECF No. 1; Case No. 26-90710, ECF No. 1; Case No. 26-90711, ECF No. 1; Case No. 90712, ECF No. 1; Case No. 26-90713, ECF No. 1.

[101] ECF No. 2 at 27; ECF No. 1; Case No. 26-90710, ECF No. 1; Case No. 26-90711, ECF No. 1; Case No. 90712, ECF No. 1; Case No. 26-90713, ECF No. 1.

[102] Objecting Parties request the Court delay deciding the Recognition Motion. However, their argument is contrary to the express language in 11 U.S.C. § 1517(c) which says that "[a] petition for recognition of a foreign proceeding ***shall*** be decided upon ***at the earliest possible time***." 11 U.S.C. § 1517(c) (emphasis added).

foreign proceeding would "severely impinge the value and import" of a U.S. statutory or constitutional right. *See Vitro, S.A.B. de C.V. v. ACP Master, LTD. (In re Vitro, S.A.B. de C.V.)*, 473 B.R. 117, 123 (Bankr. N.D. Tex. 2012) (quoting *In re Qimonda AG Bankr. Litig.*, 433 B.R. 547, 568–69 (E.D. Va. 2010)).

The Objecting Parties have not alleged a persuasive challenge to Brazilian Bankruptcy Proceedings as a whole, or the RJ Proceedings in the instant case. Courts frequently find that "Brazilian bankruptcy law meets our fundamental standards of fairness and accords with the course of civilized jurisprudence." *In re OAS S.A.*, 533 B.R. at 103 (quoting *In re Rede Energia S.A.*, 515 B.R. 69, 98 (Bankr. S.D.N.Y. 2014)); *In re Oi S.A.*, 587 B.R. 253, 269 (Bankr. S.D.N.Y. 2018). The similarities were detailed by the court in *In re OAS S.A.*:

> Brazil has a comprehensive bankruptcy law that in many ways mirrors our own. The debtor must file a petition which requires judicial approval before it can proceed. If approved, the debtor operates as a debtor-in-possession subject to varying levels of oversight by the court, the creditors committee and the judicial administrator. The debtor submits a reorganization plan which, with limited exceptions, deals with all pre-petition debt. The plan must demonstrate feasibility, and separate the creditors into four classes — labor-related, secured, general unsecured and "small business companies" unsecured claims. The plan must be approved by the requisite majority of creditors in each class, but may be crammed down over the vote of a rejecting class under certain circumstances. The Brazilian bankruptcy court must then approve the plan for it to become effective. Finally, as noted above, Brazilian Bankruptcy Law provides for a claims allowance process, and the Brazilian Bankruptcy Law includes detailed provisions relating to a creditor's challenge to the proposed disallowance of his claim.

*In re OAS S.A.*, 533 B.R. at 103–104 (cleaned up).

Here, testimony by the Brazilian law declarants support a conclusion that Brazilian bankruptcy law is comprehensive and "procedurally fair." Debtors' Brazilian law declarant, Gustavo Salgueiro, testified that courts in Brazil have "due process," "procedural guarantees for creditors," "they're able to file several motions," "able to file appeals to challenge decisions," "argue their claims," and "able to fully participate in the process, within all the procedural and constitutional rights being ensured under the congress of law, both substantive and procedurally."[103]

Professor Sheila Cerezetti, the AHG of Financial Creditor's Brazilian law declarant, confirmed her belief that Brazil has a comprehensive bankruptcy law and that Brazilian courts administer judiciary reconciliation proceedings fairly and competently.[104] Further, she agreed that "Brazilian law provides creditors with meaningful procedural protections," a "meaningful opportunity to be heard," and "an opportunity to influence the outcome of the RJ proceeding."[105] She confirmed she has "confidence in the integrity and function of the Brazilian bankruptcy act."[106]

Mr. Sergio Savi—Opportunity's Brazilian law declarant and attorney representing Opportunity's interest in an ancillary proceeding to the RJ Proceeding—testified that the Brazilian court had thus far given Opportunity "a full and fair chance to be heard," and he confirmed

---

[103] ECF No. 172 at Ex. C, 81–82.

[104] ECF No. 175-84, DX-062 at 32:14–33:3, 9:12–9:17.

[105] ECF No. 175-84, DX-062 at 21:14–21:17, 29:24–30:11.

[106] ECF No. 175-84, DX-062 at 9:8–9:11. Professor Cerezitti opined that she did not believe Brazilian bankruptcy law to be fundamentally fair although she believed the system to provide unfair protection for creditors. She points out that in certain cases creditor groups have to vote in groups even though they don't share common interests. *See* ECF No. 165, JX-110 at 35:13–36:13 ("I believe in many cases, the creditors vote in groups, where they don't have common interests . . . in my opinion, in the cases where it has happened, we don't have a fair system . . . ."). Though, after reviewing certain U.S. case law where courts have recognized Brazil as not contrary to U.S. public policy, she emphasized that she didn't believe those courts disagreed with her position, just that in those specific cases what the court saw was not unfair. *See* ECF No. 165, JX-110 at 42:11–25.

that shareholders are not "prevented from filing papers," "filing motions," or "making appeals."[107] Further, he confirmed that due process of law is a "constitutional principle" under Brazilian law.[108]

Opportunity argues that substantive consolidation is fundamentally unfair and an example of something § 1506 was designed to prevent. However, courts have held that substantive consolidation orders are not manifestly contrary to United States law. *See In re OAS S.A.*, 533 B.R. at 105. Section 1123(a)(5) authorizes bankruptcy courts to confirm a Chapter 11 plan containing a provision which substantively consolidates the estates of two or more debtors. 11 U.S.C. § 1123(a)(5); *In re Stone & Webster, Inc.*, 286 B.R. 532, 546 (Bankr. D. Del. 2002). Further, substantive consolidation is often ordered by U.S. bankruptcy courts. *See In re OAS S.A.*, 533 B.R. at 105 (gathering cases). Even if Brazilian law imposes different requirements for substantive consolidation, those differences alone do not mean that Brazilian law is manifestly contrary to U.S. law. *Id.*

Further, the Objecting Parties both allege that AER has breached its fiduciary duties and that recognition under such circumstances would run against § 1506. Opportunity argues that Debtor AER breached its fiduciary duties by acquiescing in and promoting substantive consolidation in the RJ Proceedings. The AHG of Financial Creditors argue that Debtor AER breached its fiduciary duties by executing the RSA, which promotes a plan it argues could never be confirmed in the Chapter 11 Case.

However, the evidence here does not support finding a breach of fiduciary duty. Mr. da Costa Silva testified that he made decisions that

---

[107] ECF No. 173, JX-047 at 39:16–40:2, 49:13–50:12. Opportunity argues that the RJ Proceeding is procedurally unfair because the minority shareholders have no meaningful ability to participate in an RJ Proceeding. However, their argument is contrary to testimony which supports the assertion that minority shareholders will not be prevented from participating in the RJ Proceeding. ECF No. 173, JX-047 at 48:22–49:3. Even if minority shareholders are not permitted to vote on a plan, they can still file papers and challenge any proposed plan.

[108] ECF No. 173, JX-047 at 93:7–13.

he believed were in the best interests of Debtor AER.[109] The decision to enter into the RSA was approved by a majority of each board, with the exception of Opportunity's appointed director.[110] Mr. Mack, an independent director of AER, testified that he believed the RSA was in the best interests of the company because it preserves shareholders' interests in AER and facilitates the repayment of creditors.[111]

As to the Objecting Parties' arguments against the terms of the RSA or its proposed implementation into an RJ Plan, and the alleged effects thereafter,[112] these arguments are premature. The RJ Plan has not been finalized, the Brazilian Court has not yet confirmed any plan, and the RJ plan's recognition and enforcement is not yet pending before this Court.[113] At this time, the Foreign Representative is solely seeking the Court's recognition of the RJ Proceeding. Objectors will have the opportunity to object to any proposed RJ Plan or Plans in Brazil and further challenge any motion in this Court which seeks recognition and enforcement of such plan.

The Court concludes that recognition of the Debtors' Brazilian Bankruptcy Proceedings is not manifestly contrary to the public policy of the United States, and recognition is granted. This conclusion is without prejudice to the Objecting Parties' right to challenge any action Debtors seek to take in this Court to request recognition and

[109] ECF No. 175-73, DX-051 at 99:3–8.

[110] *See* ECF No. 160-5, JX-066 at 4.

[111] ECF No. 175-74, DX-052 at 80:7–8, 149:15–22.

[112] Opportunity alleges that it could seek equitable subordination of the majority shareholder because of its "repeated misuse of its control position to benefit the ultimate controlling shareholder, Mr. Borlenghi." ECF No. 132 at 29. It argues that dismissal of Debtor AER's Chapter 11 Case would mean that such action would be unavailable. Similar arguments have been made about the unavailability of certain chapter 5 actions should the Chapter 11 Case be dismissed. However, these arguments are premature. The Court is not considering any implementation or enforcement of any confirmed RJ Plan at this point, nor is it granting dismissal of the Chapter 11 Case at this time.

[113] ECF No. 158-3, JX-043 at 6–7 (noting that no new RJ plan has been filed in the RJ Proceeding, approved by the creditors or ratified by the RJ Court).

enforcement of a plan or plans that may be approved by the Brazilian Court.

### III. The Suspension Motion is Granted.

The Court will now discuss whether the Suspension Motion is warranted.[114] Suspending Debtor AER's Chapter 11 Case is appropriate if:

> (1) the interests of creditors and the debtor would be better served by such dismissal or suspension; or
>
> (2)
>
> > (A) a petition under section 1515 for recognition of a foreign proceeding has been granted; and
> >
> > (B) the purposes of chapter 15 of this title would be best served by such dismissal or suspension.

11 U.S.C. § 305(a).

As discussed *supra*, § 305(a)(2)(A) has been met. The Court has granted recognition of the RJ Proceeding as a foreign main proceeding. Further, the Court concludes that § 305(a)(2)(B) is also satisfied because the purposes of chapter 15 are best served by suspension of the Chapter 11 Case. *See* 11 U.S.C. § 305(a)(2)(B).

"The stated purpose of Chapter 15 'is to incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency.'" *In re Siu-Fung Ceramics Holdings Ltd.*, No. 24-33299, 2026 WL 382424, at *17–18 (Bankr. S.D. Tex. Feb. 10, 2026) (citing 11 U.S.C. § 1501(a)). In particular, the objectives of Chapter 15 are to promote:

> (1) cooperation between—

---

[114] Case No. 25-90524, ECF No. 254.

> (A) courts of the United States, United States trustees, trustees, examiners, debtors, and debtors in possession; and
>
> (B) the courts and other competent authorities of foreign countries involved in cross-border insolvency cases;
>
> (2) greater legal certainty for trade and investment;
>
> (3) fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor;
>
> (4) protection and maximization of the value of the debtor's assets; and
>
> (5) facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment.

11 U.S.C. § 1501(a)(1)–(5); *see In re Oi S.A.*, 674 B.R. at 203 (stating that § 1501 lays out the purposes of Chapter 15).

In determining whether the second prong of § 305(a)(2) is satisfied, courts look to the goals set out in § 1501(a). *See generally In re Oi S.A.*, 674 B.R. at 203–06 (the court weighed each factor in § 1501(a) without finding any particular factor to be dispositive). After careful consideration of the Parties' arguments, the Court will grant suspension of Debtor AER's Chapter 11 Case.

**A. Section 1501(a)(1): Cooperation Between the United States and the Foreign Courts.**

The principles of comity and cooperation with foreign courts emphasize the purpose of chapter 15. *See In re Credito Real, S.A.B. de C.V., SOFOM, E.N.R.*, 670 B.R. 150, 160–61 (Bankr. D. Del. 2025), *aff'd sub nom. In re Credito Real S.A.B. de C.V., SOFOM, E.N.R.,* 677 B.R. 192 (D. Del. 2026). In particular, comity is "the recognition which one national allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international

duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." *Hilton v. Guyot*, 159 U.S. 113, 164 (1895). As a matter of comity, "deference to the foreign court is appropriate so long as the foreign proceedings are procedurally fair and . . . do not contravene [with] the laws or public policy of the United States." *JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 424 (2d Cir. 2005); *see Int'l Transactions, Ltd. v. Embotelladora Agral Regiomontana, SA de CV*, 347 F.3d 589, 594 (5th Cir. 2003) (holding that a foreign court's judgment on a matter is conclusive in the U.S. federal court when the foreign judgment is rendered by a court of competent jurisdiction, the judgment is supported by allegations and proof, the relevant parties have an opportunity to be heard, the foreign court follows proper procedural rules, and the foreign proceedings are stated in a formal record).

In the instant case, recognizing the Debtors' RJ Proceeding is the Court's exercise of comity as the Brazilian Court is a court of competent jurisdiction and the enforcement of the RJ Proceeding does not violate the U.S. public policy. The RJ Proceeding provides for a fair and efficient administration of bankruptcy, with procedural safeguards in place for an orderly resolution of claims and equitable distribution of assets.[115] The appointment of a judicial administrator and potential

[115] ECF No. 157-39 at 6–20. Upon the commencement of the RJ Proceeding, the Debtor's assets are subject to the control and supervision of the Brazilian Bankruptcy Court. Once the processing order is entered, the Debtor is subject to oversight by the appointed judicial administrator. Creditors are given fifteen (15) days from the publication of the processing order to file oppositions or requests for claim alterations with the judicial administrator. Upon the filing of a plan of reorganization, notice must be given to all impaired creditors and parties in interest through a publication in the Official Gazette, to which the creditors have thirty (30) days to object to the plan. Should any creditor object, the Brazilian Bankruptcy Court will call for a meeting of creditors to vote on the plan, in which the creditors will receive notice at least fifteen (15) days in advance. "Throughout the entire process, creditors and other parties in interest are given proper notice through electronic publication in the Official Gazette of every order and notice entered by the Brazilian Bankruptcy Court, the Court of Appeals, and the Superior Court of Justice." ECF No. 157-39 at 14; ECF No. 175-84, DX-062 at 9:8–17; 21:14–17 (Confirming that "Brazilian law provides creditors with meaningful procedural protections").

committee of creditors ensures a fair oversight of the RJ proceeding.[116] Moreover, the RJ Proceeding provides the creditors with an adequate notice to file and object to claims, a voting mechanism for the Debtor's reorganization plan, and the ability to challenge the Brazilian Bankruptcy Court's decision to a higher court, thereby comporting with the broadly accepted due process principles.[117] For the reasons stated above, the Brazilian Bankruptcy Court is a court of competent jurisdiction.

The Court is not persuaded by the Objecting Parties' arguments that U.S. laws or public policy would be violated or infringed upon by extending comity to the RJ Proceeding. A number of courts have recognized that the Brazilian Bankruptcy Act and Brazilian insolvency processes are not manifestly contrary to U.S. public policy. *See e.g.*, *In re Rede Energia S.A.*, 515 B.R. 69, 98 (Bankr. S.D.N.Y. 2014) (holding that Brazilian bankruptcy law concepts are not manifestly contrary to U.S. public policy because it meets our "fundamental standards of fairness and accords with the course of civilized jurisprudence"); *In re Oi S.A.*, 587 B.R. at 269 (Bankr. S.D.N.Y. 2018) (holding that Brazilian bankruptcy law is consistent with U.S. public policy); *In re OAS S.A.*, 533 B.R. at 103 (Bankr. S.D.N.Y. 2015) (holding that Brazilian bankruptcy law mirrors the U.S. bankruptcy law in many ways and is not contrary to the U.S. public policy). Instead, the evidence adduced supports that U.S. public policy would best be served by extending comity to the RJ proceeding, which in turn will maximize the Debtor's recovery value through its entry into the RSA.[118] It is also evident that the Brazilian Bankruptcy Court provides a suitable forum

[116] ECF No. 157-39 at 17.

[117] ECF No. 157-39 at 6–17; ECF No. 173-1, JX-047 at 39:16–40:2, 49:13–50:12, 93:7–13 (Confirming that Opportunity had "a full and fair chance" to be heard in the RJ Proceeding, shareholders are permitted to file motions or appeals in the RJ Proceeding, and "due process of law is a . . . constitutional principle" under the Brazilian law).

[118] ECF No. 175-73, DX-051 at 140:10, 140:21–141:23 (The enforcement of the RSA is the best path for the Debtors to "preserve the assets and the continuity of the company and the jobs generated by the company," which in turn will maximize the Debtors' value).

to continue the Debtor's bankruptcy process given the main location of the its central management and control of the company.[119] Accordingly, deferring to the Brazilian Bankruptcy Court does not violate U.S. public policy.

Opportunity contends that comity is not a one-way street and the foreign court must also defer to this Court when appropriate, to which it alleges the Brazilian Bankruptcy Court has not done so.[120] The Court agrees that comity is not a one-way street, but to the extent that "reciprocity may be a factor to be considered, it is not required as a condition precedent to the granting of comity." *Cunard S.S. Co. v. Salen Reefer Servs. AB*, 773 F.2d 452, 460 (2d Cir. 1985) (rejecting the argument that the granting of comity is improper when there is no indication that a foreign court would grant comity to a U.S. bankruptcy court under analogous circumstances). Consistent with the reasoning provided by the Second Circuit, reciprocity is not a precondition for this Court to extend comity to the RJ Proceeding, though the Court recognizes reciprocity may be considered a relevant factor.

Opportunity further points out the Brazilian Bankruptcy Court issued a Substantive Consolidation Order without regard to the fact that consolidation is inconsistent with the facts and law applicable in Debtor AER's Chapter 11 Case, suggesting that extending comity to the RJ Proceeding is therefore inappropriate.[121] To the extent that U.S. and Brazilian law are inconsistent with respect to substantive consolidation, the inconsistencies are irrelevant for purposes of comity because the Brazilian Bankruptcy Court is court of a competent jurisdiction and

---

[119] ECF No. 156-17, DX-003 (Part 4) at 10 (The Debtor AER's Annual Form 20-F states that the "[c]entral management and control of the Company are exercised in Brazil with its principal executive office located at Avenida Angélica, 2346, 5th Floor, São Paulo, São Paulo, Brazil . . . .").

[120] Case No. 25-90524, ECF No. 341 at 48 ¶ 117; ECF No. 132 at 32 ¶ 75. Opportunity cited McGee v. Estelle in support of its argument that "comity is not a one-way street." 722 F.2d 1206, 1214 (5th Cir. 1984). The argument, however, is taken out of context as McGee discusses the notion of comity in the context of balancing state and federal interests in a federal habeas corpus case, not in a Chapter 15 case.

[121] ECF No. 132 at 32 ¶ 75.

substantive consolidation is not manifestly contrary to the U.S. public policy. *See In re Odebrecht Engenharia e Construcao S.A. - Em Recuperacao Jud.*, 669 B.R. 457, 475 (Bankr. S.D.N.Y. 2025) (stating the fact that the U.S. law would have led to a different outcome does not matter when the foreign court governing the proceeding is a court of competent jurisdiction and the proceeding does not violate the U.S. public policy); *see also In re Platinum Partners Value Arbitrage Fund L.P.*, 583 B.R. 803, 815 (Bankr. S.D.N.Y. 2018) (holding that comity "does not require that the relief available in the United States be identical to the relief sought in the foreign bankruptcy proceeding; it is sufficient if the result is comparable and that the foreign laws are not repugnant to [the U.S.] laws and policies"); s*ee also In re Rede Energia S.A.*, 515 B.R. at 100 (holding that substantive consolidation is not manifestly contrary to the U.S. public policy). The Brazilian Bankruptcy Court has made specific findings that the Debtor and its affiliates have fulfilled the requirements for substantive consolidation relief pursuant to Article 69-J of Brazilian bankruptcy law.[122] It is "not appropriate for this Court to superimpose requirements of U.S. law on a case in Brazil or to second-guess the findings of the foreign court." *See In re Rede Energia S.A.*, 515 B.R. at 100.

In sum, the Court finds that suspension of Debtor AER's Chapter 11 Case would advance the underlying purpose of comity and cooperation among this Court and the Brazilian Bankruptcy Court, given that the Brazilian Bankruptcy Court is a court of competent jurisdiction and the RJ Proceeding is not manifestly contrary to the U.S. public policy.

### B. Section 1501(a)(2): Legal Certainty for Trade and Investment.

As the Debtor correctly asserts, the legal certainty for trade and investment is best served by resolving the Debtor's restructuring efforts in a jurisdiction where the Debtor predominantly operates and

[122] ECF No. 156-55, DX-033 at 37.

advertises to the world it is based in—Brazil.[123] The Debtor held, in its 424(b)(3) Prospectus and Annual Form 20-F, that it is "a leading environmental, emergency response and industrial field service provider in Brazil . . . ." and the "[c]entral management and control of the [c]ompany are exercised in Brazil with its principal executive office located at Avenida Angélica, 2346, 5th Floor, São Paulo, São Paulo, Brazil . . . ."[124] Similarly, within the Green Notes offering memoranda, the Debtor, as part of the Ambipar Group, advertised itself to be based in Brazil and in the event it is unable to pay its indebtedness—including its obligations under the Guarantees—then it may become subject to insolvency proceedings in Brazil.[125]

Thus, resolving the Debtor's restructuring efforts in Brazil would provide some legal certainty because shareholders and purchasers of the Green Noteholders understood that they were investing in a Brazilian-based company. To hold otherwise would result in uncertainty and confusion for shareholders and creditors alike.

### C. Section 1501(a)(3): Fair and Efficient Administration of Cross-Border Insolvencies that Protects the Interests of the Debtor, All Creditors, and Other Interested Entities.

The RJ Proceeding provides for the fair and efficient administration of a bankruptcy proceeding that protects the interests of all creditors, other interested stakeholders, and the Debtor. Debtors' Brazilian law declarant, Mr. Salgueiro, testified that the RJ Proceeding is Brazil's equivalent of a Chapter 11 reorganization.[126] The RJ Proceeding comports with the accepted due process principles, as creditors and other parties in interest are afforded proper notice through an electronic publication in the Official Gazette of every order and notice entered by the Brazilian Bankruptcy Court, the Court of Appeals, and

---

[123] ECF No. 161 at 32 ¶ 72.

[124] ECF No. 156-1, DX-001 (Part 1) at 20; ECF No. 156-17, DX-003 (Part 4) at 10.

[125] ECF No. 156-13, DX-002 at 7, 73.

[126] ECF No. 157-39 at 7 ¶ 17.

the Superior Court of Justice.[127] Moreover, the deadline to file appeals against any court order is publicly available in the Brazilian Bankruptcy Court's official website and the deadline only begins after the parties receive proper notice.[128]

In addition, Brazilian bankruptcy law provides for the filing and determination of claims, objections to claims, distribution and priority of claims, filing of a plan of reorganization, objections to a plan of reorganization, and voting of a plan of reorganization.[129] It also provides for procedural safeguards that protect creditors' rights. For instance, the creditors may bring actions under the Brazilian Civil Code to avoid transfers made to the Debtor.[130] The creditors also retain the rights to appeal a plan of reorganization upon the entry of the plan confirmation order to the Brazilian State Court of Appeals and Brazilian Superior Court of Justice thereafter.[131]

The listed features demonstrate the procedural and substantive fairness inherent in the RJ Proceeding. Brazilian bankruptcy law therefore allows the parties to protect their interests through the mechanisms provided, and this Court was not presented with evidence to the contrary. In fact, members of the AHG of Financial Creditors—Banco ABC Brasil, Banco Bradesco, and Banco Santander—have exercised their due process rights and appealed the Substantive Consolidation Order to the State of Rio de Janeiro Court of Appeals.[132] Thus, should the Objecting Parties intend to object to the approval of the RSA, challenge the allowed amount of the Green Noteholders, or pursue any claims of wrongdoing, they may do so before the Brazilian

---

[127] ECF No. 157-39 at 15–16 ¶ 40.
[128] ECF No. 157-39 at 15–16 ¶ 40.
[129] ECF No. 157-39 at 9–20.
[130] ECF No. 157-39 at 18 ¶ 48.
[131] ECF No. 157-39 at 15 ¶ 39.
[132] ECF No. 161 at 38 ¶ 84.

Bankruptcy Court.[133] The interests of the creditors and other interested parties are accordingly protected in the RJ Proceeding.

In light of the foregoing, the Court concludes that suspension of the Chapter 11 Case would promote a fair and efficient administration of the bankruptcy proceeding that allows the creditors and other interested parties to protect their interests before the Brazilian Bankruptcy Court.

**D. Section 1501(a)(4): Protection and Maximization of the Value of the Debtor's Assets.**

Suspending the Chapter 11 Case would further § 1501's objective to protect and maximize the value of the Debtor's assets, particularly through its entry into the RSA. Mr. da Costa Silva and Mr. Mack have testified that the RSA is the "best path" for the Debtors to restructure as it "preserve[s] the assets and the continuity of the company and the jobs generated by the company," and the RSA is "the best available option to preserve the existing equity interest in the company for all shareholders."[134] By contrast, the Debtors' contend that should AER proceed with the Chapter 11 Case, 100% of the shareholders' equity interest would be transferred to the Green Noteholders and other unsecured creditors to satisfy their claims.[135] Thus, the RSA preserves the interests of the current shareholders, including Opportunity.[136]

The Objecting Parties assert the RSA would release "the Debtor's valuable claims" and consequently, adversely impact the Debtor.[137] However, the RSA does not release the Debtor's claims or causes of

---

[133] ECF No. 157-39 at 9–10 ¶ 23 (Creditors may object to the list of creditors and their respective claims); ECF No. 157-39 at 12 ¶ 29 (Creditors may object upon the filing of a plan of reorganization before the Brazilian court); ECF No. 157-39 at 18 ¶ 48 (Creditors may bring actions to avoid transfers made by the Debtor under the Brazilian Civil Code); ECF No. 157-39 at 15 ¶ 39 ("Brazilian law provides for a robust appeal process after a plan of reorganization is confirmed").

[134] ECF No. 175-73, DX-051 at 140:10, 140:21–141:23; ECF No. 161, Ex. B ¶ 7.

[135] ECF No. 161, Ex. B ¶ 7.

[136] ECF No. 161 at 51 ¶ 93 (The RSA will reinstate Opportunity's 24% of equity interest in the Debtor).

[137] Case No. 25-90524, ECF No. 341 at 55 ¶ 120.

action.[138] The consenting bond holders and holders of claims and interests that provide third-party releases are releasing the Debtor of claims and causes of action, but not the other way around.[139] Thus, the fraudulent conveyance claims under Chapter 11 are otherwise preserved if the Debtor wishes to pursue such claims in the future.[140]

Accordingly, suspension of the Chapter 11 Case protects and maximizes the value of the Debtor AER's assets.

### E. Section 1501(a)(5): Facilitation of the Rescue of Financially Troubled Businesses, Thereby Protecting Investment and Preserving Employment.

There is no question that the Debtor is in a dire financial condition. Nonetheless, the Debtor correctly asserts that the restructuring transactions contemplated by the RSA are the only concrete path for restructuring that has been provided.[141] As discussed *supra*, Mr. da Costa Silva and Mr. Mack have explained that the RSA is the best restructuring path to preserve the Debtor's assets and employment, as well as to preserve the shareholders' current equity interest in the Debtor's company.[142]

Thus, the Court concludes that suspension of the Chapter 11 Case facilitates the only presently available restructuring path to rescue the financially troubled Debtor.

Having granted the petition for recognition under § 1515 and concluded that the purposes of chapter 15 would best be served by such

---

[138] ECF No. 161, Ex. B ¶ 5 (Mr. Mack, in his capacity as an independent director, testified that "[t]he RSA does not release any claims or causes of action that would materially harm the value of the estate").

[139] ECF No. 156-68, DX-046 at 10, 31 (Each "Released Party," including the Debtor, is released and discharged by each "Releasing Party" from any and all claims and causes of action set forth in the RSA).

[140] ECF No. 161, Ex. B ¶ 6.

[141] ECF No. 161 at 45–46 ¶ 100.

[142] ECF No. 156-73, DX-051 at 140:10, 140:21–141:23; ECF No. 161, Ex. B ¶ 7.

suspension or dismissal, the Court finds the suspension of Debtor AER's case is warranted.

## CONCLUSION

For the reasons above, the Court GRANTS Debtors' *Motion for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* [ECF No. 2], and GRANTS *Debtor Parties' Motion to Suspend the Chapter 11 Case* [Case No. 25-90709, ECF No. 254]. Debtors are requested to settle orders incorporating this decision within (7) days.

SIGNED 09/28/2026

Alfredo R Pérez
United States Bankruptcy Judge